1   KENT B. GOSS (State Bar No. 131499)
    kgoss@orrick.com
2   VALERIE M. GOO (State Bar No. 187334)
    vgoo@orrick.com
3   SETH E. FREILICH (State Bar No. 217321)
    sfreilich@orrick.com
4   DIMITRIOS V. KOROVILAS (State Bar No. 247230)
    dkorovilas@orrick.com
5   ORRICK, HERRINGTON & SUTCLIFFE LLP
    777 S. Figueroa Street, Suite 3200
6   Los Angeles, CA  90017
    Telephone:  +1-213-629-2020
7   Facsimile:   +1-213-612-2499

8   Attorneys for Defendant & Counterclaimant
    ONE TECHNOLOGIES LP
9
    [Attorneys for Additional Parties in Signature Block]
10
                UNITED STATES DISTRICT COURT
11
                CENTRAL DISTRICT OF CALIFORNIA
12
                     WESTERN DIVISION
13

| 14 | | |
|----|---|---|
| 15 | CONSUMERINFO.COM, INC., a California corporation, | Case No.  CV 09-3783-VBF(MANx) |
| 16 |   Plaintiff, | **JOINT STIPULATION PER LOCAL CIVIL RULE 37-2 REGARDING DEFENDANTS' JOINT MOTION TO COMPEL PRODUCTION OF DOCUMENTS** |
| 17 |   v. | |
| 18 | ONE TECHNOLOGIES LP, a Delaware limited partnership; ADAPTIVE MARKETING LLC, a Delaware corporation; and DOES 1-50, inclusive, | Discovery Cutoff:       June 4, 2010<br>Pretrial Conference:   Oct. 4, 2010<br>Trial date:                 Oct. 19, 2010 |
| 19 | | |
| 20 | | |
| 21 |   Defendants. | Hearing:       April 13, 2010, at 10:00 am<br>Judge:       Hon. Margaret A. Nagle |
| 22 | AND RELATED COUNTERCLAIM | **[Filed Concurrently with Notice of Motion; [Proposed] Order; Decl. of Dimitrios V. Korovilas; Decl. of James Donoian; Decl. of Oscar Ramallo]** |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Pursuant to Central District of California Local Civil Rule 37-2, defendants One Technologies LP ("One Tech") and Adaptive Marketing LLC ("Adaptive") (One Tech and Adaptive are collectively referred to as "Defendants") and plaintiff ConsumerInfo.com ("ConsumerInfo"), by and between their respective undersigned counsel, hereby submit this joint stipulation regarding One Tech's and Adaptive's joint motion to compel the further production of documents by ConsumerInfo.

1

2

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ..................................................................................1

      A.    Defendants One Tech's and Adaptive's Introductory Statement .........1

      B.    Plaintiff ConsumerInfo's Introductory Statement ...............................4

            1.    Documents concerning the FTC Action are irrelevant to
                  the subject matter of this case and compelling their
                  discovery would unduly chill settlement negotiations and
                  voluntary remedial measures ......................................................4

            2.    Because ConsumerInfo has collected nearly 8,000
                  documents containing the term "marketing plan" or
                  business plan!," production of business plans should be
                  limited to the issues actually raised in the pleadings.................5

            3.    The prior litigation documents sought by Defendants are
                  not relevant to this case. Their production  would pose an
                  undue burden on ConsumerInfo and would unjustifiably
                  invade confidentiality and privacy concerns of non-parties.......5

            4.    ConsumerInfo has agreed to produce all non-privileged or
                  protected surveys .......................................................................6

II.   REQUESTS FOR PRODUCTION ......................................................7

      A.    **DOCUMENTS RELATED TO THE FTC ACTION [OT
            Requests for Production ("RFP") Nos. 25, 27-32; Adaptive
            RFP Nos. 75-83]**..............................................................................7

            1.    OT RFP No. 25 .........................................................................7

                  a.    Defendants' Position Re OT RFP No. 25 .......................8

                        (1)    Documents Relating to the FTC Action are
                               Relevant to Consumers' Understanding of
                               the "Freecreditreport.com" Mark,
                               ConsumerInfo's Knowledge, and
                               ConsumerInfo's Behavior in the Marketplace.......9

                        (2)    Documents from the FTC Action are Not
                               Protected Settlement Communications.................11

                        (3)    ConsumerInfo's Remaining Boilerplate
                               Objections Likewise Do Not Justify its
                               Refusal to Produce Documents...........................14

                  b.    ConsumerInfo's Position Re OT RFP No. 25 ...............16

            2.    OT RFP No. 27 .......................................................................17

                  a.    Defendant's Position Re OT RFP No. 27 ......................17

                  b.    ConsumerInfo's Position Re OT RFP No. 27 ...............18

            3.    OT RFP No. 28 .......................................................................18

                  a.    Defendant's Position Re OT RFP No. 28 ......................19

                  b.    ConsumerInfo's Position Re OT RFP No. 28...............19

            4.    OT RFP No. 29 .......................................................................19

                  a.    Defendant's Position Re OT RFP No. 29 ......................20

1

**TABLE OF CONTENTS**
(continued)

2

Page

3
    b.    ConsumerInfo's Position Re OT RFP No. 29 ............... 20

4
    5.    OT RFP No. 30 ........................................................................... 20

5
        a.    Defendant's Position Re OT RFP No. 30 ...................... 21
        b.    ConsumerInfo's Position Re OT RFP No. 30 ............... 22

6
            (1)    Documents Relating to the FTC Claims

7
                    Under the FTC Act Are Beyond the
                    Permissible Scope of Discovery in This
                    Action, Which Concerns ConsumerInfo's

8
                    Trademark Rights .............................................. 22

9
            (2)    Rule 408 Supports Denial of Defendants'
                    Motion .............................................................. 26

10
            (3)    Clark Does Not Support Defendants' Motion ..... 28

11
            (4)    Rule 407 also Operates to Make the
                    Requested Documents Inadmissible and

12
                    Beyond the Scope of Discovery ......................... 30

13
    6.    OT RFP No. 31 ........................................................................... 31
        a.    Defendant's Position Re OT RFP No. 31 ...................... 32

14
        b.    ConsumerInfo's Position Re OT RFP No. 31 ............... 32

15
    7.    OT RFP No. 32 ........................................................................... 32
        a.    Defendant's Position Re RFP No. 32 ............................ 33

16
        b.    ConsumerInfo's Position Re RFP No. 32 ...................... 34

17
    8.    Adaptive's RFP No. 75 .............................................................. 34

18
        a.    Defendant's Position Re Adaptive RFP No. 75 ............. 35
        b.    ConsumerInfo's Position Re Adaptive RFP No. 75 ...... 35

19
    9.    Adaptive's RFP No. 76 .............................................................. 36

20
        a.    Defendant's Position Re Adaptive RFP No. 76 ............. 36

21
        b.    ConsumerInfo's Position Re Adaptive RFP No. 76 ...... 37

22
    10.    Adaptive's RFP No. 77 .............................................................. 37
        a.    Defendant's Position Re Adaptive RFP No. 77 ............. 38

23
        b.    ConsumerInfo's Position Re Adaptive RFP No. 77 ...... 38

24
    11.    Adaptive's RFP No. 78 .............................................................. 39
        a.    Defendant's Position Re Adaptive RFP No. 78 ............. 39

25
        b.    ConsumerInfo's Position Re Adaptive RFP No. 78 ...... 40

26
    12.    Adaptive's RFP No. 79 .............................................................. 40
        a.    Defendant's Position Re Adaptive RFP No. 79 ............. 41

27
        b.    ConsumerInfo's Position Re Adaptive RFP No. 79 ...... 41

28
    13.    Adaptive's RFP No. 80 .............................................................. 42
        a.    Defendant's Position Re Adaptive RFP No. 80 ............. 43

1
2

**TABLE OF CONTENTS**
(continued)

Page

3
   b. ConsumerInfo's Position Re Adaptive RFP No. 80 ...... 43

4
  14. Adaptive's RFP No. 81 ................................................ 43

   a. Defendant's Position Re Adaptive RFP No. 81 ............ 44

5
   b. ConsumerInfo's Position Re Adaptive RFP No. 81 ...... 44

6
  15. Adaptive's RFP No. 82 ................................................ 45

7
   a. Defendant's Position Re Adaptive RFP No. 82 ............ 46

   b. ConsumerInfo's Position Re Adaptive RFP No. 82 ...... 46

8
  16. Adaptive's RFP No. 83 ................................................ 46

9
   a. Defendant's Position Re Adaptive RFP No. 83 ............ 47

10
   b. ConsumerInfo's Position Re Adaptive RFP No. 83 ...... 47

 B. **MARKETING & BUSINESS PLANS [OT RFP Nos 48, 86]** ...... 47

11
  1. OT RFP No. 48 ......................................................... 47

12
   a. Defendants' Position re OT RFP 48 .............................. 48

13
   b. ConsumerInfo's Position Re OT RFP No. 48 ............... 51

14
    1. "[ConsumerInfo's] selection and use and promotion of trademarks at issue in this case ...... 53

15
    2. "the use and effectiveness of free credit reports in marketing, advertising and as an incentive in the credit report monitoring industry ................................................. 54

16

17
    3. "consumer understanding of the term "free credit report" and the mark "freecreditreport.com ............................................ 54

18

19
    4. "[ConsumerInfo's] knowledge and intent in marketing and advertising free credit reports and in utilizing keywords containing the terms 'free,' 'credit,' and 'report' and the freecreditreport.com domain name ..................... 55

20

21

22
    5. "[ConsumerInfo's] knowledge and attempts to prevent competitors from using such keywords and domain names or from offering free credit reports in marketing , advertising or as an incentive" ............................. 55

23

24
    6. "exclusionary tactics" ......................................... 56

25
    7. "special or non-standard arrangements with Google or other pay-per-click search providers;" ............................................................ 57

26

27
    8. "strategies for creating barriers to entry into the market;" .......................................................... 57

28
    9. "use of the FREECREDITREPORT.COM trademark to exclude others from the market;" .............................................................. 57

1

**TABLE OF CONTENTS**
(continued)

2

Page

3          10.    "raise competitors prices for marketing or
                  advertising or achieve lower advertising
4                 costs;"........................................................................57

5          11.    "higher advertising placement or higher
                  search rankings;".....................................................57

6          12.    "pricing and price changes;"..................................57

7          13.    "competitive conditions in the marketplace."......58

    2.  OT RFP No. 86 ....................................................................58

8       a.  Defendants' Position re OT RFP 86.............................59

9       b.  ConsumerInfo's Position re OT RFP 86 .....................59

10  C.  **DOCUMENTS RELATED TO CONSUMERINFO'S
        LAWSUITS AGAINST JESEE WILLMS AND MIGHTY
        NET OR OTHER LITIGATION AND ENFORCEMENT
11      EFFORTS REGARDING CONSUMERINFO'S
        ASSERTED INTELLECTUAL PROPERTY RIGHTS  [OT
12      RFP Nos. 96-98, 101, 134-136, 138-142, and 144-145;
        Adaptive RFP No. 85]**.............................................................59

13

14  1.  OT RFP No. 95 ....................................................................59
        a.  Defendants' Position re OT RFP 95.............................59

15      b.  ConsumerInfo's Position re OT RFP 95 .....................64

16  2.  OT RFP No. 96 ....................................................................72
        c.  Defendants' Position re OT RFP 96.............................73

17      d.  ConsumerInfo's Position re OT RFP 96 .....................73

18  3.  OT RFP No. 97 ....................................................................73

19      a.  Defendants' Position re OT RFP 97.............................74
        b.  ConsumerInfo's Position re OT RFP 97 .....................74

20  4.  OT RFP No. 98 ....................................................................74

21      a.  Defendants' Position re OT RFP 98.............................74

22      b.  ConsumerInfo's Position re OT RFP 98 .....................75

23  5.  OT RFP No. 100 ..................................................................75
        a.  Defendants' Position re OT RFP 100...........................75

24      b.  ConsumerInfo's Position re OT RFP 100 ...................75

25  6.  OT RFP No. 101 ..................................................................76
        a.  Defendants' Position re OT RFP 101...........................76

26      b.  ConsumerInfo's Position re OT RFP 101 ...................77

27  7.  OT RFP No. 134 ..................................................................77

28      a.  Defendants' Position re OT RFP 134...........................78
        b.  ConsumerInfo's Position re OT RFP 134 ...................78

1

**TABLE OF CONTENTS**
(continued)

2

|  |  | **Page** |
|---|---|---|
| 8. | OT RFP No. 135 | 78 |
| | a. Defendants' Position re OT RFP 135 | 78 |
| | b. ConsumerInfo's Position re OT RFP 135 | 78 |
| 9. | OT RFP No. 136 | 79 |
| | a. Defendants' Position re OT RFP 136 | 79 |
| | b. ConsumerInfo's Position re OT RFP 136 | 79 |
| 10. | OT RFP No. 138 | 79 |
| | a. Defendants' Position re OT RFP 138 | 80 |
| | b. ConsumerInfo's Position re OT RFP 138 | 80 |
| 11. | OT RFP No. 139 | 80 |
| | a. Defendants' Position re OT RFP 139 | 80 |
| | b. ConsumerInfo's Position re OT RFP 139 | 81 |
| 12. | OT RFP No. 140 | 81 |
| | a. Defendants' Position re OT RFP 140 | 81 |
| | b. ConsumerInfo's Position re OT RFP 140 | 81 |
| 13. | OT RFP No. 141 | 81 |
| | a. Defendants' Position re OT RFP 141 | 82 |
| | b. ConsumerInfo's Position re OT RFP 141 | 82 |
| 14. | OT RFP No. 142 | 82 |
| | a. Defendants' Position re OT RFP 142 | 82 |
| | b. ConsumerInfo's Position re OT RFP 142 | 83 |
| 15. | OT RFP No. 144 | 83 |
| | a. Defendants' Position re OT RFP 144 | 83 |
| | b. ConsumerInfo's Position re OT RFP 144 | 83 |
| 16. | OT RFP No. 145 | 83 |
| | a. Defendants' Position re OT RFP 145 | 84 |
| | b. ConsumerInfo's Position re OT RFP 145 | 84 |
| 17. | ADAPTIVE RFP No. 85 | 84 |
| | a. Defendants' Position re ADAPTIVE RFP 85 | 85 |
| | b. ConsumerInfo's Position re ADAPTIVE RFP 85 | 85 |
| D. | **SURVEYS RELATED TO CONSUMERINFO'S TRADEMARKS [OT RFP Nos. 52-53 and 70-72; Adaptive RFP Nos. 46-47]** | 85 |
| 1. | OT RFP No. 52 | 85 |
| | a. Defendants' Position re OT RFP 52 | 86 |

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

**TABLE OF CONTENTS**
(continued)

2

Page

3    (1) Surveys Not Created In Anticipation of
         Litigation Are Not Privileged ..............................87

4    (2) Surveys Produced or Relied Upon In
         Litigation Are Not Privileged ..............................88

5
6    (3) Surveys Not Produced In Litigation
         Constitute Factual Information Not Subject
         to the Work Product Doctrine .....................89

7    (4) Defendants Have a Substantial Need for
         Surveys and Survey-Related Documents
8        Otherwise Subject to the Work Product
         Doctrine.....................................................90

9        b.   ConsumerInfo's Position re OT RFP 52 ......91

10   2.   OT RFP No. 53 ...................................................93

11       a.   Defendants' Position re OT RFP 53..............93

12       b.   ConsumerInfo's Position re OT RFP 53 ......93

13   3.   OT RFP No. 70 ...................................................94

         a.   Defendants' Position re OT RFP 70..............94

14       b.   ConsumerInfo's Position re OT RFP 70 ......94

15   4.   OT RFP No. 71 ...................................................95

16       a.   Defendants' Position re OT RFP 71..............96

         b.   ConsumerInfo's Position re OT RFP 71 ......96

17   5.   OT RFP No. 72 ...................................................97

18       a.   Defendants' Position re OT RFP 72..............97

         b.   ConsumerInfo's Position re OT RFP 72 ......97

19   6.   ADAPTIVE RFP No. 46 ......................................98

20       a.   Defendants' Position re ADAPTIVE RFP 46...............98

21       b.   ConsumerInfo's Position re OT RFP 46 ......98

22   7.   ADAPTIVE RFP No. 47 ......................................99

         a.   Defendants' Position re ADAPTIVE RFP 47...............99

23       b.   ConsumerInfo's Position re OT RFP 47 ..............100

24
25
26
27
28

**TABLE OF AUTHORITIES**

Page

**FEDERAL CASES**

*Anti-Monopoly, Inc. v. General Mills, Inc.*,
   684 F.2d 1326 (9th Cir. 1982) ................................................................. 63

*Armstrong v. HRB Royalty, Inc.*,
   392 F. Supp. 2d 1302 (S.D. Ala. 2005) ........................................... 12, 13

*Board of Trustees of Leland Stanford Junior University v. Tyco Intern. Ltd.*,
   253 F.R.D. 521 (C.D. Cal. 2008) ........................................................... 13

*Broadcort Capital Corp. v. Summa Med. Corp.*,
   972 F.2d 1183 (10th Cir.1992) .......................................................... 12, 13

*Brookfield Communications, Inc. v. W. Coast Entertainment Corp.*,
   174 F.3d 1036 (9th Cir. 1999) ............................................................... 24

*Callahan v. AEV, Inc.*,
   947 F. Supp. 175 (W.D. Pa. 1996) ................................................... 50, 51

*In re Cedant Corp. Sec. Litig.*,
   343 F.3d 658 (3d Cir. 2003) ................................................................... 92

*Clark v. Experian Information Solutions, Inc.*,
   Case No. 03-C-7882, 2006 U.S. Dist. LEXIS 13808
   (N.D. Ill. 2006) .............................................................................. passim

*Clark v. Experian Information Solutions, Inc.*,
   2006 WL 626820 (N.D. Ill. Jan. 6, 2006) ..................................... passim

*Clark v. Experian Information Solutions, Inc.*,
   2006 WL 931677 (N.D. Ill. Apr. 10, 2006) ......................................... 14

*County of Suffolk v. Long Island Lighting Co.*,
   122 F.R.D. 120 (E.D.N.Y. 1988) ......................................................... 88

*Cytosport, Inc. v. Nature's Best, Inc.*,
   No. CIV S-06-1799 DFL EFB, 2007 WL 1040993
   (E.D. Cal. Apr. 4, 2007) ....................................................................... 89

*Dunkin' Donuts Franchised Restaurants, LLC v. 1700 Church Avenue Corp.*,
   2008 WL 1840760 (E.D.N.Y. April 23, 2008) ............................... 51, 55

*Far Out Prods. v. Oskar*,
   247 F.3d 986 (9th Cir. 2001) ................................................................. 24

*Fisons Limited v. Capability Brown Limited*,
   209 U.S.P.Q. 167 (T.T.A.B. 1980) ....................................................... 90

*GMC v. Keystone Auto. Indus.*,
   2005 U.S. Dist. LEXIS 23168, 75 U.S.P.Q. 2d 1892 (E.D. Mich. 2005),
   *rev'd on other grounds, remanded* 453 F.3d 351 (6th Cir. 2006) ................. 30

1

2

**TABLE OF AUTHORITIES**
(continued)

Page

3

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
  318 F. Supp. 1116 (S.D.N.Y. 1970) ................................................................ 63

4

5

*Green v. Baca*,
  226 F.R.D. 624 (C.D. Cal. 2005) ............................................................. 88, 90

6

*Griffith v. Davis*,
  161 F.R.D. 687 (C.D. Cal. 1995) ..................................................................... 87

7

8

*Intermedics, Inc. v. Ventritex, Inc.*,
  139 F.R.D. 384 (N.D. 1991) ....................................................................... 88, 89

9

*Koninklijke Philips Electronics N.V. v. KXD Technology, Inc.*,
  2007 WL 631950 (D. Nev. Feb. 26, 2007) ...................................................... 62

10

*Lamoureux v. Anazaohealth Corp.*,
  2009 U.S. Dist. LEXIS 24500 (D. Conn. Mar. 26, 2009) ...................... 4, 26, 27

11

12

*In re Lorazepam & Clorazepate Antitrust Litig.*,
  300 F. Supp. 2d 43 (D.D.C. 2004) ................................................................... 57

13

*Magnivision, Inc. v. Bonneau Co.*,
  2003 WL 23320550 (C.D. Cal. Dec. 18, 2003) .............................................. 88

14

*Masterpiece of Pennsylvania, Inc. v. Consolidated Novelty Co.*,
  183 U.S.P.Q. 344 (S.D.N.Y. 1974) ................................................................. 90

15

16

*Packman v. Chicago Tribune Co.*,
  267 F.3d 628 (7th Cir. 2001) ........................................................................... 27

17

*PAJ, Inc. v. Barons Gold Mfg. Corp.*,
  2002 WL 1792069 (S.D.N.Y. Aug. 2, 2002) ............................................. 50, 51

18

19

*Phoenix Solutions Inc. v. Wells Fargo Bank, N.A.*,
  254 F.R.D. 568 (N.D. Cal. 2008) ......................................................... 12, 62, 63

20

*Puma AG Rudolf Dassler Sport v. Payless ShoeSource, Inc.*,
  2008 WL 686592 (D. Mass. Mar. 14, 2008) ................................................... 89

21

22

*Sonista, Inc. v. Hsieh*,
  2005 WL 2045802 (N.D. Cal. Aug. 25, 2005) ........................................... 50, 51

23

*In re Sulfuric Acid Antitrust Litig.*,
  231 F.R.D. 331 (N.D. Ill. 2005) ...................................................................... 27

24

25

*Towerridge, Inc. v. T.A.O., Inc.*,
  111 F.3d 758 (10th Cir. 1997) .................................................................... 13, 28

26

*Trilink Saw Chain, LLC v. Blount, Inc.*,
  583 F. Supp. 2d 1293 (N.D. Ga. 2008) ........................................................... 30

27

28

*United States v. City of Torrance*,
  163 F.R.D. 590 (C.D. Cal. 1995) ..................................................................... 88

**TABLE OF AUTHORITIES**
(continued)

Page

*United States v. Dentsply Int'l, Inc.*,
  2000 WL 654286 (D. Del. May 10, 2000) .......................................... 50

*United States v. Farley*,
  11 F.3d 1385 (7th Cir. 1993) ....................................................... 4, 22, 25

*United States v. Nobles*,
  422 U.S. 225 (1975) ..................................................................... 88

*In re Urethane Antitrust Litigation*,
  261 F.R.D. 570 (D. Kan. 2009) ...................................................... 50

*Vardon Golf Co., Inc. v. BBMG Golf Ltd.*,
  156 F.R.D. 641 (N.D. Ill. 1994) .................................................. 26, 27

*Vilastor Kent Theatre Corp. v. Brandt*,
  18 F.R.D. 199 (S.D.N.Y 1955) ...................................................... 57

*Vulcan Hart Corp. v. NLRB*,
  718 F.2d 269 (8th Cir.1983) ...................................................... 12, 13

*Willaim A. Gross Constr. Assocs. v. Am. Mfrs. Mut. Ins. Co.*,
  262 F.R.D. 354 (S.D.N.Y. 2009) .................................................... 92

*World Boxing Council v. Cosell*,
  715 F. Supp. 1259 (S.D.N.Y. 1989) ............................................... 30

**DOCKETED CASES**

*ConsumerInfo.com, Inc. v. Jesee Willms, et al.*,
  Case No. SACV 09-0055 DOC (MLGx) .................................... passim

*ConsumerInfo.com, Inc. v. Mighty Net, Inc.*,
  Case No. SACV-06-0322 ODW (ANx) ..................................... passim

**FEDERAL STATUTES & RULES**

15 U.S.C. § 45(a)(1) ...................................................................... 24

Fed. R. Civ. P. 26(b)(1) ................................................................ 30

Fed. R. Civ. P. 26(b)(3) ................................................................ 87

Fed. R. Civ. P. 26(b)(3)(A)(ii) ....................................................... 90

Fed. R. Civ. P. 26(b)(4)(B) ........................................................... 91

Fed. R. Civ. P. 26(b)(4)(B)(ii) ..................................................... 6, 92

Fed. R. Civ. P. 37(a)(5) ................................................................. 4

Fed. R. Evid. 407 ......................................................................... 30

**TABLE OF AUTHORITIES**
(continued)

**Page**

Fed. R. Evid. 408 ...................................................................................... 12

FTC Act. Citing Rule 408.......................................................................... 29

**MISCELLANEOUS**

3 McCarthy on Trademarks and Unfair Competition § 20:112 (4th ed.)................ 89

Moore's Federal Practice § 26.80[2], at 26-236.5.................................................. 92

I.     **INTRODUCTION**

     A.     **Defendants One Tech's and Adaptive's Introductory Statement**

This lawsuit arises from ConsumerInfo's allegations that two of its competitors — One Tech and Adaptive — have infringed ConsumerInfo's trademarks and copyrights through the use of certain internet advertising and domain names.  Specifically, ConsumerInfo asserts that defendants have infringed its famous FREECREDITREPORT.COM and TRIPLE ADVANTAGE trademarks.  One Tech and Adaptive assert that the FREECREDITREPORT.COM is not a valid mark and that, if valid, it is a weak mark entitled to very little protection because the terms "free" "credit" and "report" are used widely throughout the credit report and monitoring industry to promote free credit reports as a marketing tool and because consumers understand the phrase FREECREDITREPORT.COM to offer a free credit report.  Further, One Tech asserts that the FREECREDITREPORT.COM MARK should be cancelled because, *inter alia,*  ConsumerInfo knew that consumers understood the phrase FREECREDITREPORT.COM to be an offer for a free credit report but did not so inform the PTO when it applied for a trademark application in 2006.  In addition, One Tech has asserted an antitrust counterclaim alleging that ConsumerInfo fraudulently obtained a federal trademark registration for FREECREDITREPORT.COM and has since improperly used the registration to harm competition by increasing its competitors' advertising and marketing costs, unfairly obtaining higher ad placement on search engines (such as Google), lowering its own advertising and marketing costs and attempting to create barriers of entry into the credit report and monitoring market.

