1  **KRONENBERGER BURGOYNE, LLP**
2  Karl S. Kronenberger (Bar No. 226112)
   Henry M. Burgoyne, III (Bar No. 203748)
3  James V. Weixel, Jr. (Bar No. 166024)
   150 Post Street, Suite 520
4  San Francisco, CA 94108
5  Telephone:  (415) 955-1155
   Facsimile:   (415) 955-1158
6  karl@KBInternetLaw.com
7  hank@KBInternetLaw.com
   jim@KBInternetLaw.com
8

9  Attorneys for Non-Party Objectors
   JESSE WILLMS, EDIRECT,
10 1016363 ALBERTA LTD. and 1021018 ALBERTA LTD.

11

12          **UNITED STATES DISTRICT COURT**
13          **CENTRAL DISTRICT OF CALIFORNIA**
                 **WESTERN DIVISION**
14

15

16 **CONSUMERINFO.COM, INC.,** a          NO. CV-09-3783-VBF(MANx)
   California corporation,
17                                          **MEMORANDUM OF POINTS AND**
                                            **AUTHORITIES IN SUPPORT OF**
18          Plaintiff,                      **MOTION FOR PROTECTIVE**
                                            **ORDER BY NONPARTY**
19      v.                                  **OBJECTORS JESSE WILLMS,**
                                            **EDIRECT, 1016363 ALBERTA**
20                                          **LTD., AND 1021018 ALBERTA**
   **ONE TECHNOLOGIES LP**, a              **LTD.  AND FOR AWARD OF**
21 Delaware limited partnership, *et al.*   **MONETARY SANCTIONS**
22          Defendants.                     Date:  June 22, 2010
23                                          Time:  10:00 a.m.
                                            Ctrm:  580
24                                          Judge: Hon. Margaret A. Nagle
25 **AND RELATED COUNTERCLAIM.**
26

27

28

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1

## TABLE OF CONTENTS

I. INTRODUCTION AND FACTS ................................................................ 3

   A. History of the *Willms* Action, and Objectors' Business ................. 3

   B. Similarities to This Case ............................................................. 4

   C. The *Willms* Parties Obtain a Protective Order Requiring Confidential Treatment of Documents, Transcripts, and Other Materials Designated as Confidential Therein............................. 5

   D. Documents Produced and Designated in the Willms Action.......... 6

   E. ConsumerInfo Fails to Notify Objectors of the Discovery Requests in the Present Action .................................................................. 7

   F. Defendants' Joint Motion to Compel and This Court's Order ......... 9

   G. ConsumerInfo Produces Documents Without Notifying Objectors or Waiting Part the Time Required in This Court's Order .............10

   H. ConsumerInfo Refuses to Correct Its Errors ..............................11

   I. ConsumerInfo Refuses to Cooperate or Meet and Confer............12

II. ARGUMENT......................................................................................12

   A. Standards for Protective Orders.................................................12

   B. ConsumerInfo Should Have Sought Relief First from The Court that Issued the *Willms* Protective Order.......................................14

   C. The Bulk of the Materials ConsumerInfo Intends to Produce Is Wholly Irrelevant to Defendants' Case.........................................15

   D. Objectors Are Entitled to a Protective Order Prohibiting the Production of Documents Designed for Confidential Treatment Under the *Willms* Protective Order ...............................................17

   E. Objectors Are Entitled to Recover Their Attorneys' Fees And Other Monetary Sanctions From ConsumerInfo ...................................19

III. CONCLUSION .................................................................................22

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

*United States v. Columbia Broadcasting System, Inc.,* 666 F.2d 364
(9th Cir. 1982).......................................................................................12

*Jepson, Inc. v. Makita Elec. Works, Ltd.,* 30 F.3d 854 (7th Cir. 1994) ..13, 18

*Brown Bag Software v. Symantec Corp.,* 960 F.2d 1465 (9th Cir. 1992) ....13

*Nixon v. Warner Communications, Inc.,* 435 U.S. 589 .........................13, 18

*Hagestad v. Tragesser,* 49 F.3d 1430 (9th Cir. 1995) ...........................13, 18

*Phillips ex rel. Estates of Bird v. General Motors Corp.,* 307 F.3d 1206
(9th Cir. 2002) .....................................................................................13

*In re Remington Arms Co.,* 952 F.2d 1029, 1033 (8th Cir. 1991) .........13, 18

*Bittaker v. Woodford,* 331 F.3d 715 (9th Cir. 2003) ...................................13

*Beckman Industries, Inc. v. International Ins. Co.,* 966 F.2d 470
(9th Cir. 1992).....................................................................................13

*Dart Industries, Inc. v. Westwood Chem. Co.,* 649 F.2d 646
(9th Cir. 1980) .................................................................................. 14-16

*Collins and Aikman Corp. v. J. P. Stevens & Co., Inc.,* 51 F.R.D. 219
(D.S.C.1971).................................................................................14, 16-17

*Foltz v. State Farm Mut. Auto. Ins. Co.,* 331 F.3d 1122 (9th Cir. 2003) .....14

*In re Phenylpropanolamine (PPA) Products Liability Litig.,* 460 F.3d 1217
(9th Cir. 2006).....................................................................................19

*Tacori Enterprises v. Beverlly Jewellery Co.,* 253 F.R.D. 577
(C.D. Cal. 2008)...................................................................................19

*Chambers v. NASCO, Inc.,* 501 U.S. 32, 45 (1991)...................................19

*Aloe Vera of Am., Inc. v. United States,* 376 F.3d 960 (9th Cir. 2004) . 19-20

*Patelco Credit Un. v. Sahni,* 262 F.3d 897, 903 (9th Cir. 2001)  ................21

