UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.  **CV 09-3783-VBF(MANx)**              Dated: **September 23, 2010**

Title:   Consumerinfo.com, Inc. -*v*- Alex Chang, et al.

PRESENT:  HONORABLE VALERIE BAKER FAIRBANK, U.S. DISTRICT JUDGE

          Joseph Remigio                      None Present
          Courtroom Deputy                    Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:    ATTORNEYS PRESENT FOR DEFENDANTS:

          None Present                         None Present

**PROCEEDINGS (IN CHAMBERS):**        **COURT ORDER RE MOTIONS FOR PARTIAL SUMMARY JUDGMENT (DKTS. 203, 205, 207, 208, 209)**


     Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that these matters are appropriate for decision without oral argument.  **The hearings set on these Motions for September 27, 2010 at 1:30 p.m. are hereby vacated and the matters are taken off calendar.**

**I.   One Technologies' Motion For Partial Summary Judgment Of Its Cancellation Counterclaim And Invalidity Affirmative Defense (Dkt. 203)**

     The Court has received, read, and considered Defendant One Technologies' ("OTL") Motion For Partial Summary Judgment Of Its Cancellation Counterclaim And Invalidity Affirmative Defense ("OTL's Motion") (dkts. 203, 246), Plaintiff ConsumerInfo.com, Inc.'s ("CI") Opposition (dkt. 360), the Reply (dkt. 353), and related papers.[1]

----

     [1]CI's objections to Defendants' Errata (*see* dkt. 327) have merit and would be sustained on grounds of timeliness, except to the extent that

MINUTES FORM 90                        Initials of Deputy Clerk    jre
CIVIL - GEN

For reasons described more fully below, the Court hereby:

1.  DENIES OTL's Motion as to the ground that CI's trademark registration should be deemed invalid and canceled for genericness.  CI presents sufficient evidence to raise disputed issues of material fact as to genericness of its mark.  *See, e.g.,* Platiniff's Statement Of Genuine Issues Of Fact ("PSGI") 194, 195, 258-263;

2.  DENIES OTL's Motion as to the ground that CI's trademark registration should be deemed invalid and canceled due to fraud on the PTO.  CI presents sufficient evidence to raise disputed issues of material fact as to whether CI committed fraud.  *See, e.g.,* PSGI 49, 52, 53, 322-325, 327-331;

3.  DENIES OTL's Motion as to limitation of damages pursuant to contract.  OTL does not carry its burden to show that it is entitled to judgment as a matter of law.  Further, CI presents sufficient disputed issues of fact as to whether the contractual limit applies.  *See, e.g.,* PSGI 364.

**A.   Analysis**

**1.   Cancellation For Genericness**

OTL asserts that the FREECREDITREPORT.COM mark is generic and that its registration should be cancelled because the mark is incapable of trademark protection.  A trademark registration may be cancelled at any time if the registered mark becomes generic.  15 U.S.C. § 1064(3).  A generic term is one that refers to the genus of which the particular product or service is a species.  *Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc.*, 198 F.3d 1143, 1147 (9th Cir. 1999)(quoting

---

the Defendants' corrections are merely clerical, i.e., to correct citations.  Any attempt to request consideration of different or additional facts is belated, disregarded and denied.  However, the Court finds insufficient grounds for sanctions requested by CI.  The Court finds no prejudice.  Moreover, the dispute is not significant.  The Court's rulings herein are the same regardless of whether the belatedly filed documents and facts are considered or not.  *See* dkts. 233, 383, 387.

CI's notice of errata (dkt. 350), which pertains to "typographical errors," is accepted.

MINUTES FORM 90                                Initials of Deputy Clerk    jre
CIVIL - GEN

*Surgicenters of America, Inc. v. Medical Dental Surgeries Co.,* 601 F.2d 1011, 1014 (9th Cir. 1979)).  To determine whether a term is generic, the court looks to whether consumers understand the term to refer only to a particular producer's goods or whether the consumer understands the term to refer to the goods themselves.  *Yellow Cab Co. v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 929 (9th Cir. 2005).  Courts have also relied upon the "'who-are-you/what-are-you' test:  A mark answers the buyer's questions 'Who are you?' 'Where do you come from?' 'Who vouches for you?' But the generic name of the product answers the question 'What are you?.'"  *Filipino Yellow Pages,* 198 F.3d at 1147 (internal punctuation omitted) (quoting *Official Airlines Guides, Inc. v. Goss*, 6 F.3d 1385, 1391 (9th Cir. 1993)).  "If [a] term is generic, it cannot be the subject of trademark protection under any circumstances, even with a showing of secondary meaning."  *Id.* at 1146.

Because the FREECREDITREPORT.COM mark is registered, a presumption of validity places the burden of proving genericness on OTL.  *See Id.* at 1146; 15 U.S.C. § 1057(b).  "Whether a mark is generic is a question of fact."  *Advertise.com, Inc. v. AOL Advertising, Inc.*, --- F.3d ---, 2010 WL 3001980, *2 (9th Cir. Aug. 3, 2010)(quoting *Yellow Cab,* 419 F.3d at 929).

OTL asserts that the dictionary definitions of "free," "credit," "report," and ".com" are strong evidence of the genericness of FREECREDITREPORT.COM, and that removing the spaces between the words does not cure their generic nature.  OTL also asserts (1) that adding ".com" to generic words does not make the mark protectable, (2) that CI's own use of FREECREDITREPORT.COM shows that it is a generic term, (3) that competitors widely use the term "FreeCreditReport.com" and similar terms in a generic sense, (4) that Google and CI's customers view FREECREDITREPORT.COM as generic.

Although OTL presents significant evidence in support of its contentions, CI raises sufficient disputed issues of material fact that preclude summary judgment in OTL's favor at this time as to the genericness of FREECREDITREPORT.COM.  In order to determine genericness, a court looks to the mark as a whole.  *Advertise.com*, 2010 WL 3001980 at *3.  It is possible that the combination of generic terms and top-level domain indicators may be used as a valid trademark, if supported by the record.  *Id.* at *7.  Here, CI presents evidence that many members of the media have used the term "FreeCreditReport.com" to denote a source of credit scores and information on financial health (*see*, *e.g*, PSGI 258, 259) or a source of certain advertisements both in print (*see*, *e.g.*, PSGI 260) and on national television (*see* PSGI 261).  CI has also presented some survey evidence that may be interpreted to show that consumers

understand "FreeCreditReport.com" to refer to a particular provider of goods or services. *See*, e.g., PSGI 262, 263. CI has also presented sufficient evidence to raise a genuine issue as to whether FREECREDITREPORT.COM has been used solely to advertise free credit reports or a wider range of services (*see*, e.g., PSGI 194, 195), potentially making "FreeCreditReport.com" less responsive to the "what are you?" question and more responsive to the "who are you?" question. *Filipino Yellow Pages,* 198 F.3d at 1147.

In sum, OTL has not carried its burden to show that the undisputed facts entitle it to judgment as a matter of law on the issue of genericness and the cancellation of CI's registration for that reason.

## 2. Cancellation For Fraud

OTL asserts that the registration for FREECREDITREPORT.COM should be cancelled because it was obtained fraudulently. *See* 15 U.S.C. § 1064(3) (a trademark registration may be cancelled if it "was obtained fraudulently or contrary to the provisions of section 1054 of this title or of subsection (a), (b), or (c) of section 1052"). In order to obtain cancellation, OTL must prove (1) a false representation regarding a material fact, (2) the registrant's knowledge or belief that the representation is false, (3) the intent to induce reliance upon the misrepresentation, (4) reasonable reliance on the misrepresentation, and (5) damages proximately resulting from the reliance." *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir. 1990).

