RHONDA R. TROTTER, Bar Number 169241
E-mail address: rtrotter@kayescholer.com
ROBERT B. BELL, Admitted *Pro Hac Vice*
E-mail address: robert.bell@kayescholer.com
JOSHUA STAMBAUGH, Bar Number 233834
E-mail address: jstambaugh@kayescholer.com
OSCAR RAMALLO, Bar Number 241487
E-mail address: oramallo@kayescholer.com
KAYE SCHOLER LLP
1999 Avenue of the Stars, Suite 1700
Los Angeles, California  90067
Telephone:  (310) 788-1000
Facsimile:  (310) 788-1200

Attorneys for Plaintiff
CONSUMERINFO.COM, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| CONSUMERINFO.COM, INC., a California corporation,<br><br>              Plaintiff,<br><br>     v.<br><br>ONE TECHNOLOGIES LP, a Delaware limited partnership; ADAPTIVE MARKETING LLC, a Delaware corporation; and DOES 1-50, inclusive,<br><br>              Defendants.<br><br>_____<br><br>AND RELATED COUNTERCLAIMS<br>_____ | CASE NO. CV-09-3783-VBF(MANx)<br><br>**PLAINTIFF CONSUMERINFO.COM, INC.'S TRIAL BRIEF**<br><br>Pretrial Conference:     Dec. 2, 2010<br>Trial Date:                    Dec. 7, 2010<br><br>Date:<br>Time:          2:00 p.m.<br>Place:     Courtroom 9 |

KAYE SCHOLER LLP

**TABLE OF CONTENTS**

I.   The Court Should Reject One Tech's Untimely Revised False Advertising Claim ........................................................................1

   A.   One Tech Has Not Received Leave to Amend its False Advertising Counterclaim............................................................1

   B.   Even if One Tech Sought to Amend its False Advertising Counterclaim, it Is Too Late to Do So ..................................2

   C.   One Tech Offers No Reason for its Delay in Introducing Its New False Advertising Theories..........................................6

   D.   One Tech's Introduction of New and Untimely False Advertising Theories Unfairly Prejudices ConsumerInfo .........................7

II.  The Duty to Disclose to the USPTO Does Not Extend to the Claimed "Evidence" of Fraud ..........................................................10

   A.   Questions of Duty Are Questions of Law for the Court, Not the Jury .....................................................................11

   B.   Trademark Applicants Have No Duty to Disclose Their Mark is "Generic," Particularly When It Is Not Generic ................12

   C.   No Duty to Disclose Competitors' Use of Terms Included in the Mark .....................................................................13

      1.   No Duty to Disclose Descriptive Use of Terms by Competitors....................................................................13

      2.   No Duty to Disclose Competitors' Use of Similar Trademarks ....................................................................13

      3.   No Duty to Investigate Third Party Use of Similar Trademarks ....................................................................14

   D.   No Duty to Disclose FTC Judgment ...............................................14

   E.   One Tech Fails to Cite Any Authority to Support Its Claims............16

III. One Tech Cannot Establish that ConsumerInfo Is Liable for Attempted Monopolization..........................................................................17

KAYE SCHOLER LLP

# **TABLE OF AUTHORITIES**

## **Cases**

*Am. Prof'l Testing Serv. v. Harcourt Brace Jovanovich*,
 108 F.3d 1147 (9th Cir. 1997) ................................................................20

*Bart Schwartz Int'l Textiles, Ltd. v. Fed. Trade Commission*,
 289 F.2d 665 (C.C.P.A. 1981) ........................................................... 11, 12

*Brookfield Commc'ns, Inc. v. West Coast Entm't Co.*,
 174 F.3d 1036 (9th Cir. 1999) ................................................................18

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
 429 U.S. 477 (1977) ...............................................................................21

*Chaveriat v. Williams Pipe Line Co.*,
 11 F.3d 1420 (7th Cir. 1993) ....................................................................3

*Coca-Cola Co. v. Overland, Inc.*,
 692 F.2d 1250 (9th Cir. 1982) ................................................................18

*Coleman v. Quaker Oats Co.*,
 232 F.3d 1271 (9th Cir. 2000) ..................................................................7

*Consolidated Data Terminals v. Applied Digital Sys., Inc.*,
 708 F.2d 385 (9th Cir. 1983) ....................................................................9

*Dep't of Parks & Rec. v. Bazaar Del Mundo*,
 448 F.3d 1118 (9th Cir. 2006) ................................................................18

*Far Out Prods., Inc. v. Oskar*,
 247 F.3d 986 (9th Cir. 2001) ...............................................14, 15, 16, 18

*Handgards, Inc. v. Ethicon, Inc.*,
 601 F.2d 986 (9th Cir. 1979),
 743 F.2d 1282 (9th Cir. 1984) ................................................................17

*Hartford Life Ins. Co. v. Variable Annuity Life Ins. Co.*,
 964 F. Supp. 624 (D. Conn. 1997) .........................................................18

*Image Technical Servs. v. Eastman Kodak Co.*,
 125 F.3d 1195 (9th Cir. 1997) ...........................................................17, 19

*In re Bose Corp.*,
 580 F.3d 1240 (Fed. Cir. 2009) .........................................................11, 12

*In re Circuit Breaker Litigation*,
 175 F.R.D. 547 (C.D. Cal. 1997) ...........................................1, 2, 6, 7, 8

*John Abaté Int'l, Inc. v. Miller*,
 Cancellation No. 28,890, 2001 WL 817791 (T.T.A.B. July 18, 2001) ........11, 12

ii

KAYE SCHOLER LLP

*M/V Am. Queen v. San Diego Marine Const. Corp.*,
   708 F.2d 1483 (9th Cir. 1983) ................................................................... 3

*Medtronic, Inc. v. AGA Medical Corp.*,
   No. C-07-0567 MMC, 2009 WL 416538 (N.D. Cal. Feb. 18, 2009) ................ 6

*Money Store v. Harriscorp Finance, Inc.*,
   689 F.2d 666 (7th Cir. 1982) ............................................................... 11, 14

*Mytee Prods., Inc. v. H.D. Prods., Inc.*,
   2007 WL 1813765 (S.D. Cal. Jun. 22, 2007) ............................................... 5

*Pony Express Courier Corp. of Am. v. Pony Express Delivery Serv.*,
   872 F.2d 317 (9th Cir. 1989) .................................................................. 14

