1  KENT B. GOSS (State Bar No. 131499)
   kgoss@orrick.com
2  VALERIE M. GOO (State Bar No. 187334)
   vgoo@orrick.com
3  SETH E. FREILICH (State Bar No. 217321)
   sfreilich@orrick.com
4  DAVID P. FUAD (State Bar No. 265193)
   dfuad@orrick.com
5  ORRICK, HERRINGTON & SUTCLIFFE LLP
   777 S. Figueroa Street, Suite 3200
6  Los Angeles, CA  90017
   Telephone:  +1-213-629-2020
7  Facsimile:   +1-213-612-2499

8  Attorneys for Defendant and Counterclaimant
   ONE TECHNOLOGIES LP
9

10

11

12                 UNITED STATES DISTRICT COURT

13                CENTRAL DISTRICT OF CALIFORNIA

14                      WESTERN DIVISION

15

16
   CONSUMERINFO.COM, INC., a          Case No.  CV 09-3783-VBF(MANx)
17 California corporation,
                                      DEFENDANT ONE
18            Plaintiff,              TECHNOLOGIES LP'S TRIAL
                                      BRIEF (L.R. 16-10)
19       v.
                                      Hon. Valerie Baker Fairbank
20 ONE TECHNOLOGIES LP, a
   Delaware limited partnership;
21 ADAPTIVE MARKETING LLC, a          Pretrial Conference:  November 22, 2010
   Delaware corporation; and DOES 1-50,  Trial Date:               December 7, 2010
22 inclusive,

23            Defendants.

24 _____
   AND RELATED COUNTERCLAIMS.
25

26

27

28

1

## <u>TABLE OF CONTENTS</u>

2

3

I.      INTRODUCTION. ........................................................................1

4

II.     CI ABANDONED ITS CLAIM OF DILUTION BY
        TARNISHMENT. ........................................................................1

5

6

        A.    Defendants Moved for Summary Judgment of CI's Tarnishment
              Claim. ...............................................................................2

7

        B.    CI Did Not Oppose Defendants' Motion As To the Tarnishment
              Claim. ...............................................................................3

8

9

        C.    CI Abandoned Its Dilution by Tarnishment Claim By Failing to
              Oppose the Defendants' Summary Judgment Motion. .......................4

10

III.    ONE TECH'S FALSE ADVERTISING COUNTERCLAIM IS
        NOT UNTIMELY AND SHOULD NOT BE BARRED. ..........................5

11

12

IV.     CI IS NOT ENTITLED TO A PRESUMPTION OF
        TRADEMARK VALIDITY AND BEARS THE BURDEN OF
        PROOF. ...................................................................................10

13

14

        A.    The Presumption of Validity and Secondary Meaning Does Not
              Apply When the Alleged Infringement Occurred Before
              Registration. ......................................................................10

15

16

        B.    CI Bears the Ultimate Burden of Proving That Its Mark is Valid. ......13

17

V.      ONE TECH SHOULD BE PERMITTED TO ELICIT
        TESTIMONY FROM CI'S IN-HOUSE COUNSEL AND CI
        SHOULD PRODUCE RELATED DOCUMENTS. ..............................14

18

19

VI.     CI IS NOT ENTITLED TO ATTORNEYS FEES FOR
        "VEXATIOUS LITIGATION" OR FOR ITS FEES IN
        CONNECTION WITH FORMER-DEFENDANT ALEX
        CHANG'S MOTION TO DISMISS. ..............................................19

20

21

22

        A.    One Tech's Antitrust Counterclaim Does not Qualify as Vexatious
              Litigation. .........................................................................19

23

24

        B.    CI Is Not Entitled To Its Fees and Costs In Connection with the Chang
              Motion to Dismiss. ..............................................................21

25

VII.    CONTRACTUAL LIMITATION OF LIABILITY UNDER THE
        2007 AFFILIATE AGREEMENT. ...............................................22

26

27

28

# **TABLE OF AUTHORITIES**

## **FEDERAL CASES**

*Aromatique, Inc. v. Gold Seal, Inc.*,
   28 F.3d 863 (8th Cir. 1994)................................................................10, 11, 12

*ATM Express Inc. v. ATM Express, Inc.*,
   No. 07cv1293-L(RBB), Slip Copy, 2009 WL 2973034 (S.D. Cal. Sept. 11, 2009)................................................................................................................14

*Avery Dennison Corp. v. Sumpton*,
   189 F.3d 868 (9th Cir. 1999)................................................................20, 21

*Azizian v. Federal Dept. Stores, Inc.*,
   499 F.3d 950 (9th Cir. 2007)..........................................................................20

*Bay State Savings Bank v. Baystate Financial Services, LLC*,
   484 F. Supp. 2d 205 (D. Mass. 2007) ...........................................................11

*Brandon v. Holt*,
   469 U.S. 464 (1985) .........................................................................................6

*Brookfield Communications, Inc. v. West Coast Entertainment Corp.*,
   174 F.3d 1036 (9th Cir. 1999)........................................................................13

*Browning Debenture Holders' Committee v. DASA Corp.*,
   560 F.2d 1078 (2d Cir.1977)............................................................................7

*Cairns v. Franklin Mint Co.*,
   292 F.3d 1139 (9th Cir. 2002)........................................................................20

*Campana v. Eller*,
   755 F.2d 212 (1st Cir. 1985) ............................................................................6

*Carter-Wallace, Inc. v. Procter & Gamble Co.*,
   434 F.2d 794 (9th Cir. 1970)..........................................................................13

*CG Roxane LLC v. Fiji Water Co. LLC*,
   569 F. Supp. 2d 1019 (N.D. Cal. 2008) .............................................10, 11, 12

*Chevron Corp. v. Penzoil Co.*,
   974 F.2d 1156 (9th Cir. 1992)........................................................................18

*Clarke v. Am. Commerce Nat. Bank*,
   974 F.2d 127 (9th Cir. 1992)..........................................................................19

*Commonwealth Land Title Ins. Co. v. IDC Properties, Inc.*,
   524 F. Supp. 2d 155 (D.R.I. 2007)...................................................................7

*Consolidated Data Terminals v. Applied Digital Data Systems, Inc.*,
   708 F.2d 385 (9th Cir. 1983)......................................................................6, 9

*Diversified Industries, Inc. v. Meredity*,
   572 F.2d 596 (8th Cir. 1977).........................................................................17

*Esquire Restaurant, Inc. v. Commonwealth Ins. Co. of New York*,
    393 F.2d 111 (7th Cir. 1968)...........................................................................6

*Exch. Comm'n v. Rapp*,
    304 F.2d 786 (2d Cir. 1962)............................................................................8

*Geo. Byers Sons, Inc. v. East Europe Import Export, Inc.*,
    488 F. Supp. 574 (D.C.Md. 1980).................................................................9

*In re CFS-Related Securities Fraud Litigation*,
    223 F.R.D. 631 (N.D. Okla. 2004).............................................................17