ConsumerInfo has necessitated this motion to compel by refusing to produce to either One Tech or Adaptive certain key documents critical to the allegations described above.  For the Court's convenience, One Tech and Adaptive have made this motion jointly to address overlapping issues.  While there are numerous specific document requests at issue, they fall into four main categories:

***Documents Related to the Federal Trade Commission's Lawsuit Against ConsumerInfo***.  Defendants seek production of documents related to the Federal Trade Commission's lawsuit against ConsumerInfo, entitled *Federal Trade Commission v. ConsumerInfo.com, Inc.*, Case No. SACV 05-801 AHS (MLGx) (C.D. Cal. 2005) (the "FTC Action").  In 2005, prior to ConsumerInfo's 2006 application for a federal trademark registration on FREECREDITREPORT.COM, the FTC sued ConsumerInfo for violation of the FTC Act, alleging that ConsumerInfo misled consumers to believe that they could obtain a free credit report from the freecreditreport.com website.  As explained in detail below, consumers' understanding of the term "freecreditreport.com" was a central issue in the FTC Action and is here as well.  It is highly relevant to ConsumerInfo's own claims that its mark is valid, strong, and famous, defendants defenses to such claims, as well as defendants' counterclaims for cancellation of the mark and antitrust.  Further, ConsumerInfo's knowledge and belief of consumers' understanding of the FREECREDITREPORT.COM mark at the time it filed for a federal trademark registration is also directly relevant to these claims.  There is no basis for ConsumerInfo's wholesale refusal to produce documents relating to the FTC Action.

***Marketing & Business Plans.***  ConsumerInfo refuses to produce any marketing or business plans other than excerpts which specifically reference One Tech or Adaptive.  This position is untenable.  As explained below, marketing and business plans are a fertile source of evidence on key issues in this case.  Marketing and business plans are likely to contain discussions of selection, strategy and use of the FREECREDITREPORT.COM and TRIPLE ADVANTAGE marks, consumers' response and understanding of such marks (showing the strength and effectiveness of such marks), the efficacy of using free credit reports as a marketing tool, and strategies to hamper competition – all highly relevant evidence in this case.

***Documents Regarding Other Lawsuits And Efforts To Enforce The***

*FREECREDITREPORT.COM and TRIPLE ADVANTAGE Trademarks*. ConsumerInfo also refuses to produce any documents relating to other lawsuits and efforts to enforce the very marks that it asserts against defendants in this action. Defendants are entitled obtain non-privileged documentary evidence, prior testimony, prior statements by ConsumerInfo and settlement agreements that pertain to similar claims of infringement of the FREECREDITREPORT.COM and TRIPLE ADVANTAGE trademarks. The information sought is undeniably relevant.

> *Surveys Regarding ConsumerInfo's Purported Intellectual Property Rights.*. One Tech and Adaptive each propounded a series of requests seeking any consumer surveys and studies relevant to ConsumerInfo's alleged intellectual property rights. ConsumerInfo has stated that multiple surveys exist but has agreed to produce only a single survey regarding the secondary meaning of its trademarks, asserting that all other surveys are somehow privileged. Defendants cannot evaluate the merits of that privilege claim at this point because ConsumerInfo has yet to produce a privilege log. However, as set forth in more detail below, there are a variety of surveys that may exist that are not protected by any privilege, including any surveys conducted in the ordinary course of business or any surveys actually produced or relied upon in other litigation. Moreover, the factual content underlying any surveys is not privileged. Even assuming that the work product privilege attached, that is a qualified privilege which should be overcome by defendants' substantial need in this case, as set forth in more detail below. ConsumerInfo should not be allowed to pick and choose which surveys it produces and produce only the single survey that may benefit its claims.

> For the foregoing reasons, defendants respectfully request that the Court grant their motion to compel and require ConsumerInfo to pay defendants' costs incurred in making this motion, per Fed. R. Civ. P. 37(a)(5).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### B.   Plaintiff ConsumerInfo's Introductory Statement

**1. Documents concerning the FTC Action are irrelevant to the subject matter of this case and compelling their discovery would unduly chill settlement negotiations and voluntary remedial measures.**

Defendants seek production of documents related to the lawsuit *Federal Trade Commission v. ConsumerInfo.com, Inc,.* Case No. SACV 05-801 AHS (MLGx).  In that case, the FTC alleged that in violation of Section 5 of the FTC Act "[m]any of ConsumerInfo's radio, television, and Internet advertisements have not . . . disclosed adequately [] the existence of ConsumerInfo's Credit Check Monitoring Service."  (Korovilas Decl. Exh. F, FTC Complaing at ¶ 13.)  Because Section 5 of the Act has nothing to do with trademarks, the FTC did not allege, as Defendants claim, that ConsumerInfo's mark FREECREDITREPORT.COM was generic or lacked secondary meaning.  Given that the subject matter of the FTC's action has no overlap with this case, Defendants' path will lead only to the discovery of innuendo with which to smear ConsumerInfo, rather than to any admissible evidence.  The Court should not indulge this fishing expedition.  *United States v. Farley*, 11 F.3d 1385, 1390-91 (7th Cir. 1993) (holding documents concerning an FTC investigation are not relevant for discovery purposes in an action arising from the FTC investigation).

Moreover, many of the documents sought by Defendants are protected settlement communications.  "[C]ourts have been reluctant to order the production of documents relating to ongoing settlement negotiations, absent a showing of substantial need or, at minimum, a particularized showing of the relevance of such documents." *Lamoureux v. Anazaohealth Corp.*, 2009 U.S. Dist. LEXIS 24500, at *8 (D. Conn. Mar. 26, 2009).  Here, Defendants are unable to articulate a theory of relevance without grossly misrepresenting the FTC's allegations.  This Court should avoid the chilling effect on settlement that would occur if Defendants' prevailed.  Similarly, many of the documents sought by Defendants concern remedial measures taken by ConsumerInfo after the FTC Action.  The federal

1    policy of encouraging remedial measures far outweighs Defendants' need to smear

2    ConsumerInfo with irrelevant material.

3         **2. Because ConsumerInfo has collected nearly 8,000 documents**
         **containing the term "marketing plan" or business plan!," production**
4         **of business plans should be limited to the issues actually raised in the**
         **pleadings.**

5

6         Defendants seek essentially all of ConsumerInfo's business and

7    marketing plans.  Given that a keyword search shows ConsumerInfo has collected

8    nearly 8,000 internal documents with the terms "marketing plan" or "business

9    plan!," this request is overbroad.  ConsumerInfo has instead agreed to review more

10   than 70,000 documents culled from keywords proposed by Defendants, including

11   multiple variations of their business names and websites.  ConsumerInfo agreed to

12   produce portions of business plans that refer to Defendants, as well as portions that

13   relate to One Tech's antitrust counterclaims that ConsumerInfo's

14   FREECREDITREPORT.COM trademark registration allegedly gives

15   ConsumerInfo an unfair advantage in the market and that ConsumerInfo has entered

16   into special arrangements with search engines.  The production of business plans

17   should be limited to these categories of documents at issue in this case, not the

18   irrelevant and amorphous categories suggested by Defendants.

19        **3. The prior litigation documents sought by Defendants are not relevant**
         **to this case.  Their production  would pose an undue burden on**
20        **ConsumerInfo and would unjustifiably invade confidentiality and**
         **privacy concerns of non-parties.**

21

22        Defendants seek all documents relating to two separate lawsuits

23   brought by ConsumerInfo against Mighty Net, Inc. and Jesee Willms, including all

24   documents produced by any party or third-party and all deposition transcripts.  The

25   documents are voluminous and almost all irrelevant.  For example, in *Willms,*

26   twenty-six non-parties to the current litigation produced approximately 80,000

27   pages of documents concerning Willms' activities, which have no bearing on the

28   issues here.  The bulk of the documents in both *Willms* and *Mighty Net* matters are

marked confidential under separate protective orders and they contain personal identifying information of hundreds of thousands of consumers.  The extreme burden on ConsumerInfo to modify its protective orders with all of these entities and produce tens-of-thousands of pages of irrelevant material is unwarranted.  The invasion of proprietary secrets and personal privacy of non-parties to this litigation is wholly unjustified.

Even many documents produced by ConsumerInfo are irrelevant because the prior two cases involved, in part, different trade dress and copyrights than those at issue here.  To the extent ConsumerInfo in the past produced documents relevant to the current case, those documents will be produced pursuant to Defendants' discovery requests that are focused on the matters at issue here.  In short, Defendants seek tens-of-thousands of pages of irrelevant documents, even though discovery requests tailored to the issues in this case can give them everything they need.

### 4. ConsumerInfo has agreed to produce all non-privileged or protected surveys.

In the meet and confer process, ConsumerInfo told Defendants it was aware of only one non-work product survey concerning the marks at issue in this case and agreed to produce it.  ConsumerInfo nevertheless agreed to run keyword searches targeted at finding additional surveys and produce what was found.  To the extent Defendants moved to compel non-work product surveys, their motion is pointless.  All that is at issue is whether ConsumerInfo should be required to produce surveys conducted by non-testifying experts for purposes of litigation. Under Federal Rule of Civil Procedure 26(b)(4)(B)(ii), such documents can be discovered only "on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject matter by other means."  Because Defendants have not attempted to show they cannot seek discovery on any subjects by other means, the motion should be denied.

## II.   REQUESTS FOR PRODUCTION

### A.   DOCUMENTS RELATED TO THE FTC ACTION [OT Request for Production ("RFP") Nos. 25, 27-32; Adaptive RFP Nos. 75-83].

#### 1.   OT RFP No. 25

**REQUEST FOR PRODUCTION NO. 25:**

All DOCUMENTS previously produced by YOU or the FTC in Federal Trade Commission v. ConsumerInfo.com, Inc., case number SACV 05-801 AHS (MLGx) (C.D. Cal.).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25**

ConsumerInfo incorporates by reference the General Objections above as though fully set forth herein and further objects to the request on the grounds that it is overbroad, unduly burdensome, and not relevant to a claim or defense nor reasonably calculated to lead to the discovery of admissible evidence. ConsumerInfo objects to the request to the extent it seeks production of information that includes trade secrets, confidential, and/or proprietary information. ConsumerInfo further objects to the request to the extent it calls for the production of documents related to making or responding to offers of compromise or draft settlement agreements with the FTC.  *See Clark v. Experian Info. Solutions, Inc.*, Case No. 03-C-7882, 2006 U.S. Dist. LEXIS 18098 at *2-5 (N.D. Ill. 2006) (affirming Magistrate ruling); *Clark v. Experian Info. Solutions, Inc.*, Case No. 03-C-7882, 2006 U.S. Dist. LEXIS 13808 at *3 (N.D. Ill. 2006) at *20-21 (ruling by magistrate allowing discovery of certain documents related to the Stipulation Injunction, but not documents making or responding to offers of compromise or draft settlement agreements with the FTC, and implying that Rule 408 would preclude the admission of a broader swath of evidence related to the Stipulated Injunction at trial).  ConsumerInfo objects to the request to the extent it seeks production of information that include trade secrets, confidential, and/or proprietary information.

1

### a. **Defendants' Position Re OT RFP No. 25**

2

ConsumerInfo must be compelled to produce documents responsive to

3

OT RFP 25.  This request, as well as OT RFPs 27-32 and Adaptive's requests for

4

production 75-83, seek documents related to the FTC's Action against

5

ConsumerInfo, including:

6

- documents produced in that action by either party;

7

- communications between ConsumerInfo and the FTC related to

8

  the case;

9

- documents evidencing the business practices that gave rise to

10

  the FTC's complaint;

11

- transcripts of any depositions;

12

- all witness statements, declarations, or affidavits prepared in the

13

  case; and

14

- all complaints and other documents regarding ConsumerInfo's

15

  compliance with the stipulated injunction that resolved the case.

16

In response to these requests, ConsumerInfo has refused to produce to

17

either One Tech or Adaptive *even a single document related to the FTC Action*.  It

18

has likewise refused to run any keyword search terms related to the FTC Action as

19

part of electronic discovery in this case.  Korovilas Decl. ¶ 9.  Instead,

20

ConsumerInfo has made blanket objections in response to each request, asserting

21

that documents responsive to the requests are irrelevant, or else settlement

22

communications protected from discovery, attorney-client privileged, or too

23

confidential and proprietary to be produced.  As set forth below, ConsumerInfo's

24

objections are meritless, and it must therefore be compelled to produce documents

25

responsive to defendants' FTC-related requests.

26

27

28

**(1)   Documents Relating to the FTC Action are Relevant to Consumers' Understanding of the "Freecreditreport.com" Mark, ConsumerInfo's Knowledge, and ConsumerInfo's Behavior in the Marketplace**

Documents relating to the FTC Action are highly relevant here because the allegations in that case directly relate to issues disputed here.  The strength and validity of the FREECREDITREPORT.COM mark, consumers' understanding of the term "freecreditreport.com" (*i.e.,* whether they believe it indicates a source for a free credit report or something else), and ConsumerInfo's knowledge and use of the mark through the years – including when it applied for a federal trademark registration for FREECREDITREPORT.COM in 2006 are all central issues in this case and go directly to ConsumerInfo's trademark infringement claims, Defendants defenses thereto, and One Technologies' claims for cancellation and antitrust (based on fraudulent trademark registration).  As discussed below, the FTC Action, while based on different claims, involved these same issues.  ConsumerInfo's relevance objection is therefore meritless.

The FTC Action

The FTC sued ConsumerInfo in 2005 for violation of Section 5 of the FTC Act, charging that ConsumerInfo had engaged in deceptive acts and practices by misleading consumers via use of its www.freecreditreport.com domain name.  The lawsuit resulted from three years of investigation by the FTC into ConsumerInfo's allegedly unlawful activities.  *See Clark v. Experian Information Solutions, Inc.*, 2006 WL 626820, at *1 (N.D. Ill. Jan. 6, 2006) (stating that ConsumerInfo was first contacted by the FTC in 2002 and then had discussions regarding the dispute "'[o]ff and on for the next three years").  In sum, the FTC alleged that ConsumerInfo customers believed that the domain name www.freecreditreport.com was associated with the provision of a "*free* credit report" and did not know that they were required to pay for a required $79.95 annual membership in ConsumerInfo's Triple Advantage credit monitoring service.

*See* Korovilas Decl. Exh. F (exhibiting the FTC complaint).  According to the FTC, "[m]any consumers were thus unaware when signing up for their free credit report that they were also automatically signing up for ConsumerInfo's Credit Check Monitoring Service."  *See* Korovilas Decl. Exh. F (FTC Complaint ¶ 13).  In other words, consumers did not understand the freecreditreport.com mark to refer to any particular services from ConsumerInfo, but rather understood it to refer generically to the provision of a free credit report.  The FTC also alleged that ConsumerInfo misled consumers via its www.freecreditreport.com website to believe that it was associated with the government's website, www.annualcreditreport.com (*see* Korovilas Decl. Exh. F (FTC Complaint ¶ 25)), i.e., consumers were misled into believing that reports provided by www.freecreditreport.com originated from the government, not ConsumerInfo alone.

The FTC Action was initially resolved by way of a Stipulated Final Judgment and Order for Permanent Injunction, entered August 29, 2005, which barred ConsumerInfo from further deceptive acts and required it to give up $950,000 in ill-gotten gains.  Korovilas Decl. Exh. G-H.  However, upon charges that ConsumerInfo had continued to run misleading advertisements that violated the settlement terms, the FTC required ConsumerInfo to enter into a Supplemental Stipulated Judgment and Order For Permanent Injunction and Monetary Relief, entered January 8, 2007.  Korovilas Decl. Exhs. I-J.  This supplemental order required ConsumerInfo to divest an additional $300,000 in ill-gotten gains and again barred misleading ads.

<u>The Instant Action</u>

In this action, ConsumerInfo has asserted trademark infringement and cybersquatting claims against One Tech and Adaptive based on, *inter alia,* ConsumerInfo's federal registration of the trademark FREECREDITREPORT.COM.  One Tech and Adaptive maintain in their defenses and counterclaims that, among other things, the FREECREDITREPORT.COM

mark is invalid and should be cancelled because it consists of terms that are either generic or descriptive without the requisite secondary meaning.  One Tech's counterclaims for cancellation and antitrust violation also assert that the mark was obtained through fraud because ConsumerInfo knowingly misled the USPTO about consumers' understanding of its purported mark.

Documents relating the FTC Action will bear directly on these claims, counterclaims, and defenses.  These documents will show the way in which ConsumerInfo has used and is using the FREECREDITREPORT.COM mark over the past eight years to advertise to consumers, and the nature of the association in consumers' minds between the mark and the goods and services provided by ConsumerInfo – all of which go to the heart of trademark infringement defenses of strength and validity of the purported mark (*e.g.,* is it generic or does it lack secondary meaning, is it likely to cause confusion amongst consumers, etc.).  Moreover, these documents will bear directly on ConsumerInfo's knowledge of consumers' understanding of the mark in 2006, when it applied for the federal trademark registration of the FREECREDITREPORT.COM mark, which bears directly on One Technologies' allegation of fraud on the PTO.  Indeed, the FTC Action evidences that — for **years** — ConsumerInfo falsely marketed freecreditreport.com to signal simply the provision of a "free credit report" and potential association with the government, **not** to signal ConsumerInfo as the origin of particular goods and services.  Documents relating to the FTC Action, therefore, are directly relevant in this case and ConsumerInfo should be compelled to produce them.

### (2)    Documents from the FTC Action are Not Protected Settlement Communications

ConsumerInfo's argument that all documents relating to the FTC action and investigation are privileged under FRE 408 is likewise meritless.

Federal Rule of Evidence 408 bars the ***admission*** of settlement

1   communications, not their *discovery*.  *See* Fed. R. Evid. 408(a).  Moreover, even as

2   to admissibility (which is not at issue in this motion), Rule 408 bars the use of

3   settlement communications only if the purpose is to "prove *liability for, invalidity*

4   *of, or amount of a claim that was disputed* as to validity or amount, or to impeach

5   through a prior inconsistent statement or contradiction."  *Id.*  Further, it applies only

6   to actual statements "furnishing or offering or promising to furnish—or accepting

7   or offering or promising to accept" a compromise of a claim or "conduct or

8   statements made in compromise negotiations regarding the claim."  *See* Fed. R.

9   Evid. 408(a)(1)(2).  In addition, the rule's plain language and the case law

10  interpreting it are clear that Rule 408's exclusionary rule does not apply to

11  settlement communications about a claim that is different from the one being

12  litigated.[1]

13          Here, for numerous reasons, ConsumerInfo cannot rely on Rule 408 in

14  refusing to produce documents from the FTC Action.  ***First,*** One Tech and

15  Adaptive are seeking only *discovery* of the documents, not admission into evidence.

16  Thus, Rule 408 is inapplicable.  *Phoenix Solutions Inc. v. Wells Fargo Bank, N.A.*,

17  254 F.R.D. 568, 584 (N.D. Cal. 2008) ("Rule 408 does not warrant protecting

18  settlement negotiations from discovery. On its face, the rule applies to the

19  admissibility of evidence at trial, not to whether evidence is discoverable."); *Board*

20  ─────────────
[1]  *See Towerridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758, 770 (10th Cir. 1997) ( "Rule
21  408 does not require the exclusion of evidence regarding the settlement of a claim
    different from the one litigated, though admission of such evidence may
22  nonetheless implicate the same concerns of prejudice and deterrence of settlements
    which underlie Rule 408[.]"); *Broadcort Capital Corp. v. Summa Med. Corp.*, 972
23  F.2d 1183, 1194 (10th Cir.1992) ("Rule 408 did not bar this evidence because it
    related to settlement discussions that involved a different claim than the one at issue
24  in the current trial."); *Vulcan Hart Corp. v. NLRB*, 718 F.2d 269, 277 (8th
    Cir.1983) ("Rule 408 excludes evidence of settlement offers only if such evidence
25  is offered to prove liability for or invalidity of the claim under negotiation.");
    *Armstrong v. HRB Royalty, Inc.*, 392 F. Supp. 2d 1302, 1304-05 (S.D. Ala. 2005)
26  ("Rule 408 excludes evidence of settlement offers only if such evidence is offered
    to prove liability for or invalidity [or amount] of the claim under negotiation. . . .
27  Rule 408 unambiguously requires that the claim as to which a settlement offer was
    made and the claim at issue in the litigation in which the offer is proffered as
28  evidence must be the same claim.").

*of Trustees of Leland Stanford Junior University v. Tyco Intern. Ltd.*, 253 F.R.D. 521, 523 (C.D. Cal. 2008) ("[T]here is no federal privilege preventing the discovery of settlement agreements and related documents.").

**Second,** the claims in the FTC Action were different from the ones at issue here. The FTC Action alleged violation of Section 5 of the FTC Act; the instant action involves trademark claims. Because different claims are at issue, Rule 408 cannot apply. *See, e.g.*, *Towerridge,* 111 F.3d at 770; *Broadcort,* 972 F.2d at 1194 ; *Vulcan*, 718 F.2d at 277; *Armstrong*, 392 F. Supp. 2d at 1304-05.

**Third,** not all of the documents related to the FTC's three-year investigation and two-year monitoring of ConsumerInfo's compliance with the injunction will constitute express offers, acceptances, or negotiations of settlement terms, which are the only materials arguably subject to Rule 408. Indeed, the bulk of documents at issue are likely to constitute preexisting business records that ConsumerInfo provided to the FTC in conjunction with the action. That these documents were enclosed under cover letters to the FTC does not make them protected settlement communications.

Even a cursory reading of *Clark v. Experian Information Solutions, Inc.* — the case ConsumerInfo relies upon in its discovery responses — shows that ConsumerInfo's argument is without merit. *Clark* was a consumer protection class action case in which the plaintiff class alleged Experian made false advertising claims similar to those in the FTC Action. *See Clark*, 2006 WL 626820 at *1. It named both ConsumerInfo and Experian Information Solutions as defendants. In discovery, the plaintiffs moved to compel ConsumerInfo to produce all documents that were "produced to the FTC in connection with the investigation that led to the filing of the FTC's complaint." *Id.* In response, ConsumerInfo made the same argument it makes here, asserting that all responsive documents were "related to" settlement discussions and therefore protected from discovery. *Id.* The magistrate judge flatly rejected that argument, and, contrary to ConsumerInfo's assertions

here, *compelled* ConsumerInfo to produce responsive documents. *Id.* at *2-6. The magistrate judge reasoned:

> Defendants have taken a very broad view of Rule 408 that is not supported by the text of that rule or the cases on which Defendants rely. . . . Defendants are simply wrong in asserting that Rule 408 makes information relating to settlement negotiations off limits from discovery. . . . [T]he exclusion in Rule 408 is quite narrow . . . . Defendants made a strategic decision simply to object to producing all documents that, in Defendants' opinion, "relate to settlement" regardless of when created or what those documents contain. For the reasons set out above, that overly-broad claim is not legally supported and must be overruled.

*Id.* The magistrate judge in *Clark* therefore compelled ConsumerInfo to produce: all "business records that existed prior to the commencement of the FTC's investigation, but were furnished to the FTC following the instigation of the investigation," *see id.* at *3-4, and all "documents prepared by Defendants especially in response to requests by the FTC for information," *see id.* at *4-6. The court held that the *only* documents ConsumerInfo could withhold were those "that contain *express specific* offers of compromise or *expressly* respond to an offer of compromise, and drafts of any settlement agreements." *Id.* at *6 (emphasis added). Moreover, the court required that "any documents so withheld must be identified by Bates number" on a privilege log. *Id.; see also Clark v. Experian Information Solutions, Inc.*, 2006 WL 931677, at *3 (N.D. Ill. Apr. 10, 2006) (affirming the magistrate's ruling because Rule 408 affects admissibility, not discovery). ConsumerInfo's reliance on *Clark* is therefore misplaced. Indeed, *Clark* only goes to show that ConsumerInfo's is wrong in asserting that FTC-related documents are all protected settlement communications.