//

//

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

### Federal Statutes and Other Authorities

FED. R. CIV. P. 26(c)(1) ........................................................................ *passim*

FED. R. CIV. P. 37(a)(5) .............................................................................19

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1    Non-party Objectors Jesse Willms, eDirect, 1016363 Alberta Ltd., and
2    1021018 Alberta Ltd. (jointly, "Objectors") move for a protective order
3    forbidding plaintiff and counterdefendant ConsumerInfo.com, Inc.
4    ("ConsumerInfo") from producing materials designated as "Confidential" or
5    "Confidential-Attorneys' Eyes Only" in the action entitled *ConsumerInfo.com,*
6    *Inc. v Jesse Willms, et al.,* No. SACV 09-0055 DMG (MLGx) ("the *Willms*
7    Action"), at least until such time as Objectors complete their meet and confer
8    with Defendants One Technologies LP ("OT") and Adaptive Marketing LLC
9    ("Adaptive") (and jointly "Defendants") regarding Defendants' actual need for
10   such materials.  This Motion is made on the grounds that the bulk of such
11   designated materials have little or nothing to do with this action, and that
12   disclosure of such highly sensitive financial and marketing data – in
13   particular in a case involving two of Objectors' direct competitors – could
14   fundamentally harm Objectors' businesses.
15       Simply said, ConsumerInfo cannot be trusted to properly handle
16   Objectors' business information.  In the past months, ConsumerInfo has
17   repeatedly violated orders – one by this Court – concerning the protection of
18   that information.  The latest violation occurred last week, when despite an
19   explicit stay on the production of materials regarding Objectors,
20   ConsumerInfo voluntarily produced a range of information concerning the
21   *Willms* Action.  The previous violations began last year, when ConsumerInfo
22   repeatedly ignored Magistrate Judge Goldman's protective order in the
23   *Willms* Action which required ConsumerInfo to give Objectors notice within
24   three days of receiving any discovery request for designated materials.
25   Inexplicably, ConsumerInfo waited four and, in one case, almost eight
26   months before informing Objectors of the requests giving rise to this
27   discovery litigation.  Given the potential for inconsistent orders concerning
28   Objectors' designated information, common sense (not to mention the law)

1  dictated that ConsumerInfo proactively approach Magistrate Judge Goldman
2  for guidance. Common sense aside, had ConsumerInfo simply obeyed
3  Magistrate Judge Goldman's order and provided timely notice, all of these
4  issues almost certainly would have been settled through negotiation of the
5  sort now occurring between Objectors and Defendants.

6  The bulk of information that the Court ordered ConsumerInfo to
7  produce in its May 4, 2010 Order on Defendants' Joint Motion to Compel
8  ("the Order") is fundamentally irrelevant to this action, concerning, as was of
9  interest to ConsumerInfo, Objectors' marketing, finances and third-party
10  business relationships. While relevance is not generally to be considered on
11  a motion for protective order, it is an important factor here, where the
12  information in question pertains not to a litigant but to an uninvolved (and
13  previously unrepresented) third party, and where certain of that information
14  could, if disclosed or misused, result in irreversible damage to Objectors'
15  businesses. Objectors are direct competitors of the parties in this action.
16  There is no way that either ConsumerInfo or Defendants have sufficient
17  incentive to protect Objectors' information, much less the perspective to
18  separate useful from irrelevant. To order the wholesale production of
19  materials regarding the *Willms* Action is to fundamentally endanger
20  Objectors' businesses.

21  ConsumerInfo's handling of these discovery issues is shameful and
22  demonstrates a complete disregard for the rights of Objectors under the
23  *Willms* Protective Order and this Court's Order. The Court should order
24  ConsumerInfo and its counsel to pay monetary sanctions to Objectors in the
25  form of attorneys' fees and other costs and expenses associated with this
26  motion. Furthermore, and as more fully explained below, the Court should
27  enter a protective order barring ConsumerInfo from producing any materials
28  designated in the *Willms* Action until such time as ConsumerInfo and

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

**MPA ISO OBJECTORS' MTN FOR PROTECTIVE ORDER**

Defendants have completed their meet-and-confer.

## I.   INTRODUCTION AND FACTS

### A.   History of the *Willms* Action, and Objectors' Business.

Non-party Objectors Jesse Willms, eDirect, 1016363 Alberta Ltd. and 1021018 Alberta Ltd. (jointly, "Objectors"), the moving parties here, were defendants in an action filed by ConsumerInfo.com, Inc., plaintiff herein, in this Court on January 13, 2009, entitled *ConsumerInfo.com, Inc. v. Willms, et al.,* No. SACV 09-0055 DMG (MLGx) ("the *Willms* Action").  ConsumerInfo alleged that Objectors had infringed upon its alleged trademark rights in the term "FreeCreditReport.com" by operating a consumer credit website which used terms such as "CreditReportAmerica" and other advertising terms and elements of which ConsumerInfo claimed ownership and/or which ConsumerInfo asserted violated ConsumerInfo's proprietary rights in the "FreeCreditReport.com" name and phrase.  (Complaint in *Willms,* filed Jan. 13, 2009 in No. SACV 09-0055 DMG (MLGx), Objectors' Request for Judicial Notice ("RJN") Exhibit A.)  Objectors filed a counterclaim against ConsumerInfo in which Objectors sought the cancellation of ConsumerInfo's trademark in the "Free Credit Report" name.  (Counterclaim, filed on Feb. 19, 2009 in No. SACV 09-0055 DMG (MLGx), RJN Exhibit B.)[1]

Objectors are some of the most active members of the online commercial and marketing community in North America.  They engage in a wide range of Internet marketing campaigns, offering products and services in a range of diverse fields such as health lifestyles, financial information,

---

[1]  Amended pleadings were later filed, some of which brought certain Objectors into the *Willms* action who had not been named before.