OTL asserts that CI fraudulently misrepresented to the Patent and Trademark Office ("PTO") that "[t]o the best of his/her knowledge and belief no other person, firm corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely . . . to cause confusion . . ." OTL asserts that this statement was fraudulent because CI knew that its purported FREECREDITREPORT.COM mark was generic. However, as discussed above in Section I.A.1., supra, the genericness of CI's mark is a genuine issue of fact (*see, e.g.,* PSGI 194, 195, 258-263). Thus, the falsity of this representation by CI and the remaining elements of fraud are also a genuine issues of fact. OTL also asserts that CI fraudulently misrepresented to the PTO that it used FREECREDITREPORT.COM as a mark, and asserts that CI deceived the PTO as to the goods and services it advertised using FREECREDITREPORT.COM. CI presents evidence sufficient to show that the falsity of these statements are also genuine issues of fact. *See*, *e.g.*, PSGI 323-325, 327-330.

OTL also asserts that the undisputed evidence shows that CI intended to deceive the PTO and intended to induce reliance in order to obtain a federal registration.  CI presents evidence sufficient to make its intent a disputed issue of fact.  *See*, e.g., PSGI 49, 52, 53, 331; *see also* In re Bose Corp., 580 F.3d 1240, 1244 (Fed. Cir. 2009) (fraud requires more than mere negligence).

OTL also asserts that the PTO relied on CI's purported material misrepresentations.  Here too, CI presents evidence sufficient to raise genuine disputed issues of material fact, including that the PTO may have been aware of the dictionary definitions for "free," "credit," and "report" and CI's provision of free credit reports.  *See,* e.g., PSGI 322, 324.

In sum, OTL has not carried its burden to show that the undisputed facts entitle it to judgment as a matter of law on the issue of fraud on the PTO and the cancellation of CI's registration for that reason.

### 3.  Contractual Limitation Of Damages

OTL asserts it is entitled to summary judgment on Counts 1-9 of the First Amended Complaint ("FAC") (dkt. 712) on the issue that a December 1, 2007 written agreement between the parties ("Agreement") limits OTL's liability to amounts received by OTL from CI pursuant to that Agreement. The Agreement limits damages "arising from breach of the agreement, the sale of products, the use of any internet sites referenced in the agreement . . . or arising from any other provision of the agreement." However, the Court finds that OTL does not adequately brief this issue and submit evidence so as to carry its burden on summary judgment, including by sufficiently explaining how all of Counts 1-9 relate to the provisions of the Agreement.  Also, CI provides some evidence that the lawsuit arises from claims of intellectual property infringement that arise independently of the Agreement.  *See* PSGI 364.

In sum, OTL has not carried its burden to show that the undisputed facts entitle it to summary judgment as to limitation of damages.

## II.  Defendants' Joint Motion For Partial Summary Judgment Of ConsumerInfo's Claims (Dkt. 205)

The Court has received, read, and considered Defendants' Joint Motion For Partial Summary Judgment Of ConsumerInfo's Claims ("Defendants' Claims Motion") (dkts. 205, 245), Plaintiff ConsumerInfo.com, Inc.'s Opposition (dkt. 347), the Reply (dkt. 355), and related papers.

MINUTES FORM 90                              Initials of Deputy Clerk    jre
CIVIL - GEN

For reasons described more fully below, the Court hereby:

1.   DENIES Defendants' Claims Motion as to its ground that CI cannot prevail on its trademark or unfair competition claims (Claims 1, 6 and 7) because there is no likelihood of confusion;

2.   GRANTS Defendants' Claims Motion as to its ground that CI's trade dress claim (Claim 1) fails;

3.   DENIES Defendants' Claims Motion as to its ground that CI's dilution claim (Claim 2) fails;

4.   GRANTS Defendants' Claims Motion as to its ground that CI's counterfeiting claim (Claim 3) fails;

5.   DENIES Defendants' Claims Motion as to its ground that CI's cybersquatting claims (Claims 4 and 5) fail;

6.   GRANTS Defendants' Claims Motion as to its ground that CI's claim for copyright infringement (Claim 10) fails;

7.   DENIES Defendants' Claims Motion as to its ground that CI's claims for vicarious and contributory trademark infringement (Claims 8 and 9) fail;

8.   GRANTS Defendants' Claims Motion as to its ground that CI's claims for vicarious and contributory copyright infringement (Claims 11 and 12) fail.

**A.   Analysis**

   **1.   Likelihood Of Confusion (Claims 1, 6 and 7)**

Defendants OTL and Adaptive Marketic LLC ("Adaptive") assert that Defendants' use of the Accused Domains[2] or purchase of "freecreditreport.com" as a keyword do not create a likelihood of

_____

   [2]Defendants state that "CI now claims that certain of Defendants' domain names . . . cause confusion" and defines these as "the Accused Domains."  *See* Defendants' Defenses Motion at 8:2-3.  However, Defendants do not adequately define what domain names constitute the Accused Domains.  This lack of specificity provides an additional reason why Defendants are not entitled to summary judgment on this ground.

confusion, and that they are entitled to summary judgment on CI's trademark and unfair competition claims (Claims 1, 6, and 7) on that ground.

"Likelihood of confusion is a factual determination." *Thane Intern., Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 901 (9th Cir. 2002). Therefore, a district court may grant summary judgment only if "no genuine issue" exists regarding likelihood of confusion. *Id.* The eight factors on which a court ordinarily relies are: (1) the strength of plaintiff's mark; (2) the similarity of plaintiff's and defendants' marks; (3) the proximity or relatedness of the goods or services; (4) defendants' intent in selecting their marks; (5) evidence of actual confusion; (6) the marketing channels used; (7) the likelihood of expansion into other markets; and (8) the degree of care purchasers are likely to exercise. *Id.* (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979)).

Defendants assert that the FREECREDITREPORT.COM mark is weak. Defendants assert that the mark resides in a "crowded field" of similar marks, and that CI's usage of the mark underscores its genericness and weakness. However, CI responds with evidence that may interpreted to show the strength of its mark, including mentions in the media, survey evidence, and statements from Adaptive executives. *See, e.g.,* PSGI 258-263, 342, 343.

Defendants assert the certain domain names within the "Accused Domains" that are actually in use are not confusingly similar to CI's. Defendants assert that CI's representations to the PTO prove that their use of certain Accused Domains (e.g., 800FreeCreditReports.com, FreeTripleCreditReport.com, FreeCreditReport2009.com), renders them not confusingly similar to CI's. However, as CI asserts, a reasonable fact finder could conclude that CI's and Defendants' marks are similar, especially considering that the words comprising CI's are contained in Defendants' domain names. *See, e.g.,* PSGI 337. Defendants also assert that the bidding on "freecreditreport.com" as a search term is not a confusingly similar use to CI's use of FREECREDITREPORT because consumers do not see the mark during bidding and there is nothing to compare in full in the marketplace, which is buttressed by CI's own practice of bidding on competitors' brands as keywords. CI, however, presents sufficient evidence that Defendants' practices may cause consumer confusion. *See*, *e.g.,* PSGI 288, 338.

Defendants' Claims Motion does not address the factors regarding proximity of goods and services or similarity of marketing channels, so

MINUTES FORM 90
CIVIL - GEN

Initials of Deputy Clerk    jre

it is essentially undisputed that these factors might support a finding of likelihood of confusion.  *See*, *e.g.*, PSGI 1, 7, 48, 341.

Defendants assert that their intent in selecting the marks weighs against finding likelihood of confusion because they selected the marks and domain names at issue in good faith, to further legitimate business objectives.  CI, however, presents some evidence that may be interpreted as supporting the finding that Defendants intended to capitalize on the value of CI's mark.  *See*, *e.g.*, 288, 289.

Defendants assert that there is no evidence of actual confusion, but CI presents some evidence that there may have been actual confusion in the form of consumer complaints.  *See* PSGI 290.

Both parties concede that the factor of likelihood of expansion into other markets is neutral here.

Defendants assert that CI's representations to the PTO show that consumers understand how to wade through results and identify their intended destination.  CI presents evidence that consumers might not use a large degree of care.  *See* PSGI 345, 346.

As stated above, a finder of fact might determine that each of the *Sleekcraft* factors at issue weigh in favor of a likelihood of confusion. In sum, Defendants have not carried their burden to show that the undisputed facts entitle them to judgment as a matter of law on the issue of likelihood of confusion.