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
   508 U.S. 49 (1993) ............................................................................... 18

*Rebel Oil Co. v. Atl. Richfield Co.*,
   51 F.3d 1421 (9th Cir. 1995) ............................................................. 19, 20

*Rojas v. State Farm Mut. Auto Ins. Co.*,
   518 F.2d 85 (9th Cir. 1975) ...................................................................... 3

*Rosso & Mastracco, Inc. v. Giant Food, Inc.*,
   720 F.2d 1263 (Fed. Cir. 1983) .......................................................... 13, 14

*Simos v. Embassy Suites, Inc.*,
   983 F.2d 1404 (7th Cir. 1993) ................................................................ 11

*Sollberger v. Wachovia Secs., LLC*,
   2010 WL 2674456 (C.D. Cal. June 30, 2010) ............................................. 2

*Southland Sod Farms v. Stover Seed Co.*,
   108 F.3d 1134 (9th Cir. 1997) ........................................................ 8, 9, 10

*Spectrum Sports, Inc. v. McQuillan*,
   506 U.S. 447 (1993) ........................................................................ 17, 18

*Stein v. United Artists Corp.*,
   691 F.2d 885 (9th Cir. 1982) ................................................................. 3, 4

*Stocker v. Gen. Conference Corp.*,
   39 U.S.P.Q.2d 1385 (T.T.A.B. 1996) ................................................... 13, 16

*Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellog Corp.*,
   305 F.3d 1293 (11th Cir. 2002) ................................................................ 2

*Texas Pig Stands, Inc. v. Hard Rock Cafe Int'l, Inc.*,
   951 F.2d 684 (5th Cir. 1992) .................................................................. 15

*Troxel Mfg. Co. v. Schwinn Bicycle Co.*,
   489 F.2d 968 (6th Cir. 1973) ............................................................ 6, 7, 8

*Walker Process Equip. v. Food Mach. & Chem. Corp.*,
   382 U.S. 172 (1965) ......................................................................... 17, 18

16022583.DOCX

**<u>Statutes</u>**

15 U.S.C. § 1051, et seq. ..........................................................1, 11, 12, 13, 14, 15, 16

15 U.S.C. § 1064(5) ...............................................................................................16

15 U.S.C. § 2 (2010) ..............................................................................................17

15 U.S.C. § 43(a) .......................................................................................................8

FED. R. CIV. PROC. 15(a) ...........................................................................................2

KAYE SCHOLER LLP

iv

16022583.DOCX

Pursuant to Local Rule 16-10 and the Court's standing Order for Civil Trial, ConsumerInfo's Trial Brief responds to certain issues raised in Defendant One Technologies LP's Memorandum of Contentions of Fact and Law.

## I.    The Court Should Reject One Tech's Untimely Revised False Advertising Claim

The parties have been litigating this case for over a year and a half and, for those first eighteen months, One Tech's false advertising claim was based solely on ConsumerInfo's bidding on One Tech's purported MY CREDIT HEALTH trademark in search advertising. At the beginning of this month, One Tech suddenly revised the basis for its false advertising claim in its opposition to ConsumerInfo's motion *in limine* to exclude evidence of One Tech's unjust enrichment and restitution theories, alleging that its false advertising claim is based on ConsumerInfo's use of the term "official site" in conjunction with the registration or "®" symbol in paid search advertising. (Defendant One Tech's Opposition to Motion in Limine No. 1 (Dkt. No. 561).) That same day, in its concurrently filed Memorandum of Contentions of Fact and Law, One Tech disclosed yet another theory for its false advertising claim by suggesting that ConsumerInfo also committed false advertising by offering free credit reports. (Defendant One Technologies LP's Memorandum of Contentions of Fact and Law, at 119-120 (Dkt. No. 563).) This Court should reject these new theories because they are untimely asserted, the experts One Tech proffers to support the theories have never analyzed it, ConsumerInfo was not given the opportunity to examine or request discovery on it, and it is inimical to the Lanham Act and the Federal Rules of Civil Procedure.

## A.    One Tech Has Not Received Leave to Amend its False Advertising Counterclaim

Federal Rule of Civil Procedure 15(a) provides that "once the time to amend as a matter of right has expired, a party must obtain leave of the court to amend its pleadings. *In re Circuit Breaker Litigation*, 175 F.R.D. 547, 550 (C.D. Cal. 1997)

(citing FED. R. CIV. PROC. 15(a)).

One Tech's original false advertising counterclaim alleged that "ConsumerInfo, its affiliates, and/or agents have intentionally and purposefully used MYCREDITHEALTH Trademarks, or confusingly similar marks, as headlines and hyperlinks in internet advertisements."  (One Tech Second Amended Counterclaims ("One Tech SAC") at ¶ 317 (Dkt. No. 93).)  Allegations concerning ConsumerInfo's use of the phrase "official site" and the registration or "®" symbol, and ConsumerInfo's offering of free credit reports, are nowhere to be found in the allegations concerning false advertising.[1]  In the past year since One Tech filed its second amended counterclaims, it has had ample opportunity to amend, and, indeed, bore the burden of amending, its pleading to assert any new bases it had for its false advertising claim.  *In re Circuit Breaker Litigation*, 175 F.R.D. at 550.  One Tech failed to do so.  As a result, its new false advertising theories are not properly before this Court.

**B.     Even if One Tech Sought to Amend its False Advertising Counterclaim, it Is Too Late to Do So**

Even if One Tech were to seek leave to amend its counterclaims at this late

---

[1]     One Tech briefly mentions ConsumerInfo's use of "official" as part of its antitrust counterclaims.  (One Tech SAC ¶ 282 (Dkt. No. 93).)  While One Tech's false advertising claim incorporates by reference this paragraph, along with the other 121 preceding paragraphs, courts have described such an approach to pleading - in which each counterclaims incorporates all prior allegations - as "shotgun pleading," which, rather than giving fair notice of a claim, amounts to an "obstruction of justice." *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellog Corp.*, 305 F.3d 1293, 1296 (11th Cir. 2002) ("Shotgun pleadings impede the due administration of justice, and in a very real sense, amount to obstruction of justice.") (internal quotation marks omitted); *Sollberger v. Wachovia Secs., LLC*, 2010 WL 2674456, at *5 (C.D. Cal. June 30, 2010) ("This shotgun pleading style deprives Defendants of knowing exactly what they are accused of doing wrong.").  Indeed, as recently as November 1, 2010, One Tech did not make the connection between its antitrust allegations and its newly raised false advertising claim.  One Tech's opposition to ConsumerInfo's Motion in Limine No. 1 cited One Tech's Contentions of Fact and Law, filed concurrently on November 1 with its opposition, as the basis for raising its new false advertising allegations.  (Dkt. Nos. 450, 561.)  One Tech's inability to draw the connection between its pleadings and its new theory demonstrates ConsumerInfo was never given fair notice of One Tech's belated false advertising theory.