*In re Rauh*,
    119 F.3d 46 (1st Cir. 1997) ......................................................................7, 19

*Jenkins v. County of Riverside*
    389 F.3d 1093 (9th Cir. 2005).....................................................................4

*Levi Strauss & Co. v. Blue Bell, Inc.*,
    778 F.2d 1352 (9th Cir. 1985).....................................................................13

*Lindley v. Life Investors Ins. Co. of America*,
    267 F.R.D. 382 (N.D. Okla. 2010)...................................................16, 17, 18

*Lopez v. Costco Wholesale Corp.*,
    No. CV, F 08-719 AWI SMS, 2009 WL 3246847 (E.D. Cal. Oct. 7, 2009)...4

*McKesson Information Solutions, Inc. v. Bridge Medical, Inc.*,
    No. S-02-2669 FCD KJM, 2006 WL 2583025 (E.D. Cal. 2006) .................20

*Meyer v. City of Clearlake*,
    No. C 08-04372 MEJ, 2009 WL 799396 (N.D. Cal. 2009) ..........................6

*Minn. Specialty Crops, Inc. v. Minn. Wild Hockey Club, LP*,
    2002 WL 1763999 (D.Minn. 2002) ........................................................10, 12

*Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B*,
    230 F.R.D. 398 (D.Ma. 2005) .....................................................................18

*Neuder v. Battelle Pacific Northwest Nat. Laboratory*,
    194 F.R.D. 289 (D.D.C. 2000) ....................................................................18

*New York State Elec. & Gas Corp. v. Secretary of Labor*,
    88 F.3d 98 (2d Cir. 1996).............................................................................9

*Panavision Int'l L.P. v. Toeppen*,
    141 F.3d 1316 n. 7 (9th Cir. 1998)...............................................................2

*Picard Chemical Inc. Profit Sharing Plan v. Perrigo Co.*,
    951 F. Supp. 679 (W.D. Mich. 1996)............................................................18

*Playboy Enterprises, Inc. v. Hsin I. Chen*,
    No. CV 96-3417 DDP (VAPx), 1997 WL 829339 (C.D. Cal. Oct. 1, 1997) 14

*Ramirez v. City of Buena Park*,
 560 F.3d 1012 (9th Cir. 2009)................................................................4

*Sand Hill Advisors, LLC v. Sand Hill Advisors, LLC*,
 680 F. Supp. 2d 1107 (N.D. Cal. 2010) ...................................... 11, 13

*Scott Paper Co. v. Scott's Liquid Gold, Inc.*,
 589 F.2d 1225 (3d Cir. 1978)........................................................ 11, 12

*Scott v. Moore*,
 No. 2:08-cv-2006-RCF (PC), 2010 WL 1404411 (E.D. Cal. Apr. 6, 2010)....4

*Scully Signal Co. v. Elec. Corp. of America*,
 570 F.2d 355 (1st Cir. 1977) ............................................................7

*SPPI-Somersville, Inc. v. TRC Companies, Inc.*,
 Nos. C 04-2648 SI, 07-5824 SI, 2009 WL 2612227 (N.D. Cal.
 Aug. 21, 2009)...............................................................................4

*Stevens v. F/V Bonnie Doon*,
 731 F.2d 1433 (9th Cir.1984).............................................................7

*Sulzer Textil A.G. v. Picanol N.V.*,
 358 F.3d 1356 (Fed. Cir. 2004)...........................................................20

*Talking Rain Beverage Co., Inc. v. South Beach Beverage Co.*,
 349 F.3d 601 (9th Cir. 2003)..............................................................14

*Tie Tech, Inc. v. Kinedyne Corp.*,
 296 F.3d 778 (9th Cir. 2002)..............................................................13

*U.S. v. Chen*,
 99 F.3d 1495 (9th Cir. 1996)........................................................ 15, 16

*U.S. v. Osborn*,
 561 F.2d 1334 (9th Cir. 1977)....................................................... 17, 19

*UGG Holdings, Inc. v. Severn*,
 No. CV 04-1137-JFW (FMOx), 2005 WL 5887187 (C.D. Cal. 2005)..........14

*Verizon California, Inc. v. Ronald A. Katz Technology Licensing, L.P.*,
 266 F. Supp. 2d 1144 (C.D. Cal. 2003)..................................................18

*Weil v. Investment/Indicators Research & Management*,
 647 F.2d 18 (9th Cir. 1981)...................................................... 17, 18, 19

*Zobmondo Entertainment, LLC v. Falls Media, LLC*,
 602 F.3d 1108 (9th Cir. 2010)............................................................14

## STATE CASES

*Rossi v. Blue Cross and Blue Shield of Greater New York*,
 73 N.Y.2d 588, 842 N.Y.S.2d 508, 540 N.E.2d 703 (1989)........................17

1

## **FEDERAL STATUTES**

2

15 U.S.C. § 1125(c)(2)(C) ..................................................................... 2, 3

3

15 U.S.C. § 15(a) ................................................................................. 20

4

17 U.S.C. § 505 ................................................................................... 20

5

section 1125(a) ..................................................................................... 8

6

## **FEDERAL RULES**

7

Fed. R. Civ. P. 10(c) ............................................................................. 6

8

Fed. R. Civ. P. 15(b) .......................................................................... 6, 9

9

Fed. Rules Evid. 301 ............................................................................ 13

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**I.      INTRODUCTION.**

Pursuant to this Court's Local Rule 16-10, defendant One Technologies LP ("One Tech") hereby files this Trial Brief to reply to plaintiff ConsumerInfo.com, Inc.'s ("CI") Memorandum of Contentions of Fact and Law (docket #457) ("CI's Memorandum"), responding to seven issues raised by CI.  Specifically One Tech contends that:

- CI's claim for dilution by tarnishment has been abandoned;
- One Tech is not barred from pursing its false advertising counterclaim;
- The presumption of validity as to CI's FreeCreditReport.com mark is not applicable, as the alleged infringement predates CI's registration, and, even if the presumption applies, CI still bears the ultimate burden of establishing validity;
- One Tech should be permitted to present testimony and related evidence from CI's in-house counsel;
- CI is not entitled to attorneys' fees in connection with One Tech's antitrust counterclaim, as there is no basis for deeming the pursuit of that claim "vexatious" litigation;
- CI is not entitled to attorneys' fees or costs in connection with former-defendant Alex Chang's successful motion to dismiss; and
- One Tech should be permitted to argue that any damages CI is found to have suffered are contractually limited.

One Tech also joins in Section III(A)(1)(d) of defendant Adaptive Marketing LLC's ("Adaptive") Trial Brief (docket #578), arguing that any purported claim by CI of "trade name" infringement is not at issue in this litigation.

**II.      CI ABANDONED ITS CLAIM OF DILUTION BY TARNISHMENT.**

CI's Memorandum contends that one of the elements of its claim of dilution is that One Tech's alleged use of CI's marks "is likely to cause dilution by blurring or dilution by tarnishment."  CI's Memorandum, p. 6.  However, CI has waived its

1   claim of dilution by tarnishment and should be permitted, at trial, to pursue only its

2   claim of dilution by blurring.