**(3)     ConsumerInfo's Remaining Boilerplate Objections Likewise Do Not Justify its Refusal to Produce Documents**

ConsumerInfo's objections that the requests for documents from the FTC Action are overbroad, unduly burdensome, and that they improperly call for confidential, proprietary, or attorney-client privileged information are similarly

1    baseless.

2           Throughout the meet and confer process, defendants have attempted to

3    meet and confer about the scope of documents responsive to these FTC-related

4    requests, to determine whether any need exists to narrow the document requests.

5    *See* Korovilas Decl. ¶ 9; Donoian Decl. ¶¶ 5, 8.  To date, despite promises to do so,

6    ConsumerInfo has failed to substantively respond to those meet and confer efforts

7    or to amend any of its discovery responses to state that there are no documents

8    responsive to certain requests.  For example, it remains unclear whether any

9    depositions were ever taken in connection with the FTC Action such that there are

10   any documents in existence that are responsive to OT RFP 27.

11          However, based on the information currently available to One Tech

12   and Adaptive, it would appear that the amount of documents responsive to these

13   requests is likely not voluminous and that the bulk of them have, in fact, already

14   been collected such that they would be relatively easy to produce.  In *Clark*, the

15   magistrate judge ordered ConsumerInfo to produce all documents at issue to the

16   court for an *in camera* review.  *See Clark*, 2006 WL 626820, at *2 ("Defendants

17   were ordered to deliver to the court for *in camera* inspection all documents that

18   [ConsumerInfo] produced to the FTC in connection with the FTC's investigation,

19   and all documents containing communications between the FTC and

20   [ConsumerInfo] regarding the investigation.").  While the exact volume of these

21   documents is not identified in the opinion, the court notes in passing that they

22   totaled "over 1000 pages."  *See id.* at *6.  One thousand pages hardly justifies an

23   overbreadth objection in this case.  Indeed, in prior meet-and-confer discussions,

24   the parties have anticipated that discovery in this case will involve the review and

25   production of many tens of thousands of documents.  *See* Docket Item No. 120 at

26   1:21-14.  Moreover, the actual lawsuit filed by the FTC lasted only two weeks —

27   the complaint in the FTC Action was filed August 15, 2005, and the stipulated final

28   judgment was entered August 29, 2005.  *See* Docket No. SACV 05-00801 AHS

(MLG), Docket Item Nos. 1, 3.  The amount of depositions taken or witness statements, declarations, or affidavits prepared, if any, is therefore likely minimal. Accordingly, ConsumerInfo's objections as to overbreadth and burden are not justified.

ConsumerInfo's objections as to attorney-client privileged documents and confidential and proprietary information are likewise unfounded.  The potential existence of attorney-client communications responsive to the FTC-related requests cannot excuse ConsumerInfo's obligation to produce responsive documents. Rather, as the Federal Rules contemplate and as the *Clark* court ordered, the appropriate safeguard is to withhold any protected attorney-client documents and list them on a privilege log.  As to confidential and proprietary documents, the Court in this case has entered a stipulated protective order that guards against the unwarranted disclosure of confidential and proprietary information.  *See* Docket Item. No. 122.  ConsumerInfo therefore should not be allowed to rely on confidentiality objections in refusing to produce documents from the FTC Action.

For the foregoing reasons, Adaptive and One Tech respectfully request that the Court compel ConsumerInfo to produce documents responsive to their requests for documents from the FTC Action.

### b.   ConsumerInfo's Position Re OT RFP No. 25

As explained in detail in ConsumerInfo's arguments in response to One Tech's Request No. 30, documents concerning the FTC Action are not reasonably calculated to lead to the discovery of admissible evidence and would unduly chill settlement negotiations and remedial measures.

With respect to this specific request, ConsumerInfo did not produce any documents to the FTC, and the FTC did not produce any documents to ConsumerInfo in the course of discovery during the brief pendency of the FTC Action.  ConsumerInfo will amend its responses accordingly.  (Ramallo Decl. ¶ 15.)

Because no documents exist that are responsive to this Request,

1   ConsumerInfo will not respond here to the brief Defendants submit in response to

2   ConsumerInfo's objections to Request No. 25, but instead will respond to those

3   arguments in response to One Tech's Request No. 30.

4           **2.**      **OT RFP No. 27**

5   **REQUEST FOR PRODUCTION NO. 27:**

6           All transcripts of deposition [sic] taken in Federal Trade Commission

7   v. ConsumerInfo.com, Inc., case number SACV 05-801 AHS (MLGx) (C.D. Cal.).

8   **RESPONSE TO REQUEST FOR PRODUCTION NO. 27**

9           ConsumerInfo incorporates by reference the General Objections above

10  as though fully set forth herein and further objects to the request on the grounds that

11  it is overbroad, unduly burdensome, and not relevant to a claim or defense nor

12  reasonably calculated to lead to the discovery of admissible evidence.

13  ConsumerInfo further objects that the request calls for the production of documents

14  that are equally available to the requesting party.  ConsumerInfo further objects to

15  the request to the extent it calls for the production of documents related to making

16  or responding to offers of compromise or draft settlement agreements with the FTC.

17  *See Clark v. Experian Info. Solutions, Inc.*, Case No. 03-C-7882, 2006 U.S. Dist.

18  LEXIS 18098 at *2-5 (N.D. Ill. 2006) (affirming Magistrate ruling); *Clark v.*

19  *Experian Info. Solutions, Inc.*, Case No. 03-C-7882, 2006 U.S. Dist. LEXIS 13808

20  at *3 (N.D. Ill. 2006) at *20-21 (ruling by magistrate allowing discovery of certain

21  documents related to the Stipulation Injunction, but not documents making or

22  responding to offers of compromise or draft settlement agreements with the FTC,

23  and implying that Rule 408 would preclude the admission of a broader swath of

24  evidence related to the Stipulated Injunction at trial).  ConsumerInfo objects to the

25  request to the extent it seeks production of information that include trade secrets,

26  confidential, and/or proprietary information.

27          **a.**      **Defendant's Position Re OT RFP No. 27**

28          One Tech and Adaptive respectfully refer the Court to section

II.A.1.a(1)-(3) above regarding defendant's position about materials related to the FTC Action.

### b. ConsumerInfo's Position Re OT RFP No. 27

No depositions were taken in the FTC Action.  ConsumerInfo will amend its responses accordingly.  (Ramallo Decl. ¶ 15.)  Because no documents exist that are responsive to this Request, ConsumerInfo will not respond here to the brief Defendants submit in response to ConsumerInfo's objections to Request No. 25, but instead will respond to those arguments in response to One Tech's Request No. 30.

### 3. OT RFP No. 28

**REQUEST FOR PRODUCTION NO. 28:**

All witness statements prepared in connection with Federal Trade Commission v. ConsumerInfo.com, Inc., case number SACV 05-801 AHS (MLGx) (C.D. Cal.).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28**

ConsumerInfo incorporates by reference the General Objections above as though fully set forth herein and further objects to the request on the grounds that it is overbroad, unduly burdensome, and not relevant to a claim or defense nor reasonably calculated to lead to the discovery of admissible evidence. ConsumerInfo further objects that the request calls for the production of documents that are equally available to the requesting party.  ConsumerInfo further objects to the request to the extent it calls for the production of documents related to making or responding to offers of compromise or draft settlement agreements with the FTC. *See Clark v. Experian Info. Solutions, Inc.*, Case No. 03-C-7882, 2006 U.S. Dist. LEXIS 18098 at *2-5 (N.D. Ill. 2006) (affirming Magistrate ruling); *Clark v. Experian Info. Solutions, Inc.*, Case No. 03-C-7882, 2006 U.S. Dist. LEXIS 13808 at *3 (N.D. Ill. 2006) at *20-21 (ruling by magistrate allowing discovery of certain documents related to the Stipulation Injunction, but not documents making or

responding to offers of compromise or draft settlement agreements with the FTC,
and implying that Rule 408 would preclude the admission of a broader swath of
evidence related to the Stipulated Injunction at trial).  Further, the term "witness
statements" is vague and ambiguous and the request seeks documents protected by
the attorney-client privilege and/or work product privilege.  ConsumerInfo objects
to the request to the extent it seeks production of information that include trade
secrets, confidential, and/or proprietary information.

### a. <u>Defendant's Position Re OT RFP No. 28</u>

One Tech and Adaptive respectfully refer the Court to section
II.A.1.a(1)-(3) above regarding defendant's position about materials related to the
FTC Action.

### b. <u>ConsumerInfo's Position Re OT RFP No. 28</u>

No witness statements were prepared in the FTC Action.
ConsumerInfo will amend its responses accordingly.  (Ramallo Decl. ¶ 15.)
Because no documents exist that are responsive to this Request, ConsumerInfo will
not respond here to the brief Defendants submit in response to ConsumerInfo's
objections to Request No. 25, but instead will respond to those arguments in
response to One Tech's Request No. 30.

### 4. <u>OT RFP No. 29</u>

**REQUEST FOR PRODUCTION NO. 29:**

All declarations or affidavits prepared in connection with Federal
Trade Commission v. ConsumerInfo.com, Inc., case number SACV 05-801 AHS
(MLGx) (C.D. Cal.).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29**

ConsumerInfo incorporates by reference the General Objections above
as though fully set forth herein and further objects to the request on the grounds that
it is overbroad, unduly burdensome, and not relevant to a claim or defense nor
reasonably calculated to lead to the discovery of admissible evidence.

ConsumerInfo further objects that the request calls for the production of documents that are equally available to the requesting party.  ConsumerInfo further objects to the request to the extent it calls for the production of documents related to making or responding to offers of compromise or draft settlement agreements with the FTC. *See Clark v. Experian Info. Solutions, Inc.*, Case No. 03-C-7882, 2006 U.S. Dist. LEXIS 18098 at *2-5 (N.D. Ill. 2006) (affirming Magistrate ruling); *Clark v. Experian Info. Solutions, Inc.*, Case No. 03-C-7882, 2006 U.S. Dist. LEXIS 13808 at *3 (N.D. Ill. 2006) at *20-21 (ruling by magistrate allowing discovery of certain documents related to the Stipulation Injunction, but not documents making or responding to offers of compromise or draft settlement agreements with the FTC, and implying that Rule 408 would preclude the admission of a broader swath of evidence related to the Stipulated Injunction at trial).  ConsumerInfo objects to the request to the extent it seeks production of information that include trade secrets, confidential, and/or proprietary information.

### a.    **Defendant's Position Re OT RFP No. 29**

One Tech and Adaptive respectfully refer the Court to section II.A.1.a(1)-(3) above regarding defendant's position about materials related to the FTC Action.

### b.    **ConsumerInfo's Position Re OT RFP No. 29**

No declarations or affidavits were prepared in the FTC Action. ConsumerInfo will amend its responses accordingly.  (Ramallo Decl. ¶ 15.) Because no documents exist that are responsive to this Request, ConsumerInfo will not respond here to the brief Defendants submit in response to ConsumerInfo's objections to Request No. 25, but instead will respond to those arguments in response to One Tech's Request No. 30.

### 5.    **OT RFP No. 30**

**REQUEST FOR PRODUCTION NO. 30:**

All DOCUMENTS that constitute, discuss, or mention

communications between YOU and the FTC regarding Federal Trade Commission v. ConsumerInfo.com, Inc., case number SACV 05-801 AHS (MLGx) (C.D. Cal.).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30**

ConsumerInfo incorporates by reference the General Objections above as though fully set forth herein and further objects to the request on the grounds that it is overbroad, unduly burdensome, and not relevant to a claim or defense nor reasonably calculated to lead to the discovery of admissible evidence. ConsumerInfo further objects that the request calls for the production of documents that are equally available to the requesting party. ConsumerInfo further objects to the request to the extent it calls for the production of documents related to making or responding to offers of compromise or draft settlement agreements with the FTC. *See Clark v. Experian Info. Solutions, Inc.*, Case No. 03-C-7882, 2006 U.S. Dist. LEXIS 18098 at *2-5 (N.D. Ill. 2006) (affirming Magistrate ruling); *Clark v. Experian Info. Solutions, Inc.*, Case No. 03-C-7882, 2006 U.S. Dist. LEXIS 13808 at *3 (N.D. Ill. 2006) at *20-21 (ruling by magistrate allowing discovery of certain documents related to the Stipulation Injunction, but not documents making or responding to offers of compromise or draft settlement agreements with the FTC, and implying that Rule 408 would preclude the admission of a broader swath of evidence related to the Stipulated Injunction at trial). Further, the term "communications" is vague and ambiguous and the request seeks documents protected by the attorney-client privilege and/or work product privilege. ConsumerInfo objects to the request to the extent it seeks production of information that include trade secrets, confidential, and/or proprietary information.

### a.   Defendant's Position Re OT RFP No. 30

One Tech and Adaptive respectfully refer the Court to section II.A.1.a(1)-(3) above regarding defendant's position about materials related to the FTC Action.

1

**b.      ConsumerInfo's Position Re OT RFP No. 30**

2          Defendants' motion should be denied as to this request because it

3   seeks documents that are beyond the scope of discovery and totally irrelevant to this

4   action.  Clearly, Defendants hope to find something with which to smear

5   ConsumerInfo in the eyes of the Court and/or jury, but the request is not reasonably

6   calculated to lead to the discovery of admissible, relevant evidence.  Moreover, the

7   requested material constitutes settlement communications under Federal Rule of

8   Evidence 408, to which courts regularly refer when refusing discovery (not just

9   admission at trial) of such evidence.  Finally, some of the documents requested also

10  constitute evidence of subsequent remedial measures under Federal Rule of

11  Evidence 407, further supporting the conclusion that the requested documents are

12  beyond the scope of discovery because they would not be admissible at trial in this

13  action and are not likely to lead to the discovery of admissible evidence.

14          **(1)      Documents Relating to the FTC Claims Under**

15                   **the FTC Act Are Beyond the Permissible Scope**

16                   **of Discovery in This Action, Which Concerns**

17                   **ConsumerInfo's Trademark Rights.**

18          The FTC's complaint did not concern or even refer to ConsumerInfo's

19  trademark rights, nor did it touch upon consumer recognition of ConsumerInfo's

20  FREECREDITREPORT.COM trademark.  Rather, the FTC Action concerned

21  disclosures appearing on ConsumerInfo's websites and in its advertising.

22  Nonetheless, Defendants base their argument that the requested documents are

23  relevant on trademark claims at issue in this case.  There is no relationship between

24  the claims at issue in this case and the requested documents, nor are those

25  documents reasonably calculated to lead to the discovery of evidence that would be

26  relevant or admissible in this action.  Accordingly, the requested documents are

27  beyond the scope of permissible discovery.  *See United States v. Farley*, 11 F.3d

28  1385, 1390-91 (7th Cir. 1993) (holding documents concerning an FTC investigation

1    are not relevant for discovery purposes in an action arising from the FTC

2    investigation).

3           Through this motion, Defendants apparently seek virtually every

4    document in any way concerning the FTC Action,[2] despite that such documents are

5    not relevant to this action in any way, nor reasonably calculated to lead to the

6    discovery of admissible evidence.

7           In this action ConsumerInfo alleges, among other things, that

8    Defendants infringed ConsumerInfo's FREECREDITREPORT.COM trademark in

9    a number of ways.  Defendants, for their part, allege that ConsumerInfo's

10   FREECREDITREPORT.COM trademark is unprotectable and generic, and that

11   ConsumerInfo committed fraud on the PTO when applying to register that

12   trademark by not stating in its application that the mark was generic and by not

13   disclosing the FTC Action to the PTO.  (*E.g.*, Docket No. 93, One Tech

14   Counterclaims ¶ 218.)  Defendants further allege, incorrectly, that ConsumerInfo

15   has attempted to prevent its competitors from using the terms "free," "credit," and

16   "report" to market competing products.  (*E.g.*, *id.* at ¶¶ 219, 233.)

17          Defendants acknowledge that this action concerns "[t]he strength and

18   validity of the FREECREDITREPORT.COM mark," but fail to enunciate how the

19   FTC Action relates to these issues.  Defendants point to Paragraph 13 of the FTC's

20   Complaint and characterize it as alleging: "In other words, consumers did not

21   understand the freecreditreport.com mark to refer to any particular services from

22   ConsumerInfo, but rather understood it to refer generically to the provision of a free

23   credit report."  A review of the FTC Complaint reveals that this is not, in fact, what

24   was alleged, "in other words" or otherwise.

_____

25   [2] Defendants assert ConsumerInfo refuses to produce a single document concerning
26   the FTC Action, but this is not true; ConsumerInfo has agreed to produce the
     publicly available documents such as the complaint and the stipulated injunctions
27   from the matter.  This of course will not satisfy Defendants, but their assertion that
     ConsumerInfo refuses to produce "a single document" illustrates how Defendants
28   hope to use this issue to paint ConsumerInfo in a undeservedly negative light, based
     on documents and events totally irrelevant to this action.

1    Rather, the FTC alleged that "[m]any of ConsumerInfo's radio,

2    television, and Internet advertisements have not . . . disclosed adequately[] the

3    existence of ConsumerInfo's Credit Check Monitoring Service . . . ." (Korovilas

4    Decl. Exh. F, FTC Complaint at ¶ 13.)  The FTC further alleged ConsumerInfo

5    inadequately disclosed "that consumers cannot obtain their statutorily-mandated

6    free report through [ConsumerInfo's] websites." (*Id.* at ¶ 25.)  The FTC's

7    Complaint asserted these allegedly inadequate disclosures amounted to a violation

8    of Section 5 of the FTC Act, which was the sole basis on which the FTC filed its

9    complaint.  (Korovilas Decl. Exh. F, FTC Complaint at ¶¶ 17, 20, 26-27.)

10    Section 5 of the FTC Act gives the FTC authority to regulate "unfair or

11    deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a)(1).  A

12    trademark's secondary meaning is not relevant to such a claim, nor is there any

13    requirement under this section that a likelihood of confusion exists between

14    trademarks for the FTC to state a claim.  A Lanham Act claim for trademark

15    infringement, by contrast, requires that the plaintiff have a protectable mark and

16    that the defendant use a mark in a manner likely to cause confusion with that

17    protectable mark.  *E.g.*, *Brookfield Communications, Inc. v. W. Coast

18    Entertainment Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999).

19    Defendants' conclusory assertions that the FTC's allegations overlap

20    with Defendants' allegations fail to establish that the requested documents are

21    discoverable.  The requested documents are neither relevant to this action nor likely

22    to lead to the discovery of admissible evidence.

23    Furthermore, the requested documents are in no way relevant to

24    Defendants' allegations that ConsumerInfo somehow committed fraud on the

25    PTO — no authority required ConsumerInfo to reference the FTC Action in its

26    trademark application and, under controlling Ninth Circuit authority, ConsumerInfo

27    had no such duty.  *See Far Out Prods. v. Oskar*, 247 F.3d 986, 996 (9th Cir. 2001)

28    (holding applicant did not commit fraud on the PTO by submitting affidavit

omitting reference to adverse judgment; reasoning applicant "can only be adjudicated to have filed a fraudulent oath if he acted with scienter," and if applicant "had a good faith belief that the Florida judgment was irrelevant, he cannot be found to have submitted a false affidavit").

Nor is the FTC Action related in any way to Defendants' contention that ConsumerInfo somehow has attempted to monopolize the market for online consumer credit reports, or attempted to stop its competitors from using the terms "free," "credit," and "report" to advertise competing products. Moreover, the FTC Action never was adjudicated on its merits, but rather was settled by two publicly available stipulated injunctions in 2005 and in 2007, requiring ConsumerInfo to make certain disclosures in its advertising and submit to ongoing monitoring by the FTC. (Korovilas Decl. Exhs. G, I.)

*United States v. Farley* is especially instructive in illustrating the irrelevance of the FTC-related documents. There, after an investigation by the FTC, the government filed a complaint against Farley for violation of the Hart-Scott-Rodino Act. *Farley*, 11 F.3d at 1387. The district court granted a motion to compel production of FTC documents relating to the FTC's investigation of Harely, and the Seventh Circuit reversed. *Id.* at 1387-88.

Despite the fact that the FTC's investigation related to the specific issues in that case, the Court of Appeals held that "[t]he rules of discovery are . . . not broad enough to require the discovery of the material here at issue . . . [because it] is not relevant to the issue presented by the government's complaint." *Id.* at 1390. The Court reasoned that it need only apply the facts of the defendant's actions to the law, "a process which does not require the court to review the postulations of [FTC] staff members." *Id.* at 1391.

If the defendant in *Farley* could not discover documents concerning the FTC's investigation into a violation of the statute alleged in the complaint in that action, it would be unfathomable to allow Defendants here to discover

documents concerning enforcement of Section 5 of the FTC Act in a case involving

trademark infringement and monopolization claims.  Defendants' motion is

calculated to discover ways to smear ConsumerInfo, not to discover admissible

evidence.  It should be denied.

### (2) Rule 408 Supports Denial of Defendants' Motion.

Defendants are correct that Rule 408, by its terms, excludes the

admission of evidence concerning settlement communications, and does not

explicitly limit discovery.  However, in order to compel discovery of information

that would not be admissible at trial by virtue of Rule 408 or any other rule,

Defendants bear the burden of demonstrating "a plausible chain of inferences

showing how discovery of the item sought would lead to other admissible

evidence."  *Vardon Golf Co., Inc. v. BBMG Golf Ltd.*, 156 F.R.D. 641, 651 (N.D.

Ill. 1994) (emphasis added).

Because the FTC documents consist principally of documents

prepared, or provided to the FTC in the context of settlement negotiations resulting

in the FTC Stipulated Injunctions, or documents evidencing ConsumerInfo's

ongoing compliance with those Stipulated Injunctions, Defendants bear a higher

standard of establishing relevancy, even at the discovery stage.  *Id.* at 652

(observing that "[t]he purpose of Fed. R. Evid. 408 is to create a protected area in

which parties can work to reach a negotiated settlement to their litigation without

prejudice to their substantive rights," and that allowing discovery regarding such

issues could have a "chilling effect" on parties' "willingness to enter into settlement

negotiations"); *Lamoureux v. Anazaohealth Corp.*, 2009 U.S. Dist. LEXIS 24500 at

*8 (D. Conn. Mar. 26, 2009) ("'The policy favoring freely-negotiated settlements is

one of the strongest in the federal courts, and is enshrined in Fed. R. Evid. 408's

exclusionary rule.' . . . [C]ourts have been reluctant to order the production of

documents relating to ongoing settlement negotiations, absent a showing of

1   substantial need or, at a minimum, a particularized showing of the relevance of such

2   documents.") (quoting *Vardon*).  Defendants also bear the burden of showing

3   prejudice from the denial of discovery.  *In re Sulfuric Acid Antitrust Litig.*, 231

4   F.R.D. 331, 333 (N.D. Ill. 2005); *Packman v. Chicago Tribune Co.*, 267 F.3d 628,

5   647 (7th Cir. 2001).

6              In this action, disclosure of communications between ConsumerInfo

7   and the FTC concerning the allegations in the FTC Complaint could chill

8   ConsumerInfo's willingness to engage in such communications going forward.  The

9   Stipulated Injunctions between ConsumerInfo and the FTC contain certain ongoing

10  reporting requirements and, as the second Stipulated Injunction (entered two years

11  after the first) demonstrates, ConsumerInfo and the FTC continue to negotiate these

12  issues and the threat of renewed litigation between those parties continues to exist.

13  The court retained jurisdiction over the FTC Action, which may be reopened under

14  certain circumstances.  (Korovilas Decl. Exh. G, 2005 Stipulated Injunction at p.22

15  ¶ B (concerning misrepresentations or omissions in reports to the FTC), p.27 § IX

16  (retaining jurisdiction for the court to enforce the Stipulated Injunction); Korovilas

17  Decl. Exh. I, 2007 Stipulated Injunction at p.6 § VI (same).)  Disclosure of the

18  documents Defendants request, and their possible use in this action by Defendants,

19  thus threatens to undo settlement of the FTC Action and possibly renew that

20  litigation, contravening the purpose of Rule 408 to encourage such settlements.

21  *Vardon Golf*, 156 F.R.D. at 652.  The rule favoring denial of discovery concerning

22  "ongoing" settlement negotiations applies with full force here.  *Lamoureux*, 2009

23  U.S. Dist. LEXIS 24500 at *8.

24             Defendants cite cases from other circuits for the proposition "that Rule

25  408's exclusionary rule does not apply to settlement communications about a claim

26  that is different from the one being litigated."  However, the cited authority does

27  not support such a broad statement, but rather recognizes that "admission of such

28  evidence may nonetheless implicate the same concerns of prejudice and deterrence

of settlements which underlie Rule 408." *Towerridge*, 111 F.3d at 770.  Nor does the authority Defendants cite support the proposition that production is called for where the present action bears no relation whatsoever to the underlying action that the documents concern, and where the documents are sought for no legitimate purpose, but rather only to prejudice the producing party.