Also, even though certain of the Objectors are technically different from each other in structure and/or identity, the non-individual Objectors are owned and controlled mainly by Objector Jesse Willms and are involved in essentially the same market activities and industry space.  For the sake of simplicity, this Motion will thus refer to all Objectors in a unified manner.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

online education, and other such areas of consumer interest.  Objectors' business consists of designing, operating, and maintaining websites and designing online advertisements (such as banner ads and other elements) through which Objectors market and sell those products and services. (Declaration of Henry M. Burgoyne in Support of Motion for Protective Order ("Burgoyne Decl."), ¶3.)  Because Objectors are involved in the same online industries as Defendants herein, market the same products and services, and conduct their marketing in similar fashion, Objectors and Defendants are clearly direct competitors of each other.

**B.    Similarities to This Case.**

Defendants One Technologies LP ("OT") and Adaptive Marketing LLC ("Adaptive") (and jointly, "Defendants") have been sued by ConsumerInfo under similar allegations as ConsumerInfo had made against Objectors in the *Willms* Action.  ConsumerInfo alleges here that "ConsumerInfo is the leading online provider of credit reports," that "Defendants are all competitors of ConsumerInfo," that Defendants are involved in "marketing and operating websites that sell credit reports, credit scores, credit monitoring, and/or identity theft monitoring," and that they do so with domain names, website addresses, and terms that ConsumerInfo contends infringe upon ConsumerInfo's alleged trademark right in the "Free Credit Report" scheme.  (First Amended Complaint, Doc. 71, ¶¶1, 32, 33-60.)  It is thus immediately obvious that in addition to sharing the dubious distinction of having been sued by ConsumerInfo, Defendants and Objectors also share reasonably similar positions in the online marketing and commerce space, in that Defendants and Objectors all develop and market online consumer credit reporting and information services, and advertise those services under the prevailing online model of marketing through affiliates and publishers.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

4

**C.    The *Willms* Parties Obtain a Protective Order Requiring Confidential Treatment of Documents, Transcripts, and Other Materials Designated as Confidential Therein.**

As discovery commenced in the *Willms* Action, ConsumerInfo and Objectors recognized that much of the material subject to discovery would involve sensitive proprietary information of Objectors and ConsumerInfo. Accordingly, Objectors and ConsumerInfo crafted a protective order to govern discovery in the *Willms* action.  (Stipulation and Order Concerning Discovery and Confidentiality ("the *Willms* Protective Order"), filed May 12, 2009 in No. SACV 09-0055 DMG (MLGx), RJN Exhibit C.)  Like most protective orders in cases involving proprietary commercial information, the *Willms* Protective Order provided that any "document" produced in the *Willms* action could be designated by the producing party as either "Confidential" or "Confidential – Attorneys' Eyes Only," depending on the level of sensitivity and confidentiality attributed to the particular document. (*Id.,* §B.2.b-d.)

The *Willms* Protective Order set forth strict limits on the use of any documents or materials designated as "Confidential" or "Confidential – Attorneys' Eyes Only" in that action.  Neither class of designated materials was to be disclosed to parties outside of the *Willms* action; the order's provisions limited the restricted disclosure of designated materials to the parties to that action (or, in the case of "Attorneys' Eyes Only" documents, their outside counsel only).  (*Id.,* §B.3.a.)  The parties agreed to maintain the confidentiality of all documents in accordance with their designations "[u]nless and until otherwise ordered by the Court, or otherwise agreed by the parties[.]"  (*Id.,* §B.7.)  The right to seek modification of the *Willms* Protective Order was reserved to the parties to that action.  (*Id.,* §B.9.)

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

The *Willms* Protective Order contained certain provisions governing how objections could be made to the production or disclosure of designated materials that were possibly subject to discovery or other authorized requests in other proceedings.  In that respect, the order stated:

> Subpoena of Confidential Document or Confidential Information. If at any time any Confidential Document or Confidential Information is subpoenaed, or otherwise requested by any other person or entity purporting to have authority to require the production of any such Document or information, **the party to whom the subpoena or other request is directed shall give written notice within three (3) business days thereof to the Designating Party and shall make no disclosure unless seven (7) court days have elapsed from the date on which written notice was given** without objection by the Designating Party or unless the Designating Party has consented in writing. (*Id.,* §B.14 [emphasis added].)

The order also provided that the court in the *Willms* action would retain jurisdiction to resolve any disputes over the use of information disclosed under its terms, and that any designated materials not destroyed or returned to the producing party at the end of the action would continue to be governed by the order.  (*Id.,* §B.15.)

The magistrate judge assigned to the *Willms* Action, Hon. Marc L. Goldman, signed the order on May 12, 2009, and it was filed that day.

**D.    Documents Produced and Designated in the *Willms* Action.**

Starting on May 21, 2009, Objectors produced numerous documents and other materials (both in paper form and electronic) to ConsumerInfo in response to ConsumerInfo's requests.  Those materials included:

•    Financial records (invoices, spreadsheets, profit and loss statements) related to Objectors

•    Statistics for websites created and operated by Objectors, including information as to visits and sales

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

• Email correspondence regarding descriptors, invoices, banner advertisements, sales scripts, and other information relating to Objectors' advertising campaigns

• Corporate records of Objectors

• Contracts and marketing agreements between Objectors and other participants in the online marketing industry;

• Cease-and-desist letters

• Insertion orders (agreements for the placement of advertisements for Objectors' services and products on other websites)

• Letters regarding alleged trademark infringements

• Correspondence and agreements regarding resolution of claims

• E-books

• Screenshots of Objectors' websites

• Banner advertisements, including Objectors' creative materials and other elements developed by Objectors

• Pleadings regarding other litigation matters involving Objectors

• Telephone call transcriptions

As is evident from these descriptions, the documents produced to ConsumerInfo by Objectors mostly focused on subjects of interest to ConsumerInfo in the *Willms* Action, mainly Objectors' business activities and financial information.  (Burgoyne Decl., ¶5.) Among the materials produced to ConsumerInfo were a number of documents and items that had been designated for confidential treatment in accordance with the *Willms* Protective Order.  (Burgoyne Decl., ¶6.)