**2.   CI's Trade Dress Claim (Claim 1)**

Defendants assert that CI's trade dress claim fails.   Trade dress may be protected if [1] it is nonfunctional; [2] it is inherently distinctive or has acquired secondary meaning and [3] its imitation creates a likelihood of consumer confusion.  *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 842 (9th Cir. 1987).

There is no genuine dispute as to any material fact regarding whether either of the Defendants actually placed the ads that were alleged to infringe CI's trade dress.  Defendants assert that CI has no evidence as to who placed the allegedly infringing advertisements. Defendants' Statement Of Undisputed Facts ("DSUF") 169-171; 179.  CI asserts that OTL placed a banner ad on Facebook containing an image from the "Band Guy" commercial.  CI's only evidence is that (1) OTL has placed ads on Facebook before; (2) OTL has the ability to determine what ads it

places on Facebook; and (3) OTL has never taken any investigation to refute CI's assertion.  *See* PSGI 169-171.

This evidence is insufficient to raise a material dispute as to whether either Defendant placed the ad at issue.  CI admits that it has no evidence that Adaptive was aware of any allegedly infringing advertisement (PSGI 170), and solely addresses its opposition in this section to OTL's alleged actions.  As to OTL, CI's proffered evidence is insufficient.  First, OTL's general practice of placing ads on Facebook is not sufficient for the fact finder to conclude that OTL posted the ad at issue.  Second, CI's legal assertion that OTL is required to undertake an investigation lacks sufficient support.  CI cites solely to the dissent in an immigration case.  *See Singh v. Gonzales*, 491 F.3d 1091, 1028 (9th Cir. 2007) (Rawlinson, dissenting).  CI provides insufficient authority that OTL is required to use a tool to acquire information from Facebook to disprove CI's otherwise unsupported theory that OTL placed a certain ad, especially when CI itself may have the ability to obtain the information for itself via subpoena.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (moving party may attain summary judgment if it points out absence of evidence in support of the nonmoving party's case).

In sum, Defendants have met their burden to show the absence of a genuinely disputed issue of material fact as to whether they placed the ads that were alleged to infringe CI's trade dress, and are entitled to summary judgment in their favor as to this claim.

### 3.   CI's Dilution Claim (Claim 2)

Defendants assert that CI's dilution claim fails.  To prove dilution, "a plaintiff must show that (1) the mark is famous and distinctive; (2) the defendant is making use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark is likely to cause dilution by blurring or dilution by tarnishment."  15 U.S.C. § 1125(c)(1); *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 (9th Cir. 2008).

Defendants assert that CI's mark is not famous and distinctive, relying on the same evidence that purportedly showed a lack of distinctiveness.  Under the Lanham Act, "a mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner."  15 U.S.C. § 1125(c)(2)(A).  CI puts forward sufficient evidence that its FREECREDITREPORT.COM mark may ultimately be considered famous by a reasonable trier of fact, including evidence of the extent and geographic reach of advertising, actual recognition of the mark, and registration of

the mark. *See*, *e.g.*, PSGI 57, 194, 195, 258-263, 271, 275, 276, 343; *see also* 15 U.S.C. § 1125(c)(2)(A)(stating that the court may consider all relevant factors, including certain listed factors).

Defendants assert there can be no liability for blurring because the alleged use of the mark in question is not sufficiently identical, and incorporates arguments made elsewhere. *See* 15 U.S.C. § 1125(c)(2)(B)(listing non-exclusive factors a court may consider). The Court has previously ruled that many of the arguments relied on by Defendants rely on genuine disputed issues of fact. *See*, e.g., PSGI 258-263, 288, 337, 338, 342, 343.

In sum, Defendants have not carried their burden to show that the undisputed facts entitle them to summary judgment on the issue of dilution.

## 4. CI's Counterfeiting Claim (Claim 3)

Defendants assert that CI's counterfeiting claim fails because there is no evidence supporting the allegation that Defendants placed the ads at issue and because the ads at issue are not identical to, or substantially indistinguishable from, a registered mark. *See* 15 U.S.C. § 1116(d)(1)(B). There are two ads at issue. DSUF 31, 156, 157. Defendant asserts that the first advertisement adds a space, removes a period, and adds a question mark to Plaintiff's registered mark, and more importantly, when the advertisement is reviewed in full, it is readily distinguishable from CI's mark because it contains the display URL "FreeMortgageAid.net/CreditReport." Defendant asserts that the second ad displaying a URL of "FreeCreditReports360.com" is also distinguishable from CI's mark.

CI fails to respond to these arguments in its Opposition and fails to present sufficient evidence that Defendants placed the ads that are the subject of the counterfeiting claim.

The Court finds that Defendants have carried their burden of showing that they are entitled to summary judgment on CI's counterfeiting claim. Defendants have sufficiently shown that the ads at issue are distinguishable from Plaintiff's mark, that CI lacks evidence showing Defendants placed the ads, and that CI abandoned this claim by failing to respond. *See Colgate-Palmolive CO. v. J.M.D. All-Star Import and Export Inc.*, 486 F. Supp. 2d 286, 290-291 (S.D.N.Y. 2007) (granting summary judgment on counterfeiting claim based on differences in marks); *Jenkins v. Cty. of Riverside*, 398 F.3d 1093, 1095 n. 4 (9th Cir. 2005) (plaintiff

may abandon claims by not raising them in opposition to defendant's motion for summary judgment).

## 5. CI's Cybersquatting Claims (Claims 4 and 5)

Defendants assert that CI's cybersquatting claims fail.  To prove liability, CI must show that (i) Defendants registered, trafficked in, or used a domain name; (ii) that the FREECREDITREPORT.COM mark was either distinctive or famous at the time the domain name was registered; (iii) that the domain name is either identical or confusingly similar to the FREECREDITREPORT.COM mark (or, in the case of CI's fifth claim for relief, that the domain name is dilutive of CI's famous mark); and (iv) that Defendants had a bad faith intent to profit from CI's mark.  *See* 15 U.S.C. § 1125(d); *Interstellar Starship Services, Ltd. v. Epix, Inc.*, 304 F.3d 936, 946 (9th Cir. 2002).

Defendants assert that there is no evidence that the Accused Domains are confusingly similar to CI's asserted mark.  However, a review of the domains at issue, which share multiple constituent words with CI's mark, does not show as a matter of law that a reasonable factfinder might not deem the domain names to be confusingly similar.  *See* PSGI 2, 7-18.  Defendants also assert that CI admits that the domains that contain no content are not confusingly similar, but this purported admission is sufficiently disputed by CI.  *See* PSGI 176.

Defendants also assert that CI cannot show Defendants' bad faith intent because the domain names represent a valuable means to market credit reporting and monitoring services.  However, CI presents sufficient evidence that a reasonable factfinder might rely on to find Defendants' bad faith.  *See* PSGI, e.g., 1, 19, 21, 288, 289; 15 U.S.C. § 1125(d)(1)(B)(i)(listing non-exclusive factors a court may consider to find bad faith).

In sum, Defendants have not carried their burden to show that the undisputed facts entitle them to judgment as a matter of law on the issue of cybersquatting.

## 6. CI's Copyright Infringement Claim (Claim 10)

Defendants assert that CI's copyright claim fails.  CI alleges acts of infringement against defendants for three allegedly infringing ads.  DSUF 160-163.  Defendants assert that they did not place the ads at issue.  DSUF 169.  CI admits that it has no evidence that Adaptive placed the ads.  DSUF 170.

MINUTES FORM 90                           Initials of Deputy Clerk    jre
CIVIL - GEN

CI asserts that OTL placed ads on Facebook and MySpace.  The Court has already decided that there is insufficient evidence that OTL placed the ads at issue on Facebook.  *See* Section II.A.2., supra.  The only additional piece of evidence that CI submits regarding the MySpace ad is that the MySpace ad resolved directly to a domain name owned by OTL and not through an affiliate or partner page.  *See* PSGI 169.

The Court finds that this is not sufficient evidence to avoid summary judgment.  First, even if the MySpace ad did directly resolve to a website owned by OTL, CI has shown nothing to prevent a party not controlled by OTL from creating a link to OTL's webpage.  In addition, CI's representative Grace Hong makes the assertion that the ad resolved "directly" to OTL's webpage solely based on the "destination URL" link on a page generated by third-party AdRelevance and not based on personal observation of the ad on MySpace.  As Defendants assert, Hong's statement lacks foundation.  *See* Reply DSUF 169.