16022583.DOCX

hour,[2] it would be inequitable to allow One Tech to assert its new false advertising theories one month before trial when ConsumerInfo has not had any opportunity to conduct discovery on the new theories in order to challenge One Tech's allegations.

Courts, including the Ninth Circuit, have regularly rejected new claims or changed theories introduced late in litigation. *M/V Am. Queen v. San Diego Marine Const. Corp.*, 708 F.2d 1483, 1492 (9th Cir. 1983) (holding party could not amend its complaint to assert new legal theory in face of pending summary judgment on the original legal theory and one and a half years after the case was filed); *Stein v. United Artists Corp.*, 691 F.2d 885, 898 (9th Cir. 1982) (denying amendment where "the amended complaint was brought only to assert new theories, if anything, and was not premised upon new facts" and where party "provided no satisfactory explanation for his failure to fully develop his contentions originally"); *Rojas v. State Farm Mut. Auto Ins. Co.*, 518 F.2d 85, 88 (9th Cir. 1975) (rejecting "belated attempt to introduce a new, distinct cause of action"); *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1428-29 (7th Cir. 1993) (barring change in theory of case where "it was not a matter of introducing new evidence or changing merely the legal conceptualization of their claim, but of injecting an entirely new and separate claim").

In *M/V American Queen*, plaintiff sought leave to amend its complaint to add claims, in the midst of summary judgment motions and one and a half years after the case was filed. *M/V Am. Queen*, 708 F.2d at 1492. The court also found that allowing the new allegations "would totally alter the basis of [plaintiff's] action," and "unduly delay[]" the "possible disposition of the case." *Id.* The court thus concluded that the combination of these factors "form[ed] the basis of a proper exercise of discretion by the trial court in refusing to allow amendment." *Id.*

---

[2] Where a party has been allowed to amend its pleadings previously, it should not be granted further leave to amend. *Medtronic, Inc.*, 2009 WL 416538, at *3.

KAYE SCHOLER LLP

ConsumerInfo used the phrase "official site" in connection with its <freecreditreport.com> website and offered free credit reports before the inception of this case, and One Tech knew of these facts well in advance of the close of discovery. These are not "new" facts. *See Stein*, 691 F.2d at 898 (denying amendment where "the amended complaint ... was not premised upon new facts").

Nevertheless, One Tech's false advertising claim has, until this past month, been based entirely on ConsumerInfo's alleged use of MYCREDITHEALTH in paid search advertising. One Tech never amended its counterclaims to change the basis of its false advertising claim. Nor did One Tech's Rule 26 disclosures, or its supplemental disclosures, served the day before discovery closed, raise these new false advertising theories. (11/1/10 Declaration of Oscar Ramallo ("11/1/10 Ramallo Decl.") Exh. O (Dkt. Nos. 543, 544, 550).) One Tech's Initial Disclosures, served August 18, 2009, provided no notice of its new false advertising claim, no mention any damages for false advertising, and no computation of damages. (11/8/10 Declaration of Oscar Ramallo ("11/8/10 Ramallo Decl.") Exh. B, at 6-7 (Dkt. No. 526).) One Tech's Supplemental Initial Disclosures, served July 1, 2010 - the day before the close of discovery, likewise made no mention of the new false advertising claim or of remedies for false advertising, but, rather, simply repeated the inadequate disclosures served almost a year earlier. (11/1/10 Ramallo Decl. Exh. O, at 7 (Dkt. Nos. 543, 544, 550).)

Similarly, when ConsumerInfo moved for summary judgment on One Tech's false advertising claim, One Tech did not characterize the claim as one arising from ConsumerInfo's use of "official site" or the "®" symbol, or ConsumerInfo's offer of free credit reports. Instead, in a brief submitted August 30, 2010, One Tech defended its claim on the grounds that it arose out of the same facts as its MYCREDITHEALTH trademark claim. (Defendant One Tech's Opposition to ConsumerInfo's Motion for Partial Summary Judgment (Dkt. No. 346, at 23 n.62) ("OT's trademark claims include its counterclaims of trademark infringement, false

4

advertising, unfair competition and contributory liability.").)  One Tech discussed ConsumerInfo's alleged infringement of MYCREDITHEALTH, but did not write one word about the use of the term "official site" or the "®" symbol, or ConsumerInfo's offer of free credit reports.  *Id.* at 23.  One Tech once again failed to disclose its new theories of false advertising, despite having yet another opportunity to do so.

In addition, in the September 23, 2010 Court Order re Motions for Partial Summary Judgment, this Court granted One Tech's motion for summary judgment on ConsumerInfo's unclean hands affirmative defense.  (Court Order re Motions for Partial Summary Judgment, Sept. 23, 2010, at 17 (Dkt. No. 403).)  This Court based its decision on the fact that "the defense of unclean hands applies only with respect to the right in suit," and ConsumerInfo's unclean hands affirmative defense did not extend to One Tech's acquisition of its rights to the purported MYCREDITHEALTH mark, which was the original basis for One Tech's false advertising claim.  *Id.* (citing *Mytee Prods., Inc. v. H.D. Prods., Inc.*, 2007 WL 1813765, at *8 (S.D. Cal. Jun. 22, 2007) (internal citations omitted)).

Finally, One Tech's Memorandum of Contentions of Fact and Law, filed on November 1, 2010, is the first time One Tech refers to ConsumerInfo's offer of free credit reports in the "facts" One Tech cites in support of its false advertising claim.  (Defendant One Technologies LP's Memorandum of Contentions of Fact and Law, at 119-120 (Dkt. No. 563).)  One Tech's proposed jury instructions, filed two weeks later, on November 15, 2010, also references ConsumerInfo's offer of free credit reports in connection with its false advertising claim.  (Defendants' Instruction No. 90 (Dkt. No. 523).)  At no point prior to these filings did One Tech ever claim false advertising on the basis of ConsumerInfo's offer of free credit reports.