3       A.    **Defendants Moved for Summary Judgment of CI's Tarnishment**

4       **Claim.**

5          In August, One Tech and Adaptive jointly moved for summary judgment of

6   CI's dilution claim, arguing that One Tech and Adaptive were entitled to summary

7   judgment based on both the theory of blurring and the theory of tarnishment. *See*

8   Memorandum of Points and Authorities in Support of Defendants' Joint Notice of

9   Motion and Motion for Partial Summary Judgment of ConsumerInfo's Claims

10  (docket #245).  Specifically, as to CI's dilution claim, One Tech and Adaptive

11  argued:

12      •    that CI's claim included a requirement that it prove that One Tech and

13          Adaptive's use of the alleged mark "is likely to cause dilution by

14          blurring *or dilution by tarnishment*," *id.* at p. 11:21-22 (emphasis

15          added);

16      •    that CI's asserted claim for dilution by tarnishment requires a showing

17          that "a famous mark is improperly associated with an inferior mark or

18          offensive product or service," *id.* at 12 n. 8 (quoting *Panavision Int'l*

19          *L.P. v. Toeppen*, 141 F.3d 1316, 1326 n. 7 (9th Cir. 1998)); and

20      •    that CI could not "prove dilution by tarnishment, which requires a

21          similarity between a mark and a famous mark that 'harms the

22          reputation of the famous mark,'" because "CI has presented no

23          evidence that its reputation has been harmed," *id.* at 13:1-4 (quoting 15

24          U.S.C. § 1125(c)(2)(C)).

25         Thus, it is clear that One Tech and Adaptive sought summary judgment as to

26  CI's claim of dilution by tarnishment.

27

28

**B.**     **CI Did Not Oppose Defendants' Motion As To the Tarnishment Claim.**

While CI contends, in the Proposed Final Pretrial Conference Order, that it opposed One Tech and Adaptive's motion for summary judgment on the tarnishment claim, CI offers no citation to its opposition papers showing *where* it purportedly opposed the motion. *See* Proposed Final Pretrial Conference Order (docket #518-1) ("FPCO"), p. 8 n. 3. This is because it did not oppose the motion as to tarnishment. CI devoted almost five pages of its opposition brief to its dilution claim without once mentioning tarnishment. *See* Plaintiff ConsumerInfo.com, Inc.'s Memorandum of Points and Authorities in Opposition to Defendants' Joint Motion for Partial Summary Judgment of ConsumerInfo's Claim (docket #347) ("CI's MSJ Opposition"), pp. 18-22. In fact, after discussing why the evidence purportedly shows that CI's FreeCreditReport.com mark is famous, CI includes a subject heading that makes it unmistakably clear what CI is opposing:

> **B.**     Defendants' Actions Dilute the FREECREDITREPORT.COM Mark *By Blurring*

CI's MSJ Opposition, p. 21 (emphasis added). In this section, CI makes no reference to tarnishment, and only argues that the evidence "supports a finding that Defendants' actions have diluted ConsumerInfo's FREECREDITREPORT.COM mark *by blurring*, harming ConsumerInfo." *Id.* at p. 22 (emphasis added).

Further, as discussed in the previous section, dilution by tarnishment requires a showing that the reputation of CI's mark has been harmed. *See* 15 U.S.C. § 1125(c)(2)(C). Nowhere in addressing CI's dilution claim does CI's MSJ Opposition include any discussion of, or even reference to, evidence purportedly showing a harm to the alleged reputation of FreeCreditReport.com.

Finally, in ruling on the parties' summary judgment motions, the Court itself

only addressed the issue of dilution by blurring, as CI failed to oppose One Tech and Adaptive's motion as to dilution by tarnishment.  *See* Court Order re Motions for Partial Summary Judgment (docket #403) (the "Court's Order"), pp. 9-10.

The record clearly establishes that CI failed to oppose One Tech's and Adapative's motion as to the claim of dilution by tarnishment.

## C.   CI Abandoned Its Dilution by Tarnishment Claim By Failing to Oppose the Defendants' Summary Judgment Motion.

Ninth Circuit law is clear that a party abandons a claim by failing to oppose it in summary judgment. *See Jenkins v. County of Riverside*, 389 F.3d 1093, 1095 n0 4 (9th Cir. 2005) (finding that "[Plaintiff] abandoned her other two claims by not raising them in opposition to the [defendant's] motion for summary judgment"). *See also Scott v. Moore*, No. 2:08-cv-2006-RCF (PC), 2010 WL 1404411, * 3 (E.D. Cal. Apr. 6, 2010) (recognizing that a claim was abandoned when the plaintiff "decline[ed] to address it in his papers opposing defendants' motion for summary judgment" and citing *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1029 (9th Cir. 2009)); *SPPI-Somersville, Inc. v. TRC Companies, Inc.*, Nos. C 04-2648 SI, 07-5824 SI, 2009 WL 2612227, *21 (N.D. Cal. Aug. 21, 2009) (finding claims abandoned where they were not addressed in opposition to summary judgment). Simply put, "[a] claim not referred to in an opposition to a motion for summary judgment must be dismissed." *Lopez v. Costco Wholesale Corp.*, No. CV F 08-719 AWI SMS, 2009 WL 3246847, *5 (E.D. Cal. Oct. 7, 2009).

One Tech and Adaptive specifically moved for summary judgment of CI's dilution claim based on the theory of tarnishment.  CI did not respond to One Tech and Adaptive's arguments regarding tarnishment in opposing that motion.  It has therefore abandoned the claim of dilution by tarnishment, which should be dismissed from the case.

### III.   ONE TECH'S FALSE ADVERTISING COUNTERCLAIM IS NOT UNTIMELY AND SHOULD NOT BE BARRED.

In the portion of One Tech's operative answer and counterclaim pleading where One Tech's includes its count of false advertising and unfair competition under the Lanham Act clearly, One Tech clearly incorporates the preceding allegations.  *See* One Technologies LP's Answer to First Amended Complaint and Second Amended Counterclaims (docket #93) ("One Tech's SAC"), ¶ 316 ("One Technologies restates and incorporates the allegations set forth in Paragraphs 194 to 315 above as if fully set forth herein").  Those restated and incorporated allegations include the allegations that underlie One Tech's false advertising counterclaim.  For example, One Tech alleged:

> Upon information and belief, ConsumerInfo has undertaken other acts to create a false impression upon consumers and increase the costs of competition for One Technologies and other competitors.  For example, upon information and belief, it has used it federal trademark registration and dominant market position to obtain listing on Google as the "official" free credit report provider and website.  Upon information and belief, this causes consumers to believe that they could not or should not go to another website to obtain a free credit report because they are not "official" sites, and that there is an endorsement of ConsumerInfo's site and services which does not actually exist.  Upon information and belief, this also causes consumers to believe that the only "official" website for free credit reports is the freecreditreport.com website.  As a result, One Technologies, and upon information and belief other competitors, have suffered lost profits and sales while ConsumerInfo continues or comes closer to a monopoly in the market.