While Defendants repeatedly assert that the requested documents will include documents concerning ConsumerInfo's advertising that may be relevant to this action, Defendants are free to request any documents concerning ConsumerInfo's advertising or consumer recognition of ConsumerInfo's trademark; such discovery does not require collection or production of documents concerning the FTC Action.  While Defendants no doubt hope to find documents that might be used to embarrass or smear ConsumerInfo in the eyes of the jury through these requests, such objectives do not justify compelling the production of documents that are neither relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence.

**(3)** *Clark* **Does Not Support Defendants' Motion.**

Defendants cite the *Clark* court's grant of limited discovery concerning certain categories of documents pertaining to the FTC Action as support for the proposition that every document should be turned over here.  However, *Clark* was a very different action, and the arguments for relevance were completely different in that case than they are here.

Through this request for production, Defendants seek "communications between [ConsumerInfo] and the FTC regarding *Federal Trade Commission v. ConsumerInfo.com, Inc.*, case number SACV 05-801 AHS (MLGx) (C.D. Cal.)."  This must be distinguished from the request at issue in *Clark*, for "documents CIC produced to the FTC in connection with the investigation that led to the filing of the FTC's complaint."  *Clark*, 2006 U.S. Dist. LEXIS 13808 at *3-4. Communications and documents exchanged prior to the FTC Action concerning the

FTC's investigation, as requested in *Clark*, are not responsive to One Technologies' request for documents "regarding" the later-filed action.  Nor are any of Defendants' subsequent requests for documents related to the FTC Action as limited as the request at issue in *Clark*.

In *Clark*, the court found that the FTC's Complaint was "substantially similar to the subject of Plaintiffs' complaint" in that action.  *Clark*, 2006 U.S. Dist. LEXIS 13808 at *3.  In *Clark*, plaintiffs sought to bring a class action against ConsumerInfo and its sister company, Experian Information Solutions, based on allegations that they "lured consumers on to their jointly operated websites with the promise of a free credit report and then deceived customers into enrolling and paying for Defendants' credit check monitoring service."  *Id.* at *2.

The *Clark* court reasoned:

> courts have recognized that the purpose of Rule 408 to encourage settlement of disputes might be chilled by fear that negotiations might be discoverable, and have sought to balance furthering that purpose with the policy of liberal discovery. . . . Thus, . . . to obtain information that would be inadmissible because of Rule 408, the proponent of discovery must demonstrate that it is admissible for another purpose or by showing how discovery of the item might lead to other admissible information.

*Id.* at *10-11 (citations omitted).

Because of the similarities between the FTC Action and the *Clark* action, the *Clark* court concluded that discovery of a limited subset of "documents CIC produced to the FTC in connection with the investigation that led to the filing of the FTC's complaint" was within the scope of permissible discovery because it was likely to lead to the discovery of admissible evidence in that case.  *Id.* at *3-4, 9.  Specifically, the court ordered production of business records that existed prior to the FTC Action that were furnished to the FTC, and documents prepared by ConsumerInfo in response to requests by the FTC concerning its claims under the FTC Act.  Citing Rule 408, the court denied discovery of "documents that contain express specific offers of compromise or expressly respond to an offer of

1   compromise, and drafts of any settlement agreement." *Id.* at *12-20.  The
2   similarities between the *Clark* action and the FTC Action, which motivated the
3   court there to allow discovery of certain documents relating to the FTC Action,
4   simply do not exist in this action.

5          **(4)**    **Rule 407 also Operates to Make the Requested**
6                 **Documents Inadmissible and Beyond the Scope**
7                 **of Discovery.**

8          Under Federal Rule of Evidence 407, evidence concerning remedial
9   measures taken to reduce the likelihood of harm are not admissible to prove
10  "culpable conduct, a defect in a product, a defect in a product's design, or a need
11  for a warning or instruction."  Fed. R. Evid. 407.  The rule has been held to apply in
12  a lible action, to bar evidence of changes in a publication to eliminate defamatory
13  language in subsequent editions of a book.  *World Boxing Council v. Cosell*, 715 F.
14  Supp. 1259, 1267 (S.D.N.Y. 1989).  The rule has been applied in trademark cases
15  to exclude evidence concerning defendants' cessation of allegedly infringing
16  conduct after plaintiffs complain, as such conduct constitutes a subsequent remedial
17  measure.  *Trilink Saw Chain, LLC v. Blount, Inc.*, 583 F. Supp. 2d 1293, 1317 n.12
18  (N.D. Ga. 2008); *GMC v. Keystone Auto. Indus.*, 2005 U.S. Dist. LEXIS 23168, 75
19  U.S.P.Q.2d 1892 (E.D. Mich. 2005), *rev'd on other grounds, remanded* 453 F.3d
20  351 (6th Cir. 2006).

21         Rule 407 applies with full force to this case, such that evidence
22  Defendants hope to discover concerning steps ConsumerInfo may have taken to
23  address the FTC's concerns or other concerns regarding possible consumer
24  confusion are inadmissible and could not be used at trial.  Such documents are not
25  reasonably calculated to lead to the discovery of admissible evidence in this action,
26  and therefore are beyond the scope of permissible discovery.  Fed. R. Civ. P.
27  26(b)(1).

28         Defendants are not entitled to seek every document related to the FTC

Action, which concerned allegations very different from those at issue in this case, never was adjudicated, and in which Stipulated Injunctions were entered years before the conduct at issue here.  Defendants' request exceeds the scope of permissible discovery, and constitutes a blatant effort to engage in a fishing expedition with the hope of obtaining evidence that, while irrelevant, might be used to smear ConsumerInfo in the eyes of the jury.  ConsumerInfo stands by all of its objections, including that the request is vastly overbroad as worded and seeks, among other things, attorney-client communications and attorney work product. For all these reasons, Defendants' motion to compel responses to their requests for documents relating to the FTC action should be denied.

### 6.   OT RFP No. 31

**REQUEST FOR PRODUCTION NO. 31:**

All DOCUMENTS that constitute, discuss, or mention YOUR efforts to comply with the final judgment and permanent injunction entered in Federal Trade Commission v. ConsumerInfo.com, Inc., case number SACV 05-801 AHS (MLGx) (C.D. Cal.), including all DOCUMENTS that reflect changes to YOUR business policies and practices implemented as a result of the judgment and injunction.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 31**

ConsumerInfo incorporates by reference the General Objections above as though fully set forth herein and further objects to the request on the grounds that it is overbroad, unduly burdensome, and not relevant to a claim or defense nor reasonably calculated to lead to the discovery of admissible evidence. ConsumerInfo further objects that the request calls for the production of documents that are equally available to the requesting party.  ConsumerInfo further objects to the request to the extent it calls for the production of documents related to making or responding to offers of compromise or draft settlement agreements with the FTC. *See Clark v. Experian Info. Solutions, Inc.*, Case No. 03-C-7882, 2006 U.S. Dist.

LEXIS 18098 at *2-5 (N.D. Ill. 2006) (affirming Magistrate ruling); *Clark v. Experian Info. Solutions, Inc.*, Case No. 03-C-7882, 2006 U.S. Dist. LEXIS 13808 at *3 (N.D. Ill. 2006) at *20-21 (ruling by magistrate allowing discovery of certain documents related to the Stipulation Injunction, but not documents making or responding to offers of compromise or draft settlement agreements with the FTC, and implying that Rule 408 would preclude the admission of a broader swath of evidence related to the Stipulated Injunction at trial).  Further, the request seeks documents protected by the attorney-client privilege and/or work product privilege. ConsumerInfo objects to the request to the extent it seeks production of information that include trade secrets, confidential, and/or proprietary information.

### a.    **Defendant's Position Re OT RFP No. 31**

One Tech and Adaptive respectfully refer the Court to section II.A.1.a(1)-(3) above regarding defendant's position about materials related to the FTC Action.

### b.    **ConsumerInfo's Position Re OT RFP No. 31**

ConsumerInfo respectfully refers the Court to its statements in response to One Tech's Request No. 30, section II.A.5.b above.  In particular, this request seeks documents clearly inadmissible under Rule 407, as argued in section II.A.5.b.(4) above.

None of Defendants' arguments in section II.A.1.a(1)-(3), above, explain how ConsumerInfo's efforts to comply with the Stipulated Injunctions in the FTC Action are relevant to this action or likely to lead to the discovery of admissible evidence.  Because the requested documents are beyond the scope of permissible discovery, this motion should be denied.

### 7.    **OT RFP No. 32**

**REQUEST FOR PRODUCTION NO. 32:**

All DOCUMENTS that constitute, discuss, or mention complaints by consumers, the FTC or other government agencies, or competitors regarding any

failures by YOU to comply with the final judgment and injunction entered in Federal Trade Commission v. ConsumerInfo.com, Inc., case number SACV 05-801 AHS (MLGx) (C.D. Cal.).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 32**

ConsumerInfo incorporates by reference the General Objections above as though fully set forth herein and further objects to the request on the grounds that it is overbroad, unduly burdensome, and not relevant to a claim or defense nor reasonably calculated to lead to the discovery of admissible evidence. ConsumerInfo further objects that the request calls for the production of documents that are equally available to the requesting party. ConsumerInfo further objects to the request to the extent it calls for the production of documents related to making or responding to offers of compromise or draft settlement agreements with the FTC. *See Clark v. Experian Info. Solutions, Inc.*, Case No. 03-C-7882, 2006 U.S. Dist. LEXIS 18098 at *2-5 (N.D. Ill. 2006) (affirming Magistrate ruling); *Clark v. Experian Info. Solutions, Inc.*, Case No. 03-C-7882, 2006 U.S. Dist. LEXIS 13808 at *3 (N.D. Ill. 2006) at *20-21 (ruling by magistrate allowing discovery of certain documents related to the Stipulation Injunction, but not documents making or responding to offers of compromise or draft settlement agreements with the FTC, and implying that Rule 408 would preclude the admission of a broader swath of evidence related to the Stipulated Injunction at trial). Further, the term "complaints" is vague and ambiguous and the request seeks documents protected by the attorney-client privilege and/or work product privilege. ConsumerInfo objects to the request to the extent it seeks production of information that include trade secrets, confidential, and/or proprietary information.

### a. Defendant's Position Re RFP No. 32

One Tech and Adaptive respectfully refer the Court to section II.A.1.a(1)-(3) above regarding defendant's position about materials related to the FTC Action.

1

### b.    ConsumerInfo's Position Re RFP No. 32

2
ConsumerInfo respectfully refers the Court to its statements in

3
response to One Tech's Request No. 30, section II.A.5.b above.  As stated there,

4
Section 5 of the FTC Act, on which the FTC premised its complaint in the FTC

5
Action, is fundamentally different from the trademark claims to which Defendants

6
argue the requested documents somehow are relevant.  *See* Section II.A.5.b.(1),

7
*supra*.  Accordingly, there is no basis for concluding the documents requested

8
here — complaints regarding any failures to comply with the Stipulated Injunctions

9
(a vague request to say the least)—are relevant to this action or likely to lead to the

10
discovery of admissible evidence, and the motion should be denied.

11
### 8.    Adaptive's RFP No. 75

12
**REQUEST FOR PRODUCTION NO. 75:**

13
ALL DOCUMENTS REFERRING TO OR EVIDENCING the

14
deceptive acts and practices IDENTIFIED by the Federal Trade Commission in its

15
action against YOU, captioned *Federal Trade Commission v. ConsumerInfo.com,*

16
*Inc.*, Civ. Action No. SACV 05-801 (AHS), including, but not limited to,

17
DOCUMENTS EVIDENCING YOUR advertisement of free CREDIT

18
PRODUCTS OR SERVICES, YOUR requirement of detailed personal information

19
to request YOUR free services AND ANY subsequent payments charged to

20
customers who ordered YOUR products OR services.

21
**RESPONSE TO REQUEST FOR PRODUCTION NO. 75**

22
ConsumerInfo incorporates by reference the General Objections above

23
as though fully set forth herein and further objects to the request on the grounds that

24
it is overbroad, unduly burdensome, and not relevant to a claim or defense nor

25
reasonably calculated to lead to the discovery of admissible evidence.  Further, the

26
request seeks documents protected by the attorney-clients privilege and/or work

27
product privilege.  ConsumerInfo further objects to the request to the extent it calls

28
for the production of documents related to making or responding to offers of

OHS West:260878279.1

NY 240,125,811v1 3-9-10

- 34 -

compromise or draft settlement agreements with the FTC.  *See Clark v. Experian Info. Solutions, Inc.*, Case No. 03-C-7882, 2006 U.S. Dist. LEXIS 18098 at *2-5 (N.D. Ill. 2006) (affirming Magistrate ruling); *Clark v. Experian Info. Solutions, Inc.*, Case No. 03-C-7882, 2006 U.S. Dist. LEXIS 13808 at *3 (N.D. Ill. 2006) at *20-21 (ruling by magistrate allowing discovery of certain documents related to the Stipulation Injunction, but not documents making or responding to offers of compromise or draft settlement agreements with the FTC, and implying that Rule 408 would preclude the admission of a broader swath of evidence related to the Stipulated Injunction at trial).  Finally, ConsumerInfo objects to the request to the extent it seeks production of information that include trade secrets, confidential, and/or proprietary information.

### a. Defendant's Position Re Adaptive RFP No. 75

One Tech and Adaptive respectfully refer the Court to section II.A.1.a(1)-(3) above regarding defendant's position about materials related to the FTC Action.

### b. ConsumerInfo's Position Re Adaptive RFP No. 75

Defendants make no attempt to argue the requested documents, including those concerning ConsumerInfo's "requirement of detailed personal information," are relevant to this action.  To the extent Defendants seek ConsumerInfo's advertisements through this request, they are free to do so without reference to the FTC Action.

ConsumerInfo respectfully refers the Court to its statements in response to One Tech's Request No. 30, section II.A.5.b above.  The documents requested here concerning the FTC Action are neither relevant to this action nor likely to lead to the discovery of admissible evidence, and the motion should be denied.

9.    **Adaptive's RFP No. 76**

**REQUEST FOR PRODUCTION NO. 76:**

DOCUMENTS sufficient to identify the notice OR disclosure provided to customers of ANY charges OR bills customers received after signing up for YOUR free CREDIT PRODUCTS OR SERVICES, as identified in the FEDERAL TRADE COMMISSION ACTION, including, but not limited to, payments of $79.95 annually OR $12.00 monthly.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 76**

ConsumerInfo incorporates by reference the General Objections above as though fully set forth herein and further objects to the request on the grounds that it is overbroad, unduly burdensome, and not relevant to a claim or defense nor reasonably calculated to lead to the discovery of admissible evidence.  Further, the request seeks documents protected by the attorney-clients privilege and/or work product privilege.  ConsumerInfo further objects to the request to the extent it calls for the production of documents related to making or responding to offers of compromise or draft settlement agreements with the FTC.  *See Clark v. Experian Info. Solutions, Inc.*, Case No. 03-C-7882, 2006 U.S. Dist. LEXIS 18098 at *2-5 (N.D. Ill. 2006) (affirming Magistrate ruling); *Clark v. Experian Info. Solutions, Inc.*, Case No. 03-C-7882, 2006 U.S. Dist. LEXIS 13808 at *3 (N.D. Ill. 2006) at *20-21 (ruling by magistrate allowing discovery of certain documents related to the Stipulation Injunction, but not documents making or responding to offers of compromise or draft settlement agreements with the FTC, and implying that Rule 408 would preclude the admission of a broader swath of evidence related to the Stipulated Injunction at trial).  Finally, ConsumerInfo objects to the request to the extent it seeks production of information that include trade secrets, confidential, and/or proprietary information.

a.    **Defendant's Position Re Adaptive RFP No. 76**

One Tech and Adaptive respectfully refer the Court to section

II.A.1.a(1)-(3) above regarding defendant's position about materials related to the FTC Action.

### b.   ConsumerInfo's Position Re Adaptive RFP No. 76

Defendants make no attempt to argue the requested documents, including those concerning ConsumerInfo's "bills" to its customers, are relevant to this action.  Nor do Defendants clarify what they are requesting through this vague and confusing request for "DOCUMENTS sufficient to identify . . . disclosure[s] . . . OR bills."  To the extent Defendants seek ConsumerInfo's advertisements or website screenshots (which contained the referenced disclosures) through this request, they are free to do so without reference to the FTC Action.

ConsumerInfo respectfully refers the Court to its statements in response to One Tech's Request No. 30, section II.A.5.b above.  The documents requested here concerning the FTC Action are neither relevant to this action nor likely to lead to the discovery of admissible evidence, and the motion should be denied.

### 10.   Adaptive's RFP No. 77

**REQUEST FOR PRODUCTION NO. 77:**

ALL DOCUMENTS REFERRING TO OR EVIDENCING a "Negative Option" used by YOU OR ANY third party with whom YOU have a marketing relationship AND/OR agreement, as set forth in the Stipulated Final Judgment and Order for Permanent Injunction in the FEDERAL TRADE COMMISSION ACTION.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 77**

ConsumerInfo incorporates by reference the General Objections above as though fully set forth herein and further objects to the request on the grounds that it is overbroad, unduly burdensome, and not relevant to a claim or defense nor reasonably calculated to lead to the discovery of admissible evidence.  Further, the request seeks documents protected by the attorney-clients privilege and/or work

1   product privilege.  ConsumerInfo further objects to the request to the extent it calls

2   for the production of documents related to making or responding to offers of

3   compromise or draft settlement agreements with the FTC.  *See Clark v. Experian*

4   *Info. Solutions, Inc.*, Case No. 03-C-7882, 2006 U.S. Dist. LEXIS 18098 at *2-5

5   (N.D. Ill. 2006) (affirming Magistrate ruling); *Clark v. Experian Info. Solutions,*

6   *Inc.*, Case No. 03-C-7882, 2006 U.S. Dist. LEXIS 13808 at *3 (N.D. Ill. 2006) at

7   *20-21 (ruling by magistrate allowing discovery of certain documents related to the

8   Stipulation Injunction, but not documents making or responding to offers of

9   compromise or draft settlement agreements with the FTC, and implying that Rule

10  408 would preclude the admission of a broader swath of evidence related to the

11  Stipulated Injunction at trial).  Finally, ConsumerInfo objects to the request to the

12  extent it seeks production of information that include trade secrets, confidential,

13  and/or proprietary information.

14          **a.      Defendant's Position Re Adaptive RFP No. 77**

15          One Tech and Adaptive respectfully refer the Court to section

16  II.A.1.a(1)-(3) above regarding defendant's position about materials related to the

17  FTC Action.

18          **b.      ConsumerInfo's Position Re Adaptive RFP No. 77**

19          Defendants make no attempt to argue the requested documents,

20  including those concerning "negative options," are relevant to this action.  To the

21  extent Defendants seek ConsumerInfo's offers to customers, as contained in

22  advertisements or website screenshots, they are free to do so without reference to

23  the FTC Action.

24          ConsumerInfo respectfully refers the Court to its statements in

25  response to One Tech's Request No. 30, section II.A.5.b above.  The documents

26  requested here concerning the FTC Action are neither relevant to this action nor

27  likely to lead to the discovery of admissible evidence, and the motion should be

28  denied.

11.   **Adaptive's RFP No. 78**

**REQUEST FOR PRODUCTION NO. 78:**

DOCUMENTS sufficient to identify business practices, activities, promotions OR marketing tools YOU ceased using following the Stipulated Final Judgment and Order For Permanent Injunction in the FEDERAL TRADE COMMISSION ACTION, including, but not limited to, ALL activities that were prohibited pursuant to the terms of the Order.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 78**

ConsumerInfo incorporates by reference the General Objections above as though fully set forth herein and further objects to the request on the grounds that it is overbroad, unduly burdensome, and not relevant to a claim or defense nor reasonably calculated to lead to the discovery of admissible evidence.  Further, the request seeks documents protected by the attorney-clients privilege and/or work product privilege.  ConsumerInfo further objects to the request to the extent it calls for the production of documents related to making or responding to offers of compromise or draft settlement agreements with the FTC.  *See Clark v. Experian Info. Solutions, Inc.*, Case No. 03-C-7882, 2006 U.S. Dist. LEXIS 18098 at *2-5 (N.D. Ill. 2006) (affirming Magistrate ruling); *Clark v. Experian Info. Solutions, Inc.*, Case No. 03-C-7882, 2006 U.S. Dist. LEXIS 13808 at *3 (N.D. Ill. 2006) at *20-21 (ruling by magistrate allowing discovery of certain documents related to the Stipulation Injunction, but not documents making or responding to offers of compromise or draft settlement agreements with the FTC, and implying that Rule 408 would preclude the admission of a broader swath of evidence related to the Stipulated Injunction at trial).  Finally, ConsumerInfo objects to the request to the extent it seeks production of information that include trade secrets, confidential, and/or proprietary information.

a.   **Defendant's Position Re Adaptive RFP No. 78**

One Tech and Adaptive respectfully refer the Court to section

II.A.1.a(1)-(3) above regarding defendant's position about materials related to the FTC Action.

### b.   ConsumerInfo's Position Re Adaptive RFP No. 78

ConsumerInfo respectfully refers the Court to its statements in response to One Tech's Request No. 30, section II.A.5.b above.  In particular, this request seeks documents clearly inadmissible under Rule 407, as argued in section II.A.5.b.(4) above.

None of Defendants' arguments in section II.A.1.a(1)-(3), above, explain how ConsumerInfo's efforts to comply with the Stipulated Injunctions in the FTC Action are relevant to this action or likely to lead to the discovery of admissible evidence.  Because the requested documents are beyond the scope of permissible discovery, this motion should be denied.

### 12.   Adaptive's RFP No. 79

**REQUEST FOR PRODUCTION NO. 79:**

DOCUMENTS sufficient to IDENTIFY ALL disclosures OR notices provided by YOU in connection with YOUR offer of CREDIT PRODUCTS OR SERVICES pursuant to the Stipulated Final Judgment and Order For Permanent Injunction in the FEDERAL TRADE COMMISSION ACTION, including, but not limited to, examples of such disclosure OR notice provided on ANY websites owned OR operated by YOU, OR ANY third party with whom YOU have a marketing relationship AND/OR agreement, OR any Internet advertisements OR promotional materials sponsored by YOU OR ANY third party with whom YOU have a marketing relationship AND/OR agreement.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 79**

ConsumerInfo incorporates by reference the General Objections above as though fully set forth herein and further objects to the request on the grounds that it is overbroad, unduly burdensome, and not relevant to a claim or defense nor reasonably calculated to lead to the discovery of admissible evidence.  Further, the

request seeks documents protected by the attorney-clients privilege and/or work product privilege.  ConsumerInfo further objects to the request to the extent it calls for the production of documents related to making or responding to offers of compromise or draft settlement agreements with the FTC.  *See Clark v. Experian Info. Solutions, Inc.*, Case No. 03-C-7882, 2006 U.S. Dist. LEXIS 18098 at *2-5 (N.D. Ill. 2006) (affirming Magistrate ruling); *Clark v. Experian Info. Solutions, Inc.*, Case No. 03-C-7882, 2006 U.S. Dist. LEXIS 13808 at *3 (N.D. Ill. 2006) at *20-21 (ruling by magistrate allowing discovery of certain documents related to the Stipulation Injunction, but not documents making or responding to offers of compromise or draft settlement agreements with the FTC, and implying that Rule 408 would preclude the admission of a broader swath of evidence related to the Stipulated Injunction at trial).  Finally, ConsumerInfo objects to the request to the extent it seeks production of information that include trade secrets, confidential, and/or proprietary information.

### a.    Defendant's Position Re Adaptive RFP No. 79

One Tech and Adaptive respectfully refer the Court to section II.A.1.a(1)-(3) above regarding defendant's position about materials related to the FTC Action.

### b.    ConsumerInfo's Position Re Adaptive RFP No. 79

Defendants make no attempt to argue the requested documents, including those concerning ConsumerInfo's disclosures in its advertising, are relevant to this action.  Nor do Defendants clarify what they are requesting through this vague and confusing request for "DOCUMENTS sufficient to identify . . . disclosures OR notices."  To the extent Defendants seek ConsumerInfo's advertisements or website screenshots (which contained the referenced disclosures) through this request, they are free to do so without reference to the FTC Action.

ConsumerInfo respectfully refers the Court to its statements in response to One Tech's Request No. 30, section II.A.5.b above.  The documents

1  requested here concerning the FTC Action are neither relevant to this action nor

2  likely to lead to the discovery of admissible evidence, and the motion should be

3  denied.