**E.    ConsumerInfo Fails to Notify Objectors of the Discovery Requests in the Present Action.**

The discovery requests that are at the heart of the present dispute were served between **four and nine months ago.**  That delay blatantly

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1   violated the *Willms* Protective Order that had been entered by Magistrate

2   Judge Goldman, which required ConsumerInfo to provide notice of those

3   requests to Objectors *within three days*.

4       OT served its first set of requests for production (consisting of 105

5   separate requests) on ConsumerInfo on August 21, 2009.  (Declaration of

6   Dimitrios V. Korovilas in Support of Defendants' Joint Motion to Compel

7   ("Korovilas Decl."), Doc. No. 127, ¶3.)  Adaptive served its own first set of

8   requests for production on ConsumerInfo six days later on August 27, 2009.

9   (Declaration of James Donoian in Support of Defendants' Joint Motion to

10  Compel ("Donoian Decl."), Doc. No. 128, ¶2.)   By that time, the *Willms*

11  Protective Order had already been in place for over three months.   OT

12  served a second set of requests (which brought the total number of requests

13  by OT to 173) on ConsumerInfo on January 5, 2010.  (Korovilas Decl., Doc.

14  No. 127, ¶13.)[2]  Rather than follow the *Willms* Protective Order, however,

15  ConsumerInfo waited until **April 22, 2010**[3] to notify Objectors about the

16  requests.  (Letter from Darya V. Pollak to Karl S. Kronenberger, Apr. 22,

17  2010, Burgoyne Decl., ¶7 and Exhibit A.)  By waiting until April to notify

18  Objectors of the requests, ***ConsumerInfo blew the deadline by as much***

19  ***as eight months.***

20      The breadth of the OT and Adaptive requests for production of

21  materials pertaining to the *Willms* Action was staggering.  Essentially, the

---

[2] The OT and Adaptive requests are attached to the April 22, 2010 letter from Darya V. Pollak to Karl S. Kronenberger, which is attached as Exhibit A to the Burgoyne Declaration.  The requests at issue in this motion are OT Requests Nos. 95, 96, 97, 98, 100, 101, 140, 141, 142, 144, and 145, and Adaptive Request No. 85.

[3] The hearing on Defendants' Joint Motion to Compel was held on April 20, 2010, at which hearing the Court announced its decision as to each of the requests at issue.  Not only did ConsumerInfo fail to notify Objectors about the requests in a timely manner, but it even ignored that obligation until after the Court had ruled on the motion to compel responses to those requests.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1   requests demanded the production of every document of whatever form that
2   could be considered to be related to the *Willms* Action.   It was also
3   immediately obvious that those requests encompassed documents covered
4   by the *Willms* Protective Order and designated as "Confidential" or
5   "Confidential – Attorneys' Eyes Only."

6        ConsumerInfo served responses and objections to the first set of
7   requests in September 2009, and to the second set from OT in February
8   2010.   (Joint Stipulation, Doc. No. 126, pp. 59-85.)   Between September
9   2009 and ConsumerInfo's notification to Objectors on April 22, 2010,
10  ConsumerInfo engaged in a lengthy meet-and-confer process (consisting of
11  correspondence, three-hour telephone calls, in-person meetings, and other
12  extensive contacts), culminating in motions practice, with OT and Adaptive.
13  (Korovilas Decl., ¶¶4-15 and Exhibits C-E; Donoian Decl., ¶¶4-8 and Exhibit
14  C.)   Those contacts were conducted entirely among counsel for
15  ConsumerInfo, Adaptive, and OT.   Again, Objectors never received any
16  notice of the discovery requests, ConsumerInfo's responses, the meet-and-
17  confer efforts, or the motion to compel.   (Burgoyne Decl., ¶¶7-8.)

18       **F.     Defendants' Joint Motion to Compel and This Court's Order.**
19       The meet-and-confer efforts having apparently proven fruitless, on
20  March 23, 2010 Defendants filed a joint motion to compel ConsumerInfo's
21  further responses to the requests for production.  (Doc. No. 125.)  Following
22  a hearing held on that motion on April 20, 2010, the Court entered an order
23  (which was drafted jointly by Defendants and ConsumerInfo) directing that
24  virtually every document from the *Willms* Action – pleadings, motions,
25  deposition  transcripts,  discovery  responses,  financial  information,
26  documents subpoenaed from third parties, and the like – be produced to
27  Defendants by ConsumerInfo.  (Order on Joint Motion to Compel ("Order"),
28  Doc. No. 147, pp. 13-15.)  The Court also ordered ConsumerInfo to produce

settlement agreements for the *Willms* Action, with only the amount of the settlement redacted therefrom, as well as any other documents referring to any other "enforcement actions" related to the alleged intellectual property at issue in this action (Order, Doc. No. 147, pp. 15-16.)[4]

The Court ordered ConsumerInfo to serve a copy of the order, as well as a copy of the interim protective order that had been filed months previously, "on any affected third-party within one Court day of entry of this order," and directed that any affected third party (such as Objectors herein) could file a motion for a protective order within 10 days of the entry of the order.  (Order, Doc. No. 147, p. 16.)  **The Court also explicitly stayed ConsumerInfo's production of any records, ruling that "ConsumerInfo's obligations [to produce documents to Defendants] shall be stayed pending any resolution of such motion."**  (*Id.*)

### G.    ConsumerInfo Produces Documents Without Notifying Objectors or Waiting Past the Time Required in This Court's Order.