In sum, Defendants have met their burden to show the absence of a genuinely disputed issue of material fact as to whether they placed the ads that were alleged to infringe CI's copyrights.

**7.   Vicarious And Contributory Trademark Infringement (Claims 8 and 9)**

Defendants assert that CI's claims for vicarious and contributory trademark infringement fail.  "To be liable for contributory trademark infringement, a defendant must have (1) 'intentionally induced' the primary infringer to infringe, or (2) continued to supply an infringing product to an infringer with knowledge that the infringer is mislabeling the particular product supplied.  *Perfect 10, Inc. v. Visa Intern. Service Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007).  When measuring and weighing a fact pattern outside of the "product" context, a court considers the extent of control exercised by the defendant over the third party's means of infringement.  *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 984 (9th Cir.1999).  For liability to attach, there must be "[d]irect control and monitoring of the instrumentality used by a third party to infringe the plaintiff's mark."  *Id.*  "Vicarious liability for trademark infringement requires a finding that the defendant and the infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product."  *Perfect 10*, 494 F.3d at 807 (internal punctuation and citations omitted).

MINUTES FORM 90                        Initials of Deputy Clerk ____jre____
CIVIL - GEN

Defendants assert that its affiliate marketing relationships cannot yield secondary liability for trademark infringement.  CI opposes by asserting that Adaptive may be secondarily liable for OTL's infringing acts.  For instance, CI provides evidence of the control Adaptive might have exercised over OTL and provides evidence that might be interpreted to show Adaptive inducing OTL to infringe with respect to search ad purchases.  *See,* e.g., PSGI 37-39, 282, 283, 287.  This evidence might also show an actual or apparent partnership between OTL and Adaptive.

In sum, Defendants have not carried their burden to show that the undisputed facts entitle them to judgment as a matter of law on the issues of vicarious and contributory trademark infringement.

**8.   Vicarious And Contributory Copyright Infringement (Claims 11 and 12)**

Defendants assert that CI's claims for vicarious and contributory copyright infringement fail.  To succeed on a claim for contributory copyright infringement, CI must show that defendant "(1) has knowledge of another's infringement and (2) either (a) materially contributes to or (b) induces that infringement." *Perfect 10, Inc. v. Visa Intern. Service Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007).  Vicarious infringement requires proof of "(1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity." *Id.* at 802.

Defendants assert that they do not know who placed certain allegedly infringing advertisements.  *See* Section I.A.6., supra.  For the "Justcom" ad, it is undisputed that OTL contacted its affiliate when it learned of the connection between the affiliate and the allegedly infringing ad, that OTL was informed that the ad was taken down, and that the affiliate relationship was subsequently terminated.  DSUF 182, 184, 185.  Further, in Opposition CI abandons its argument that Defendants are liable for vicarious or contributory copyright infringement.  *See Jenkins*, 398 F.3d at 1095 n. 4.

In sum, the Court finds that Defendants have met their burden to show the absence of a genuinely disputed issue of material fact as to whether they are liable for vicarious or contributory copyright infringement.

**III. Defendants' Joint Motion For Partial Summary Judgment Of Affirmative Defenses (Dkt. 207)**

The Court has received, read, and considered Defendants' Joint Motion For Partial Summary Judgment Of Affirmative Defenses ("Defendants' Defenses Motion") (dkts. 207, 244), Plaintiff ConsumerInfo.com, Inc.'s Opposition (dkt. 340), the Reply (dkt. 354), and related papers.

For reasons described more fully below, the Court hereby:

1. DENIES Defendants' Defenses Motion as to Defendants' Laches Affirmative Defense;

2. DENIES Defendants' Defenses Motion as to CI's Failure to State a Claim Affirmative Defense;

3. GRANTS IN PART AND DENIES IN PART Defendants' Defenses Motion as to CI's Unclean Hands Affirmative Defense.  OTL has carried its burden to show it is entitled to summary judgment on this issue, while Adaptive has not;

4. GRANTS Defendants' Defenses Motion as to CI's Priority, No Likelihood of Confusion, No Secondary Meaning, and Misrepresentation of Source Affirmative Defenses;

5. DENIES Defendants' Defenses Motion as to CI's Preemption Affirmative Defense;

6. GRANTS Defendants' Defenses Motion as to CI's Acquiescence and Laches Affirmative Defenses;

7. GRANTS Defendants' Defenses Motion as to CI's Waiver and Estoppel Affirmative Defenses;

8. DENIES Defendants' Defenses Motion as to CI's Adequate Remedy at Law Affirmative Defense;

9. GRANTS Defendants' Defenses Motion as to CI's Failure to Mitigate Damages Affirmative Defense;

10. GRANTS Defendants' Defenses Motion as to CI's Merger and Scenes a Faire Affirmative Defenses;

11. GRANTS Defendants' Defenses Motion as to CI's "Additional Affirmative Defenses" Affirmative Defense.

**A.   Analysis**

## 1.   Defendants' Laches Affirmative Defense

Defendants assert that they are entitled to judgment in their favor
on their Laches Affirmative Defenses (Adaptive's Third Affirmative
Defense (dkt. 58); OTL's Third Affirmative Defense (dkt. 93)).

"In order to succeed on a defense of laches, a defendant must prove
both: (1) an unreasonable delay by plaintiff in bringing suit, and (2)
prejudice to himself." *Miller v. Glenn Miller Productions, Inc.*, 454
F.3d 975, 997 (9th Cir. 2006).  If a plaintiff files suit within the
applicable period of limitations for his claim, there is a strong
presumption that laches does not bar the claims; conversely, if any part
of the alleged wrongful conduct occurred outside of the limitations
period, courts presume that the plaintiff's claims are barred by laches.
*Id.*  The limitations period for laches starts from the time the plaintiff
knew or should have known about its potential cause of action.  *Tillamook
Country Smoker, Inc. v. Tillamook Country Creamery Ass'n*, 465 F.3d 1102,
1108 (9th Cir. 2006).

"[A] laches determination is made with reference to the limitations
period for the analogous action at law." *Jarrow Formulas, Inc. v.
Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir.2002).  Defendants
contend the applicable statute of limitations is 3 years by analogy to
the California fraud statute of limitations.  CI contends that the
applicable statute of limitations is 4 years by analogy to California
trademark infringement law.  The Court finds that the applicable statute
of limitations for a laches determination in at least the trademark
claims in this action is 4 years, because the gravamen of the action is
trademark infringement rather than false advertising (for which the fraud
statute of limitations might be more appropriate).[3]  *See Internet
Specialities West, Inc. v. Milon-Digiorgio Enterprises, Inc.*, 559 F.3d
985, 990 n. 2 (court agrees with parties that four-year limitations
period was correct for trademark infringement action); *cf. Au-Tomotive
Gold Inc. v. Volkswagen of America, Inc.*, 603 F.3d 1133, 1140 (9th Cir.
2010) (applying Arizona law and borrowing statute of limitations from
fraud because Arizona's directly analogous state trademark law does not
contain a statute of limitations).

---

[3]Defendants assert that CI cannot now argue that a 4-year statute of
limitations applies because of what CI asserted in its L.R. 7-3
correspondence. The court finds that this arguments lacks sufficient
support and is unpersuasive here.

MINUTES FORM 90                          Initials of Deputy Clerk     jre
CIVIL - GEN

This action was filed on May 28, 2009.  Defendants assert that CI unreasonably delayed the filing of this action for at least four years after discovering Adaptive's allegedly infringing use of CI's marks, and for well over four years after discovery of One Tech's allegedly infringing use of CI's mark, resulting in severe prejudice to Defendants. Adaptive asserts that the laches period began at least as early as August 2005 with respect to itself, when CI learned of Adaptive's allegedly infringing use of CI's FREECREDITREPORT.COM mark as an Inernet search engine keyword.  OTL asserts that CI has known of OTL's use of "freecreditreport.com" as a keyword since 2001, when OTL became an affiliate of CI's predecessor.  OTL also asserts that CI's failure to take action continued in 2007 when CI and OTL signed a new affiliate agreement.