One Tech's new false advertising theories thus completely alter the basis of its claim, from ConsumerInfo's alleged use of One Tech's purported MYCREDITHEALTH mark in paid search advertising to ConsumerInfo's use of the

5

phrase "official site" in conjunction with the "®" symbol on ConsumerInfo's <freecreditreport.com> website, and ConsumerInfo's offer of free credit reports.  As discussed further below, the parties have not had the opportunity to fully brief and conduct discovery on these new theories, and allowing discussion of them for the first time at trial deprives ConsumerInfo of its rights to investigate and defend itself against the claims and to exclude the claims through summary judgment or *in limine* motions.  In order for ConsumerInfo to adequately defend itself, this Court would need to delay trial, reopen discovery, and allow for further dispositive motions.  This Court should properly exercise its discretion in rejecting One Tech's new false advertising theories, as a means of preventing undue delay and unfair prejudice as the first day of trial looms.

**C.     One Tech Offers No Reason for its Delay in Introducing Its New False Advertising Theories**

In addition, where, as here, a "considerable period of time" has elapsed "between the filing of the initial pleading and a motion for leave to amend, the burden is on the moving party to show some valid reason for his neglect and delay." *Medtronic, Inc. v. AGA Medical Corp.*, No. C-07-0567 MMC, 2009 WL 416538, at *2 (N.D. Cal. Feb. 18, 2009) (internal quotation marks and citation omitted) (denying defendant's motion for leave to amend); *see also In re Circuit Breaker Litigation*, 175 F.R.D. at 550 (same).  One Tech has offered no explanation, reasonable or otherwise, for its delay in amending the basis for its false advertising claim.

One possibility is that One Tech has determined that the original basis for its false advertising claim is not tenable.  However, in *Troxel Mfg. Co. v. Schwinn Bicycle Co.*, the litigation had been "pending for more than two and one-half years, and [defendant] already ... had to defend against one theory" before the plaintiff introduced an alternative theory of liability.  489 F.2d 968, 971 (6th Cir. 1973).  The plaintiff argued that it should be allowed to present its delayed alternative theory on

6

the grounds that it had misconceived the law initially, but the court held that "misconception of the law" is not a valid excuse for the delayed presentation, noting that "[a] losing party can always argue in retrospect that he misconceived the law." *Id.* at 970-71.  The court declined to allow the plaintiff to protract the litigation as it, like One Tech here, sought in vain to find a winning argument.  *Id.* at 971.  One Tech is scrambling to salvage its false advertising claim, having come to the realization that the original basis for its claim is meritless.  It should not be allowed to delay trial by throwing last-minute theories before the Court in the hopes that one might stick.

## D.    One Tech's Introduction of New and Untimely False Advertising Theories Unfairly Prejudices ConsumerInfo

In considering an amended, or revised, but non-amended, claim, "a trial court is required to take into account any prejudice that the party opposing" the amended or revised claim would suffer as a result.  *Troxel Mfg. Co.*, 489 F.2d at 971; *see also In re Circuit Breaker Litigation*, 175 F.R.D. at 551 (holding that prejudice resulting from a delay in seeking leave to amend "is by far the most important and most common reason for upholding a district court's decision to deny leave to amend") (internal citations omitted).  Courts are particularly unwilling to allow the introduction of new theories and bases for alleged claims where the revised theory or theories would require the reopening of discovery late in the litigation.  *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1295 (9th Cir. 2000) (holding "late amendments to assert new theories are not reviewed favorably when the facts and the new theory have been known to the party seeking amendment since the inception of the case" and the amendment would require reopening discovery); *Troxel Mfg. Co.*, 489 F.2d at 971 (holding a party could not amend its pleading to reassert the same facts under a new legal theory where the party realized its first legal theory was mistaken and the new theory would require additional discovery in already lengthy litigation).

In *In re Circuit Breaker Litigation*, the Court concluded that the defendants' delayed motion for leave to amend their counterclaims unfairly prejudiced plaintiffs

7

**KAYE SCHOLER LLP**

because plaintiffs would have "incur time and expense in having to defend against the new counterclaims because they could not reply to them during discovery and cannot attack them by summary judgment motion" given the timing of the motions, two weeks before the discovery and dispositive motions deadline for one, and three weeks before the summary judgment hearing for the other.  175 F.R.D. at 551.

By introducing new false advertising theories one month before trial - AFTER both the close of discovery and the deadline to file dispositive motions, including summary judgment and *in limine* motions - One Tech has effectively denied ConsumerInfo the chance to conduct discovery regarding the facts underlying its new claims, unfairly prejudicing ConsumerInfo.  *See, e.g.*, *Troxel Mfg. Co.*, 489, F.2d at 971 ("The District Court would have been justified in concluding that to put [defendant] through the time and expense of continued litigation on a new theory [by plaintiff after two and a half years of litigation], with the possibility of additional discovery, would be ***manifestly unfair*** and ***unduly prejudicial***.") (emphasis added).

The elements of a Lanham Act § 43(a) false advertising claim are: (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the good will associated with its products.  *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).  Had ConsumerInfo known that One Tech would assert false advertising theories based on ConsumerInfo's appendage of "official site" and the "®" symbol to its advertisements and ConsumerInfo's offer of free credit reports - rather than One Tech's pled basis of alleged use of One Tech's purported MYCREDITHEALTH mark - ConsumerInfo would have conducted discovery to ascertain possible

8

deception, the materiality of any deception, and any resulting injury.

As a result of One Tech's belated change in false advertising theories, ConsumerInfo was not given the opportunity to conduct discovery or surveys on whether its use of the term "official site" or the "®" symbol, or its offer of free credit reports, deceived consumers, and whether any such deception was likely to influence any such consumer's purchasing decision.  Consumer surveys would have provided strong and concrete evidence of deception, namely, whether the use of the term "official site" actually deceived consumers or had a tendency to deceive a subset of consumers searching for credit report services.  *See, e.g.*, *Southland Sod Farms*, 108 F.3d at 1140 ("Reactions of the public are typically tested through the use of consumer surveys" to determine if an advertisement has "misled, confused, or deceived.").  More importantly, a survey could have evaluated whether the deception directly affected consumers' decisions to purchase services from <freecreditreport.com>, rather than another provider who did not use the "official site" designation.  *Consolidated Data Terminals v. Applied Digital Sys., Inc.*, 708 F.2d 385, 396 (9th Cir. 1983) (concluding that the district court abused its discretion in allowing amendment of pleading in which a once marginal issue became the focus of the case).