One Tech's SAC, ¶ 282.  *See also id.* at ¶¶ 204, 216-18, 221-22, 224-27, 230, 232,

279 and Prayer for Relief.  "When framing a count, plaintiffs may incorporate by reference the allegations of previous counts, so long as the claims are identified with sufficient clarity to enable defendants to frame a reasonable pleading." *Meyer v. City of Clearlake*, No. C 08-04372 MEJ, 2009 WL 799396, *4 (N.D. Cal. 2009) (citing Fed. R. Civ. P. 10(c)).  CI has known of One Tech's false advertising allegations since the early days of this litigation.[1]

Further, CI will suffer no prejudice by One Tech's pursuit of its false advertising claim, even CI were correct that One Tech had not properly framed its counterclaim.  Under the Federal Rules, courts may consider claims outside those raised in the pleadings so long as doing so does not cause prejudice.  *See* Fed. R. Civ. P. 15(b) ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated as if they had been raised by the pleadings").  Generally, motions to amend the pleadings to conform to the evidence should be granted "so long as the opposing party has not been prejudiced in presenting his case." *Brandon v. Holt*, 469 U.S. 464, 471 n. 19 (1985).  *See also Consolidated Data Terminals v. Applied Digital Data Systems, Inc.*, 708 F.2d 385, 397 (9th Cir. 1983).  Rule 15(b) therefore "gives the trial court wide discretion to allow pleadings to be amended to conform to the evidence." *Esquire Restaurant, Inc. v. Commonwealth Ins. Co. of New York,* 393 F.2d 111, 116 (7th Cir. 1968).  *See also Campana v. Eller*, 755 F.2d 212, 215 (1st Cir. 1985) ("late pleading amendments may be allowed … to the extent that the party opposing the amendment will not be unduly prejudiced").

CI can make no claim that it will be prejudiced should One Tech be allowed to pursue its false advertising claim and (in the event One Tech's operative counterclaims are found lacking), following the entry of evidence, amend its claim

---

[1] CI appears to want to characterize One Tech's claim as a "new" false advertising claim so that it can attempt to re-assert four affirmative defenses of its own for which One Tech obtained summary judgment. *See* FPCO at p. 6 n. * (seeking to assert affirmative defenses of unclean hands, laches, waiver and estoppel); Civil Minutes (docket #403) at pp. 18, 19.

– 6 –

1   to conform to that evidence.  "Prejudice, in this context, refers to whether the

2   opposing party 'had a fair opportunity to defend and whether he could offer any

3   additional evidence if the case were to be retried on a different theory.'" *In re Rauh,*

4   119 F.3d 46, 52 (1st Cir. 1997) (quoting *Browning Debenture Holders' Committee*

5   *v. DASA Corp.,* 560 F.2d 1078, 1086 (2d Cir.1977)).  Similarly, there may be

6   prejudice if pursuit of the claim would "require[e] the presentation of additional

7   evidence."  *Scully Signal Co. v. Elec. Corp. of America,* 570 F.2d 355 (1st Cir.

8   1977).

9        A "claim of surprise that is not borne out by the facts or an objection

10       to a mere technical addition to the theory of the claim for relief" is not

11       sufficient to avert a motion to amend.  6A Charles A. Miller, Arthur R.

12       & Mary Kay Kane, § 1495 at 58; *see Stevens v. F/V Bonnie Doon,* 731

13       F.2d 1433 (9th Cir.1984) (denying defendant's motion to limit the

14       damages to the sum set forth in the pleadings).

15   *Commonwealth Land Title Ins. Co. v. IDC Properties, Inc.,* 524 F. Supp. 2d 155,

16   166 (D.R.I. 2007).

17        CI cannot claim prejudice, first and foremost, because it has known about

18   these allegations since One Tech filed its counterclaims, as discussed above.

19        Second, CI can claim no prejudice because there is no additional evidence

20   that will come in at trial.  One Tech's false advertising claim, as laid out in One

21   Tech's SAC, One Tech's Memorandum of Contentions of Fact and Law and in the

22   parties' jointly submitted Proposed Pretrial Conference Order makes it clear that the

23   facts and evidence underlying and supporting One Tech's claim are no different

24   from the facts and evidence underlying and supporting many of One Tech's other

25   claims and defenses in this case.  Similarly, these pleadings as well as CI's

26   Memorandum make it clear that CI cannot point to any evidence it would need to

27   rely upon to defend against One Tech's claim which would be in addition to

28   evidence that will be otherwise offered in this litigation, either in connection with

CI's pursuit of its own claims or in its defense against the other counterclaims asserted against it.  Simply put, the parties have already conducted discovery on the issues implicated by One Tech's false advertising claim and CI's counsel has even deposed One Tech on these issues.  *See, e.g.,* Declaration of Oscar Ramallo (docket #253) at Exh. CC at p. 1258 (testimony by One Tech 30(b)(6) witness: "So it gives [CI] an unfair advantage by, again, conveying to consumers either a false sense of credibility or that ConsumerInfo has the only credit report offered for free in the marketplace").

Third, CI cannot claim prejudice because there is no surprise here, let alone unfair surprise.  In fact, there is less surprise here than in most amend-to-proof cases.  Not only are these allegations in One Tech's SAC, but One Tech spelled these allegations out when asked by CI during the parties' Local Rule 16 Conference.  During that October 12 conference, CI's counsel asked One Tech what the basis of its false advertising claim was, and One Tech explained that it was based upon CI's use of the word "official" and the ® symbol.[2]  Courts are more amenable to amending pleadings when the there is no argument for unfair surprise, as the case here, because the other side has been made aware of the evidence and issues intended to be tried.  *See, e.g., Sec. & Exch. Comm'n v. Rapp*, 304 F.2d 786, 790 (2d Cir. 1962) (reversing trial judge's denial of amendment where S.E.C. made available to defense counsel evidence and testimony it expected to use, and noting that "[t]he well known objective of the rule [is] that cases should be decided on resolution of the actual dispute between the parties, rather than on the paper

---

[2] Inexplicably, in the parties' Proposed Final Pretrial Conference Order, jointly submitted on November 15, CI contends that One Tech "raised this counterclaim for the first time in its opposition to ConsumerInfo's Motion in Limine No. 1," which was filed on November 1, 2010.  FPCO, p. 6.  CI's counsel made this same statement during the Final Pretrial Conference on November 29, 2010.  However, CI admits that it actually learned of the basis of One Tech's claim on October 12, 2010.  *See* CI's Memorandum, pp. 51-52 ("In the parties [sic] pre-trial Local Rule 16 meeting on October 12, 2010, One Technologies asserted for the first time that the basis of its section 1125(a) claim was ConsumerInfo's use of the ® symbol and the word "Official" in its paid search advertisements").  Of course, CI *really* learned of One Tech's allegations when One Tech filed its counterclaims.