4             **13.**    **Adaptive's RFP No. 80**

5  **REQUEST FOR PRODUCTION NO. 80:**

6           DOCUMENTS sufficient to IDENTIFY instances in which YOU

7  failed to honor a request by a customer to cancel ANY sale OR transaction

8  involving a negative option offer OR failed to provide a refund in accordance with

9  YOUR disclosed policies, as set forth in the Stipulated Final Judgment and Order

10  For Permanent Injunction in the FEDERAL TRADE COMMISSION ACTION.

11  **RESPONSE TO REQUEST FOR PRODUCTION NO. 80**

12           ConsumerInfo incorporates by reference the General Objections above

13  as though fully set forth herein and further objects to the request on the grounds that

14  it is overbroad, unduly burdensome, and not relevant to a claim or defense nor

15  reasonably calculated to lead to the discovery of admissible evidence.  Further, the

16  request seeks documents protected by the attorney-clients privilege and/or work

17  product privilege.  ConsumerInfo further objects to the request to the extent it calls

18  for the production of documents related to making or responding to offers of

19  compromise or draft settlement agreements with the FTC.  *See Clark v. Experian*

20  *Info. Solutions, Inc.*, Case No. 03-C-7882, 2006 U.S. Dist. LEXIS 18098 at *2-5

21  (N.D. Ill. 2006) (affirming Magistrate ruling); *Clark v. Experian Info. Solutions,*

22  *Inc.*, Case No. 03-C-7882, 2006 U.S. Dist. LEXIS 13808 at *3 (N.D. Ill. 2006) at

23  *20-21 (ruling by magistrate allowing discovery of certain documents related to the

24  Stipulation Injunction, but not documents making or responding to offers of

25  compromise or draft settlement agreements with the FTC, and implying that Rule

26  408 would preclude the admission of a broader swath of evidence related to the

27  Stipulated Injunction at trial).  Finally, ConsumerInfo objects to the request to the

28  extent it seeks production of information that include trade secrets, confidential,

and/or proprietary information.

### a.    Defendant's Position Re Adaptive RFP No. 80

One Tech and Adaptive respectfully refer the Court to section II.A.1.a(1)-(3) above regarding defendant's position about materials related to the FTC Action.

### b.    ConsumerInfo's Position Re Adaptive RFP No. 80

This convoluted Request could be interpreted as seeking documents identifying every instance in which ConsumerInfo, for any reason, failed to cancel an order or provide a refund.  Defendants make no attempt to explain how such documents could be relevant to, or reasonably calculated to lead to the discovery of admissible evidence in, this action.  Defendants make no attempt to justify the extreme burden that would be required to gather such documents.

ConsumerInfo respectfully refers the Court to its statements in response to One Tech's Request No. 30, section II.A.5.b above.  The documents requested here concerning the FTC Action are neither relevant to this action nor likely to lead to the discovery of admissible evidence, and the motion should be denied.

### 14.    Adaptive's RFP No. 81

**REQUEST FOR PRODUCTION NO. 81:**

ALL DOCUMENTS, including discovery, prepared OR received by you in the FEDERAL TRADE COMMISSION ACTION, AND including documents previously produced by YOU OR to the FTC, deposition transcripts, declarations OR affidavits AND COMMUNICATIONS between YOU AND the FTC.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 81**

ConsumerInfo incorporates by reference the General Objections above as though fully set forth herein and further objects to the request on the grounds that it is overbroad, unduly burdensome, and not relevant to a claim or defense nor

1   reasonably calculated to lead to the discovery of admissible evidence.  Further, the

2   request seeks documents protected by the attorney-clients privilege and/or work

3   product privilege.  ConsumerInfo further objects to the request to the extent it calls

4   for the production of documents related to making or responding to offers of

5   compromise or draft settlement agreements with the FTC.  *See Clark v. Experian*

6   *Info. Solutions, Inc.*, Case No. 03-C-7882, 2006 U.S. Dist. LEXIS 18098 at *2-5

7   (N.D. Ill. 2006) (affirming Magistrate ruling); *Clark v. Experian Info. Solutions,*

8   *Inc.*, Case No. 03-C-7882, 2006 U.S. Dist. LEXIS 13808 at *3 (N.D. Ill. 2006) at

9   *20-21 (ruling by magistrate allowing discovery of certain documents related to the

10  Stipulation Injunction, but not documents making or responding to offers of

11  compromise or draft settlement agreements with the FTC, and implying that Rule

12  408 would preclude the admission of a broader swath of evidence related to the

13  Stipulated Injunction at trial).  Finally, ConsumerInfo objects to the request to the

14  extent it seeks production of information that include trade secrets, confidential,

15  and/or proprietary information.

16              **a.      Defendant's Position Re Adaptive RFP No. 81**

17          One Tech and Adaptive respectfully refer the Court to section

18  II.A.1.a(1)-(3) above regarding defendant's position about materials related to the

19  FTC Action.

20              **b.      ConsumerInfo's Position Re Adaptive RFP No. 81**

21          As stated in response to One Tech's Requests Nos. 25-29:

22  ConsumerInfo did not produce any documents to the FTC, and the FTC did not

23  produce any documents to ConsumerInfo, in the course of discovery during the

24  brief pendency of the FTC Action; nor were depositions taken; nor were

25  declarations or affidavits prepared.  ConsumerInfo will amend its responses

26  accordingly.  (Ramallo Decl. ¶ 15.)

27          To the extent this compound Request seeks all

28  "COMMUNICATIONS between [ConsumerInfo] AND the FTC," without regard

to subject matter or timeframe, the Request is vastly overbroad.  With respect to documents concerning the FTC Action, ConsumerInfo respectfully refers the Court to its statements in response to One Tech's Request No. 30, section II.A.5.b above.

### 15.   Adaptive's RFP No. 82

**REQUEST FOR PRODUCTION NO. 82:**

DOCUMENTS REFERRING TO OR EVIDENCING the information provided by YOU to the Federal Trade Commission pursuant to Paragraph II.G of the Stipulated Final Judgment and Order for Permanent Injunction in the FEDERAL TRADE COMMISSION ACTION.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 82**

ConsumerInfo incorporates by reference the General Objections above as though fully set forth herein and further objects to the request on the grounds that it is overbroad, unduly burdensome, and not relevant to a claim or defense nor reasonably calculated to lead to the discovery of admissible evidence.  Further, the request seeks documents protected by the attorney-clients privilege and/or work product privilege.  ConsumerInfo further objects to the request to the extent it calls for the production of documents related to making or responding to offers of compromise or draft settlement agreements with the FTC.  *See Clark v. Experian Info. Solutions, Inc.*, Case No. 03-C-7882, 2006 U.S. Dist. LEXIS 18098 at *2-5 (N.D. Ill. 2006) (affirming Magistrate ruling); *Clark v. Experian Info. Solutions, Inc.*, Case No. 03-C-7882, 2006 U.S. Dist. LEXIS 13808 at *3 (N.D. Ill. 2006) at *20-21 (ruling by magistrate allowing discovery of certain documents related to the Stipulation Injunction, but not documents making or responding to offers of compromise or draft settlement agreements with the FTC, and implying that Rule 408 would preclude the admission of a broader swath of evidence related to the Stipulated Injunction at trial).  Finally, ConsumerInfo objects to the request to the extent it seeks production of information that include trade secrets, confidential, and/or proprietary information.

### a.    Defendant's Position Re Adaptive RFP No. 82

One Tech and Adaptive respectfully refer the Court to section II.A.1.a(1)-(3) above regarding defendant's position about materials related to the FTC Action.

### b.    ConsumerInfo's Position Re Adaptive RFP No. 82

ConsumerInfo respectfully refers the Court to its statements in response to One Tech's Request No. 30, section II.A.5.b above.  The documents requested here concerning the FTC Action are neither relevant to this action nor likely to lead to the discovery of admissible evidence, and the motion should be denied.

### 16.    Adaptive's RFP No. 83

**REQUEST FOR PRODUCTION NO. 83:**

DOCUMENTS sufficient to identify CIC's failure to abide by the terms of the settlement AND Stipulated Final Judgment and Order For Permanent Injunction in the FEDERAL TRADE COMMISSION ACTION AND need for a supplemental permanent injunction, including, but not limited to, DOCUMENTS EVIDENCING OR REFERRING TO CIC's conduct as discussed in the press release "ConsumerInfo.com Settles FTC Charges", released on the Federal Trade Commission website, www.ftc.gov, on February 21, 2007 AND the article "FTC Charges ConsumerInfo.com Over Fees", by David Utter, published on the Security Pro News website, www.securitypronews.com, on February 22, 2007.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 83**

ConsumerInfo incorporates by reference the General Objections above as though fully set forth herein and further objects to the request on the grounds that it is overbroad, unduly burdensome, and not relevant to a claim or defense nor reasonably calculated to lead to the discovery of admissible evidence.  Further, the request seeks documents protected by the attorney-clients privilege and/or work product privilege.  ConsumerInfo further objects to the request to the extent it calls

for the production of documents related to making or responding to offers of compromise or draft settlement agreements with the FTC.  *See Clark v. Experian Info. Solutions, Inc.*, Case No. 03-C-7882, 2006 U.S. Dist. LEXIS 18098 at *2-5 (N.D. Ill. 2006) (affirming Magistrate ruling); *Clark v. Experian Info. Solutions, Inc.*, Case No. 03-C-7882, 2006 U.S. Dist. LEXIS 13808 at *3 (N.D. Ill. 2006) at *20-21 (ruling by magistrate allowing discovery of certain documents related to the Stipulation Injunction, but not documents making or responding to offers of compromise or draft settlement agreements with the FTC, and implying that Rule 408 would preclude the admission of a broader swath of evidence related to the Stipulated Injunction at trial).  Finally, ConsumerInfo objects to the request to the extent it seeks production of information that include trade secrets, confidential, and/or proprietary information.

### a.    Defendant's Position Re Adaptive RFP No. 83

One Tech and Adaptive respectfully refer the Court to section II.A.1.a(1)-(3) above regarding defendant's position about materials related to the FTC Action.

### b.    ConsumerInfo's Position Re Adaptive RFP No. 83

ConsumerInfo respectfully refers the Court to its statements in response to One Tech's Request No. 30, section II.A.5.b above.  The documents requested here (insofar as the scope can be discerned from this confusing request that references articles by third parties including one not attached to any of the moving papers) are neither relevant to this action nor likely to lead to the discovery of admissible evidence, and the motion should be denied.

## B.    MARKETING & BUSINESS PLANS [OT RFP Nos 48, 86]

### 1.    OT RFP No. 48

**REQUEST FOR PRODUCTION NO. 48:**

All DOCUMENTS that constitute, discuss, or refer to YOUR marketing plans, guidelines, or strategies.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 48**

ConsumerInfo incorporates by reference the General Objections above as though fully set forth herein and further objects to the request on the grounds that it is grossly overbroad, unduly burdensome, vague, ambiguous, and not relevant to a claim or defense nor reasonably calculated to lead to the discovery of admissible evidence. Further, the terms "marketing plans," "guidelines," and "strategies" are vague and ambiguous and the request seeks documents protected by the attorney-client privilege and/or work product privilege. ConsumerInfo objects to the request to the extent it seeks production of information that includes trade secrets, confidential, and/or proprietary information.

### a.    <u>Defendants' Position re OT RFP 48</u>

ConsumerInfo must be compelled to produce documents responsive to OT RFP 48. This request, together with OT RFP 86, seeks ConsumerInfo's marketing plans and business plans. Initially, ConsumerInfo only asserted objections in response to these requests, refusing to produce any documents. As a result of Defendants' meet and confer efforts, ConsumerInfo's counsel has agreed to review ConsumerInfo's marketing and business plans and produce in redacted form any parts that reference One Tech or Adaptive or that are "otherwise relevant to the subject matter of this case" but has not defined any criteria for this determination. Korovilas Decl. ¶ 10. Further, ConsumerInfo has refused to produce portions of its business plans or marketing plans that refer to ConsumerInfo's attempts to exclude competitors from the market, pricing or price changes, selection of its marks at issue in this case, or its general use or promotion of its marks, or to run search terms geared toward marketing and business plans as part of electronic discovery. *Id.*

Key issues in this case are the strength and validity of the FREECREDITREPORT.COM mark, the likelihood of confusion and scope of protection, if any, of the purported mark, and whether ConsumerInfo committed

1    fraud on the PTO in securing a federal registration of the mark.  One Technologies

2    also alleges a claim for antitrust violation based on ConsumerInfo's attempts to

3    hamper competition by using its FREECREDITREPORT.COM trademark to

4    increase marketing and advertising costs to competitors, lower its own such costs,

5    improperly increase its ad placement on search engines (such as Google), and other

6    anticompetitive behavior.  Facts regarding consumer understanding of the term and

7    mark, use and effectiveness of "free credit reports" as a marketing and promotional

8    tool in the credit report and monitoring market, ConsumerInfo's selection of

9    FREECREDITREPORT.COM and TRIPLE ADVANTAGE as trademarks, use and

10   promotion of its marks, and ConsumerInfo's knowledge and intent in marketing

11   and advertising free credit reports and in utilizing keywords containing the terms

12   "free," "credit" and "report" and the freecreditreport.com domain name are central

13   to these issues.

14          Further, ConsumerInfo's actions and intent to prevent competitors

15   from using such terms in marketing and advertising are also directly relevant to One

16   Technologies' antitrust claims that ConsumerInfo has made a practice of seeking to

17   exclude competitors from using descriptive and generic terms and phrases in

18   advertising and from offering free credit reports, while simultaneously copying

19   competitors' domain names, trademarks, and trade names with impunity.

20   Additionally, business and marketing plans that show exclusionary practices,

21   special arrangements with Google or other pay-per-click search providers,

22   strategies for creating barriers to entry into the market, use of the

23   FREECREDITREPORT.COM trademark to exclude others from the market, raise

24   competitors prices for marketing or advertising or achieve lower advertising costs,

25   higher advertising placement or higher search rankings, pricing or price changes are

26   also directly relevant to One Technologies' antitrust claims and damages.

27   Therefore, Defendants seek an order compelling ConsumerInfo to produce

28   marketing and business plans also to the extent they relate to any of these issues –

1   not just to the extent they mention One Technologies or Adaptive.

2          Marketing and business plans are commonly produced in both

3   trademark and antitrust actions. *See PAJ, Inc. v. Barons Gold Mfg. Corp.*, 2002

4   WL 1792069, at *1-2 (S.D.N.Y. Aug. 2, 2002) (compelling production in

5   trademark case of documents related to "actual use," including "marketing plans

6   relating to goods and services offered in connection with the marks" because such

7   documents would affect the "strength of weakness of the asserted marks"); *Sonista,*

8   *Inc. v. Hsieh*, 2005 WL 2045802, at *3 (N.D. Cal. Aug. 25, 2005) (compelling

9   production of company's business plans in a trademark case because "those plans

10  may reflect defendants' intention to use, or refrain from using, the trademark at

11  issue"); *see United States v. Dentsply Int'l, Inc.*, 2000 WL 654286, at *5 (D. Del.

12  May 10, 2000) (broad scope of discovery is particularly appropriate in antitrust

13  cases); *In re Urethane Antitrust Litigation*, 261 F.R.D. 570, 573, 573 n.12 (D. Kan.

14  2009) (same); *Callahan v. AEV, Inc.*, 947 F. Supp. 175, 179 (W.D. Pa. 1996)

15  ("Discovery in an antitrust case is necessarily broad because allegations involve

16  improper business conduct. . . . Such conduct is generally covert and must be

17  gleaned from records, conduct, and business relationships.").

18         ConsumerInfo cannot be allowed to cherry pick the parts of its

19  marketing and business plans that it alone deems "relevant."  In particular, it cannot

20  exclude from its production portions of its plans that relate directly to:  its selection

21  and use and promotion of trademarks at issue in this case; the use and effectiveness

22  of free credit reports in marketing, advertising and as incentives in the credit report

23  and monitoring industry; consumer understanding of the term "free credit report"

24  and the mark "freecreditreport.com;" its knowledge and intent in marketing and

25  advertising free credit reports and in utilizing keywords containing the terms "free,"

26  "credit" and "report" and the freecreditreport.com domain name; its knowledge of

27  and attempts to prevent competitors from using such keywords and domain names

28  or from offering free credit reports in marketing, advertising or as an incentive;

1   exclusionary tactics; special or non-standard arrangements with Google or other

2   pay-per-click search providers; strategies for creating barriers to entry into the

3   market; use of the FREECREDITREPORT.COM trademark to exclude others from

4   the market; raise competitors prices for marketing or advertising or achieve lower

5   advertising costs; higher advertising placement or higher search rankings; pricing

6   and price changes; and competitive conditions in the marketplace.  ConsumerInfo

7   should be compelled to produce all portions of its business and marketing plans that

8   relate to these subjects.

9                    **b.     ConsumerInfo's Position Re OT RFP No. 48**

10          One Tech seeks all documents "that constitute, discuss, or refer to

11   [ConsumerInfo's] marketing plans, guidelines, or strategies," and all documents

12   "that constitute, discuss, or mention [ConsumerInfo's] business plans since 2000."

13   These requests are clearly overbroad because they would require production of

14   documents pertaining to nearly all of ConsumerInfo's activities for its entire history

15   without regard to their relevance to this case.  *See Dunkin' Donuts Franchised*

16   *Restaurants, LLC v. 1700 Church Avenue Corp.*, 2008 WL 1840760, at *8

17   (E.D.N.Y.  April 23, 2008) ("No party has an automatic right to seek discovery of

18   the financial plans and documents of an adversary, simply because they are engaged

19   in a commercial dispute.").[3]

20          Despite the overbreadth of this request, ConsumerInfo agreed to produce

---

21   [3] None of the cases cited by One Tech allow for unlimited discovery of business

22   plans.  *PAJ, Inc.* allowed discovery of marketing plans because the marketing plans
     sought in that case were relevant to the issue of actual use.  *PAJ, Inc.*, 2002 WL

23   1792069, at *2.  Similarly, *Sonista* allowed production of business plans because
     they were relevant to the claim in that litigation that the defendants formed their

24   company in order to use the trademarks at issue in the case.  *Sonista*, 2005 WL
     2045802, at *3.  *Dentsply* held that business plans should be produced to the extent

25   they were relevant to the issue of foreign market data.  *Dentsply Int'l*, 2000 WL
     654286, at *5.  *In re Urethane* did not involve a dispute over business plans.  *In re*

26   *Urethane Antitrust Litigation*, 261 F.R.D. 570,  572  (D. Kan. 2009) (discussing
     discovery requests concerning "calendars, travel records, expense reports, telephone

27   records, trade association materials, and identifying information; document relating
     to meetings or communications with any of the other defendants or settled

28   defendants").  *Callahan* involved a dispute over grand jury testimony transcripts,
     not business plans.  *Callahan*, 947 F. Supp. at 179.

portions of its business plans that referred to the Defendants in this case that were discovered as a result of a review of more than 70,000 electronic documents culled from keyword searches that include numerous variations of Defendants' business names, such as "Adaptive," "One Tech!," "OneTech!," "spendonlife," "spend on life," and "spend /10 on /10 life." ConsumerInfo, however, refused to run the search terms "marketing plan" and "business plan!" because they would require review of nearly 8,000 additional documents, the vast majority of which, because of the breadth of those terms, were not likely to relate to the issues in this case. (Ramallo Decl. ¶ 12.)

Without first conferring with ConsumerInfo, One Tech has propounded a new list in its portion of the joint stipulation of thirteen items it contends could be found in business plans.   These are:

1. "[ConsumerInfo's] selection and use and promotion of trademarks at issue in this case;

2. "the use and effectiveness of free credit reports in marketing, advertising and as an incentives in the credit report monitoring industry;"

3. "consumer understanding of the term "free credit report" and the mark "freecreditreport.com;"

4. "[ConsumerInfo's] knowledge and intent in marketing and advertising free credit reports and in utilizing keywords containing the terms 'free,' 'credit,' and 'report' and the freecreditreport.com domain name;"

5. "[ConsumerInfo's] knowledge and attempts to prevent competitors from using such keywords and domain names or from offering free credit reports in marketing, advertising or as an incentive;"

6. "exclusionary tactics;"

7. "special or non-standard arrangements with Google or other pay-per-

click search providers;"

8. "strategies for creating barriers to entry into the market;"

9. "use of the FREECREDITREPORT.COM trademark to exclude others from the market;"

10. "raise competitors prices for marketing or advertising or achieve lower advertising costs;"

11. "higher advertising placement or higher search rankings;"

12. "pricing and price changes;"

13. "competitive conditions in the marketplace."

As explained below, each of the items on One Tech's newly propounded list, to the extent it is not overbroad or completely irrelevant, is already covered by discovery requests for which ConsumerInfo has agreed to comply.

**1. "[ConsumerInfo's] selection and use and promotion of trademarks at issue in this case;"**

With respect to selection of ConsumerInfo's trademarks, Adaptive Document Request 16 asks ConsumerInfo to produce "ALL DOCUMENTS REFERRING TO OR CONCERNING CIC'S consideration, selection, adoption and first use of the CIC TRADEMARKS, including, but not limited to, COMMUNICATIONS regarding selection of the CIC TRADEMARKS and trademark search reports concerning the CIC TRADEMARKS." ConsumerInfo has already agreed to produce documents responsive to this request concerning the selection of ConsumerInfo's trademarks. Thus, Defendants' motion is moot as to this point.

With respect to use and promotion of its trademarks, Defendants' demand is overbroad. The ConsumerInfo trademarks at issue in this case are FREECREDITREPORT.COM and TRIPLE ADVANTAGE. FREECREDITREPORT.COM is ConsumerInfo's principal brand and website, while TRIPLE ADVANTAGE is the name of the principal product sold on ConsumerInfo's websites. Production of ConsumerInfo's business plans

concerning the use of these marks would require production of essentially all of ConsumerInfo's business and marketing plans and all communications concerning those plans.  Given that ConsumerInfo has discovered nearly 8,000 documents containing the term "marketing plan" or "business plan!," Defendants' request is grossly overbroad and harassing.

> ## 2. "the use and effectiveness of free credit reports in marketing, advertising and as an incentive in the credit report monitoring industry;"

ConsumerInfo's principal advertising incentive is a free credit report offer. Thus, potentially all of ConsumerInfo's business plans and all communications concerning them are responsive to Defendant's proposed "limitation" on its discovery request, rending this demand overbroad and harassing.  Moreover, while One Tech has alleged ConsumerInfo's enforcement activities with respect to its FREECREDITREPORT.COM trademark are wrongful, One Tech has not alleged that ConsumerInfo has ever succeeded in or attempted to stop any person or entity from simply offering free credit reports.  Thus, any documents concerning this effectiveness of free credit report offers is of limited relevance and cannot justify the burden of producing these documents.

> ## 3. "consumer understanding of the term "free credit report" and the mark "freecreditreport.com;"

To the extent One Tech seeks documents concerning consumers' understanding of the mark FREECREDITREPORT.COM, ConsumerInfo has already agreed to produce all non-privileged, non-work-product, surveys concerning the mark.  To that end, ConsumerInfo has agreed to produce a formal survey concerning secondary meanings of its mark, as well as to conduct an electronic keyword search for terms such as "freecreditreport! AND survey," and "fcr! AND survey."  Thus, One Tech's motion on this issue is pointless and harassing.

Further, to the extent One Tech seeks documents concerning consumers'
understanding of the English words "free credit report," as opposed to consumers'
understanding of ConsumerInfo's trademark, the request is bizarre and nonsensical.
Because ConsumerInfo is not in the business of conducting academic linguistic
research, no keyword search of ConsumerInfo's documents is likely to uncover
documents responsive to this demand.

**4. "[ConsumerInfo's] knowledge and intent in marketing and
advertising free credit reports and in utilizing keywords
containing the terms 'free,' 'credit,' and 'report' and the
freecreditreport.com domain name;"**

To the extent this demand seeks business plans discussing the importance of
ConsumerInfo's FREECREDITREPORT.COM trademark, ConsumerInfo in the
meet and confer process has already agreed to produce documents responsive to
this demand.  Thus, One Tech's motion on this issue is moot.

To the extent One Tech literally seeks documents that bear on
"[ConsumerInfo's] knowledge and intent in marketing and advertising free credit
reports and in utilizing keywords containing the terms 'free,' 'credit,' and 'report'
and the freecreditreport.com domain name," the request is nonsensical and
overbroad.  ConsumerInfo's motive in operating a business is to earn profit;
production of 8,000 documents is not warranted to establish this point. *See Dunkin'
Donuts Franchised Restaurants*, 2008 WL 1840760, at *2 (denying motion to
compel discovery of business plans and noting "[t]hat plaintiffs, defendants or any
entity may be interested in making profits is hardly surprising").

**5. "[ConsumerInfo's] knowledge and attempts to prevent
competitors from using such keywords and domain names or from
offering free credit reports in marketing , advertising or as an
incentive"**

In the meet and confer process, ConsumerInfo has already agreed to produce

documents concerning enforcement efforts for its FREECREDITREPORT.COM
trademark, including those involving attempts to prevent competitors from using
infringing keywords or domain names.  To that end, ConsumerInfo has agreed to
produce its cease and desist correspondence for its FREECREDITREPORT.COM
and TRIPLE ADVANTAGE marks, as well as to conduct a keyword search of
electronic documents for terms such as the following:

- (infring! or violat! or copy or copie!) /s (!FreeCreditReport! or "Triple Advantage" or Bandguy or "Band guy" or "Dream Girl" or "New Job" or Smiley)
- (infring! or violat! or copy or copie!) /s ConsumerInfo! /s (copyright or trademark or "trade dress")
- cease and desist

Again, One Tech has moved to compel on an issue where there is no dispute.