Notwithstanding the Order's clear mandate permitting the filing of motions for protective order by third parties like Objectors and staying any production of documents in the interim, on May 7, 2010, without notifying Objectors in advance, ConsumerInfo produced a number of the documents that had been requested by Defendants.  The documents produced by ConsumerInfo were "the entire pleading and deposition transcript files in the *Willms* and *Mighty Net* litigation" (the latter referring to another case from

---

[4] The Court's order addressed mainly the required response to Adaptive's Request for Production No. 85.  The remaining requests at issue with respect to Objectors and the *Willms* Action were denied without prejudice as moot (since they covered essentially the same ground as Adaptive's Request No. 85), or were granted with directions for ConsumerInfo to produce documents regarding its efforts to monitor or police the use of certain keywords and domain names (OT Request No. 101).  (See Order, Doc. No. 147, p. 16.)

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1    which materials were demanded to be produced), less materials designated

2    under the *Willms* Protective Order.     (Letter of May 7, 2010 from

3    ConsumerInfo counsel to Defendants' counsel, p. 1, Burgoyne Decl., Exhibit

4    B.)     The documents withheld were (1) excerpts from the depositions of

5    Jesse Willms and other principals and employees of Objectors; (2) financial

6    data pertaining to Objectors; (3) generally described "agreements,"

7    "correspondence," "screenshots" and "emails"; and (4) expert reports.  (*Id.,*

8    pp. 1-3.)

9        ConsumerInfo's production to Defendants clearly violated the terms of

10   this Court's Order staying, per the above provisions, ConsumerInfo's

11   production of documents pending the resolution of this motion.  As the Order

12   was filed on May 4, 2010, Objectors thus had until May 14, 2010 to file this

13   motion, and ConsumerInfo would be prohibited from producing *any*

14   documents – not just undesignated documents – in the meantime.

15   ConsumerInfo disregarded those clear and unambiguous provisions,

16   however, and simply produced all undesignated documents from the *Willms*

17   Action.  (Burgoyne Decl., ¶¶10-11 and Exhibits C and D.)

18       **H.     ConsumerInfo Refuses to Correct Its Errors.**

19       Objectors' attempts to bring these errors up to ConsumerInfo for

20   correction have been met with even more obfuscation by ConsumerInfo.  On

21   May 7, 2010, after learning that ConsumerInfo had produced documents to

22   Defendants, Objectors' counsel wrote to ConsumerInfo's counsel and asked

23   for confirmation that none of the documents produced were related to the

24   *Willms* action, and indicated that no such documents should be produced

25   pending the resolution of this motion.  (Email thread from Hank Burgoyne to

26   Ted Maya, May 7, 2010, Burgoyne Decl., ¶11 and Exhibits C and D.)

27   ConsumerInfo's counsel responded that the only documents produced were

28   those not marked as "Confidential" or "Confidential – Attorneys' Eyes Only."

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1   (*Id.*)   When Objectors' counsel questioned why even undesignated
2   documents had been produced, ConsumerInfo's counsel replied that he was
3   relying on an April 30, 2010 email from Objectors' counsel (which preceded
4   the Order).  (*Id.*)  That email, however, did not indicate that Objectors would
5   not object to the production of undesignated documents.  (*Id.*)

6   Objectors' counsel demanded that any documents produced to
7   Defendants be retrieved and destroyed, since their production during the 10-
8   day motion window set by this Court was a clear violation of the Order.  (*Id.*)
9   ConsumerInfo refused to comply.  (Burgoyne Decl., ¶11.)

10   **I.    ConsumerInfo Refuses to Cooperate or Meet and Confer.**

11   On May 12, 2010, in an effort to forestall the need to file this motion,
12   Objectors asked Defendants and ConsumerInfo to agree to postpone any
13   further production of documents, and the deadline for filing this motion, for
14   two weeks so this dispute might be resolved.  (Burgoyne Decl.*,* ¶12 and
15   Exhibit E.)   ConsumerInfo sent back an email refusing to agree to that
16   extension, and refused to discuss the matter further*.*  (*Id.*)

17   **II.    ARGUMENT**

18   **A.    Standards for Protective Orders.**

19   A protective order may be granted "for good cause… to protect a party
20   or person from annoyance, embarrassment, oppression, or undue burden or
21   expense[.]"  Fed. R. Civ. P. 26(c)(1).  Such orders provide a safeguard in
22   view of the otherwise broad rights of discovery.  *United States v. Columbia*
23   *Broadcasting System, Inc.,* 666 F.2d 364, 368-369 (9th Cir. 1982).   The
24   protective order can include a number of provisions, including an outright
25   prohibition on discovery or disclosure.  Fed. R. Civ. P. 26(c)(1)(A).   In the
26   case of trade secrets or other confidential information, the court can order
27   that such information not be revealed, or revealed only in specified ways.
28   Fed. R. Civ. P. 26(c)(1)(G).

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1   The courts will generally enter protective orders upon the stipulation of

2   the parties where good cause exists for such an order to be entered.

3   *Jepson, Inc. v. Makita Elec. Works, Ltd.,* 30 F.3d 854, 858 (7th Cir. 1994).

4   Where trade secrets or other proprietary information is the target of

5   discovery, the courts balance the risk to the responding party of inadvertent

6   disclosure of trade secrets to its competitors against the risk to the

7   propounding party that protection of those trade secrets or confidential

8   information would impair that party's ability to pursue its claims or defenses.

9   *Brown Bag Software v. Symantec Corp.,* 960 F.2d 1465, 1470 (9th Cir.