As to Adaptive, Defendants admit that the laches period may not have started running until August 2005, which would be within the 4-year limitations period.  *See* PSGI 97.  As to OTL, the existence of a marketing agreement between CI and OTL means that OTL's activities prior to the agreement's termination in December 2005 may have inured to CI's benefit.  *See* PSGI 213-217; *Watec Co. v. Liu*, 403 F.3d 645, 654 (9th Cir. 2005).  Thus, there is sufficient evidence that, at least for purposes of summary judgment, there is a presumption that CI's delay was reasonable.

But even without this presumption, CI presents sufficient evidence that its delay may considered reasonable by the finder of fact.  To consider whether the trademark owner's delay in filing suit was unreasonable, and therefore barred, the court must consider the following six "E-systems" factors: "(1) the strength and value of the trademark rights asserted; (2) plaintiff's diligence in enforcing the mark; (3) harm to the senior user if relief is denied; (4) good faith ignorance by the junior user; (5) competition between senior and junior users; and (6) extent of harm suffered by the junior user because of the senior user's delay."  *Tillamook*, 465 F.3d at 1102 (citing *E-Systems, Inc. v. Monitek, Inc.,* 720 F.2d 604, 607 (9th Cir. 1983)).  CI presents evidence sufficient to raise a disputed issue of fact as to the strength of its mark.  *See, e.g.,* PSGI 258-263, 342, 343.  CI presents evidence sufficient to raise a disputed issue of fact as to its diligence.  Along with the fact that the cause of action may not have arisen until within the limitations period (*See, e.g.,* PSGI 95, 213-217), the more recent increase Defendants' keyword bidding activities may be sufficient to excuse earlier inaction by CI.  *See, e.g.,* PSGI 220 *Carter-Wallace, Inc. v. Procter & Gamble Co.*, 434 F.2d 794, 804 n.3 (9th Cir. 1970).  Also, Defendants' actions against other alleged infringers and engagement with search engines may be interpreted to show diligence.  *See, e.g.,* 305-317. CI also presents some evidence that may be interpreted to show bad faith,

MINUTES FORM 90
CIVIL - GEN

Initials of Deputy Clerk ____jre____

including a statement that certain domains at issue domain may be too close to CI's.  *See*, e.g., PSGI 291, 295.  CI also presents some authority indicating that competition between the parties may weigh against a finding of laches.  *See E-Systems, Inc. v. Monitek, Inc.*, 720 F.2d 604, 607 (9th Cir. 1983).  Although Defendants submit evidence that they may have been prejudiced by CI's delay, when considering all six factors and the evidence currently before the court on summary judgment, it would be premature to determine that a reasonable finder of fact could not find laches inapplicable.

In sum, Defendants have not carried their burden to show that the undisputed facts entitle them to judgment as a matter of law as to their affirmative defense of laches.

### 2.   CI's Failure To State A Claim Affirmative Defense

Defendants withdraw this aspect of Defendants' Defenses Motion in their Reply at 2 n. 3.  The Court DENIES Defendants' Defenses Motion as to this ground.

### 3.   CI's Unclean Hands Affirmative Defense

Defendants assert that they are entitled to summary judgment on CI's unclean hands affirmative defense.  Defendants assert, and CI does not dispute, that "the defense of unclean hands applies only with respect to the right in suit." *Mytee Products, Inc. v. H.D. Products, Inc.*, 2007 WL 1813765, *8 (S.D. Cal. Jun. 22, 2007) (citations omitted).  Defendants assert that CI has no evidence that Defendants dirtied their hands acquiring the trademark rights they now seek to assert in their counterclaims.

In opposition, CI points to evidence that may be interpreted as showing that Adaptive dirtied its hands in acquiring trademark rights in the mark "FreeTripleCreditReport.Com." *See Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 866, 870 (9th Cir. 2002) (unclean hands defense may be valid if plaintiff used the trademark to deceive consumers).  CI proffers some evidence that may be interpreted to show Adaptive's knowledge that consumers would be deceived, combined with Adaptive's continued promotion of its mark. *See, e.g.,* PSGI 291, 292. CI also puts forward some evidence that Adaptive has run a search advertisement with the headline "FreeTripleCreditReport®," notwithstanding that Adaptive had no federal registration for "FreeTripleCreditReport."  PSGI 294.  At this time, CI has put forward sufficient evidence show a genuine dispute as to material facts.

However, as to OTL, CI puts forward no evidence in support of its unclean hands defense against the claims brought by OTL.  *See Jenkins*, 398 F.3d at 1095 n. 4.

In sum, Adaptive has not carried its burden to show that the undisputed facts entitle it to judgment as a matter of law as to CI's affirmative defense of unclean hands.  However, OTL has carried its burden to show the absence of a genuinely disputed issue of material fact as to whether unclean hands may apply to bar the claims of OTL; the Court GRANTS summary judgment in favor of OTL as to CI's second affirmative defense of unclean hands and dismisses this defense as to OTL.

### 4.   CI's "Priority, No Likelihood of Confusion, No Secondary Meaning, And Misrepresentation Of Source" Affirmative Defenses

CI concedes that priority, no likelihood of confusion, no secondary meaning, and misrepresentation as to source are not affirmative defenses. *See* Opp. at 23:23-24.  The Court GRANTS Defendants' Defenses Motion as to this ground and DISMISSES these purported affirmative defenses.  As to Adaptive, these are CI's third, sixth, seventh, and fourteenth affirmative affirmative defenses; as to OTL, these are CI's third, fifth, sixth and thirteenth affirmative defenses.

### 5.   CI's Preemption Affirmative Defense

Defendants assert that they are entitled to summary judgment on CI's preemption defense.  Defendants contend that the copyright act cannot preempt claims based on Lanham Act § 43(a).  However, the Copyright Act explicitly preempts laws that regulate in the area of copyright, stating that 'all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 ... are governed exclusively by this title."  17 U.S.C. § 301(a); *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1150 (9th Cir. 2008).  Defendants assert that because all of Adaptive's claims require proof of a likelihood of confusion – an element not required under copyright - Adaptive's claims are not preempted by the Copyright Act.  However, Defendants' cited authorities to not support their blanket assertion.

In Opposition, CI provides some evidence that Adaptive's claims may be based at least in part on the allegation, independent of the smiley face's status as a trademark, that CI copied Adaptive's smiley face icon *See* Adaptive First Amended Counterclaim (dkt. 58) ¶ 27; PSGI 362. Depending on the claims asserted at trial, there may be a preemption defense as to certain aspects of certain claims, and it is premature to

MINUTES FORM 90                     Initials of Deputy Clerk   <u>jre</u>
CIVIL - GEN

dismiss the defense at summary judgment. *See Comedy III Productions, Inc. v. New Line Cinema*, 200 F.3d 593, 595 (9th Cir. 2000) ("[T]he Lanham Act cannot be used to circumvent copyright law.").

In sum, Defendants have not carried their burden to show that the undisputed facts entitle them to judgment as a matter of law as to CI's affirmative defense of preemption.[4]

### 6.   Acquiescence And Laches Affirmative Defenses

CI concedes that it is not pursuing its affirmative defenses of acquiescence and laches. Opp. at 24:3-4. The Court GRANTS Defendants' Defenses Motion as to this ground and DISMISSES these affirmative defenses. As to Adaptive, these are CI's eighth and twelfth affirmative defenses; as to OTL, these are CI's seventh and eleventh affirmative defenses.

### 7.   CI's Waiver And Estoppel Affirmative Defenses

CI concedes that it is not pursuing its affirmative defenses of waiver and estoppel. Opp. at 24:3-4. The Court GRANTS Defendants' Defenses Motion as to this ground and DISMISSES these affirmative defenses. As to Adaptive, these are CI's ninth and tenth affirmative defenses; as to OTL, these are CI's eighth and ninth affirmative defenses.

### 8.   CI's Adequate Remedy At Law Affirmative Defense.

Defendants withdraw this aspect of Defendants' Defenses Motion in their Reply at 2 n. 3. The Court DENIES Defendants' Defenses Motion as to this ground.