ConsumerInfo also was denied the opportunity to conduct discovery or surveys on whether One Tech and its co-defendant, Adaptive Marketing LLC's ("Adaptive"), own offers of free credit reports and scores to their potential consumers deceived those consumers.  As a result, ConsumerInfo was denied the chance to determine whether One Tech and Adaptive engaged in unclean hands by offering free credit reports while simultaneously arguing that ConsumerInfo's offer of such reports constituted false advertising.

ConsumerInfo also would have taken discovery on third parties, including Google and the parties' competitors, to demonstrate that the use of the "official site" demarcation is a common practice in the industry.  Such evidence would have

16022583.DOCX

demonstrated that the use of the "official site" designation does not connote any government association.

Nor has any discovery been taken on whether ConsumerInfo's use of "official site" and/or the "®" symbol, or ConsumerInfo's offer of free credit reports, have caused One Tech any harm. *Southland Sod Farms*, 108 F.3d at 1139. Because of One Tech's late disclosure, no ConsumerInfo expert, nor any One Tech expert for that matter, has analyzed whether ConsumerInfo's use of the "official site" designation and offer of free credit reports have harmed One Tech. One Tech seeks to benefit from its last-minute allegations without giving ConsumerInfo the opportunity to gather evidence necessary to rebut One Tech's claims.

ConsumerInfo has been exceedingly diligent in pursuing discovery of One Tech's damages - so diligently that One Tech has been forced to change its false advertising theories, as discovery has shown its original theory to be untenable. At this late stage, One Tech should not be allowed to change the factual basis of its false advertising claim and assert entirely new theories of harm that would require significant additional discovery to refute. This Court should not allow One Tech to engage in such gamesmanship at trial.

In short, One Tech's false advertising claim has always been about its purported MYCREDITHEALTH trademark. Because there is no justification for asserting a new claim at the eleventh hour, this Court should reject One Tech's belated, revised, and unsubstantiated false advertising claim on the grounds of undue delay, bad faith, and undue prejudice to ConsumerInfo.

## II.   The Duty to Disclose to the USPTO Does Not Extend to the Claimed "Evidence" of Fraud

In response to ConsumerInfo's proposed jury instructions concerning issues of duty to disclose to the United States Patent and Trademark Office ("USPTO"), One Tech claims it is no longer pursuing a theory of fraudulent concealment against ConsumerInfo. (Defendants' Objections to ConsumerInfo Instruction Nos. 48-52

10

16022583.DOCX

KAYE SCHOLER LLP

(Dkt. No. 523).)  Nevertheless, One Tech has submitted several jury instructions which state the jury could find ConsumerInfo liable for failure to disclose various facts and opinions, namely, that the FREECREDITREPORT.COM mark was "generic" (which it is not), that third parties use similar terms whether as marks or in a descriptive manner, and that there was a Federal Trade Commission ("FTC") lawsuit against ConsumerInfo.  (Defendants' Instruction Nos. 87 & 88 (Dkt. No. 523).)

The Court should reject One Tech's non-disclosure theories, as Courts have held that a trademark applicant does not bear a broad or general duty to disclose any and all information to the USPTO, but, rather, "any duty owed by an applicant for trademark registration must arise out of the statutory requirements of the Lanham Act." *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009) (quoting *Bart Schwartz Int'l Textiles, Ltd. v. Fed. Trade Commission*, 289 F.2d 665, 669 (C.C.P.A. 1981)).

## A.    Questions of Duty Are Questions of Law for the Court, Not the Jury

Whether trademark applicants have a duty to disclose information to the USPTO is a question of law to be decided by the Court, and not by a jury.  *Simos v. Embassy Suites, Inc.*, 983 F.2d 1404, 1410 (7th Cir. 1993) ("[A] failure to disclose a fact constitutes a misrepresentation only when the nondisclosing party has a duty to disclose the fact; the question of legal duty to disclose is a *question of law*.") (emphasis added); *Money Store v. Harriscorp Finance, Inc.*, 689 F.2d 666, 670-71 (7th Cir. 1982) (analyzing the duty to disclose to the USPTO as a legal matter of statutory interpretation); *John Abaté Int'l, Inc. v. Miller*, Cancellation No. 28,890, 2001 WL 817791, at *5 (T.T.A.B. July 18, 2001) (holding that, as a matter of law, a finding of fraud cannot be based upon an applicant not "disclos[ing] the exact significance of a term to the [USPTO]") (citing *Bart Schwartz Int'l Textiles, Ltd. v. Fed. Trade Commission*, 289 F.2d 665, 669 (C.C.P.A. 1961)).  One Tech has failed to cite to any contrary authority on the matter.

11

KAYE SCHOLER LLP

**B.     Trademark Applicants Have No Duty to Disclose Their Mark is "Generic," Particularly When It Is Not Generic**

The Lanham Act does not require trademark applicants to disclose the meaning of the terms that comprise their marks. *Bart Schwartz Int'l Textiles, Ltd.*, 289 F.2d at 669 ("The position of the Trademark Trial and Appeal Board is fallacious in that it is based on the assumption that registrant had a 'duty' to disclose to the Patent Office that the Italian word 'fiocco' meant staple rayon."); *John Abaté Int'l, Inc.*, 2001 WL 817791, at *5 (holding "our primary reviewing court found that this [disclosure] obligation does not require an applicant to disclose the exact significance of a term to the [USPTO] upon filing an application" and that "a finding of fraud cannot be based thereupon") (citing *Bart Schwartz Int'l Textiles, Ltd.*, 289 F.2d at 669).

In *Bart Schwartz Int'l Textiles, Ltd. v. Fed. Trade Commission*, the court of Customs and Patent Appeals ("CCPA")[3] rejected the Trademark Trial and Appeal Board's ("TTAB") ruling that Bart Schwartz committed fraud when he failed to disclose the meaning of the Italian word "fiocco," which he had sought to register as a trademark for use in connection with "textile fabrics in the piece of cotton, rayon, synthetic fibers and mixtures thereof." 289 F.2d at 668-69. The term "fiocco" is descriptive of "spun rayon." *Id.* at 669. Nevertheless, the CCPA held that "[t]he mere withholding of information as to the meaning" of the proposed mark does not constitute fraud on the USPTO. *Id.*[4]

---

[3]     The Court of Customs and Patent Appeals ("CCPA") is the predecessor of the Federal Circuit, which hears appeals from decisions of the Patent and Trademark Office, including the Trademark Trial and Appeal Board, and the CCPA's decisions are binding on the Federal Circuit. *See In re Bose*, 580 F.3d at 1243.