1    pleadings filed at the inception of suit…").

2          Courts allow amendments to pleadings so that causes of actions that appear

3    during trial can be added.  For example, in one case, the District Court noted that

4    the cause of action at issue "was not raised in the pleadings, memoranda or pretrial

5    order submitted by the parties, but appeared during the court of the trial."  *Geo.*

6    *Byers Sons, Inc. v. East Europe Import Export, Inc.*, 488 F. Supp. 574, 585

7    (D.C.Md. 1980).  In light of Rule 15(b) being "quite liberal in allowing the

8    amendment of pleadings to conform to the evidence," the District Court reasoned

9    that it should "be guided by the fundamental concepts of notice and prejudice."  *Id.*

10   at 585.  As there was no prejudice in that case, the lack of notice was

11   inconsequential and the District Court allowed the amendment.  *Id.* at 585-87.  The

12   situation is even more compelling here, because CI *has* notice – One Tech's claim

13   is clearly outlined and "raised in the … memoranda [and] pretrial order" submitted

14   in this case, as well as in One Tech's SAC, and it was told to CI almost two months

15   before trial.

16         "[A] party cannot normally show that it suffered prejudice simply because of

17   a change in its opponent's legal theory."  *New York State Elec. & Gas Corp. v.*

18   *Secretary of Labor*, 88 F.3d 98, 104 (2d Cir. 1996).  "Instead, a party's failure to

19   plead an issue it later presented must have disadvantaged its opponent in presenting

20   its case."  *Id.*  There is no such disadvantage here, particularly given CI's notice,

21   and the complete overlap of relevant evidence and issues.  *See, e.g., Consolidated*

22   *Data Terminals*, 708 F.2d at 397 (recognizing the importance of advance notice so

23   that a party has an opportunity to object to evidence during trial and elicit its own

24   relevant testimony).  One Tech should be permitted to pursue its false advertising

25   claim and subsequently, should One Tech's SAC be found lacking, to amend its

26   counterclaim to conform to the evidence.[3]

27   _____
     [3] CI also contends that, because One Tech argues that CI abandoned its claim of
28   dilution by tarnishment during summary judgment, so too has One Tech abandoned
     its false advertising claim.  *See* FPCO at p. 8 n. 3.  This is incorrect.  As discussed

## IV.   CI IS NOT ENTITLED TO A PRESUMPTION OF TRADEMARK VALIDITY AND BEARS THE BURDEN OF PROOF.

CI it intends to argue that it is entitled to a presumption of validity and secondary meaning in connection with its FreeCreditReport.com trademark in light of the mark's federal registration. *See* CI's Memorandum at p. 4. However, CI ignores the fact that this presumption only applies as of the date of the mark's federal registration, not retroactively, and CI also wrongly contends that it does not bear the ultimate burden of proof.

### A.   The Presumption of Validity and Secondary Meaning Does Not Apply When the Alleged Infringement Occurred Before Registration.

The law is clear that the presumption that comes with a federal trademark registration is not retroactive and, therefore, only applies as of the date of registration. *See, e.g., Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 870 (8th Cir. 1994). Thus, "[i]n a case involving a registered trademark where acquired distinctiveness (i.e., secondary meaning) is an issue, the timing of the effectiveness of that presumption is crucial." *Id.* Where infringement is alleged to have begun *prior* to the trademark's registration, the presumption of validity is not applicable. *See id. See also CG Roxane LLC v. Fiji Water Co. LLC ("Fiji Water")*, 569 F. Supp. 2d 1019, 1032 (N.D. Cal. 2008). "[T]he presumption operates only after the registration becomes effective." *Id.* (quoting *Minn. Specialty Crops, Inc. v. Minn. Wild Hockey Club, LP*, 2002 WL 1763999 at *5 (D.Minn. 2002)).

In such a case, because the presumption does not apply, the trademark holder "must [] show that secondary meaning existed prior to the date on which the

---

in Section II, above, One Tech and Adaptive specifically sought summary judgment of CI's tarnishment claim, and its silent opposition led to an abandonment of that claim. CI, however, moved for summary judgment of One Tech's false advertising claim specifically and only as to the MyCredit Health and FreeCreditReport360 marks. *See* Plaintiff ConumerInfo, Inc.'s Notice of Motion and Motion for Partial Summary Judgment (docket #208), at p. 3. One Tech responded to this motion fully as noticed and, as such, abandoned nothing.

defendant commenced using the same or similar mark." *Id.* (quoting *Scott Paper Co. v. Scott's Liquid Gold, Inc.*, 589 F.2d 1225, 1231 (3d Cir. 1978) (edits in original)).  *See also Sand Hill Advisors, LLC v. Sand Hill Advisors, LLC*, 680 F. Supp. 2d 1107, 1116 (N.D. Cal. 2010) (the presumption of validity means that "in a federal infringement action, the holder of the registered mark may rely on section 2(f) to show acquired distinctiveness (i.e., secondary meaning) *as of the date of registration*") (emphasis in original) (citing *Aromatique, Inc. v. Gold Seal, Inc.*, 28 F. 3d 864, 860 (8th Cir. 1994)); 4A Callmann on Unfair Comp., Tr. & Mono. § 26:5 (4th Ed.) ("The starting date of a presumption arising out of registration is the date of the registration; a plaintiff who needs to establish that its mark had secondary meaning prior to that date must prove that such was the case").

Here, CI obtained a federal trademark registration for its FreeCreditReport.com mark on May 13, 2008, only after the PTO rejected the application for lack of distinctiveness and CI presented subsequent evidence purporting to show secondary meaning.  As such, its mark is entitled to a presumption of validity and secondary meaning only as of May 13, 2008.  *See Aromatique*, 28 F.3d at 867-70.  CI alleges that One Tech's infringement began well before that date, arguing that it began as far back as December 2005.  *See* CI's Memorandum at p. 7:18-22.  Where such alleged infringement predates the trademark registration, "the presumption is not applicable" and "[t]he burden of proof thus lies with the plaintiff to establish that the marks had acquired secondary meaning."  *Bay State Savings Bank v. Baystate Financial Services, LLC*, 484 F. Supp. 2d 205, 214 (D. Mass. 2007) (registered marks are entitled to a presumption only as of the date of registration) (citing *Aromatique*, 28 F.3d at 870).

Two cases are particularly insightful here.  In *Fiji Water*, the plaintiff sued for trademark infringement and dilution (among other claims) of its registered "Bottled at the Source" trademark after sending a cease and desist letter to the defendant, and the defendant counterclaimed to have the plaintiff's mark canceled

1   as lacking distinctiveness. *Fiji Water*, 569 F. Supp. 2d at 1025.  In response to the

2   defendant's motion for summary judgment, the court first concluded that the mark

3   was generic. *See id.* at 1030-31.  The court went on to address the alternative

4   argument that the mark lacked secondary meaning, and agreed with the defendant

5   that, because the alleged infringement began in 1997, "five years before plaintiff

6   registered the mark with the USPTO … "plaintiff is not entitled to a presumption

7   that the mark is valid." *Id.* at 1032.  "Indeed, in order to prove the validity of the

8   mark without this presumption '[t]he user must [ ] show that secondary meaning

9   existed prior to the date on which the defendant commenced using the same or

10  similar mark.'" *Id.* (quoting *Scott Paper Co. v. Scott's Liquid Gold, Inc.*, 589 F.2d

11  1225, 1231 (3d Cir. 1978)) (edits in original).