### 6. "exclusionary tactics;"

In its pleadings, One Tech alleges that ConsumerInfo has attempted to
monopolize the market by wrongfully obtaining and enforcing the
FREECREDITREPORT.COM trademark, as well as by entering into special
arrangements with search engines.  In the meet and confer process, ConsumerInfo
agreed to produce business plans that discuss or concern the importance of the
FREECREDITREPORT.COM trademark.  Further, ConsumerInfo has also agreed
to produce its exclusive advertising agreements with search engines.  (Ramallo
Decl. ¶ 13.)  Thus, to the extent One Tech seeks documents concerning the
"exclusionary tactics" alleged in its counterclaims, One Tech has again brought a
motion to compel production of documents in an area where there is no dispute.

To the extent One Tech seeks production of business plans concerning other
undefined "exclusionary tactics," the request is overbroad and irrelevant.
ConsumerInfo should not be forced to produce documents that concern business
practices that are not alleged anywhere in the pleadings or otherwise have no

factual basis. *In re Lorazepam & Clorazepate Antitrust Litig.*, 300 F. Supp. 2d 43, 45-46 (D.D.C. 2004) (denying antitrust plaintiff's motion to compel documents concerning insider trading which was irrelevant to well-pleaded antitrust allegations); *Vilastor Kent Theatre Corp. v. Brandt*, 18 F.R.D. 199, 201 (S.D.N.Y 1955) (refusing to allow production of documents concerning first run theatres in antitrust cases involving only allegations concerning second run theatres). Accordingly, the motion to compel as to this category should be denied.

> **7. "special or non-standard arrangements with Google or other pay-per-click search providers;" ;"**

ConsumerInfo respectfully refers the Court to subparagraph 6 of this subsection.

> **8. "strategies for creating barriers to entry into the market;" ;"**
>
> ConsumerInfo respectfully refers the Court to subparagraph 6 of this subsection.

> **9. "use of the FREECREDITREPORT.COM trademark to exclude others from the market;" ;"**

ConsumerInfo respectfully refers the Court to subparagraph 6 of this subsection.

> **10. "raise competitors prices for marketing or advertising or achieve lower advertising costs;" ;"**

ConsumerInfo respectfully refers the Court to subparagraph 6 of this subsection.

> **11. "higher advertising placement or higher search rankings;" ;"**

ConsumerInfo respectfully refers the Court to subparagraph 6 of this subsection.

> **12. "pricing and price changes;" ;"**

One Tech's request that ConsumerInfo produce all of its business plans concerning price and price changes is unduly burdensome, given that such

information can be obtained without reviewing and producing thousands and thousands of business plans.  For example, the Wayback Machine, a publicly accessible website at Archive.org, contains archived versions of the <freecreditreport.com> website dating back to September 1999.  These archived versions of the website show the pricing of ConsumerInfo's products at various points in time.  Thus, One Tech can obtain all the information it desires, without even serving a discovery request.  In the alternative, One Tech could serve a narrowly tailored discovery request asking for documents sufficient to identify ConsumerInfo's pricing for relevant products at relevant times.  Because these simple mechanisms are equally as effective at obtaining the information sought by One Tech's grossly burdensome request, the motion to compel should be denied.

### 13. "competitive conditions in the marketplace." ;"

ConsumerInfo respectfully refers the Court to subparagraph 6 of this subsection.

### 2.    OT RFP No. 86

**REQUEST FOR PRODUCTION NO. 86:**

All DOCUMENTS that constitute, discuss, or mention YOUR business plans since 2000.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 86**

ConsumerInfo incorporates by reference the General Objections above as though fully set forth herein and further objects to the request on the grounds that it is grossly overbroad, unduly burdensome, vague, ambiguous, and not relevant to a claim or defense nor reasonably calculated to lead to the discovery of admissible evidence.  Further, the term "business plan" is vague and ambiguous and the request seeks documents protected by the attorney-client privilege and/or work product privilege.  ConsumerInfo objects to the request to the extent it seeks production of information that includes trade secrets, confidential, and/or proprietary information.

1

### a.      Defendants' Position re OT RFP 86

2       One Tech and Adaptive respectfully refer the Court to section II.B.1.a

3  above regarding defendant's position about marketing and business plans.

4

### b.      ConsumerInfo's Position re OT RFP 86

5       ConsumerInfo respectfully refers the Court to section II.B.1.b above

6  regarding ConsumerInfo's position about marketing and business plans.

7  **C.      DOCUMENTS RELATED TO CONSUMERINFO'S LAWSUITS
   AGAINST JESEE WILLMS AND MIGHTY NET OR OTHER**

8  **LITIGATION AND ENFORCEMENT EFFORTS REGARDING
   CONSUMERINFO'S ASSERTED INTELLECTUAL**

9  **PROPERTY RIGHTS  [OT RFP Nos. 96-98, 101, 134-136, 138-
   142, and 144-145; Adaptive RFP No. 85]**

10

11  ### 1.      OT RFP No. 95

12  **REQUEST FOR PRODUCTION NO. 95:**

13       All DOCUMENTS that discuss, mention, or refer to prior litigation

14  relating to your alleged trademarks in "freecreditreport.com" and "triple

15  advantage," including copies of all documents previously filed or produced in any

16  such litigation.

17  **RESPONSE TO REQUEST FOR PRODUCTION NO. 95:**

18       ConsumerInfo incorporates by reference the General Objections above

19  as though fully set forth herein and further objects to the request on the grounds that

20  it is grossly overbroad, unduly burdensome, vague, ambiguous, and not relevant to

21  any claim or defense nor reasonably calculated to lead to the discovery of

22  admissible evidence.  Further, the request seeks documents protected by the

23  attorney-client privilege and/or work product privilege.  ConsumerInfo further

24  objects that this request calls for production of documents equally available to

25  defendants.  ConsumerInfo objects to the request to the extent it seeks production of

26  information that includes trade secrets, confidential and/or proprietary information.

27  ### a.      Defendants' Position re OT RFP 95

28       ConsumerInfo must be compelled to produce documents responsive to

OT RFP No. 95.  This request, together with OT RFP Nos. 96-98, 101, 134-136, 138-142, and 144-145 and Adaptive RFP No. 85, *seeks ConsumerInfo's documents concerning its other litigation and enforcement efforts, including settlement agreements and other documents evidencing resolution of disputes and the scope of protection for ConsumerInfo's asserted intellectual property rights.* Initially, ConsumerInfo only asserted objections in response to these requests, refusing to produce *any* documents.  As a result of defendants' meet and confer efforts, ConsumerInfo's counsel has agreed to produce cease and desist letters concerning its respective intellectual property rights at issue in the present litigation.  Korovilas Decl. ¶ 34; Donoian Decl. ¶ 8.  Defendants have also agreed to this minimum production simply to begin the process of gathering and reviewing responsive documents.  Korovilas Decl. ¶ 34; Donoian Decl. ¶ 8.  While this proposal scratches the surface of ConsumerInfo's enforcement and pre-litigation efforts, it hardly exposes the scope of enforcement and prior litigation that would evidence the strength, validity and enforceability of ConsumerInfo's trademarks.

Specifically, One Tech and Adaptive seek the production of other litigation documents, including both civil litigation and Trademark Trial and Appeal Board proceedings, including: (1) witness statements, affidavits and declarations; (2) pleadings filed under seal; (3) deposition testimony and exhibits; (4) settlement agreements; and (5) third party documents produced in prior litigation.  One Tech and Adaptive further seek the following enforcement and/or pre-litigation documents: (1) settlement agreements; (2) trademark watch notices used in connection with ConsumerInfo's enforcement of its alleged trademarks; (3) supplemental and follow-up correspondence in connection with cease and desist letters; (4) ConsumerInfo's monitoring and enforcement policies and procedures; and (5) ConsumerInfo's documents concerning its anticipated or potential enforcement efforts.  ConsumerInfo refuses to produce these requested categories of documents.

In the parties' most recent meet and confer efforts, One Tech pressed ConsumerInfo on documents specifically relevant to the matters *ConsumerInfo.com, Inc. v. Mighty Net, Inc.*, Case No. SACV-06-0322 ODW (ANx) ("Mighty Net") and *ConsumerInfo.com, Inc. v. Jesee Willms, et al.*, Case No. SACV 09-0055 DOC (MLGx) ("Willms") in the Central District of California, which are the subject of One Tech RFPs 134-136, 138-142, and 144-145. Korovilas Decl. ¶¶ 13-15.  ConsumerInfo offered only to produce publicly available documents filed in the Mighty Net and Willms matters, despite One Tech's various efforts to compromise including requesting an index of the relevant case files to show documents and statements by third parties and documents and statements by ConsumerInfo that may be subject to protective orders, in order to analyze ConsumerInfo's refusal to produce documents on a case-by-case basis.  *Id.*.  ConsumerInfo advised it would "consider" this compromise, but its failure to commit to a production of any documents still amounts to serious stonewalling that hinders legitimate discovery.  ConsumerInfo must be compelled to produce all documents concerning its enforcement efforts and other litigation regarding the intellectual property rights it asserts in this case, including settlement agreements, as it is directly relevant to ConsumerInfo's own claims in this case and Defendants' defenses to such claims (*e.g.,* the validity, strength and scope of protection of the relevant trademarks at issue in this litigation), Adaptive and One Tech's counterclaims for infringement, One Technologies' cancellation and antitrust claims, and damages.  ConsumerInfo cannot be allowed to unilaterally pick and choose cease and desist letters that it deems "relevant" and withhold all other responsive documents.

The enforcement and other litigation documents are relevant to ConsumerInfo's trademark infringement claims because they will bear directly on the claims and issues outlined above.  Indeed, the *Mighty Net* and *Willms* matters involve similar claims of infringement and validity as those alleged in the present

case and relate to the same alleged ConsumerInfo trademarks.  To the extent there are non-publicly available statements or documents by ConsumerInfo in *Willms* and *Mighty Net* that reflect the strength, enforceability or validity of ConsumerInfo's alleged trademarks, Adaptive and One Tech should be entitled to those documents. While ConsumerInfo protests that such documents have been filed under seal and cannot be produced, there is a protective order in the present case that will protect the interests of ConsumerInfo and any third parties in the relevant documents.  If ConsumerInfo witnesses or third parties have testified under oath concerning the creation, validity or secondary meaning of the trademarks, it seems that very little would be more relevant than prior admissions by ConsumerInfo in other cases involving freecreditreport.com.  Unilateral presentation of evidence in this case is not proper.  One Tech and Adaptive are entitled to test the allegations and defenses of ConsumerInfo in this case through its witnesses' prior testimony, documents previously produced, and third party evidence of ConsumerInfo's conduct in the market place.

Relevant documents concerning ConsumerInfo's enforcement efforts and other litigation concerning the very trademarks and trade dress at issue in this litigation may not be reasonably withheld from discovery.  *See generally Koninklijke Philips Electronics N.V. v. KXD Technology, Inc.*, Nos. 2:05-cv-01532-RLH-GWF, 2:06-cv-00101-RLH-GWF, 2007 WL 631950, at *8 (D. Nev. Feb. 26, 2007) ("Documents relating to other litigation or enforcement proceedings . . . for similar acts of infringement . . . are sufficiently relevant to warrant discovery."). These documents may yield pertinent information about how ConsumerInfo treats, evaluates and protects its alleged trademarks and trade dress; reveal potential liability of infringers of ConsumerInfo's intellectual property; and identify the strength of the alleged trademarks and trade dress.  *See generally Phoenix Solutions Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 585 (N.D. Cal. 2008) (compelling the production of "all documents related to the negotiation of licenses" in other

cases of the patents in dispute and "all documents related to [plaintiff's] stipulation" with a third party in a separate, related case). As the court explained in *Phoenix*, "[t]here are a multitude of ways in which [plaintiff's] correspondences with third parties related to license negotiations could be relevant to this litigation. . . . Fundamentally, the third-party negotiations could help [defendant] ascertain the extent of its liability to [plaintiff] and to formulate an appropriate litigation strategy." *Id.* at 582; *see*, *e.g.*, *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (including as evidentiary facts relevant in royalty determinations for licenses the plaintiff's marketing program to maintain his monopoly, the royalties received by the plaintiff from other licensees, and the non-exclusive bounds of the license).

Documents concerning relevant other litigation and enforcement are also specifically germane to One Tech's antitrust counterclaims. To the extent there is evidence suggesting that ConsumerInfo's alleged intellectual property rights are invalid, ConsumerInfo's efforts to enforce such rights, or lack thereof, is highly relevant to the analysis of antitrust claims. *See Anti-Monopoly, Inc. v. General Mills, Inc.*, 684 F.2d 1326 (9th Cir. 1982).

ConsumerInfo's treatment of its intellectual property, and its enforcement program, may also evidence intent and willfulness relevant to Adaptive's and One Tech's counterclaims for infringement and defenses of unclean hands. Accordingly, ConsumerInfo cannot be allowed to simply offer up the parts of its enforcement and other litigation documents that it deems relevant. The Court should therefore compel ConsumerInfo to produce all requested documents concerning ConsumerInfo's other litigation and enforcement efforts concerning the intellectual property at issue, specifically ConsumerInfo's alleged trademarks in "freecreditreport.com" and "triple advantage" and alleged trade dress.

Finally, to the extent that any responsive documents fall within the attorney-client privilege, those documents should be listed on a privilege log.

1  ConsumerInfo cannot use the existence of such documents to excuse its wholesale

2  refusal to produce documents from other litigation.  To address the issue of

3  documents being publicly available, defendants have already indicated that they

4  seek the production only of non-publicly available documents.  Documents that

5  have been filed not under seal and that are publicly accessible by defendants' via

6  PACER, for example, need not be produced.

7          **b.    ConsumerInfo's Position re OT RFP 95**

8  **Third Party Documents and Depositions**

9          Defendants' requests seek all documents produced by non-parties to

10  this case in the separate cases *ConsumerInfo.com, Inc. v. Mighty Net, Inc.*, Case No.

11  SACV-06-0322 ODW (ANx) and *ConsumerInfo.com, Inc. v. Jesee Willms, et al.*,

12  Case No. SACV 09-0055 DOC (MLGx).  The vast majority of these documents are

13  protected by separate protective orders in those cases.  Under the terms of those

14  protective orders, ConsumerInfo is prohibited from producing these confidential

15  third-party documents without first obtaining a modification of those separate

16  protective orders.

17          Furthermore, as ConsumerInfo explained to Defendants in the meet

18  and confer process, the documents produced by non-parties to this litigation are

19  both voluminous and irrelevant to any issue in this case.  (Ramallo Decl. ¶ 7.)  For

20  example, the documents produced by non-parties to this litigation in the *Willms*

21  matter include:

22      •   An electronic MySQL database containing eDirect's (a Willms entity)

23          complete order history and financial history for all products sold by Jesee

24          Willms' entities, including products such as weight-loss tea and tooth

25          whiteners.  In addition to Willms' business information, the database

26          contains personal information of consumers, such as credit card numbers.

27      •   A 1,112 document, 18,1555 page production from EDS, Willms' customer-

28          service agent.  The production consists generally of emails concerning

1    customer service issues with Willms' entities.

2    • A 4,596 document, 15,252 page production from ROI Revolution, a media

3    buyer for Willms' entities.  The production consists generally of emails

4    between ROI, Willms and third parties concerning Willms'

5    CreditReportAmerica.com website, as well as billing information, tracking

6    information and Willms' creative.

7    • A 159 document, 7,005 page production from The Planet, an internet hosting

8    provider for Willms.  The production consists generally of technical records

9    concerning Willms' websites.

10   • A 796 document, 6,690 page production from Litle.  The production consists

11   of records from Willms' credit-card processor.

12   • A 1,310 document, 3,162 page production from Advaliant, a Willms affiliate.

13   The production consists generally of insertion orders for Willms' entities and

14   emails between Willms' entities and the affiliate concerning Willms' entities'

15   advertising.

16   • A 949 document, 2,493 page production from Live Ops., Willms' customer-

17   service agent.  The production consists generally of documents concerning

18   the handling of customer complaints regarding Willms entities.

19   • A 1,228 document, 2,208 page production from Casale Media, a Willms

20   affiliate.  The production consists generally of insertion orders for Willms'

21   entities and emails between Willms' entities and the affiliate concerning

22   Willms' entities' advertising.

23   • A 1,032 document, 1,773 page production from Blue Host.  The production

24   consists generally of documents concerning domain-name registrations

25   owned by Willms entities.

26   • A 103 document, 270 page production from GoDaddy.  The production

27   consists generally of documents concerning domain-name registrations by

28   Willms entities.

- A 37 document, 97 page, production from Ad Knowledge, a Willms affiliate. The production consists generally of insertion orders for Willms' entities and emails between Willms' entities and the affiliate concerning Willms' entities' advertising.

- An 18 document, 33 page production from AdEx, a Willms affiliate. The production consists generally of insertion orders for Willms' entities and emails between Willms' entities and the affiliate concerning Willms' entities' advertising.

- A 32 document, 50 page production from Comodo.com. The production consists generally of emails and documents concerning digital certificates for Willms entities' internet domains.

- A 46 document, 196 page production from Digital River, an affiliate of Willms. The productions consists generally of emails concerning tracking of Willms' entities' advertisements and agreements between Willms and Digital River.

- A 7 document, 20 page production from Domains by Proxy. The production consists generally of documents concerning domain-name registrations by Willms entities.

- A production by Google of an AdWords Sponsored Link Ad Performance report data for several accounts related to Willms' websites.

- A 152 document, 251 page production from Hydra LLC, a Willms affiliate. The production generally consists of insertion orders, advertisements and emails concerning Willms' entities.

- Three productions from HSBC, consisting of Willms' bank records.

- An 87 document, 229 page production from IntegraClick, a Willms affiliate. The production consists generally of documents concerning Willms' business entities.

- A 27 document, 163 page production from Intermark Media, a Willms

affiliate.  The production generally consists of documents concerning Willms' entities advertising.

- A 21 document, 38 page production from Market Leverage, a Willms affiliate.  The production consists generally of agreements between Market Leverage and Willms entities, insertion orders and emails concerning the relationship between Willms and Market Leverage.

- A 24 document, 38 page production from Pepper Jam, a Willms affiliate. The production consists generally of insertion orders for Willms' entities and emails between Willms' entities and the affiliate concerning Willms' entities' advertising.

- A 29 document, 110 page production from Power Online.  The production consists generally of Willms' bills and banking information and other information concerning Willms' entities.

- A production from Pulse 360, a Willms affiliate.  The production consists generally of emails concerning Willms' relationship to Pulse 360.

- A 3 document, 16 page production from Right Media, a Williams affiliate. The production consists generally of documents concerning Willms' relationship to Right Media.

- A production from Zion's Bank, consisting of Willms' bank records.

Likewise, in the *Mighty Net* litigation, Mighty Net produced its highly confidential internal business documents, which are not pertinent to Defendants' allegations concerning ConsumerInfo's conduct.   There is no justification for Defendants to rifle through the confidential information of dozens of entities and thousand of individual consumers for documents that are wholly irrelevant to this case.

With respect to depositions in these cases, only one ConsumerInfo witness has been deposed.  In the meet and confer process, ConsumerInfo offered to produce the transcript of this 30(b)(6) deposition in the *Willms* matter as a

1   compromise position to settle this discovery dispute.  One Tech flatly refused this

2   compromise.  (Ramallo Decl. ¶ 12.)

3           With respect to non-ConsumerInfo witness depositions, the *Mighty Net*

4   matter involved the depositions of Sheldon Kasower, Curtis Lahti and Marilyn

5   Wolfe.  Kaswoer and Lahti were employees of Mighty Net who testified about

6   Mighty Net's activities, as opposed to the activities of ConsumerInfo, which

7   Defendants claim are relevant to this case.  Both of these irrelevant depositions are

8   designated "highly confidential attorney's eyes only" under a protective order

9   entered in a separate case.  Wolfe was a consumer who confused Mighty Net's use

10  of the term "Free.CreditReport.com" with ConsumerInfo's

11  FREECREDITREPORT.COM trademark.   She too did not testify as to validity or

12  secondary meaning of ConsumerInfo's trademarks.

13          With respect to non-ConsumerInfo deponents in *Willms*, none testified

14  about ConsumerInfo's trademarks.  The deponents in that case were as follows:

15  • ROI Revolution (Justin D'Angelo and Michale O'Roruke), who testified

16    about ROI Revolution's relationship to Willms' entities.

17  • Jesee Willms, who testified about the activities of his entities, not about

18    the strength or validity of ConsumerInfo's marks.

19  • 1021018 Alberta Ltd. (Jesee Willms), who testified about the activities of

20    1021018 Albert Ltd.

21  • Media Trust (Craig Leonard), who testified concerning Media Trust's

22    affiliate relationship with Willms' entities.

23  • Litle (Jonathan Ellman), who was deposed concerning Willms' credit card

24    processing activities.

25  • Szymon Kiedyk, an employee of Willms who testified about the creation

26    of Willms' advertisements and Willms' distribution.

27  • Michael Stefaniuk, an employee of Willms who testified about the

28    creation of Willms' advertisements and Willms' distribution.

Because none of these witnesses testified about ConsumerInfo's trademarks, the discovery of their depositions is not reasonably calculated to lead to the discovery of admissible evidence.

With respect to fact witness declarations in the *Mighty Net* litigation, the defendant in that case filed no declarations under seal. With respect to fact witness declarations in the *Willms* matter, the only sealed declarations filed were declarations of Jesee Willms. Because Willms did not testify as to the validity of ConsumerInfo's trademarks, these declarations are irrelevant. Moreover, Defendants have made no argument as to why they should be entitled to discover expert reports prepared by the defendants in Willms. Indeed, the opinions of experts in other cases would not be admissible in this case and are thus not reasonably calculated to lead to the discovery of admissible evidence. Accordingly, the motion to compel should be denied as to these documents as well.

Moreover, to the extent documents produced by non-parties to this litigation in other cases touch on the trademark issues in this case, information on these topics can be obtained by Defendants from other discovery requests for which ConsumerInfo has already agreed to comply. For example, in *Willms*, Gallup produced a survey concerning consumer awareness of the FREECREDITREPORT.COM mark. ConsumerInfo has already agreed to produce this document in response to the numerous requests by Defendants seeking consumer surveys concerning ConsumerInfo's marks. There is no need to produce volumes of irrelevant information produced in other cases when Defendants can obtain the same information by making discovery requests tailored to the issues in this case. For these reasons, ConsumerInfo should not be compelled to produce documents produced by non-parties to this litigation.

**Settlement Agreements**

Defendants state that ConsumerInfo should be compelled to produce settlement agreements arising from its enforcement efforts, but make no arguments

why discovery of these agreements is necessary. Given the weakness of Defendants' position, their failure to support their argument is not surprising.

ConsumerInfo's trademark enforcement efforts have resulted in two settlement agreements: one with Mighty Net and one with Jesee Willms and his entities. Both settlements are comprised of a confidential portion and a separate publicly filed stipulated injunction. In the meet and confer process, One Tech indicated that it sought these documents to support its antitrust allegations that ConsumerInfo unfairly brings lawsuits to prevent competitors from using the terms "free," "credit," and "report." ConsumerInfo offered to produce the stipulated injunction portions of its settlement agreements because they fully address One Tech's concern.

For example, the stipulated injunction in *Mighty Net* enjoins Mighty net from "exploiting the trademark, 'freecreditreoprt.com' in any manner that is identical or confusingly similar to ConsumerInfo's Trademark 'freecreditreport.com,'" but allows Mighty Net to continue the "the use of the words 'free' or similar terms, such as 'no charge,' or in connections with Mighty Net's advertising or marketing." (Ramallo Decl. Exh. C ¶¶ A, F.) Similarly, the injunction in *Willms* prohibits Willms and his entities from "using, directly or through any affiliates, the trademarks FREECREDITREPORT.COM, TRIPLE ADVANTAGE, or any confusingly similar terms in any way, including as a paid keyword search terms, in the text of advertisements, in URLs, or on websites." (Ramallo Decl. Exh. D ¶ B.) In other words, the publicly filed stipulated injunctions contain all of the information that One Tech seeks.

Nevertheless, One Tech continues to press for disclosure of the confidential portions of ConsumerInfo's settlements with Mighty Net and Willms, without articulating any reason for wanting this information. Given that this information is both irrelevant and highly confidential to Mighty Net and Willms, non-parties to this litigation, the motion to compel should be denied.