10  1992).   The interest in protecting trade secrets and other competitive

11  information is so great that it overrides the ordinary public policy of keeping

12  court records open to the public.   *Nixon v. Warner Communications, Inc.,*

13  435 U.S. 589, 598; *Hagestad v. Tragesser,* 49 F.3d 1430, 1433-34 (9th Cir.

14  1995).   Similar protection is routinely given to confidential settlement

15  agreements.   *Phillips ex rel. Estates of Bird v. General Motors Corp.,* 307

16  F.3d 1206, 1211 (9th Cir. 2002).   Even if some measure of discovery or

17  disclosure of such information or documents is permitted, however, the use

18  thereof should be limited to the particular action in which the discovery is

19  provided.   *In re Remington Arms Co.,* 952 F.2d 1029, 1033 (8th Cir. 1991).

20  A protective order may prohibit or restrict the use of information or

21  documents in later actions.   *Bittaker v. Woodford,* 331 F.3d 715, 726 (9th Cir.

22  2003).   This reflects the supervisory power of all courts over the

23  maintenance of their own records, even when a case has been dismissed.

24  *Nixon,* 435 U.S. at 598; *Hagestad,* 49 F.3d at 1433-34. The parties to the

25  previous litigation should be entitled to rely upon a protective order entered

26  in that litigation, especially where the protection of trade secrets was

27  involved and that protection would induce a party to accede to discovery or

28  settle the case.   *Beckman Industries, Inc. v. International Ins. Co.,* 966 F.2d

470, 475 (9th Cir. 1992).

In cases like the present where discovery is sought from nonparties, the courts will place broader restrictions on discovery than if the target of discovery were a party. *Dart Industries, Inc. v. Westwood Chem. Co.,* 649 F.2d 646, 649 (9th Cir. 1980). "There appear to be quite strong considerations indicating that discovery would be more limited to protect third parties from harassment, inconvenience, or disclosure of confidential documents." *Collins and Aikman Corp. v. J. P. Stevens & Co., Inc.,* 51 F.R.D. 219, 221 (D.S.C.1971), cited in *Dart Industries,* 649 F.2d at 649.

## B.   ConsumerInfo Should Have Sought Relief First from The Court that Issued the *Willms* Protective Order.

As a preliminary point, ConsumerInfo (and perhaps Defendants) should have first sought modification or other relief under the *Willms* Protective Order from the court that issued it.  When materials are sought in a pending action and those materials are covered by a protective order issued in a previous action, the appropriate procedure is for the responding or requesting party to seek modification of that protective order. *Foltz v. State Farm Mut. Auto. Ins. Co.,* 331 F.3d 1122, 1131-33 (9th Cir. 2003); *Beckman,* 966 F.2d at 472-475.  In such instances, "the court that entered the protective order should satisfy itself that the protected discovery is sufficiently relevant to the collateral litigation that a substantial amount of duplicative discovery will be avoided by modifying the protective order." *Foltz,* 331 F.3d at 1132.  "The court that issued the order is in the best position to make the relevance assessment for it presumably is the only court familiar with the contents of the protected discovery." *Id.*

This procedure has not been followed.  Instead, the documents in question have simply been offered up by ConsumerInfo at the demand of Defendants, following the entry of an Order to which ConsumerInfo basically

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

14

acceded without notifying Objectors that documents were potentially subject to production.  Perhaps not surprisingly given ConsumerInfo's numbing lack of interest in following the *Willms* Protective Order, this Order was drafted with no safeguards for the maintenance of confidentiality of any materials produced. And in this proceeding, this Court might naturally be less inclined to consider Objectors' confidentiality concerns in light of the fact that Objectors are not parties to this action and have not, until now, appeared to defend their interests (solely as a result of not having been given any notice of the requests by ConsumerInfo).  On the other hand, Magistrate Judge Goldman is particularly better suited to assess whether the *Willms* Protective Order should be modified, or ConsumerInfo permitted to disclose materials to Defendants thereunder, since that court is familiar with the materials at issue and has already considered the harms that are likely to result from their disclosure.

As a matter of maintaining the integrity of Magistrate Judge Goldman's rulings, that court, and not this Court, should have been approached first by ConsumerInfo and Defendants for guidance on what documents might be disclosed here.  This Court should grant Objectors' motion for a protective order in this case and require the return and destruction of any documents already produced, or at the very least should order any production to be held in abeyance until ConsumerInfo and/or Defendants might choose to present an appropriate motion to Magistrate Judge Goldman for relief.

**C.    The Bulk of the Materials ConsumerInfo Intends to Produce Is Wholly Irrelevant to Defendants' Case.**

As noted above, the courts are typically more solicitous of the interests of strangers to an action whose information and documents are being sought through discovery.  *Dart Industries,* 649 F.2d at 649.  Third parties such as Objectors here will thus be granted a higher degree of protection

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

against "harassment, inconvenience, or disclosure of confidential documents" if they seek a protective order.  *Collins and Aikman,* 51 F.R.D. at 221; see also *Dart Industries,* 649 F.2d at 649 (citing *Collins & Aikman*).

These interests should impel the Court to prohibit, or at least greatly restrict, ConsumerInfo's wholesale production of documents from the *Willms* Action to Defendants.  Here, ConsumerInfo's theories of liability boil down to an essential allegation that Defendants used ConsumerInfo's allegedly trademarked terms to develop and promote their own services.  Defendants contest those allegations, and allege basically that ConsumerInfo's alleged trademarks should be cancelled and that ConsumerInfo's efforts to enforce those trademarks constitute an antitrust violation.  (Order, p. 12.)