### 9.   CI's Failure To Mitigate Damages Affirmative Defense

CI concedes that it is not pursuing its affirmative defense of failure to mitigate damages. Opp. at 24:3-4. The Court GRANTS Defendants' Defenses Motion as to this ground and DISMISSES this affirmative defense. As to Adaptive, this is CI's thirteenth affirmative defense; as to OTL, this is CI's twelfth affirmative defense.

---

[4]Although Defendants' Defenses Motion also argues lack of Lanham Act preemption over state created rights, that ground was not independently described in the Notice and Defendants do not carry their burden to show that summary judgment is warranted as to the preemption affirmative defense as a whole.

**10.  CI's Merger And Scenes A Faire Affirmative Defenses**

CI concedes that it is not pursuing its affirmative defense of merger and scenes a faire.  Opp. at 24:3-5.  The Court GRANTS Defendants' Defenses Motion as to this ground and DISMISSES this affirmative defense. As to Adaptive, these is CI's sixteenth affirmative defense.

**11.  CI's "Additional Affirmative Defenses" Affirmative Defense**

CI concedes that it is not pursuing its affirmative defense of "Additional Affirmative Defenses."  Opp. at 24:3-5.  The Court GRANTS Defendants' Defenses Motion as to this ground and DISMISSES this affirmative defense.  As to OTL, this is CI's twenty-sixth affirmative defense.

**IV.  Plaintiff ConsumerInfo.com, Inc.'s Motion For Partial Summary Judgment Against Adaptive Marketing (Dkt. 209)**

The Court has received, read, and considered Plaintiff ConsumerInfo.com, Inc.'s Motion For Partial Summary Judgment Against Adaptive Marketing ("CI's Adaptive Motion") (dkts. 209, 256), Defendant Adaptive Marketing LLC's Opposition (dkt. 295), the Reply (dkt. 342), and related papers.

For reasons described more fully below, the Court hereby:

1.  DENIES CI's Adaptive Motion as to whether Adaptive's trademark claims fail because Adaptive cannot establish secondary meaning in its purported trademarks;

2.  GRANTS CI's Adaptive Motion as to Adaptive's false advertising counterclaim (Second Counterclaim);

3.  DENIES CI's Adaptive Motion as to Adaptive's laches, waiver, and estoppel affirmative defenses;

4.  DENIES CI's Adaptive Motion as to Adaptive's unclean hands defense.

**A.  Analysis**

**1.  Secondary Meaning And Categorization Of Adaptive's Purported Marks**

CI asserts that Adaptive has no rights in its purported FREETRIPLESCORE.COM, FREETRIPLECREDITSCORE.COM, FREETRIPLE.COM, FREETRIPLECREDITREPORT.COM (collectively, the "Free Triple" marks) and FREESCORE.COM marks.  CSUF 40, 41.  Adaptive alleges that CI infringed its Free Triple Marks and FREESCORE.COM mark by purchasing them as search engine keywords, either directly or through affiliates.  CSUF 41, 57.

"A trademark that is descriptive and lacks secondary meaning is invalid." *Self-Realization Fellowship Church v. Ananda Church of Self-Realization,* 59 F.3d 902, 910 (9th Cir. 1995).  "A trademark is descriptive if it describes the product to which it refers or its purpose." *Id.*  "The basic element of secondary meaning is a mental recognition in buyers' and potential buyers' minds that products connected with the mark are associated with the same source." *Id.* at 911 (internal punctuation and ciatation omitted).  "Factors considered in determining whether a secondary meaning has been achieved include: (1) whether actual purchasers of the product bearing the claimed trademark associate the trademark with the producer, (2) the degree and manner of advertising under the claimed trademark, (3) the length and manner of use of the claimed trademark, and (4) whether use of the claimed trademark has been exclusive." *Comm. for Idaho's High Desert v. Yost*, 92 F.3d 814, 822 (9th Cir. 1996) (citation and internal punctuation omitted).  The existence of secondary meaning is a question of fact. *See id.*

CI asserts that the listed secondary meaning factors all cut against Adaptive for reasons including that (1) when the USPTO request more information in support of Adaptive's trademark applications on the Free Triple and FREESCORE.COM terms on descriptiveness grounds, Adaptive was unable to submit evidence of secondary meaning; (2) Adaptive's marketing employees have referred to "freetriple" as "broad and generic;" (3) Adaptive's and CI's surveys have demonstrated that awareness of Adaptive's Free Triple and FREESCORE.COM marks is low; (4) Adaptive did not begin substantial promotion of FREESCORE.COM until after it filed its counterclaims; (5) and that in general Adaptive's use of its purported marks was short-lived.  However, Adaptive provides some evidence that a reasonable factfinder may use to find the existence of secondary meaning in its marks, including that its Free Triple marks have been used in commerce for nearly four years; that Adaptive has spent many millions of dollars in advertising related to its marks; that Adaptive has made many sales in connection with its marks; that the geographical scope of Adaptive's advertising program extends throughout all 48 contiguous states; and that its advertising was successful. *See, e.g.,* Adaptive's Statement Of Genuine Issues Of Fact ("ASGI") 45, 99, 101-105; 111, 112.

Adaptive also asserts that its marks are suggestive rather than descriptive.  Suggestive marks are inherently distinctive and do not require proof of secondary meaning.  *Zobmondo Entertainment, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010).  "A suggestive mark is one for which a consumer must use imagination or any type of multistage reasoning to understand the mark's significance ... the mark does not describe the product's features, but suggests them."  *Id.* at 1114 (quoting *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1047 n. 8 (9th Cir.1998)) (internal punctuation omitted).  Whether a mark is descriptive or suggestive is a question of fact.  *Zobmondo Entertainment*, 602 F.3d at 1113.

Adaptive asserts that the Free Triple Marks and FreeScore.com require a "mental leap" to understand the relationship to the product because the marks do not describe the products offered in a straightforward way.  *See, e.g.,* "What is a 'free triple'?" at Opp. 10:11.  Adaptive also provides some evidence that may be interpreted by a reasonable factfinder to show that some of its marks may be suggestive, including by showing additional common meanings for "free score."  *See, e.g.,* ASGI 121, 122 (related to the marks incorporating "free score").

In sum, CI has not carried its burden to show that the undisputed facts entitle it to judgment as a matter of law on the issues whether Adaptive's marks have secondary meaning or whether they are descriptive rather than suggestive.

### 2.  Adaptive's False Advertising Counterclaim

CI asserts that Adaptive cannot prove its false advertising counterclaim because Adaptive cannot show (1) that CI placed an allegedly false advertisement; (2) that Adaptive suffered a injury sufficient to give it standing; and (3) that an allegedly false advertisement materially affected consumers' buying decisions.  The Court finds that CI's assertion has merit as to all three of the allegedly false advertisements before the Court.[5]

---

[5]CI focuses its Adaptive Motion in this respect on the specific false advertisement described in Adaptive's Counter Claim, Dkt. 58, ¶¶ 22-23, 37.  In Opposition, adaptive raises two additional instances of alleged false advertising.  However, these additional instances present the same infirmities as raised in the Motion, and may not have been timely disclosed to CI.  *See* 9/13/10 Ramallo Decl. ¶ 6 & Ex. C.  Thus, for completeness, the Court considers all three advertisements.

MINUTES FORM 90                          Initials of Deputy Clerk   <u>  jre  </u>
CIVIL - GEN

A false advertising claim under the Lanham Act requires proof that (1) the defendant made a false statement of fact about a product in a commercial advertisement, (2) the statement actually deceives or has the tendency to deceive a substantial segment of its audience, (3) the deception is material, (4) the defendant caused the false statement to enter interstate commerce, and (5) the plaintiff has been or is likely to be injured as a result of the false statement. *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).