[4]     Although the Court in *Bart Schwartz* ultimately found fraud, it was not due to a failure to disclose, but rather due to affirmative misrepresentations by the applicant on how he "coined" the term FIOCCO. *Bart Schwartz*, 289 F.2d at 938-39.

12

16022583.DOCX

Likewise, ConsumerInfo had no duty to disclose the meanings of the terms comprising its FREECREDITREPORT.COM® mark, and even if it did not do so in its application it would not constitute fraud under established trademark law. Moreover, ConsumerInfo's mark is not generic, but is, rather, a descriptive mark that the USPTO has recognized as having acquired secondary meaning as of the date of the application.

**C.    No Duty to Disclose Competitors' Use of Terms Included in the Mark**

*1.    No Duty to Disclose Descriptive Use of Terms by Competitors*

Trademark applicants do not have any duty to disclose to the USPTO the existence of third parties who use the elements of the applied-for mark in a descriptive sense. *Stocker v. Gen. Conference Corp.*, 39 U.S.P.Q.2d 1385, 1391 (T.T.A.B. 1996) ("[T]he declarant need not consider whether fair, non-trademark uses of the word or design may be made or, if the declarant is already aware of such uses, then they need not be disclosed, since they are not antithetical to the applicant's claim.").

ConsumerInfo has presented evidence that it was the first to use the designation FREECREDITREPORT.COM as a mark to denote the source of its products and services, and, as a result, has superior rights in and to the mark.  As in *Stocker*, even if ConsumerInfo did not disclose to the USPTO that some third parties were using the terms comprising the mark in a descriptive manner when ConsumerInfo filed its application years later does not amount to fraud.

*2.    No Duty to Disclose Competitors' Use of Similar Trademarks*

Nor does the Lanham Act require a trademark applicant "to investigate and report all other possible users of an identical or confusingly similar mark." *Rosso & Mastracco, Inc. v. Giant Food, Inc.*, 720 F.2d 1263, 1266 (Fed. Cir. 1983).  an applicant has not committed fraud as long as it discloses to the USPTO any determinations of trademark rights that are "clearly established," such as by court

13

decree or by settlement agreement. *Id.* (finding that the fact that an applicant did not disclose "junior users is not fraudulent").

Here, as mentioned above, all of the purported uses of similar phrases are junior to ConsumerInfo's use of its FREECREDITREPORT.COM® mark. Moreover, none of these junior uses were "clearly established" marks - in fact, there is no evidence that any of the junior users used their designations as trademarks - and none were identical to ConsumerInfo's mark. *Rosso & Mastracco, Inc.*, 720 F.2d at 1266 (finding a senior user did not act fraudulently by failing to disclose junior uses of similar marks when the rights of the junior users were not clearly established).

### 3. No Duty to Investigate Third Party Use of Similar Trademarks

Finally, trademark applicants are not required to investigate third party uses of marks similar to the proposed mark. *Money Store*, 689 F.2d at 671-73 (finding the trademark owner's failure to investigate third party uses of its proposed mark did not constitute fraud). In fact, "[n]owhere does the Lanham Act specifically mandate a preapplication search by one who seeks federal registration of a mark." *Id.* at 671.

ConsumerInfo had no duty to investigate third party uses of marks or designations similar to its FREECREDITREPORT.COM® mark. Nonetheless, none of the third party uses of similar designations arose to the level of trademark use, and all such uses were junior to ConsumerInfo's use of its mark.

### D. No Duty to Disclose FTC Judgment

Finally, Courts have consistently held that a prior lawsuit need not be disclosed unless it constitutes a final and directly adverse determination of the applicant's trademark rights. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 996 (9th Cir. 2001) (holding that a party had no duty to disclose a state court judgment that trademark rights were acquired by fraud where the judgment was not binding on the applicant); *see also Pony Express Courier Corp. of Am. v. Pony Express Delivery Serv.*, 872 F.2d 317, 318 (9th Cir. 1989) (failure by registrant to disclose prior cancellation proceeding it had brought against a third party was not an act of fraud because the decision not to

14

KAYE SCHOLER LLP

KAYE SCHOLER LLP

cancel the junior user was not a decision adverse to the earlier registrant's ownership of his mark); *Texas Pig Stands, Inc. v. Hard Rock Cafe Int'l, Inc.*, 951 F.2d 684, 694 (5th Cir. 1992) (holding applicant had no duty to disclose a published appellate opinion that merely questioned the validity of his mark where the opinion did not invalidate the mark).

For example, in *Far Out Productions, Inc. v. Oskar*, four members of a rock band sued Jerry Goldstein and several "Far Out" entities in Florida state court, alleging fraudulent procurement of a federal trademark registration in "WAR." 247 F.3d at 990. Although the Florida court entered a final judgment that the trademark was fraudulently procured, the judgment did not apply to Goldstein because his case was severed by virtue of his pending bankruptcy. *Id.* at 991. Since the Florida state judgment was not binding on Goldstein, the Ninth Circuit found that he was not required to disclose the judgment, and that his incontestability affidavit to the USPTO swearing "that there had been no final decision adverse to the registrant's claim to ownership of the mark" had been truthful, and in compliance with the Lanham Act. *Id.* at 995-96.

In 2002, the FTC launched an investigation into whether ConsumerInfo adequately disclosed that customers who obtained a free credit report from ConsumerInfo would be enrolled in a paid credit monitoring membership if they did not opt out within a specified time period. (10/25/10 Declaration of Oscar Ramallo ("10/25/10 Ramallo Decl."), Exh. H. (Dkt. No. 475).) After three years of investigation and negotiation, ConsumerInfo and the FTC reached a settlement in which ConsumerInfo made no admission of liability. (10/25/10 Ramallo Decl., Exh. F at 1-3 (Dkt. No. 475).) As part of the settlement, ConsumerInfo agreed to enter into a stipulated consent decree, which the FTC lodged on August 15, 2005. (*Id.*; 10/25/10 Ramallo Decl., Exh. E (Dkt. No. 475).) A supplemental consent decree was entered on June 8, 2007. (10/25/10 Ramallo Decl., Exh. G (Dkt. No. 475).) Neither the original nor the supplemental consent decree contained any findings or remedies in

15

any way related to any of ConsumerInfo's trademarks. (10/25/10 Ramallo Decl., Exh. F at 2-3, 6-27 & Exh. G (Dkt. No. 475).)