12       Similarly, in *Minnesota Specialty*, the trademark owner held a federally

13  registered mark and argued that this meant it could rely on a presumption of

14  acquired secondary meaning. *Minnesota Specialty Crops, Inc. v. Minnesota Wild*

15  *Hockey Club, LP*, No. Civ. 00-2317 JRTFLN, 2002 WL 1763999, *5 (D.Minn. July

16  26, 2002).  The defendants argued that the mark was descriptive and that there had

17  to be evidence of secondary meaning. *See id.*  The court recognized that where the

18  PTO initially refused a registration as not being distinctive, and only granted

19  registration upon proof of acquired secondary meaning, "[i]n such cases, the

20  presumption operates only after the registrations become effective." *Id.* (citing

21  *Aromatique*, 28 F.3d at 870).  Because the defendants used their allegedly

22  infringing marks prior to the registration of the plaintiff's mark, this was found

23  "sufficient to prevent [the plaintiff] from entitlement to any presumption of

24  secondary meaning," meaning the plaintiff "must present evidence of secondary

25  meaning." *See id.*

26       The situation here is precisely like the one in *Fiji Water* and *Minnesota*

27  *Specialty* – CI's application was originally rejected as at least being descriptive and

28  only after committing fraud upon the PTO (as One Tech alleges) did CI obtain its

registration.  As CI alleges infringement predating that date of registration, it is not entitled to a presumption of validity or secondary meaning and bears the burden of proving that its alleged FreeCreditReport.com trademark is valid.  *See also Levi Strauss & Co. v. Blue Bell, Inc.,* 778 F.2d 1352, 1358 (9th Cir. 1985); *Carter-Wallace, Inc. v. Procter & Gamble Co.*, 434 F.2d 794 (9th Cir. 1970); *Sand Hill Advisors, LLC v. Sand Hill Advisors, LLC*, 680 F. Supp. 2d 1107, 1117 (N.D. Cal. 2010).

### B.    CI Bears the Ultimate Burden of Proving That Its Mark is Valid.

Even if the presumption of validity were applicable in this case, One Tech may rebut that presumption with sufficient evidence.  This is because a registered trademark only confers a rebuttable presumption of validity.  *See, e.g., Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 783-84 (9th Cir. 2002); *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999).  This rebuttable presumption does not shift the ultimate burden of *proof*; rather, it shifts the burden of *production* to the defendant.  *See Tie Tech, Inc.*, 296 F.3d at 783.  *See also* Fed. Rules Evid. 301 ("a presumption imposes … the burden … to rebut … but … does not shift to such party the burden of proof"); 4A Callmann on Unfair Comp., Tr. & Mono. § 26:5 ("The burden shifted by the presumption is that of production, not of persuasion").  Thus, this rebuttable presumption of validity has been characterized as an evidentiary presumption, and courts have recognized that federal trademark registrations "should be treated as something of an expert's affidavit on [the mark's] validity."  *Tie Tech, Inc.*, 296 F.3d at 784.

Once a defendant produces "sufficient evidence" to support a finding that the trademark is invalid, the presumption of validity is rebutted – it no longer exists – and the "registration loses its evidentiary significance."  *See Tie Tech, Inc.*, 296 F.3d at 783 (characterizing the presentation of "sufficient evidence" as "piercing the presumption" such that "the evidentiary bubble bursts").  *See also Talking Rain*

*Beverage Co., Inc. v. South Beach Beverage Co.*, 349 F.3d 601, 603 (9th Cir. 2003) (recognizing that the presumption of validity can be rebutted where the evidence shows that the mark is invalid); 6 McCarthy on Trademarks and Unfair Competition § 32:138.  This is because the presumption only shifts the burden of production, not proof.  *See, e.g., ATM Express Inc. v. ATM Express, Inc.*, No. 07cv1293-L(RBB), Slip Copy, 2009 WL 2973034, *2 (S.D. Cal. Sept. 11, 2009) (presumption does not shift the burden of proof); *UGG Holdings, Inc. v. Severn*, No. CV 04-1137-JFW (FMOx), 2005 WL 5887187, *3 (C.D. Cal. 2005) (presumption rebuttable; burden of production); *Playboy Enterprises, Inc. v. Hsin I. Chen*, No. CV 96-3417 DDP (VAPx), 1997 WL 829339 (C.D. Cal. Oct. 1, 1997) (party need only come forward with "sufficient evidence").

And while the Ninth Circuit recently held that the "burden shifts to the defendant to show by a preponderance of the evidence that the mark is not protectable," it also held that the "plaintiff in a trademark action *bears the ultimate burden of proof.*"  *Zobmondo Entertainment, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010) (emphasis added).  Thus, even if the presumption of validity is found to be applicable – which, as discussed above, it should not be – One Tech can rebut that presumption upon the presentation of evidence sufficient to show that the FreeCreditReport.com mark is not valid.  At that point, the presumption of validity loses any evidentiary weight, and CI must meet its burden of proof of establishing the validity of its FreeCreditReport.com mark.

## V.   ONE TECH SHOULD BE PERMITTED TO ELICIT TESTIMONY FROM CI'S IN-HOUSE COUNSEL AND CI SHOULD PRODUCE RELATED DOCUMENTS.

During the course of discovery in this litigation, CI produced a 189-page privilege log containing thousands of logged entries.  Based on subsequent witness testimony, however, it became apparent that many of these documents were not actually privileged.  Specifically, CI contends that it had a good faith belief in the

validity of its alleged FreeCreditReport.com mark when it filed its trademark application with the PTO and that it did not commit fraud upon the PTO.  *See* CI's Memorandum at pp. 39-43.  However, deposition testimony from one or more CI executives makes it clear that the company's in-house counsel, Maria Zander, was the driving force behind CI's trademark application.  *See, e.g.,* Exhibit 11 to the Amended and Corrected Declaration of Valerie M. Goo (docket #252) at pp. 62:7-25, 63:20-64:5.[4]

One Tech has subpoenaed Ms. Zander to appear and testify at trial, and it has also subpoenaed CI's custodian of records to produce related documents at trial, documents which CI has included on its privilege log.  The subpoenaed testimony and evidence is, in light of the testimony cited above and other witness testimony in this case, directly relevant to One Tech's claim that CI committed fraud upon the PTO.  One Tech anticipates that CI will attempt to hinder the presentation of this testimony and documentary evidence on the basis of a purported attorney-client privilege.  However, Ms. Zander was not acting as a lawyer providing CI with legal advice but, instead, was acting in a business capacity, making non-legal, business decisions.  As such, there is no attorney-client privilege.