## Documents Produced by ConsumerInfo in Other Litigation

Defendants have moved to compel ConsumerInfo to produce all documents produced by ConsumerInfo in prior litigations, as well as all declarations and deposition transcripts of ConsumerInfo witnesses.  Defendants' request is overbroad and harassing.  Such a demand would require production of voluminous documents wholly unrelated to the issues in this case.  For example, both the *Mighty Net* and *Willms* matters involved litigation over ConsumerInfo trade dress that is not at issue in this case and thus not likely to lead to the discovery of admissible evidence.  Similarly, *Willms* involved a false advertising allegation in that Willms did not actually deliver the products he promised to consumers, which is not alleged against the Defendants here.  Further, *Willms* involved copyrights which are not at issue in this case.  In these cases, ConsumerInfo produced proprietary tracking data for intellectual property that is not at issue here, as well as numerous documents concerning the business activities of Willms and Mighty Net.  Rather than forcing ConsumerInfo to produce irrelevant documents, Defendants should be required to propound discovery requests tailored to the issues in this case.  For this reason, the motion to compel should be denied.

## Pre-Litigation Enforcement Polices and Activities

In the meet and confer process, ConsumerInfo agreed to produce documents concerning its pre-litigation enforcement policies and activities.   In addition to producing documents from its regularly maintained file of cease and desist letters, ConsumerInfo agreed to run keyword searches to uncover additional documents concerning enforcement efforts and produce documents discovered as a result of those searches.  Examples of these keywords include:

- (infring! or violat! or copy or copie!) /s (!FreeCreditReport! or "Triple Advantage" or Bandguy or "Band guy" or "Dream Girl" or "New Job" or Smiley)
- (infring! or violat! or copy or copie!) /s ConsumerInfo! /s (copyright or

1

trademark or "trade dress")

2

&bull; cease and desist

3

4

5

6

(Ramallo Decl. ¶ 17.)  In total, Defendants' keywords require review of over 70,000 documents.  ConsumerInfo is in the midst of this review process and will produce responsive documents.  Accordingly, Defendants' motion as to these documents is harassing and pointless.

7

**Privilege Log**

8

9

10

11

12

13

14

15

16

17

18

19

To the extent Defendants seek to require ConsumerInfo to produce a privilege log of all documents related to the *Mighty Net* and *Willms* matter, this request is overbroad and harassing.  The *Mighty Net* matter was a litigation that lasted more than 14 months and was not settled until the first day of trial.  To create a privilege log, ConsumerInfo would be required to review and catalog every single document generated by its attorneys during this time period.  Because documents created by attorneys in the midst of litigation are clearly protected from discovery, the effort to catalog these documents and place them on a privilege log would be a considerable and vain waste of resources.  Likewise, the *Willms* litigation has been ongoing for 13 months and involved several motions to compel and cross-motions for summary judgment.  Defendants' demand that ConsumerInfo create a privilege log for all of these activities is clearly harassing and not brought in good faith.

20

    **2.**     <u>OT RFP No. 96</u>

21

**REQUEST FOR PRODUCTION NO. 96:**

22

23

24

25

All DOCUMENTS that discuss, mention or refer to prior opposition or cancellation proceedings before the Trademark Trial and Appeal Board relating to your alleged trademarks in "freecreditreport.com" and "triple advantage," including copies of all documents previously filed or produced in any such proceedings.

26

**RESPONSE TO REQUEST FOR PRODUCTION NO. 96:**

27

28

ConsumerInfo incorporates by reference the General Objections above as though fully set forth herein and further objects to the request on the grounds that

it is overbroad, unduly burdensome, vague, ambiguous, and not relevant to any claim or defense nor reasonably calculated to lead to the discovery of admissible evidence.  Further, the request seeks documents protected by the attorney-client privilege and/or work product privilege.  ConsumerInfo further objects that this request calls for production of documents equally available to defendants. ConsumerInfo objects to the request to the extent it seeks production of information that includes trade secrets, confidential and/or proprietary information.

### a.    Defendants' Position re OT RFP 96

One Tech and Adaptive respectfully refer the Court to section II.C.1.a above regarding defendant's position about materials related to other litigation and enforcement efforts.

### b.    ConsumerInfo's Position re OT RFP 96

Because there has never been a cancellation or opposition proceeding concerning the marks FREECREDITREPORT.COM and TRIPLE ADVANTAGE, no such documents exist.  Accordingly, Defendants' motion to compel should be denied.

### 3.    OT RFP No. 97

**REQUEST FOR PRODUCTION NO. 97:**

All DOCUMENTS that discuss, mention or refer to prior litigation relating to your alleged trade dress, including copies of all documents previously filed or produced in any such litigation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 97:**

ConsumerInfo incorporates by reference the General Objections above as though fully set forth herein and further objects to the request on the grounds that it is grossly overbroad, unduly burdensome, vague, ambiguous, and not relevant to any claim or defense nor reasonably calculated to lead to the discovery of admissible evidence.  Further, the request seeks documents protected by the attorney-client privilege and/or work product privilege.  ConsumerInfo further

objects that this request calls for production of documents equally available to defendants. ConsumerInfo objects to the request to the extent it seeks production of information that includes trade secrets, confidential and/or proprietary information.

### a.    Defendants' Position re OT RFP 97

One Tech and Adaptive respectfully refer the Court to section II.C.1.a above regarding defendant's position about materials related to other litigation and enforcement efforts.

### b.    ConsumerInfo's Position re OT RFP 97

Because there has never been any litigation concerning ConsumerInfo's trade dress as alleged in this case, no such documents exist. Accordingly, Defendants' motion to compel should be denied.

### 4.    OT RFP No. 98

**REQUEST FOR PRODUCTION NO. 98:**

All DOCUMENTS that discuss, mention, or refer to prior litigation relating to your alleged copyrights, including copies of all documents previously filed or produced in any such litigation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 98:**

ConsumerInfo incorporates by reference the General Objections above as though fully set forth herein and further objects to the request on the grounds that it is grossly overbroad, unduly burdensome, vague, ambiguous, and not relevant to any claim or defense nor reasonably calculated to lead to the discovery of admissible evidence. Further, the request seeks documents protected by the attorney-client privilege and/or work product privilege. ConsumerInfo further objects that this request calls for production of documents equally available to defendants. ConsumerInfo objects to the request to the extent it seeks production of information that includes trade secrets, confidential and/or proprietary information.

### a.    Defendants' Position re OT RFP 98

One Tech and Adaptive respectfully refer the Court to section II.C.1.a

above regarding defendant's position about materials related to other litigation and enforcement efforts.

### b.      ConsumerInfo's Position re OT RFP 98

Because there has never been any litigation concerning ConsumerInfo's copyrights as alleged in this case, no such documents exist. Accordingly, Defendants' motion to compel should be denied.

### 5.      OT RFP No. 100

**REQUEST FOR PRODUCTION NO. 100:**

All DOCUMENTS that discuss, mention, or refer to any other efforts by YOU to prevent others from using the words "triple" and "advantage," alone or in combination.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 100:**

ConsumerInfo incorporates by reference the General Objections above as though fully set forth herein and further objects to the request on the grounds that it is grossly overbroad, unduly burdensome, vague, ambiguous, and not relevant to any claim or defense nor reasonably calculated to lead to the discovery of admissible evidence.  Further, the request seeks documents protected by the attorney-client privilege and/or work product privilege.

### a.      Defendants' Position re OT RFP 100

One Tech and Adaptive respectfully refer the Court to section II.C.1.a above regarding defendant's position about materials related to other litigation and enforcement efforts.

### b.      ConsumerInfo's Position re OT RFP 100

In the meet and confer process, ConsumerInfo agreed to produce all of its cease and desist correspondence concerning the trademarks at issue in this case.  In addition to producing documents from its regularly maintained file of cease and desist letters, ConsumerInfo agreed to run keyword searches to uncover additional documents concerning enforcement efforts and produce documents discovered as a

result of those searches.  Examples of these keywords include:

- (infring! or violat! or copy or copie!) /s (!FreeCreditReport! or "Triple Advantage" or Bandguy or "Band guy" or "Dream Girl" or "New Job" or Smiley)
- (infring! or violat! or copy or copie!) /s ConsumerInfo! /s (copyright or trademark or "trade dress")
- cease and desist

(Ramallo Decl. ¶ 17.)  In total, Defendants' keywords require review of over 70,000 documents.  ConsumerInfo is in the midst of this review process and will produce responsive documents.  Accordingly, Defendants' motion is harassing and pointless.

## 6.   <u>OT RFP No. 101</u>

**REQUEST FOR PRODUCTION NO. 101:**

All DOCUMENTS that constitute, discuss, or mention any other efforts by YOU to police or monitor use of certain keywords and domain names.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 101:**

ConsumerInfo incorporates by reference the General Objections above as though fully set forth herein and further objects to the request on the grounds that it is grossly overbroad, unduly burdensome, vague, ambiguous, and not relevant to any claim or defense nor reasonably calculated to lead to the discovery of admissible evidence.  Further, the request seeks documents protected by the attorney-client privilege and/or work product privilege.  ConsumerInfo objects to the request to the extent it seeks production of information that includes trade secrets, confidential, and/or proprietary information.

### a.   **Defendants' Position re OT RFP 101**

One Tech and Adaptive respectfully refer the Court to section II.C.1.a above regarding defendant's position about materials related to other litigation and enforcement efforts.

### b.   ConsumerInfo's Position re OT RFP 101

In the meet and confer process, ConsumerInfo agreed to produce all of its cease and desist correspondence concerning the trademarks at issue in this case.  In addition to producing documents from its regularly maintained file of cease and desist letters, ConsumerInfo agreed to run keyword searches to uncover additional documents concerning enforcement efforts and produce documents discovered as a result of those searches.  Examples of these keywords include:

- (infring! or violat! or copy or copie!) /s (!FreeCreditReport! or "Triple Advantage" or Bandguy or "Band guy" or "Dream Girl" or "New Job" or Smiley)
- (infring! or violat! or copy or copie!) /s ConsumerInfo! /s (copyright or trademark or "trade dress")
- cease and desist

(Ramallo Decl. ¶ 17.)  In total, Defendants' keywords require review of over 70,000 documents.  ConsumerInfo is in the midst of this review process and will produce responsive documents.  Accordingly, Defendants' motion is harassing and pointless.

### 7.   OT RFP No. 134

**REQUEST FOR PRODUCTION NO. 134:**

All DOCUMENTS produced in this litigation which were produced by any party or third-party in THE MIGHTY NET LITIGATION.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 134:**

ConsumerInfo incorporates by reference the General Objections above as though fully set forth herein and further objects to the request on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence, is overbroad and unduly burdensome.  ConsumerInfo objects to the request to the extent it seeks production of information that includes trade secrets, confidential, and/or proprietary information, including those of parties other than ConsumerInfo.

1

#### a.      Defendants' Position re OT RFP 134

One Tech and Adaptive respectfully refer the Court to section II.C.1.a above regarding defendant's position about materials related to other litigation and enforcement efforts.

#### b.      ConsumerInfo's Position re OT RFP 134

ConsumerInfo respectfully refers the Court to section II.C.1.b. above regarding ConsumerInfo's position about documents produced in the *Mighty Net* litigation.

### 8.      OT RFP No. 135

**REQUEST FOR PRODUCTION NO. 135:**

All DOCUMENTS which were filed under seal in THE MIGHTY NET LITIGATION.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 135:**

ConsumerInfo incorporates by reference the General Objections above as though fully set forth herein and further objects to the request on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence, is overbroad and unduly burdensome.  ConsumerInfo objects to the request to the extent it seeks production of information that includes trade secrets, confidential, and/or proprietary information, including those of parties other than ConsumerInfo.

#### a.      Defendants' Position re OT RFP 135

One Tech and Adaptive respectfully refer the Court to section II.C.1.a above regarding defendant's position about materials related to other litigation and enforcement efforts.

#### b.      ConsumerInfo's Position re OT RFP 135

ConsumerInfo respectfully refers the Court to section II.C.1.b. above regarding ConsumerInfo's position about documents produced in the *Mighty Net* litigation.

### 9.     OT RFP No. 136

**REQUEST FOR PRODUCTION NO. 136:**

> All transcripts of depositions in THE MIGHTY NET LITIGATION.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 136:**

> ConsumerInfo incorporates by reference the General Objections above as though fully set forth herein and further objects to the request on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence, is overbroad and unduly burdensome. ConsumerInfo objects to the request to the extent it seeks production of information that includes trade secrets, confidential, and/or proprietary information, including those of parties other than ConsumerInfo.

#### a.     Defendants' Position re OT RFP 136

> One Tech and Adaptive respectfully refer the Court to section II.C.1.a above regarding defendant's position about materials related to other litigation and enforcement efforts.

#### b.     ConsumerInfo's Position re OT RFP 136

> ConsumerInfo respectfully refers the Court to section II.C.1.b. above regarding ConsumerInfo's position about depositions taken in the *Mighty Net* litigation.

### 10.     OT RFP No. 138

**REQUEST FOR PRODUCTION NO. 138:**

> All declarations or affidavits prepared or obtained in connection with THE MIGHTY NET LITIGATION.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 138:**

> ConsumerInfo incorporates by reference the General Objections above as though fully set forth herein and further objects to the request on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence, is overbroad and unduly burdensome. ConsumerInfo objects to the request to the extent it seeks production of information that includes trade secrets, confidential,

and/or proprietary information, including those of parties other than ConsumerInfo. ConsumerInfo further objects on the grounds that all non-confidential and responsive declarations are equally available to Defendant and are a matter of public record.

### a.    Defendants' Position re OT RFP 138

One Tech and Adaptive respectfully refer the Court to section II.C.1.a above regarding defendant's position about materials related to other litigation and enforcement efforts.

### b.    ConsumerInfo's Position re OT RFP 138

ConsumerInfo respectfully refers the Court to section II.C.1.b. above regarding ConsumerInfo's position about declarations obtained in the *Mighty Net* litigation.

### 11.    OT RFP No. 139

**REQUEST FOR PRODUCTION NO. 139:**

All non-privileged DOCUMENTS that mention, discuss, refer to or constitute communications regarding THE MIGHTY NET LITIGATION or the facts underlying the claims or defenses in THE MIGHTY NET LITIGATION.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 139:**

ConsumerInfo incorporates by reference the General Objections above as though fully set forth herein and further objects to the request on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence, is overbroad and unduly burdensome.  Further, the request seeks documents protected by the work product doctrine.  ConsumerInfo objects to the request to the extent it seeks production of information that includes trade secrets, confidential, and/or proprietary information, including those of parties other than ConsumerInfo.

### a.    Defendants' Position re OT RFP 139

One Tech and Adaptive respectfully refer the Court to section II.C.1.a above regarding defendant's position about materials related to other litigation and

1 enforcement efforts.

2 **b.    ConsumerInfo's Position re OT RFP 139**

3 ConsumerInfo respectfully refers the Court to section II.C.1.b. above

4 regarding ConsumerInfo's position about materials related to the *Mighty Net*

5 litigation.

6 **12.    OT RFP No. 140**

7 **REQUEST FOR PRODUCTION NO. 140:**

8 All DOCUMENTS produced in this litigation which were produced by

9 any party or third-party in THE WILLMS LITIGATION.

10 **RESPONSE TO REQUEST FOR PRODUCTION NO. 140:**

11 ConsumerInfo incorporates by reference the General Objections above

12 as though fully set forth herein and further objects to the request on the grounds that

13 it is not reasonably calculated to lead to the discovery of admissible evidence, is

14 overbroad and unduly burdensome.  ConsumerInfo objects to the request to the

15 extent it seeks production of information that includes trade secrets, confidential,

16 and/or proprietary information, including those of parties other than ConsumerInfo.

17 **a.    Defendants' Position re OT RFP 140**

18 One Tech and Adaptive respectfully refer the Court to section II.C.1.a

19 above regarding defendant's position about materials related to other litigation and

20 enforcement efforts.

21 **b.    ConsumerInfo's Position re OT RFP 140**

22 ConsumerInfo respectfully refers the Court to section II.C.1.b. above

23 regarding ConsumerInfo's position about documents produced in the *Willms*

24 litigation.

25 **13.    OT RFP No. 141**

26 **REQUEST FOR PRODUCTION NO. 141:**

27 All DOCUMENTS which were filed under seal in THE WILLMS

28 LITIGATION.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 141:**

ConsumerInfo incorporates by reference the General Objections above as though fully set forth herein and further objects to the request on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence, is overbroad and unduly burdensome.  ConsumerInfo objects to the request to the extent it seeks production of information that includes trade secrets, confidential, and/or proprietary information, including those of parties other than ConsumerInfo.

### a. Defendants' Position re OT RFP 141

One Tech and Adaptive respectfully refer the Court to section II.C.1.a above regarding defendant's position about materials related to other litigation and enforcement efforts.

### b. ConsumerInfo's Position re OT RFP 141

ConsumerInfo respectfully refers the Court to section II.C.1.b. above regarding ConsumerInfo's position about documents filed in the *Willms* litigation.

### 14. OT RFP No. 142

**REQUEST FOR PRODUCTION NO. 142:**

All transcripts of depositions in THE WILLMS LITIGATION.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 142:**

ConsumerInfo incorporates by reference the General Objections above as though fully set forth herein and further objects to the request on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence, is overbroad and unduly burdensome.  ConsumerInfo objects to the request to the extent it seeks production of information that includes trade secrets, confidential, and/or proprietary information, including those of parties other than ConsumerInfo.

### a. Defendants' Position re OT RFP 142

One Tech and Adaptive respectfully refer the Court to section II.C.1.a above regarding defendant's position about materials related to other litigation and enforcement efforts.

### b.     ConsumerInfo's Position re OT RFP 142

ConsumerInfo respectfully refers the Court to section II.C.1.b. above regarding ConsumerInfo's position about depositions taken in the *Willms* litigation.

### 15.    OT RFP No. 144

**REQUEST FOR PRODUCTION NO. 144:**

All declarations or affidavits prepared or obtained in connection with THE WILLMS LITIGATION.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 144:**

ConsumerInfo incorporates by reference the General Objections above as though fully set forth herein and further objects to the request on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence, is overbroad and unduly burdensome.  ConsumerInfo objects to the request to the extent it seeks production of information that includes trade secrets, confidential, and/or proprietary information, including those of parties other than ConsumerInfo. ConsumerInfo further objects on the grounds that all non-confidential and responsive declarations are equally available to Defendant and are a matter of public record.

### a.     Defendants' Position re OT RFP 144

One Tech and Adaptive respectfully refer the Court to section II.C.1.a above regarding defendant's position about materials related to other litigation and enforcement efforts.

### b.     ConsumerInfo's Position re OT RFP 144

ConsumerInfo respectfully refers the Court to section II.C.1.b. above regarding ConsumerInfo's position about declarations obtained in the *Willms* litigation.

### 16.    OT RFP No. 145

**REQUEST FOR PRODUCTION NO. 145:**

All non-privileged DOCUMENTS that mention, discuss, refer to or

1  constitute communications regarding THE WILLMS LITIGATION or the facts

2  underlying the claims or defenses in THE WILLMS LITIGATION.

3  **RESPONSE TO REQUEST FOR PRODUCTION NO. 145:**

4        ConsumerInfo incorporates by reference the General Objections above

5  as though fully set forth herein and further objects to the request on the grounds that

6  it is not reasonably calculated to lead to the discovery of admissible evidence, is

7  overbroad and unduly burdensome.  Further, the request seeks documents protected

8  by the work product doctrine.  ConsumerInfo objects to the request to the extent it

9  seeks production of information that includes trade secrets, confidential, and/or

10  proprietary information, including those of parties other than ConsumerInfo.

11          **a.**    **Defendants' Position re OT RFP 145**

12        One Tech and Adaptive respectfully refer the Court to section II.C.1.a

13  above regarding defendant's position about materials related to other litigation and

14  enforcement efforts.

15          **b.**    **ConsumerInfo's Position re OT RFP 145**

16        ConsumerInfo respectfully refers the Court to section II.C.1.b. above

17  regarding ConsumerInfo's position about materials related to the *Mighty Net*

18  litigation.

19        **17.**    **ADAPTIVE RFP No. 85**

20  **REQUEST FOR PRODUCTION NO. 85:**

21        ALL DOCUMENTS REFERRING TO OR EVIDENCING prior

22  enforcements efforts or litigation relating to OR involving the CIC

23  TRADEMARKS, CIC COPYRIGHTS, and/or CIC TRADE DRESS, including

24  copies of all cease and desist letters, documents previously filed OR produced in

25  ANY litigation, AND ANY settlement agreements.

26  **RESPONSE TO REQUEST FOR PRODUCTION NO. 85:**

27        ConsumerInfo incorporates by reference the General Objections above

28  as though fully set forth herein and further objects to the request on the grounds that

1   it is grossly overbroad, unduly burdensome, vague, ambiguous, and seeks

2   information not relevant to any claim or defense in this matter, nor reasonably

3   calculated to lead to the discovery of admissible evidence.  Further, the request

4   seeks documents protected by the attorney-client privilege and/or work product

5   privilege.  Finally, ConsumerInfo objects to the request to the extent it seeks

6   production of information that includes trade secrets, confidential and/or

7   proprietary information.

8              **a.    Defendants' Position re ADAPTIVE RFP 85**

9              One Tech and Adaptive respectfully refer the Court to section II.C.1.a

10  above regarding defendant's position about materials related to other litigation and

11  enforcement efforts.

12             **b.    ConsumerInfo's Position re ADAPTIVE RFP 85**

13             ConsumerInfo respectfully refers the Court to section II.C.1.b. above

14  regarding ConsumerInfo's position about materials related to the *Mighty Net* and

15  *Willms* litigation.

16  **D.    SURVEYS RELATED TO CONSUMERINFO'S TRADEMARKS**
        **[OT RFP Nos. 52-53 and 70-72; Adaptive RFP Nos. 46-47]**

17

18         **1.    OT RFP No. 52**

19  **REQUEST FOR PRODUCTION NO. 52:**

20             All DOCUMENTS that constitute, discuss, or mention consumer

21  surveys regarding the term "freecreditreport.com," including any surveys that

22  demonstrate its strength, or lack thereof, its distinctiveness, or lack thereof, or the

23  association in the minds of consumers, or lack thereof, between the term and

24  YOUR products and services.

25  **RESPONSE TO REQUEST FOR PRODUCTION NO. 52:**

26             ConsumerInfo incorporates by reference the General Objections above

27  as though fully set forth herein and further objects to the request on the grounds that

28  it is overbroad and unduly burdensome.  Further, the request seeks documents

1  protected by the attorney-client privilege and/or work product privilege.

2  ConsumerInfo objects to the request to the extent it seeks production of information

3  that includes trade secrets, confidential, and/or proprietary information.  Subject to

4  and without waiving the foregoing objections, ConsumerInfo will produce relevant,

5  responsive, non-privileged, non-protected documents in its possession, custody or

6  control, if any, subject to a suitable protective order.

7  ### a.      Defendants' Position re OT RFP 52

8  　　　　ConsumerInfo must be compelled to produce documents responsive to

9  OT RFP No. 52.  This request, together with OT RFP Nos. 53 and 70-72 and

10  Adaptive RFP Nos. 46-47, *seeks ConsumerInfo's documents concerning*

11  *consumer surveys and studies relevant to its alleged intellectual property rights.*

12  In its initial responses and over the course of the parties' meet and confer efforts,

13  ConsumerInfo has agreed to produce a single survey concerning secondary

14  meaning that it conducted for and submitted to the USPTO in prosecution of its

15  application for the freecreditreport.com trademark at the heart of this case.

16  Korovilas Decl. ¶ 11.

17  　　　　In response to these Defendants' requests for documents concerning

18  remaining surveys, ConsumerInfo has indicated that there are additional surveys but

19  has gamely responded that it will produce only the single survey concerning

20  secondary meaning, as well as additional discovery during the expert discovery

21  phase, to the extent it exists.  These withheld surveys, whether specific to trademark

22  infringement analysis (e.g., secondary meaning, strength of the mark or likelihood

23  of confusion), or more general marketing surveys (consumer awareness, brand

24  equity, etc.), are relevant to this litigation in that they specifically concern the

25  intellectual property that ConsumerInfo claims Adaptive and One Tech have

26  infringed.  It is not fair to allow ConsumerInfo to choose a single survey which

27  benefits its case, while surveys which may damage its case are withheld.  If a

28  survey speaks to ConsumerInfo's alleged trademarks in virtually any capacity, that

survey may yield highly relevant information concerning the validity of the marks (genericness or merely descriptive), the strength of the marks (and, therefore, the scope of protection) or the likelihood of confusion between ConsumerInfo's trademarks and Defendants' marks and products.  Such surveys are also directly relevant to One Technologies' claims for cancellation of the FREECREDITREPORT.COM, fraud on the PTO and antitrust violations.

In the Parties' telephonic meet and confer discussions, ConsumerInfo has inappropriately invoked the work-product doctrine to withhold these responsive documents.  *See* Donoian Decl., ¶ 8; Korovilas, ¶ 11.  Adaptive and One Tech have no way of evaluating the applicability of the work product doctrine to the surveys at issue because ConsumerInfo has not provided any information about the withheld surveys or the appurtenant litigation, nor has it provided a privilege log.  Nonetheless, these surveys may fall into the following categories that, for the reasons discussed in detail below, do not merit protection pursuant to the work product doctrine: (1) marketing or business surveys not created in anticipation of or in connection with litigation; (2) surveys used, relied upon, produced and/or received in other litigation; and (3) surveys commissioned or generated in other litigation but not produced or relied upon.  Simply put, these surveys go to the heart of the case.  Cloaking this information under the work product doctrine is completely improper without the showing of a foundation for the privilege or an agreement to present the surveys to the court so such a privilege determination could be made.