The documents from the *Willms* Action, however, encompass far more territory than just those circumscribed areas.  The *Willms* Action documents and materials contain extensive data about Objectors' customers (as embodied in an immense electronic database as well as other records), testimony and records about Objectors' business operations and corporate structures, Objectors' creative processes and marketing strategies, Objectors' relationships with advertising affiliates and other entities in the marketing chain, Objectors' pricing structures with their affiliates, and other information and documents.  Not only are these matters highly sensitive (and likely imperiled, given ConsumerInfo's lackadaisical attitude about complying with the Court's orders), they are also totally irrelevant to any claims or defenses that ConsumerInfo and Defendants may press against each other here.

The internal operations of Objectors and the specific data and details of Objectors' business, as contained in the records of the *Willms* Action, make up the bulk of the materials ordered to be produced to Defendants by ConsumerInfo.  It would be highly oppressive to Objectors, and a complete

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1   disregard for their rights, if ConsumerInfo were allowed to turn over the

2   entire motherlode of the documents and information from the *Willms* Action

3   to Defendants, when only a small percentage of that material had any

4   conceivable relevance to the case between ConsumerInfo and Defendants.

5   On balance, such considerations must weigh heavily in favor of prohibiting

6   or restricting production of third-party documents in such a manner. (*Collins*

7   *and Aikman,* 51 F.R.D. at 221.)

8        Objectors are quite well versed – certainly more so than ConsumerInfo

9   or Defendants – in the nature of materials produced by Objectors and third

10   parties to ConsumerInfo in the *Willms* Action.   Even now, Objectors are

11   continuing to pursue meet-and-confer efforts with Defendants regarding

12   Defendants' actual needs for such materials.   Meeting-and-conferring with

13   Defendants, of course, is exactly what Objectors could and would have done

14   had ConsumerInfo notified Objectors of Defendants' requests for production

15   as required by Magistrate Judge Goldman's Order.   Despite the costly

16   discovery litigation occasioned by ConsumerInfo's repeated violation of that

17   order, Objectors are confident that they will be able to reach agreement with

18   Defendants regarding the scope of the *Willms* Action materials to be

19   produced.   To facilitate those discussions, the Court should issue a

20   protective order prohibiting the further production by ConsumerInfo of *Willms*

21   Action materials, and requiring the return of destruction of any such

22   materials already produced by ConsumerInfo.

23   ### D.   Objectors Are Entitled to a Protective Order Prohibiting the Production of Documents Designed for Confidential Treatment Under the *Willms* Protective Order.

25        There is ample reason for the Court to enter the requested protective

26   order in Objectors' favor here.   First and foremost, the documents to be

27   produced (and possibly those already produced) by ConsumerInfo contain

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1  trade secrets and other proprietary information of Objectors, such as pricing

2  information, agreements with advertising affiliates, marketing tools and

3  strategies, creative design elements, and other inherently confidential and

4  advantageous information. The courts have always granted a high degree of

5  confidentiality to such matters, and have not hesitated to enter and enforce

6  protective orders to prevent the disclosure of such information to

7  competitors and the public.  See Fed. R. Civ. P. 26(c)(1)(G) (court may order

8  that trade secrets or other confidential information not be revealed, or be

9  revealed only in specified ways).  As is common in litigation involving such

10  matters, the parties typically stipulate to such orders, which stipulations the

11  courts generally honor because good cause for such orders usually exists.

12  *Nixon v. Warner Communications,* 435 U.S. at 598; *Hagestad,* 49 F.3d at

13  1433-34; *Jepson,* 30 F.3d at 858.  Protective orders governing trade secrets

14  are usually drawn so as to limit the use of any disclosed documents to that

15  particular action.  *Remington,* 952 F.2d at 1033.

16      There is no reason why these considerations should not apply here.

17  By approving and entering the stipulated *Willms* Protective Order, Magistrate

18  Judge Goldman has already determined that the documents and information

19  later designated by Objectors as confidential (or for attorneys' eyes only) in

20  the *Willms* Action were deserving of protection as trade secrets or other

21  proprietary and confidential information, and that good cause exists to grant

22  those documents and information increased protection from disclosure.  The

23  *Willms* Protective Order also contained simple but specific provisions for

24  obtaining modification of that order, removing confidentiality designations

25  from particular documents or information, and—most significantly—notifying

26  Objectors of any requests for the disclosure of such information and

27  documents in response to subpoenas and other discovery requests, and

28  allowing Objectors and other affected parties to seek relief from such

MPA ISO OBJECTORS' MTN FOR
PROTECTIVE ORDER

1    requests.

2        There is simply nothing unreasonable or uncommon about such

3    protections, especially not where trade secrets and other confidential

4    business information are concerned.   The production of the documents

5    requested by Defendants here should not be compelled.  A protective order

6    should issue to prohibit ConsumerInfo from disclosing or producing any

7    additional documents or information from the *Willms* Action to defendants,

8    and compelling ConsumerInfo (and Defendants, to the extent possible) to

9    destroy or return to Objectors any documents or information that might have

10   been disclosed or produced in the interim, at least until such time as

11   Objectors can continue to pursue their present meet-and-confer efforts.

### E.   Objectors Are Entitled to Recover Their Attorneys' Fees And Other Monetary Sanctions From ConsumerInfo.

14       Rule 26(c)(3) of the Federal Rules of Civil Procedure provides that

15   awards of expenses associated with a motion for protective order are to be

16   governed by Rule 37(a)(5).  That rule, in turn, provides that the Court must

17   award the party seeking the protective order its reasonable attorneys' fees

18   and costs incurred in obtaining the order, unless substantial justification

19   exists otherwise.  Fed. R. Civ. P. 37(a)(5).  Sanctions can be awarded for

20   failure to obey a discovery order when the disobedience is not shown to

21   have been outside the offending party's control.  *In re Phenylpropanolamine*

22   *(PPA) Products Liability Litig.,* 460 F.3d 1217, 1233 (9th Cir. 2006); *Tacori*

23   *Enterprises v. Beverlly Jewellery Co.,* 253 F.R.D. 577, 582 (C.D. Cal. 2008).