CI supplies some evidence that it did not place the advertisements at issue, which shifts the burden to Adaptive to come forward with some evidence that CI did indeed place the allegedly false advertisements. *See* CSUF 71.  The only purported evidence that Adaptive presents is that CI owned the URL to which two of the advertisements (Trachtenberg Decl. Exs. B and E) resolved.  *See* ASGI 71, 131, 133.  This is not sufficient to raise a triable issue of fact as to whether CI actually placed the advertisements, as any CI affiliate or third party could have placed the ads at issue.  As to the third advertisement (Trachtenberg Decl. Ex. F), Adaptive does not even assert that CI owned the URL to which the ad linked.  *See* Trachtenberg Decl. ¶ 24 (declaring, without foundation, that "I became aware that CI, or its affiliate" placed the ad).  This too is insufficient.

CI also asserts that Adaptive's false advertising claim fails because it comes forward with no evidence that it was injured by the allegedly deceptive advertisements. CSUF 78.  Adaptive does not provide any evidence to dispute this fact and essentially admits that it has none; instead, Adaptive claims it is not material because injury is presumed when an advertisement is literally false.  *See* ASGI 78.  However, while literal falsity may lead to a presumption of consumer deception, the authorities provided say nothing about literal falsity leading to a presumption of commercial injury.  *See Southland Sod Farms*, 108 F.3d at 1139; *Barrus v. Sylvania*, 55 F.3d 468, 470 (9th Cir. 1995).

In sum, CI has met its burden to show the absence of a genuinely disputed issue of material fact as to whether CI placed the ads that were claimed to be false advertisements, or whether Adaptive suffered injury as a result.

### 3.  **Adaptive's Laches, Waiver, And Estoppel Affirmative Defenses**

CI asserts that Adaptive cannot prove its laches, waiver, or estoppel affirmative defenses because Adaptive can show neither unreasonable delay nor prejudice.[6]

CI asserts that Adaptive just recently launched <FreeTripleCreditReport.com> in April of 2008; that CI sent Adaptive a cease and desist letter in December 2008; that the parties engaged in settlement discussions while CI was engaged in trademark litigation against another party; that Adaptive had only minimal sales in connection with other domains; and that CI did not unreasonably delay with respect to keyword bidding because it has worked with search engines and sent letters to other alleged infringers.  However, Adaptive has presented sufficient evidence that may be interpreted by a reasonable factfinder to conclude that CI unreasonably delayed, including that Adaptive has used CI's FREECREDITREPORT.COM mark as a search engine keyword as early as 2002; that CI has monitored its competitors since 2002 and complained about Adaptive's marketing as early as January 2005; and that the topic of the cease and desist letter sent to Adaptive may not have included all the relevant alleged infringements in the litigation.  *See*, *e.g,* ASGI 89, 90, 93, 151-154, 177.

CI also asserts that Adaptive has not suffered prejudice because Adaptive has not built a valuable business around its trademark during the time that CI delayed the exercise of its rights.  *See Internet Specialties West, Inc. v. Milon-Digioigio Enters.*, 559 F.3d 985, 991-992 (9th Cir. 2009).  However, Adaptive provides sufficient evidence that may be interpreted by a reasonable factfinder to conclude that Adaptive has suffered legally cognizable prejudice, including evidence that Adaptive may have engaged in the substantial and ultimately successful promotion of its trademarks at issue, and that Adaptive has suffered evidentiary prejudice.  *See, e.g.*, ASGI 37, 96, 101-107, 112-115, 179.  Based on the evidence before the Court, a reasonable factfinder could conclude that Adaptive's claim of prejudice is based on its successful investment in its marks as the identity of its business in the minds of the public, or its lack of access to relevant evidence.

In sum, CI has not carried its burden to show that the undisputed facts entitle it to judgment as a matter of law as to Adaptive's laches, waiver, and estoppel affirmative defenses.

---

[6]CI attempts to attain summary judgment on Adaptive's waiver and estoppel defenses by a footnote briefly analogizing them to laches.  CI's briefing on this matter is insufficient to carry its initial burden to show that it is entitled to judgment on these issues.

MINUTES FORM 90                        Initials of Deputy Clerk ___jre___
CIVIL - GEN

### 4.   Adaptive's Unclean Hands Affirmative Defense

CI asserts that Adaptive's unclean hands defense fails because the alleged conduct does not implcate the equitable relations of the litigants.  Relying on cases decided at the pleading stage, CI asserts that Adaptive's pleading did not provide adequate notice the contents of CI's affirmative defense.  However, CI does not explain how it could not have use discovery to receive the clarity it now seeks.  As Adaptive asserts, CI's motion on this issue appears to ignore the evidence in the action.

CI's Adaptive Motion does not carry CI's initial burden to show an absence of disputed material fact or that it is entitled to summary judgment as a matter of law as to Adaptive's unclean hands affirmative defense.  However, to the extent that Adaptive is required to come forth with some evidence to show a genuine dispute as to whether Adaptive's unclean hands defense may succeed, Adaptive has done so. *See, e.g.,* ASGI 149, 157, 190, 194.

## V.   Plaintiff ConsumerInfo.com, Inc.'s Motion For Partial Summary Judgment Against One Technologies (Dkt. 208)

The Court has received, read, and considered Plaintiff ConsumerInfo.com, Inc.'s Motion For Partial Summary Judgment Against One Technologies ("CI's OTL Motion") (dkts. 208, 264), Defendant One Technologies, LP's Opposition (dkt. 346), the Reply (dkt. 341), and related papers.

For reasons described more fully below, the Court hereby:

1.   DENIES CI's OTL Motion as to OTL's counterclaim for monopolization or attempted monopolization under the Sherman Act;

2.   DENIES CI's OTL Motion as to OTL's counterclaims for cancellation and declaratory judgment of non-enforceability;

3.   DENIES CI's OTL Motion as to OTL's counterclaim for trademark infringement and false advertising under the Lanham Act, common law trademark infringement, declaratory judgment of non-enforceability, and contributory liability under the Lanham Act;

4.   DENIES CI's OTL Motion as to OTL's laches, waiver, and estoppel defenses, and counterclaim for declaratory judgment of non-enforceabi

5.   DENIES CI's OTL Motion as to OTL's unclean hands defense;

6.   DENIES CI's OTL Motion as to OTL's "fair use" defense.

**A.   Analysis**

**1.   OTL's Monopolization Counterclaims**

CI asserts that it is entitled to summary judgment in its favor on OTL's counterclaim entitled "Monopolization and Attempted Monopolization Under the Sherman Act, 15 U.S.C. § 2." In Opposition, OTL asserts that it is pursuing a claim only for attempted monopolization. Opp. at 8:15; 19:6-7.

OTL's Sherman Act Section 2 claim for attempted monopolization requires to it to prove (1) that CI has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power. *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993). In addition, OTL must show that CI has caused an antitrust injury of the type the antitrust laws were designed to prevent. *See Image Technical Services, Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1202 (9th Cir. 1997).

To demonstrate a dangerous probability of success, OTL must (1) define the market, (2) establish the CI's dominant market share, and (3) show significant barriers to entry and constraints on expansion by existing firms. *See Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995). "[M]arket definition and market power are essentially questions of fact." *Oahu Gas Service, Inc. v. Pacific Resources, Inc.*, 838 F.2d 360, 363 (9th Cir. 1988).

CI asserts that OTL has not adequately defined the market because the proper definition of the market includes credit reporting services delivered both online and offline. CI also asserts that OTL erroneously defined the market based on demand elasticity alone without reference to elasticity of supply. The Court finds that OTL has presented sufficient evidence such that the market definition is a genuinely disputed issue of fact. *See, e.g.,* One Technologies' Statement Of Genuine Issues Of Fact ("OSGI") 97-104, 354, 355, 363, 364, 393, 394. For example, a CI employee tasked with monitoring CI's competitors provided testimony that may be interpreted as supporting the definition of the relevant market as online credit reporting. *See* OSGI 363, 364. Also, Dr. Leffler's report,

MINUTES FORM 90                         Initials of Deputy Clerk    _jre_
CIVIL - GEN

deposition testimony, and declaration show that market definition is a genuine issue of fact.  The Court does not read *Rebel Oil Co., Inc. v. Atlantic Richfield Co.*, 51 F.3d 1421 (9th Cir. 1995) to stand for the proposition that a motion for summary judgment as to a plaintiff's monopolization claim must be granted if the plaintiff's expert does not explicitly base his market definition on supply elasticity.  For instance, there is evidence that the market at issue in this matter is sufficiently different from the homogenized commodity market of *Rebel Oil* such that, in this case, it does not make sense to require an expert to explicitly base his market definition on supply elasticity in order to avoid summary judgment.  This is especially so in light of the other evidence submitted by OTL that support its proposed market definition. *See, e.g.,* OSGI 103.  Nevertheless, there is evidence that Dr. Leffler considered supply-side substitution when formulating his overall opinion. *See, e.g.,* SGF 104, 393, 394, 519, 520.