Despite the FTC's statutory authority to petition to cancel trademarks registered with the USPTO, the FTC never sought to cancel any of ConsumerInfo's trademarks. 15 U.S.C. § 1064(5) ("[T]he Federal Trade Commission may apply to cancel on the grounds specified in paragraphs (3) [concerning generic marks] and (5) of this section any mark registered on the principal register established by this Act."); 10/25/10 Ramallo Decl. ¶ 14 (Dkt. No. 475). The FTC's lawsuit made no allegations concerning ConsumerInfo's trademark rights, was settled without any admission of wrongdoing by ConsumerInfo, did not make any determinations concerning ConsumerInfo's trademarks, did not invalidate any of ConsumerInfo's trademarks, and did not preclude ConsumerInfo from enforcing its trademark rights. Accordingly, ConsumerInfo had no duty to disclose the lawsuit to the USPTO. *See Far Out Prods., Inc.*, 247 F.3d at 990.

### E.   One Tech Fails to Cite Any Authority to Support Its Claims

In short, One Tech is unable to provide any case law substantiating its claims that the U.S. Patent and Trademark Office ("USPTO") requires a trademark applicant to advise the USPTO that the mark is "generic"; that third parties use elements of the mark, use elements of the mark descriptively, or use similar marks; and/or that the applicant was engaged in another lawsuit.

"[A] fraud claim must be proved to the hilt." *Stocker*, 39 U.S.P.Q.2d at 1391 (internal quotation marks and citation omitted). One Tech has provided neither case law, statutory language, nor evidence supporting its broad assertions that applicants owe the USPTO duties to disclose beyond the requirements set forth in the Lanham Act, and that failure to disclose such information constitutes fraud against the USPTO. Thus, the jury should be instructed that any such alleged non-disclosures cannot form the basis for a fraud claim.

KAYE SCHOLER LLP

**KAYE SCHOLER LLP**

### III.   One Tech Cannot Establish that ConsumerInfo
### Is Liable for Attempted Monopolization

For One Tech to establish that ConsumerInfo is liable for attempted monopolization under Section 2 of the Sherman Act, 15 U.S.C. § 2 (2010), One Tech must prove that (1) ConsumerInfo has engaged in predatory or anticompetitive conduct; (2) ConsumerInfo engaged in predatory or anticompetitive conduct with a specific intent to monopolize the relevant market; (3) ConsumerInfo has had a dangerous probability of achieving monopoly power; and (4) ConsumerInfo has caused, and One Tech has sustained, an antitrust injury of the type the antitrust laws were designed to prevent.  *See Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993); *Image Technical Servs. v. Eastman Kodak Co.*, 125 F.3d 1195, 1202 (9th Cir. 1997).  One Tech has the burden of proving each of these elements; if it fails to prove any of these elements, its antitrust counterclaim fails.

First, One Tech must prove that ConsumerInfo committed fraud on the PTO in order to satisfy the requirement that ConsumerInfo engaged in predatory or anticompetitive conduct, *i.e.*, its antitrust counterclaim is completely dependent upon a finding of fraud on the PTO.  The only anticompetitive conduct One Tech has alleged is *Walker Process* fraud – that ConsumerInfo procured its trademark through fraud on the PTO; and sham litigation – that ConsumerInfo's bringing of this lawsuit for trademark infringement against One Tech was a sham.  Proof of either type of alleged anticompetitive conduct requires the jury to find that ConsumerInfo engaged in fraud.  To prove the former, One Tech must both prove fraud on the PTO by clear and convincing evidence, and also prove that ConsumerInfo has enforced or attempted to enforce the fraudulently-obtained trademark with knowledge of the fraud.  *See Handgards, Inc. v. Ethicon, Inc.*, 601 F.2d 986, 994, 996 (9th Cir. 1979), *later proceeding*, 743 F.2d 1282 (9th Cir. 1984); *Walker Process Equip. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 177 n.5 (1965).  To prove the latter, One Tech must also prove fraud because absent fraud on the PTO, ConsumerInfo is entitled to

17

16022583.DOCX

a presumption that its registered trademark is valid.  *See Brookfield Commc'ns, Inc. v. West Coast Entm't Co.*, 174 F.3d 1036, 1047 (9th Cir. 1999); *Coca-Cola Co. v. Overland, Inc.*, 692 F.2d 1250, 1256-57 (9th Cir. 1982).  As a holder of a presumptively valid trademark – and absent actual knowledge that the trademark were fraudulently obtained – ConsumerInfo would have probable cause to bring a valid infringement claim against One Tech.  *See Hartford Life Ins. Co. v. Variable Annuity Life Ins. Co.*, 964 F. Supp. 624, 627-28 (D. Conn. 1997).

However, as set forth *infra*, ConsumerInfo will establish that it did not commit fraud on the PTO, and thus One Tech's allegations of anticompetitive conduct and antitrust counterclaim will fall.  In addition, ConsumerInfo will show that its prior trademark infringement lawsuits against Jesse Willms and Mighty Net – suits One Tech alleges are examples of anticompetitive conduct – were settled on terms favorable to ConsumerInfo, thereby providing ConsumerInfo with additional objective reasons to expect success in this lawsuit.  Finally, even if One Tech does prove by clear and convincing evidence that ConsumerInfo committed fraud on the PTO, to prove sham litigation One Tech must also prove that ConsumerInfo lacked common law trademark rights.  *See Dep't of Parks & Rec. v. Bazaar Del Mundo*, 448 F.3d 1118, 1131 (9th Cir. 2006); *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001); *see also Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56 (1993).