This is because the mere fact that a person is an attorney "does not, *ipso facto*, make all communications with that person privileged."  *U.S. v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996).  Rather, the attorney-client privilege "applies only when legal advice is sought 'from a professional legal advisor *in his capacity as such*.'"  *Id.* (quoting 8 John H. Wigmore *Evidence* § 2292 at 554 (McNaughton rev. ed. 1961)) (emphasis in original).  Thus, for example, the privilege does not apply where a lawyer is acting as a "business agent" or where allegedly privileged documents reveal third-party financial transactions rather than client

---

[4] One Tech has not attached this testimony, or other relevant deposition testimony, as the testimony has been marked "attorneys' eyes only" pursuant to the terms of the parties' protective order in this case.  However, One Tech can make this testimony available for the Court's review.

1    communications with its lawyer for lawyer advice.  *Id.*

2        It is true that, where a lawyer is hired, there is generally a rebuttable

3    presumption that the lawyer was hired to provide legal advice, even where the

4    subject of that advice is business-related.  *Chen*, 99 F.3d at 1501.  However, this

5    presumption can be rebutted upon a showing that the lawyer was actually being

6    "employed without reference to his knowledge and discretion in the law."  *Id.*

7    (quoting 8 Wigmore, § 2296 at 566-67).  Thus, where a lawyer is employed for

8    business-related purposes "without 'reference to his knowledge and discretion in

9    the law,'" there is no privilege.  *Id.*

10       More importantly, there is a distinction between outside counsel and in-house

11   counsel.  Here, Ms. Zander is CI's in-house counsel and where "in-house counsel is

12   involved, the presumption is that the attorney's input is more likely business than

13   legal in nature" and the communications at issue should be reviewed with

14   "heightened" scrutiny.  176 Corporate Counsel's Annual Review 1 (August 2010)

15   (discussing *Lindley v. Life Investors Ins. Co. of America*, 267 F.R.D. 382, 389

16   (N.D. Okla. 2010)).

17       [U]nlike the situation where a client individually engages a lawyer in a

18       particular matter, staff attorneys may serve as company officers, with

19       mixed business-legal responsibility; whether or not officers, their day-

20       to-day involvement in their employers' affairs may blur the line

21       between legal and nonlegal communications; and their advice may

22       originate not in response to the client's consultation about a particular

23       problem but with them, as part of an ongoing, permanent relationship

24       with the organization. In that the privilege obstructs the truth-finding

25       process and its scope is limited to that which is necessary to achieve its

26       purpose, the need to apply it cautiously and narrowly is heightened in

27       the case of corporate staff counsel, lest the mere participation of an

28       attorney be used to seal off disclosure.

1  *Id.* (quoting *Rossi v. Blue Cross and Blue Shield of Greater New York*, 73 N.Y.2d

2  588, 842 N.Y.S.2d 508, 540 N.E.2d 703, 705 (1989)).

3      Thus, where the attorney has provided "business advice to the client, even if

4  resulting from a confidential request, no attorney-client privilege attaches to the

5  communication." *Lindley*, 267 F.R.D. at 391 (citing *In re CFS-Related Securities*

6  *Fraud Litigation*, 223 F.R.D. 631, 635 (N.D. Okla. 2004)).  The testimony

7  presented by CI in this case makes it clear that the business decisions underlying

8  CI's decision to obtain a trademark registration for FreeCreditReport.com, as well

9  as the preparation of the factual evidence purporting to show secondary meaning,

10  was entirely driven by Ms. Zander and CI's counsel.  As such, this is a matter of

11  pure business advice, rather than legal advice, and there is no privilege.

12      Further, CI, as the party (presumably) asserting privilege in the subpoenaed

13  documents (and, to the extent it does so, in the subpoenaed testimony of Ms.

14  Zander) bears the burden of proving that the attorney-client privilege applies.  *See,*

15  *e.g., Weil v. Investment/Indicators Research & Management*, 647 F.2d 18, 25 (9th

16  Cir. 1981); *U.S. v. Osborn*, 561 F.2d 1334, 1339 (9th Cir. 1977).  And "[b]ecause it

17  impedes full and free discovery of the truth, the attorney-client privilege is strictly

18  construed."  *Weil*, 647 F.2d at 24 (citing *Diversified Industries, Inc. v. Meredity*,

19  572 F.2d 596, 602 (8th Cir. 1977)).  To the extent that CI argues that the

20  "communications involve[] both business and legal issues, the Court must

21  determine the primary or predominant purpose of the communication." *Lindley*,

22  267 F.R.D. at 391.  In doing so, the court should determine whether the

23  communications primarily serve a business purpose – in which case the privilege

24  does not apply – or primarily a legal purpose, in which case the privileged portions

25  should be redacted so that the business-only portions can be disclosed. *See id.* at

26  392.

27      If "the legal and business purposes of the communication are inextricably

28  intertwined, the entire communication is privileged *only* if the legal purpose

1   outweighs the business purpose." *Lindley*, 267 F.R.D. at 392 (citing *Picard*
2   *Chemical Inc. Profit Sharing Plan v. Perrigo Co.*, 951 F. Supp. 679, 685-86 (W.D.
3   Mich. 1996)).  "Where business and legal advice are intertwined, the legal advice
4   must predominate for the communication to be protected." *Neuder v. Battelle*
5   *Pacific Northwest Nat. Laboratory*, 194 F.R.D. 289, 292 (D.D.C. 2000).  *See also*
6   *Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B*, 230
7   F.R.D. 398, 411 (D.Ma. 2005) ("the communication between a client and a lawyer
8   must be for the [primary] purpose of requesting legal advice").  Given CI's posture
9   in this litigation, that it had legitimate business purposes for seeking its federal
10  trademark registration and that it did so in good faith, without committing fraud
11  upon the PTO, CI should not be permitted to hide behind the cloak of attorney-
12  client privilege to prevent the presentation of the actual evidence that will support
13  or contradict that position.