### (1)   Surveys Not Created In Anticipation of Litigation Are Not Privileged

Surveys may be eligible for protection as work product when they are prepared by or for a party or his representative in anticipation of litigation.  Fed. R. Civ. P. 26(b)(3).  Documents created in the "ordinary course of business" are not protected.  *Griffith v. Davis*, 161 F.R.D. 687, 698 (C.D. Cal. 1995).  The party invoking the work-product doctrine has the burden of demonstrating its

applicability in specific instances, rather than merely asserting protection in a blanket fashion.  *Green v. Baca*, 226 F.R.D. 624, 652 (C.D. Cal. 2005); *United States v. City of Torrance*, 163 F.R.D. 590, 593 (C.D. Cal. 1995).

To date, ConsumerInfo has not produced a privilege log identifying any context for the withheld surveys, or which litigation it relates to, so it is impossible to know that the surveys are even eligible for work-product protection.  If ConsumerInfo's withheld surveys were generated in the normal course of business, such as surveys conducted internally or by advertising agencies or market research firms for business purposes, such surveys would be discoverable.

**(2)** **Surveys Produced or Relied Upon In Litigation Are Not Privileged**

ConsumerInfo may also not reasonably withhold any surveys created in anticipation of or in connection with litigation that were actually produced or received by ConsumerInfo or given to a testifying expert in any prior litigation.  To the extent such documents exist, no privilege attaches to documents produced or received in litigation and surveys may not be withheld on that basis.

"[W]ork product protection may be waived by disclosure or other conduct, such as testimonial use of the materials."  *Magnivision, Inc. v. Bonneau Co.*, No. CV 91-2167-DT, 2003 WL 23320550, at *3 (C.D. Cal. Dec. 18, 2003) (citing *United States v. Nobles*, 422 U.S. 225, 239 (1975)).  "Absent an extraordinary showing of unfairness, well beyond the interests generally protected by the work product doctrine, written and oral communications from a lawyer to an *expert* that are related to matters about which the expert will offer testimony are discoverable."  *Id.* (citing *Intermedics, Inc. v. Ventritex, Inc.*, 139 F.R.D. 384 (N.D. 1991) (emphasis in original).  Furthermore, "'the work-product privilege has been held not to apply to opinions and documents generated or consulted by an expert retained to testify at trial.'"  *City of Torrance*, 163 F.R.D. 590, 593 (C.D. Cal. 1995) (quoting *County of Suffolk v. Long Island Lighting Co.*, 122 F.R.D. 120, 122

1   (E.D.N.Y. 1988)).  "The scope of discovery should not be limited to documents

2   relied on by the expert in support of his opinions, but should extend to documents

3   considered but rejected by the testifying expert".  *Id.* at 593-94 (quoting

4   *Intermedics*, 139 F.R.D. at 390 n.6) (internal quotation marks omitted).

5   Accordingly, ConsumerInfo has no basis upon which to withhold surveys and

6   survey-related documents that were produced by, relied upon or received by

7   ConsumerInfo in connection with other litigation.

8           **(3)     Surveys Not Produced In Litigation Constitute
                       Factual Information Not Subject to the Work
9                      Product Doctrine**

10          ConsumerInfo may also not reasonably withhold the underlying

11  factual content of any survey, including the survey itself, even if it was

12  commissioned or generated in anticipation of litigation and was not actually

13  produced, relied upon or otherwise used in litigation.  The surveys themselves,

14  unlike the attorney's mental impressions on the content thereof, contain factual

15  matter not subject to work product protection.  In this respect, the underlying

16  content of a survey is analogous to the underlying content of trademark search

17  reports, which courts regularly require to be produced, while the attorney's opinion

18  or impressions resulting from that report remain privileged  *See Cytosport, Inc. v.*

19  *Nature's Best, Inc.*, No. CIV S-06-1799 DFL EFB, 2007 WL 1040993 (E.D. Cal.

20  Apr. 4, 2007) ("The search reports, by themselves, contain factual information and

21  not an attorney's mental impressions."); *Puma AG Rudolf Dassler Sport v. Payless*

22  *ShoeSource, Inc.,* 2008 WL 686592, at *2 (D. Mass. Mar. 14, 2008) (compelling

23  the production of, among other things, all "trademark searches, investigations, or

24  surveys conducted by or on behalf of [plaintiff] in connection with its [asserted]

25  mark"); *see also* 3 McCarthy on Trademarks and Unfair Competition § 20:112 (4th

26  ed.) ("As to the discoverability of trademark search reports, the [Trademark] Board

27  has taken the position that while the contents of a search report are not privileged

28  from discovery, an attorney's opinion as to the legal significance of the report is

1  protected…"); *Fisons Limited v. Capability Brown Limited*, 209 U.S.P.Q. 167, 170-

2  171 (T.T.A.B. 1980) ("While a search report itself is not privileged, any opinion by

3  applicant's attorney relevant thereto is protected by the attorney client privilege.");

4  *Masterpiece of Pennsylvania, Inc. v. Consolidated Novelty Co*., 183 U.S.P.Q. 344,

5  345 (S.D.N.Y. 1974) (finding that a trademark search report is "not subject to

6  protection under the privilege asserted or under the work product doctrine. No

7  communication to or by an attorney is sought…. Nor has there been any showing

8  that matter prepared for litigation would be disclosed.").

9  **(4)   Defendants Have a Substantial Need for Surveys**
10  **and Survey-Related Documents Otherwise**
**Subject to the Work Product Doctrine**

11  Even if ConsumerInfo could reasonably claim work product privilege

12  for its withheld surveys and survey-related documents, which it cannot, the

13  privilege is qualified and may be overcome by the substantial need of the

14  Defendants.  Documents subject to work-product protection may be discoverable if

15  the party requesting discovery "shows that it has substantial need for the materials

16  to prepare its case and cannot, without undue hardship, obtain their substantial

17  equivalent by other means."  Fed. R. Civ. P. 26(b)(3)(A)(ii); *see also Green v.*

18  *Baca*, 226 F.R.D. 624, 652.

19  The structure of Rule 26 creates two categories of work product,

20  "ordinary" (or "fact") work product and "opinion" work product.  *See Green*, 226

21  F.R.D. at 652.  "Fact work product is discoverable on a showing of substantial need

22  and an inability to secure a substantial equivalent by alternate means without undue

23  hardship."  *Green*, 226 F.R.D. at 652.  Based on the timing of the withheld surveys,

24  at which Defendants may only speculate without a privilege log or any other

25  identifying information, the surveys themselves may be germane to allegations

26  against ConsumerInfo, including allegations of fraud specifically raised by One

27  Tech in its counterclaims.  Neither One Tech nor Adaptive would be able to

28  recreate the results of such a survey in the present time and the survey may capture

1   information that is now not otherwise available.  Accordingly, Defendants have a

2   substantial need for any alleged work product surveys in ConsumerInfo's

3   possession that it refuses to produce.

4              **b.      ConsumerInfo's Position re OT RFP 52**

5              In the meet and confer process, ConsumerInfo explained to Defendants that it

6   is aware of only one non-work product survey concerning the mark

7   FREECREDITREPORT.COM.  ConsumerInfo agreed to produce this survey.

8   (Ramallo Decl. ¶ 2.)  In addition, ConsumerInfo agreed to run an electronic

9   keyword search for terms such as "FreeCreditReport! AND Survey," "FCR! AND

10  Survey," and "(survey or study or analysis) /100 (str*ng! or distinct! Or "secondary

11  meaning") /100 ("trade dress" copyright trademark "intellectual property")" and

12  produce any responsive non-privileged, non-protected documents that are

13  discovered as a result of that search.  (*Id.*  ¶ 3.)  Thus, despite the implication of

14  Defendants' harassing motion, ConsumerInfo has already agreed to produce all

15  non-protected surveys responsive to this request.  (*Id.* ¶ 5.)  All that is genuinely in

16  dispute between the parties is whether ConsumerInfo should be required to produce

17  any surveys created by non-testifying experts for purposes of litigation.

18             Defendants' principal argument is that surveys conducted by non-testifying

19  experts are factual matters, not subject to the work product protection.  The Federal

20  Rules of Civil Procedure, however, specifically include facts known to a non-

21  testifying expert as subject to the work product protection.  Rule 26(b)(4)(B)

22  provides:

23             Ordinarily, a party may not . . . discover **facts known** or
             opinions held by an expert who has been retained or
24             specifically employed by another party in anticipation of
             litigation or to prepare for trial and who is not expected to
25             be called as a witness at trial.

26  Fed. R. Civ. P. 26(b)(4)(B) (emphasis added).  The purpose behind this rule is "the

27  policy consideration of 'allowing counsel to obtain the expert advice they need to

28  properly evaluate and present their clients' positions without fear that every

1   consultation with an expert may yield grist for the discovery mill.'" *In re Cedant*
2   *Corp. Sec. Litig.*, 343 F.3d 658, 665 (3d Cir. 2003) (quoting Moore's Federal
3   Practice § 26.80[2], at 26-236.5).

4       All of the cases cited by Defendants are not on point.  They all concern
5   trademark search reports rather than disclosure of information from a non-testifying
6   expert specifically retained for litigation.  Because defendants improperly seek
7   surveys conducted by non-testifying experts retained for litigation purposes, the
8   motion to compel should be denied.  *Willaim A. Gross Constr. Assocs. v. Am. Mfrs.*
9   *Mut. Ins. Co.*, 262 F.R.D. 354, 365 (S.D.N.Y. 2009) (denying motion to compel
10  production of non-testifying expert materials).

11      Defendants also argue that they may discover a non-testifying expert's
12  materials on a showing of "substantial need."  This is not the law either.  While the
13  "substantial need" standard applies to ordinary work product materials, work
14  product associated with non-testifying experts can be discovered only "on showing
15  exceptional circumstances under which it is impracticable for the party to obtain
16  facts or opinions on the same subject by other means."  Fed. R. Civ. P.
17  26(b)(4)(B)(ii).

18      Here, Defendants vaguely argue that ConsumerInfo's non-testifying expert
19  surveys "may be germane to allegations against ConsumerInfo, including
20  allegations of fraud" and that Defendants would be "[un]able to recreate the results
21  of such a survey in the present time."  Defendants make no attempt to explain why
22  they cannot conduct their own surveys on the subject matter of their allegations or
23  why they cannot obtain facts concerning their allegations from other sources.
24  Instead, they simply argue they cannot recreate the exact surveys conducted by
25  ConsumerInfo's experts.  This is far from an exceptional circumstance warranting
26  an impingement of the work product protection for non-testifying experts.
27  Accordingly, the motion to compel should be denied.

28

## 2.    OT RFP No. 53

**REQUEST FOR PRODUCTION NO. 53:**

All DOCUMENTS that constitute, discuss, or mention consumer surveys regarding the term "triple advantage," including any surveys that demonstrate its strength, or lack thereof, its distinctiveness, or lack thereof, or the association in the minds of consumers, or lack thereof, between the term and YOUR products and services.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 53:**

ConsumerInfo incorporates by reference the General Objections above as though fully set forth herein and further objects to the request on the grounds that it is overbroad and unduly burdensome.  Further, the request seeks documents protected by the attorney-client privilege and/or work product privilege. ConsumerInfo objects to the request to the extent it seeks production of information that includes trade secrets, confidential, and/or proprietary information.  Subject to and without waiving the foregoing objections, ConsumerInfo will produce relevant, responsive, non-privileged, non-protected documents in its possession, custody or control, if any, subject to a suitable protective order.

### a.    Defendants' Position re OT RFP 53

One Tech and Adaptive respectfully refer the Court to section II.D.1.a above regarding defendant's position about ConsumerInfo's surveys.

### b.    ConsumerInfo's Position re OT RFP 53

During the meet and confer process, ConsumerInfo explained to Defendants that it was not aware of any consumer surveys regarding the TRIPLE ADVANTAGE trademark.  Nevertheless, ConsumerInfo agreed to run an electronic search for keywords such as, "triple advantage AND survey" and "(survey or study or analysis) /100 (str*ng! or distinct! Or "secondary meaning") /100 ("trade dress" copyright trademark "intellectual property")" and produce any responsive documents discovered as a result of that search.  In total, Defendants' keywords

require review of over 70,000 documents.  ConsumerInfo is in the midst of this review process and will produce responsive documents.  (Ramallo Decl. ¶¶ 3-4.)  Accordingly, Defendants' motion is harassing and pointless.

### 3.   OT RFP No. 70

**REQUEST FOR PRODUCTION NO. 70:**

All DOCUMENTS that constitute, discuss, or mention consumer surveys regarding confusion between the YOUR alleged mark in "freecreditreport.com" and One Technologies LP's use of the websites and advertising mentioned in YOUR complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 70:**

ConsumerInfo incorporates by reference the General Objections above as though fully set forth herein further objects to the request on the grounds that it seeks documents protected by the attorney-client privilege and/or work product privilege.  ConsumerInfo objects to the request to the extent it seeks production of information that includes trade secrets, confidential, and/or proprietary information.  ConsumerInfo further objects to the request to the extent that it prematurely seeks expert reports prior to the expert disclosure date in this matter.  Subject to and without waiving the foregoing objections, ConsumerInfo will produce relevant, responsive, non-privileged, non-protected documents in its possession, custody or control, if any, subject to a suitable protective order.

### a.   Defendants' Position re OT RFP 70

One Tech and Adaptive respectfully refer the Court to section II.D.1.a above regarding defendant's position about ConsumerInfo's surveys.

### b.   ConsumerInfo's Position re OT RFP 70

During the meet and confer process, ConsumerInfo explained to Defendants that it was not aware of any consumer surveys regarding confusion between FREECREDITREPORT.COM and One Tech's websites.  Nevertheless, ConsumerInfo agreed to run an electronic search for keywords consisting of One

Tech's business names and websites and produce any responsive documents discovered as a result of that search. Examples of such keywords include:

- "One Tech!"
- !FreeCreditReportsInstantly!
- !FreeCreditReportPlusScore!
- !FreeCreditReportWebsite!
- !ProtectMyId.Us
- !FreeCreditReport.co.uk
- !FreeCreditReports360!
- !FCR360!
- confus! /p (freecreditreportsinstantly! or FCRI! or 2009freecreditreport! or 2010freecreditreport! or 2009fcr! or 2010fcr! or freecreditreportplusscore! or FCRPS or freecreditreportwebsite! or fcrw! or protectmyid! or pmi! or fcrw or freecreditreportwebsite.com or freecreditreport.co.uk or fcr.co.uk)

In total, Defendants' keywords require review of over 70,000 documents. ConsumerInfo is in the midst of this review process and will produce responsive documents. (Ramallo Decl. ¶¶ 3-4.) Accordingly, Defendants' motion is harassing and pointless.

### 4.    OT RFP No. 71

**REQUEST FOR PRODUCTION NO. 71:**

All DOCUMENTS that constitute, discuss, or mention consumer surveys regarding the term "mycredithealth" or "mycredithealth.com" and YOUR use of the words "my," "credit," and "health" alone or in combination.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 71:**

ConsumerInfo incorporates by reference the General Objections above as though fully set forth herein further objects to the request on the grounds that it

seeks documents protected by the attorney-client privilege and/or work product privilege.  ConsumerInfo objects to the request to the extent it seeks production of information that includes trade secrets, confidential, and/or proprietary information.  ConsumerInfo further objects to the request to the extent that it prematurely seeks expert reports prior to the expert disclosure date in this matter.  Subject to and without waiving the foregoing objections, ConsumerInfo will produce relevant, responsive, non-privileged, non-protected, non-expert documents in its possession, custody or control, if any, subject to a suitable protective order.

### a.    Defendants' Position re OT RFP 71

One Tech and Adaptive respectfully refer the Court to section II.D.1.a above regarding defendant's position about ConsumerInfo's surveys.

### b.    ConsumerInfo's Position re OT RFP 71

During the meet and confer process, ConsumerInfo explained to Defendants that it was not aware of any consumer surveys regarding One Tech's alleged MyCreditHealth trademark.  Nevertheless, ConsumerInfo agreed to run an electronic search for keywords consisting of One Tech's business names and websites and produce any responsive documents discovered as a result of that search.  Examples of such keywords include:

- "One Tech!"
- MyCreditHealth
- "My Credit Health"
- My /10 credit /10 Health

In total, Defendants' keywords require review of over 70,000 documents. ConsumerInfo is in the midst of this review process and will produce responsive documents.  (Ramallo Decl. ¶¶ 3-4.)  Accordingly, Defendants' motion is harassing and pointless.

5.      OT RFP No. 72

**REQUEST FOR PRODUCTION NO. 72:**

All DOCUMENTS that constitute, discuss, or mention consumer surveys regarding the term "spendonlife" or "spendonlife.com" and YOUR use of the words "spend," "on," and "life" alone or in combination.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 72:**

ConsumerInfo incorporates by reference the General Objections above as though fully set forth herein further objects to the request on the grounds that it seeks documents protected by the attorney-client privilege and/or work product privilege.  ConsumerInfo objects to the request to the extent it seeks production of information that includes trade secrets, confidential, and/or proprietary information. ConsumerInfo further objects to the request to the extent that it prematurely seeks expert reports prior to the expert disclosure date in this matter.  Subject to and without waiving the foregoing objections, ConsumerInfo will produce relevant, responsive, non-privileged, non-protected, non-expert documents in its possession, custody or control, if any, subject to a suitable protective order.

a.      **Defendants' Position re OT RFP 72**

One Tech and Adaptive respectfully refer the Court to section II.D.1.a above regarding defendant's position about ConsumerInfo's surveys.

b.      **ConsumerInfo's Position re OT RFP 72**

During the meet and confer process, ConsumerInfo explained to Defendants that it was not aware of any consumer surveys regarding variations of the term "Spend On Life."  Nevertheless, ConsumerInfo agreed to run an electronic search for keywords consisting of One Tech's business names and websites and produce any responsive documents discovered as a result of that search.  Examples of such keywords include:

- "Spend On Life"
- Spend /10 On /10 life

- Spendonlife

In total, Defendants' keywords require review of over 70,000 documents. ConsumerInfo is in the midst of this review process and will produce responsive documents.  (Ramallo Decl. ¶¶ 3-4.)  Accordingly, Defendants' motion is harassing and pointless.

## 6.   ADAPTIVE RFP No. 46

**REQUEST FOR PRODUCTION NO. 46:**

ALL DOCUMENTS that REFER TO OR EVIDENCE consumer surveys regarding ANY CIC TRADEMARKS, including ANY surveys that demonstrate strength, or lack thereof, distinctiveness, or lack thereof; OR association in the minds of customers, OR lack thereof, between ANY CIC TRADEMARK AND YOUR products OR services.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 46:**

ConsumerInfo incorporates by reference the General Objections above as though fully set forth herein further objects to the request on the grounds that it is grossly overbroad, unduly burdensome, and seeks information not relevant to any claim or defense, nor reasonably calculated to lead to the discovery of admissible evidence.  ConsumerInfo objects to the request to the extent it seeks production of information that includes trade secrets, confidential, and/or proprietary information.

### a.   Defendants' Position re ADAPTIVE RFP 46

One Tech and Adaptive respectfully refer the Court to section II.D.1.a above regarding defendant's position about ConsumerInfo's surveys.

### b.   ConsumerInfo's Position re OT RFP 46

During the meet and confer process, ConsumerInfo explained to Defendants that it was aware of only one non-work product survey concerning its marks and agreed to produce it.  Nevertheless, ConsumerInfo agreed to run an electronic search for keywords geared at uncovering any additional surveys and produce any responsive, non-privileged, non-protected documents discovered as a result of that

search.  Examples of such keywords include:

- "trade dress" /s (distinct! or "secondary meaning" or "non functional" or function! or nonfunctional or non-functional)
- (bandguy or "band guy") and survey
- "triple advantage" and survey
- freecreditreport! And survey
- fcr! And survey

In total, Defendants' keywords require review of over 70,000 documents. ConsumerInfo is in the midst of this review process and will produce responsive documents.  (Ramallo Decl. ¶¶ 3-4.)  Accordingly, Defendants' motion is harassing and pointless.

### 7.   ADAPTIVE RFP No. 47

**REQUEST FOR PRODUCTION NO. 47:**

ALL DOCUMENTS that REFER TO OR EVIDENCE consumer surveys regarding ANY CIC TRADE DRESS, including ANY surveys that demonstrate strength, or lack thereof; distinctiveness, or lack thereof; OR association in the minds of customers, OR lack thereof, between ANY CIC TRADE DRESS AND YOUR products OR services.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 47:**

ConsumerInfo incorporates by reference the General Objections above as though fully set forth herein further objects to the request on the grounds that it is grossly overbroad, unduly burdensome, and seeks information not relevant to any claim or defense, nor reasonably calculated to lead to the discovery of admissible evidence.  ConsumerInfo objects to the request to the extent it seeks production of information that includes trade secrets, confidential, and/or proprietary information.

### a.   Defendants' Position re ADAPTIVE RFP 47

One Tech and Adaptive respectfully refer the Court to section II.D.1.a

1  above regarding defendant's position about ConsumerInfo's surveys.

2           **b.**    **ConsumerInfo's Position re OT RFP 47**

3       During the meet and confer process, ConsumerInfo explained to Defendants

4  that it was aware of only one non-work product survey concerning its marks and

5  agreed to produce it. Nevertheless, ConsumerInfo agreed to run an electronic

6  search for keywords geared at uncovering any additional surveys and produce any

7  responsive, non-privileged, non-protected documents discovered as a result of that

8  search. Examples of such keywords include:

9          • "trade dress" /s (distinct! or "secondary meaning" or "non

10           functional" or function! or nonfunctional or non-functional)

11         • (bandguy or "band guy") and survey

12         • "triple advantage" and survey

13         • freecreditreport! And survey

14         • fcr! And survey

15      In total, Defendants' keywords require review of over 70,000 documents.

16 ConsumerInfo is in the midst of this review process and will produce responsive

17 documents. (Ramallo Decl. ¶¶ 3-4.) Accordingly, Defendants' motion is harassing

18 and pointless.

19

20 DATED: March 22, 2010      RHONDA R. TROTTER, Bar Number 169241
                             rtrotter@kayescholer.com

21                              THEODORE W. MAYA, Bar Number 223242
                             tmaya@kayescholer.com

22                              OSCAR RAMALLO, Bar Number 241487
                             oramallo@kayescholer.com

23                              KAYE SCHOLER LLP
                             1999 Avenue of the Stars, Suite 1700

24                              Los Angeles, California 90067
                             Telephone: (310) 788-1000

25                              Facsimile: (310) 788-1200

26                              By: _____

27                                 Oscar Ramallo

28                            Attorneys for Plaintiff and Counter-Defendant
                             CONSUMERINFO.COM, INC.

CV 09-3783-VBF(MANX)
JOINT STIPULATION RE DEFENDANTS'
JOINT MOTION TO COMPEL

NY 240,125,811v1 3-9-10

1

2    DATED: March 22, 2010          GREGORY A. NYLEN, Bar Number 151129
                                    GREENBERG TRAURIG LLP
3                                   2450 Colorado Ave., Ste. 400E
                                    Santa Monica, CA 90404
4                                   Telephone: 310-586-7700
                                    Facsimile: 310-586-7800
                                    nyleng@gtlaw.com
5
6                                   JAMES H. DONOIAN (Admitted *pro hac vice*)
                                    donoianj@gtlaw.com
7                                   GREENBERG TRAURIG LLP
                                    200 Park Ave.
8                                   New York, NY 10166
                                    Telephone: 212-801-9200
9                                   Facsimile: 212-801-6400

10                                  By: _____
                                        James H. Donoian
11
                                    Attorneys for Defendant and Counter-Claimant
12                                  ADAPTIVE MARKETING LLC

13   DATED: ~~January~~ March 23, 2010

14                                  KENT B. GOSS, Bar Number 131499
                                    kgoss@orrick.com
15                                  VALERIE M. GOO, Bar Number 187334
                                    vgoo@orrick.com
16                                  SETH FREILICH, Bar Number 217321
                                    sfreilich@orrick.com
17                                  DIMITRIOS KOROVILAS, Bar Number 247230
                                    dkorovilas@orrick.com
                                    ORRICK, HERRINGTON & SUTCLIFFE LLP
18                                  777 Figueroa St., Suite 3200
                                    Los Angeles, CA 90017
19                                  Telephone: 213-629-2020
                                    Facsimile: 213-612-2429
20
                                    By: _____
21                                      Dimitrios Korovilas

22                                  Attorneys for Defendant and Counter-Claimant
                                    ONE TECHNOLOGIES LP
23

24

25

26

27

28

NY 240,125,811v1 3-9-10