24   The willful disobedience of a discovery order is grounds for the imposition of

25   sanctions.  *Chambers v. NASCO, Inc.,* 501 U.S. 32, 45 (1991); *Aloe Vera of*

26   *Am., Inc. v. United States,* 376 F.3d 960, 965 (9th Cir. 2004).  Courts will

27   also impose sanctions where a party obtains a discovery order in a

28   subsequent case without informing the court of restrictions imposed upon

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1   the disclosure of certain information or documents in previous litigation.

2   *Aloe Vera,* 376 F.3d at 966.

3         ConsumerInfo should be sanctioned for its conduct here.  To start off,

4   ConsumerInfo was served with the requests from OT and Adaptive in this

5   action while the *Willms* Action was still pending, and well after the *Willms*

6   Protective Order had been entered.  ConsumerInfo was well aware of every

7   provision of that protective order, inasmuch as ConsumerInfo and Objectors'

8   respective counsel had worked intensely to craft that order, stipulate to it,

9   and then obtain Magistrate Judge Goldman's finding of good cause to enter

10  it.  The *Willms* Protective Order set forth very specifically that ConsumerInfo

11  was to notify Objectors of any requests for documents covered by that order

12  within three days of receiving those requests.  When OT and Adaptive

13  served their requests, however, ConsumerInfo did absolutely nothing.  That

14  was strike one.  ConsumerInfo then continued to maintain its silence until

15  after this Court had held a hearing on Defendants' joint motion to compel

16  and made its rulings thereon, which were then reduced to the Order in this

17  action.  Only after the Court had ruled on the joint motion to compel did

18  ConsumerInfo bother to notify Objectors of the requests, which by then had

19  become effectively cemented by the Order.  Strike two.  And for its piece de

20  resistance, ConsumerInfo violated yet another provision of a court order by

21  producing documents to Defendants without waiting for the expiration of the

22  time set by the Court's Order[5] for the filing of this motion, thus prejudicing

23

---

[5] The Order itself is fairly bereft of any substantive protections in Objectors'
24  favor.  All it provides is that an "affected third party" (here, Objectors) may
    move for a protective order within 10 days of the entry of that order, and that
25  ConsumerInfo's obligations to produce those materials are stayed pending
    resolution of any such motion. (Order, p. 16:8-10.)  Even that latter condition
26  proved ineffective, as ConsumerInfo simply produced documents without
    waiting for this motion to be filed.  That insouciance should lead the Court to
27  wonder what obedience ConsumerInfo can be expected to pay to the
28  disclosure and use restrictions of *any* protective order, whether the one

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1   Objectors by removing from them the opportunity to seek an effective
2   protective order against the disclosure of documents which, though not
3   originally designated as such, might well have been appropriate for
4   additional restrictions under a protective order.  Strike three.

5          ConsumerInfo has stumbled from one violation to another every step
6   of the way in these matters.  Its willful disregard of the Court's orders has led
7   to the premature disclosure of Objectors' documents to their competitors, as
8   well as the prejudicing of Objectors' ability to protect the confidentiality of
9   their proprietary information and materials in the fashion that was expressly
10  granted to Objectors in an order to which ConsumerInfo had stipulated.  Not
11  only has ConsumerInfo totally disregarded Objectors' rights and refused to
12  remedy its errors, but it has continued its obstinate course of conduct by
13  refusing to meet and confer with Objectors (despite Objectors continuing
14  and present intent to continue those efforts) or agree to any extensions of
15  time so this serious dispute might be resolved short of formal intervention by
16  the Court.  Such behavior should not be rewarded with merely remedial
17  measures, but should be punished with awards of monetary sanctions.
18  Anything less would constitute a further injury to Objectors, who have now
19  been forced into bringing a costly motion that could have been avoided if
20  ConsumerInfo had just followed the rules in the first place.  This situation is
21  tailor-made for the imposition of sanctions, and the Court should enter an
22  order accordingly upon proof provided by Objectors.[6]

23  //

24  _____

    sought herein or the *Willms* Protective Order itself.  And it gives every
25  reason for the Court to award sanctions against ConsumerInfo here.

    [6] The Court can enter an order granting monetary sanctions and then
26  determine the amount later upon submission of proof thereof by the moving
    party.  See *Patelco Credit Un. v. Sahni,* 262 F.3d 897, 903 (9th Cir. 2001)
27  (trial court entered order awarding monetary sanctions, then determined
28  amount of sanctions in subsequent order).

### III.   <u>CONCLUSION</u>

For the foregoing reasons, nonparty Objectors Jesse Willms, eDirect, 1016363 Alberta Ltd., and 1021018 Alberta Ltd. respectfully request that the Court issue a protective order (1) prohibiting or restricting the production or disclosure by ConsumerInfo to Defendants of any documents or information from the *Willms* Action, (2) requiring Defendants and ConsumerInfo to destroy or return to Objectors any documents already produced to Defendants by ConsumerInfo, and (3) assessing monetary sanctions against ConsumerInfo in the amount of Objectors' reasonable attorneys' fees and costs incurred in obtaining said order, said amount to be determined upon submission of proof.

DATED:  May 14, 2010                          **KRONENBERGER BURGOYNE, LLP**


By:   /s/ Henry M. Burgoyne, III
     Karl S. Kronenberger
     Henry M. Burgoyne, III
     James V. Weixel, Jr.

Attorneys for Non-Party Objectors
JESSE WILLMS, EDIRECT,
1016363 ALBERTA LTD. and
1021018 ALBERTA LTD.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com