CI also asserts that OTL does not show sufficient legally cognizable barriers of entry, both with respect to new firms and with respect to expansion of firms already in the market.  *See Rebel Oil*, 51 F.3d at 1439 (defining barriers of entry as "additional long-run costs that were not incurred by incumbent firms but must be incurred by new entrants," or "factors in the market that deter entry while permitting incumbent firms to earn monopoly returns") (citation omitted).  However, OTL presents sufficient evidence such that a reasonable factfinder may find significant barriers of entry to new and existing firms, including at least the purported abuse of CI's claimed trademark, economies of scale, and inability to ramp up supply without individualized consumer orders being placed.  *See*, *e.g.,* OSGI 156, 277, 279, 499, 500, 538, 693; Leffler Report ¶¶ 84-89.

CI also asserts that OTL's position is not economically rational. However, CI does not adequately show that the undisputed facts show OTL's position to be irrational, especially in light of the fact that OTL's claim is one for attempted monopolization.  *See, e.g.,* Leffler Report at ¶¶ 75-94; Leffler Decl. ¶¶ 63-67.  Furthermore, even if OTL's claim were deemed implausible, OTL has submitted sufficiently persuasive evidence at this stage to avoid summary judgment.

CI also asserts that OTL cannot demonstrate antitrust injury. However, OTL has submitted sufficient evidence that may be interpreted to find that OTL's attempted monopolization has caused harm to competition, including by unfairly raising barriers to entry and increasing competitors' costs.  *See, e.g.,* OSGI 300, 304, 305; Leffler Report ¶¶ 64-74; Leffler Decl. ¶¶ 12-23.

In sum, CI has not carried its burden to show that the undisputed facts entitle CI to summary judgment as to OTL's monopolization counterclaims.

## 2.  OTL's Cancellation And Declaratory Judgment Counterclaims

CI asserts that it is entitled to summary judgment on OTL's claims for cancellation of CI's mark on grounds of (1) fraud, (2) lack of secondary meaning, and (3) genericness.[7]  CI also asserts that it is entitled to summary judgment on OTL's counterclaim for Declaratory Judgment of Unenforceability to the extent it relies on allegations of genericness and lack of secondary meaning.

CI contends that it had no duty to disclose possible users of an identical or confusingly similar mark unless there has been a determination that of "clearly established" trademark rights, such as by court decree or settlement.  CI also contends that OTL has no evidence that (1) CI intentionally deceived the PTO, or (2) that the PTO relied on any purported misrepresentations.  OTL contends, and provides sufficient evidence in support, that CI may have had a duty to disclose that its purported trademark was generic and may have had a duty to disclose the FTC action because CI knew that the action was relevant to the public's perception of the mark.  *See, e.g.,* OSGI 23, 46, 47, 545, 577, 578, 581-583.  Furthermore, OTL provides evidence sufficient to create a genuine dispute as to CI's intent and PTO's reliance.  *See, e.g.,* OSG 41, 46, 47, 578, 581, 582.

CI also contends that there is no evidence that FREECREDITREPORT.COM is generic.  However, OTL presents substantial evidence that a reasonable factfinder might rely on to determine that FREECREDITREPORT.COM is generic, including at least the dictionary definitions of the words constituting the purported mark and consumer complaints regarding failure to get a free credit report from CI's website.  *See, e.g.,* OSGI 53, 56, 70, 567, 568, 573, 574; *see also  Filipino Yellow Pages,* 198 F.3d at 1146 ("If [a] term is generic, it cannot be the subject of trademark protection under any circumstances, even with a showing of secondary meaning.").  This evidence is also sufficient to overcome any presumption that flows from CI's registration.

In sum, CI fails to carry its burden to show that the undisputed facts entitled it to summary judgment as a matter of law on OTL's

---

[7]The relevant standards to show cancellation for fraud on the PTO and genericness are explained in Sections I.A.1. and I.A.2., supra.

declaratory judgment and cancellation counterclaims.  OTL provides sufficient evidence that create a genuine issue of fact as to whether CI committed fraud on the PTO or whether CI's purported FREECREDITREPORT.COM mark is generic.

> **3.  OTL's Counterclaims For Trademark Infringement And False Advertising Under The Lanham Act, Common Law trademark Infringement, Declaratory Judgment Of Non-Enforceability, And Contributory Liability Under The Lanham Act**

CI asserts that the OTL's counterclaims listed in the title of this section fail because OTL's trademarks lack secondary meaning and because CI's actions are not likely to cause confusion.

CI's OTL Motion on these issues is inadequately noticed and briefed, and does not carry CI's initial burden to show an absence of disputed material fact or that it is entitled to summary judgment as a matter of law as to all of these counterclaims.  However, to the extent that OTL is required to come forth with some evidence to show a genuine dispute as to secondary meaning (or whether a showing is required) and likelihood of confusion due to CI's actions, OTL has done so.  *See*, *e.g.,* OSGI 312, 314, 316, 608, 663.

> **4.  OTL's Laches, Waiver, And Estoppel Defenses, And OTL's Counterclaim For Declaratory judgment Of Non-Enforceability**[8]

CI asserts that the OTL's counterclaim and defenses listed in the title of this section fail because OTL has vigorously enforced its rights, and because OTL has not suffered any prejudice.

CI's OTL Motion on these issues is inadequately noticed and briefed, and does not carry CI's initial burden to show an absence of disputed material fact or that it is entitled to summary judgment as a matter of law as to all of these defenses and the counterclaim.  However, to the extent that OTL is required to come forth with some evidence to show a genuine dispute as to whether CI has enforced its rights vigorously

---

[8]To the extent CI also moves on OTL's affirmative defenses of invalidity and preemption, these defenses are not even listed in the notice of the OTL motion.  Also, the OTL motion on these issues is inadequately briefed and the Court's denial of other grounds for CI's OTL Motion also requires denial as to these grounds.  To the extent CI requests summary judgment on these defenses, CI's request is DENIED.

MINUTES FORM 90                          Initials of Deputy Clerk    jre
CIVIL - GEN

enough or whether OTL has suffered prejudice, OTL has done so. *See, e.g.,* OSGI 609, 611, 613, 614.

### 5.    OTL's Unclean Hands Defense

CI asserts that OTL's unclean hands defense fails because it is not pleaded with sufficient particularity, because OTL's hands are not clean enough to assert it, and because the conduct OTL explored in discovery in support of the defense does not relate to CI's allegations against OTL.

CI's OTL Motion on these issues is inadequately briefed, and does not carry CI's initial burden to show an absence of disputed material fact or that it is entitled to summary judgment as a matter of law as to the unclean hands defense.  However, to the extent that OTL is required to come forth with some evidence to show a genuine dispute as to whether CI had unclean hands with respect to the rights CI asserts, OTL has done so. *See, e.g.,* OSGI 51; Section V.A.1, supra.

### 6.    OTL's "Fair Use" Defense

CI asserts that OTL's fair use defense fails because the fair use defense applies only where the defendant's use was "non-trademark use."

CI's OTL Motion on this issues is inadequately briefed, and does not carry CI's initial burden to show an absence of disputed material fact or that it is entitled to summary judgment as a matter of law as to the fair use defense.  However, to the extent that OTL is required to come forth with some evidence to show a genuine dispute as to whether a potential "non-trademark" use of CI's trademark is at issue, OTL has done so.  *See, e.g.,* OSGI 710; Section V.A.2., supra (evidence relating to genericness).

MINUTES FORM 90                        Initials of Deputy Clerk    jre
CIVIL - GEN