Second, One Tech cannot establish that ConsumerInfo engaged in anticompetitive conduct with a specific intent to monopolize the relevant market.  In particular, One Tech cannot prove this element because One Tech has failed to meet its burden of defining the relevant market.  *See Spectrum Sports, Inc.*, 506 U.S. at 459; *Walker Process*, 382 U.S. at 177.  One Tech alleges that the relevant market is the market for online credit reporting and credit monitoring services.  ConsumerInfo will demonstrate that this market definition is incorrect, because both online and offline services are part of the same relevant product market.  The Ninth Circuit

18

KAYE SCHOLER LLP

requires market definitions to be based on supply elasticity as well as on demand considerations, and considers market definitions erroneous when based on demand considerations alone. *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1436 (9th Cir. 1995). ConsumerInfo will produce evidence that the producers of offline credit reports and monitoring also provide online services, and thus can readily shift to producing online reports. As such, One Tech's expert should have included sales of both online and offline reports within the relevant market. Failure to properly define the relevant market prevents One Tech from proving that ConsumerInfo had the requisite specific intent to monopolize the relevant market.

Third, One Tech cannot establish that ConsumerInfo has had a dangerous probability of achieving monopoly power. Even taking One Tech's allegations and proposed market definition as true, One Tech has alleged that ConsumerInfo has the potential to achieve only a 60% market share in the next five years. But that level falls short of the Ninth Circuit's requirement of a 65% market share to establish a prima facie case of market power. *Image Tech Servs.*, 125 F.3d at 1206. In addition, the Ninth Circuit has never found attempted monopolization where the market share is below 44%. *See Rebel Oil*, 51 F.3d at 1438. ConsumerInfo will show that properly computed, its market share is too low to support an attempted monopolization claim. ConsumerInfo will introduce evidence from its expert witness, independently corroborated by third party reports and the actions of the Department of Justice, that ConsumerInfo's market share in a properly-defined market was below 17% prior to the Mighty Net acquisition, and even if properly calculated using One Tech's improper market definition, was below 25%. ConsumerInfo will also show that the Mighty Net acquisition did not significantly affect ConsumerInfo's probability of achieving monopoly power, as Mighty Net's market share was only approximately 5% prior to the acquisition.

One Tech also has the burden of demonstrating that the relevant market has significant barriers to entry and expansion. *Rebel Oil*, 51 F.3d at 1439. A dangerous

19

probability of achieving monopoly power cannot exist if there are no significant barriers to the entry of new competitors or expansion by existing competitors. *Am. Prof'l Testing Serv. v. Harcourt Brace Jovanovich*, 108 F.3d 1147, 1154 (9th Cir. 1997). As ConsumerInfo will show, new competitors – including Adaptive, CreditKarma, Intersections, One Tech, Zen Dough, and LifeLock – have entered the market in the last five years, thereby demonstrating the absence of barriers to entry. Furthermore, as ConsumerInfo will show, competitors within the market for credit reporting and monitoring services have expanded output significantly. In particular, banks and other financial institutions have developed into formidable competitors. More broadly, uncontroverted evidence shows that the industry as a whole quadrupled between 2002 and 2007, and that One Tech itself has increased in size by two to four times within the last three years.

ConsumerInfo will show that there is no prospect that it could achieve monopoly power, much less a dangerous probability that it could do so. It will show that it last increased the price of its main product, Triple Advantage, over three years ago, and that it has not engaged in monopoly pricing because its prices are comparable to, and in many cases lower than, its rivals' prices. In addition, it will show that its market power, calculated according to the method OneTech's expert uses, has actually declined since it obtained trademark registration for FREECREDITREPORT.COM. Moreover, ConsumerInfo will show that it has no power to raise prices, because if it attempted to do so, new entrants and existing competitors would increase their output, and take sales away, and consumers would have greater incentives to seek out lower cost providers of credit reporting and monitoring services.

Fourth, One Tech has failed to produce conclusive evidence that ConsumerInfo has caused, and One Tech has sustained, an antitrust injury of the type the antitrust laws were designed to prevent. *Rebel Oil*, 51 F.3d at 1433. Among other things, One Tech must prove injury to the overall market. *See Brunswick*

20

*Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488-89 (1977). ConsumerInfo will show that One Tech has not even demonstrated injury to itself, has not provided any proof of harm to other market participants, and has not even attempted to prove that any of the methods of advertising that competitors employ other than paid search advertising have been affected by ConsumerInfo's registration and use of its trademark.

One Tech has asserted in its Memorandum of Contentions of Fact and Law that its expert witness, Dr. Leffler, has "run a regression analysis that conclusively demonstrates that the use of the ® symbol increases [ConsumerInfo's] CTR and decreases its CPC." *See* One Tech's Mem. of Contentions of Law and Fact [*filed under seal,* see Docket No. 450] at 18. As ConsumerInfo will show through the analysis of its expert witness, Dr. Cameron, the claimed differential effects of ConsumerInfo's trademark acquisition in May 2008 did not occur; instead, the evidence of post-May 2008 costs is consistent with the alternate hypothesis that increased competition in the market for paid search ads caused both One Tech's and ConsumerInfo's costs to increase. Furthermore, ConsumerInfo will introduce evidence that did not use its trademark symbol on a significant proportion of its paid search ads until July 2009, negating any conclusion that if One Tech's costs increased between May 2008 and July 2009, the cost increase was due to ConsumerInfo's use of its registered trademark.

Moreover, One Tech has produced a separate regression analysis purporting to show that ConsumerInfo's use of the trademark on its paid search ads decreased ConsumerInfo's cost-per-click and increased ConsumerInfo's click-through-rate. However, this regression analysis does not show harm to One Tech or harm to competition, but merely a benefit to ConsumerInfo. ConsumerInfo will introduce rebuttal evidence demonstrating that One Tech's regression analysis is inconsistent with One Tech's theory of the case and hence flawed, as the regression returns the

21

16022583.DOCX

improbable result that ConsumerInfo's use of the trademark in its paid search ads is associated with lower costs for One Tech.

Finally, as ConsumerInfo will show, One Tech has not produced any direct evidence of lost sales or lost profits due to ConsumerInfo's registration and use of its trademark, but only derivative analysis of theoretical harm, which ConsumerInfo's expert witness has rebutted.  In addition, because ConsumerInfo will show that its trademark infringement suit against One Tech was not objectively and subjectively baseless, One Tech cannot claim as antitrust injury the costs of litigating its infringement defense.  One Tech thus cannot prove the fourth and final element of antitrust injury in its attempted monopolization claim.


DATED:  November 30, 2010                    KAYE SCHOLER LLP



                                             By:_____/s/_____
                                                  Oscar Ramallo
                                                  Attorneys for Plaintiff
                                                  CONSUMERINFO.COM, INC.

22

16022583.DOCX