14          Further, CI, through the testimony of Ty Taylor, is essentially using cloak of
15  counsel as a defense to One Tech's claim of fraud on the PTO.  When a defense of
16  advice of counsel is raised in a situation like this, the privilege as to the relevant
17  communications is waived.  *See, e.g., Chevron Corp. v. Penzoil Co.*, 974 F.2d 1156,
18  1162-63 (9th Cir. 1992) (party asserting its position was reasonable because of
19  advice of counsel puts at issue the underlying advice received).  "The privilege
20  which protected attorney-client communications may not be used both as a sword
21  and a shield." *Id. See also Verizon California, Inc. v. Ronald A. Katz Technology*
22  *Licensing, L.P.*, 266 F. Supp. 2d 1144, 1148 (C.D. Cal. 2003).  "Where a party
23  raises a claim which in fairness requires disclosure of the protected communication,
24  the privilege may be implicitly waived." *Chevron*, 974 F.2d at 1156.  "[I]t has been
25  widely held that voluntary disclosure of the content of a privileged attorney
26  communication constitutes waiver of the privilege as to all other such
27  communications on the same subject." *Weil*, 647 F.2d at 24.  Thus, a privilege
28  holder "cannot be allowed, after disclosing as much as he pleases, to withhold the

remainder." *Id.*

Should CI attempt to assert the attorney-client privilege, One Tech requests an *in camera* inspection of the documents, to determine whether the privilege applies. *See, e.g., Clarke v. Am. Commerce Nat. Bank*, 974 F.2d 127, 129 (9th Cir. 1992) ("A district court may conduct an in camera inspection of alleged confidential communications to determine whether the attorney-client privilege applies"). *See also Osborn*, 561 F.2d at 1339 (upholding a district court's determination, following an *in camera* inspection, that the party asserting the attorney-client privilege failed to meet its "burden of establishing the existence of the attorney-client relationship and of presenting the underlying facts demonstrating the existence of the privilege").

## VI.   CI IS NOT ENTITLED TO ATTORNEYS FEES FOR "VEXATIOUS LITIGATION" OR FOR ITS FEES IN CONNECTION WITH FORMER-DEFENDANT ALEX CHANG'S MOTION TO DISMISS.

In CI's Memorandum, for the first time, CI offers two new arguments claiming attorneys' fees. CI first argues that One Tech's antitrust claim constitutes vexatious litigation. *See* CI's Memorandum at pp. 76-77. CI then argues that One Tech failed to timely produce evidence and that former defendant Mr. Chang "perjured" himself such that it is entitled to its fees and costs in connection with Mr. Chang's motion to dismiss. *See id.* at 77. Both of these new arguments lack merit.

### A.   One Tech's Antitrust Counterclaim Does not Qualify as Vexatious Litigation.

CI contends that One Tech brought its attempted monopolization claim "in bad faith, and solely as a means to harass ConsumerInfo" such that it is vexatious litigation entitling CI to attorneys' fees. CI's Memorandum at p. 76. This "claim" is little more than a thinly-veiled attempt to get around the fact that the Section 4 of the Clayton Act only allows for an awards of attorneys' fees in an antitrust case to a

prevailing plaintiff, not to a defendant that defeats an antitrust claim.  *See* 15 U.S.C. § 15(a) ("any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws … shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee"). The Ninth Circuit has explicitly addressed the asymmetry of this fee-shifting provision, noting that fees are only available to a successful plaintiff, as opposed to the fee provisions in the Copyright Act (17 U.S.C. § 505), which allow a court to award fees to a "prevailing party."  *See Azizian v. Federal Dept. Stores, Inc.*, 499 F.3d 950, 959 (9th Cir. 2007).

Aside from having no legal merit,[5]  CI has not prevailed on the antitrust claim.  To the contrary, CI ignores the fact that its motion for summary judgment of One Tech's antitrust claim was denied.  "This success is strong evidence that" One Tech's claims are "not frivolous."  *McKesson Information Solutions, Inc. v. Bridge Medical, Inc.*, No. S-02-2669 FCD KJM, 2006 WL 2583025, *8 (E.D. Cal. 2006) (citing *Sulzer Textil A.G. v. Picanol N.V.*, 358 F.3d 1356, 1370 (Fed. Cir. 2004)). Further, CI's sole cited authority is inapposite, as that case based its award of attorneys' fees on the Lanham Act, which *does* allow a successful defendant the opportunity to seek fees.  *See Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1156 (9th Cir. 2002) (discussing the award of attorneys' fees and costs to a defendant who establishes that a Lanham Act claim was "exceptional" by way of being "groundless, unreasonable, vexatious, or pursued in bad faith") (quoting *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 881 (9th Cir. 1999)) (emphasis removed).  CI cites no legal authority that actually supports its baseless contention that One Tech's claim constitutes vexatious litigation.  CI has no grounds nor

---

[5] This is not like the situation presented by CI's former copyright claims.  One Tech and Adaptive successfully obtained summary judgment of CI's claims of direct, vicarious and contributory copyright infringement.  *See* Civil Minutes (docket #403) at pp. 11-13.  As such, One Tech (and Adaptive) are entitled to seek an award of reasonable attorneys' fees because the Copyright Act explicitly allows for such an award to *any* prevailing party in a copyright infringement case.  *See* 17 U.S.C. § 505.  *See also Azizian*, 499 F.3d at 959.

authority for contending that One Tech's antitrust claim constitutes vexatious litigation and it is entitled to no award of attorneys' fees.

### B. CI Is Not Entitled To Its Fees and Costs In Connection with the Chang Motion to Dismiss.

CI also contends that, following the resolution of former-defendant Alex Chang's motion to dismiss, One Tech produced an e-mail which purportedly shows that Mr. Chang perjured himself. *See* CI's Memorandum at p. 77. Although CI now claims a right to attorneys' fees, it admits that, after it received the purportedly impeaching e-mail, it made the strategic decision not to request a re-hearing on the motion to dismiss. *See id.* CI also fails to cite any legal authority in support of its claim for fees.

More importantly, however, CI knows that its claim of perjury is entirely unfounded. This contention was previously raised by CI in connection with One Tech's summary judgment motions. Specifically, CI claimed that Mr. Chang lied under oath regarding his involvement with the registration of the allegedly cybersquatting domain names. *See* Statement of Genuine Issues (docket #338), at p. 6. In responding to this unfounded accusation, One Tech provided an complete explanation of the purportedly impeaching document, clearly showing that it actually comports fully with Mr. Chang's testimony. *See* Defendants' Reply in Support of the Statement of Undisputed Facts (docket #364), at pp. 4-6. Not only did CI fail to relay this point to the Court, but it made no effort or attempt to show how its theory that Mr. Chang "lied" still holds water in light of this explanation. CI's Memorandum, in addition to failing to offer any legal authority, neglects to even mention this to the Court, let alone try to explain how it can still take the position that Mr. Chang lied.

Alex Chang's motion to dismiss was resolved in Mr. Chang's favor. CI has presented the Court with no evidence or authority to support its new claim for attorneys' fees, and its claim should not be entertained by the Court.

## VII. <u>CONTRACTUAL LIMITATION OF LIABILITY UNDER THE 2007 AFFILIATE AGREEMENT.</u>

CI's Memorandum contends that One Tech has asserted an "untimely affirmative defense" of "[c]ontractual limitation of damages."  CI's Memorandum, p. 15.  Per the Court's request during the November 29, 2010 Final Pretrial Conference Order, One Tech will address this issue in a separate filing provided to the Court on or before December 2, 2010.

DATED:  November 30, 2010          ORRICK, HERRINGTON & SUTCLIFFE LLP

By:_____/s/ Seth E. Freilich_____
                    Seth E. Freilich

Attorneys for Defendant and Counterclaimant
ONE TECHNOLOGIES LP