RHONDA R. TROTTER, Bar Number 169241
Email address: rtrotter@kayescholer.com
ROBERT B. BELL, Admitted *Pro Hac Vice*
Email address: robert.bell@kayescholer.com
JOSHUA STAMBAUGH, Bar Number 233834
Email address: jstambaugh@kayescholer.com
OSCAR RAMALLO, Bar Number 241487
Email address: oramallo@kayecholer.com
KAYE SCHOLER LLP
1999 Avenue of the Stars, Suite 1700
Los Angeles, California 90067
Telephone: (310) 788-1000
Facsimile: (310) 788-1200

Attorneys for Plaintiff and Counter-Defendant
CONSUMERINFO.COM, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| CONSUMERINFO.COM, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>ONE TECHNOLOGIES LP, a Delaware limited partnership; ADAPTIVE MARKETING LLC, a Delaware corporation; and DOES 1-50, inclusive,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS | CASE NO. CV-09-3783-VBF(MANx)<br><br>**PLAINTIFF CONSUMERINFO.COM, INC.'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE RE UNSEALING**<br><br>[Concurrently filed with Pollak Declaration in Support of ConsumerInfo.com's Opposition to Unsealing]<br><br>Trial Date: Dec. 8, 2010<br><br>Time: 8:30 a.m.<br>Place: Courtroom 9<br><br>Hon. Valerie Baker Fairbank |

# TABLE OF CONTENTS

Page

I. Introduction ........................................................................................................ 1

II. Argument .......................................................................................................... 2

    A.    The Legal Standard for Sealing Documents ........................................... 2

    B.    The Public Interest Is Not Furthered By Unsealing Information In The Categories Enumerated Above ....................................................... 3

    C.    Financial Information: Unsealing of This Highly Proprietary Information Places All Parties At A Competitive Disadvantage .......... 4

    D.    Trade Secrets: The Parties' Trade Secrets Should Be Sealed Because Disclosing These Trade Secrets Would Put The Parties at a Competitive Disadvantage ................................................................ 6

        1.    Confidential Business Planning And Strategy Materials ........... 7

        2.    Consumer Surveys ....................................................................... 9

        3.    Third Party Agreements ............................................................ 10

    E.    Non-public Documents Relating to the FTC Action Should Remain Under Seal ............................................................................. 11

    F.    Non-Party Confidential Documents Should Remain Under Seal ...... 12

III. Conclusion ..................................................................................................... 12

## **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
  331 F.3d 1122 (9th Cir. 2003)................................................................................ 3

*Hagestad v. Tragesser*,
  49 F.3d 1430 (9th Cir. 1995).................................................................................. 2

*ISC Bunker Ramo Corp. v. Altech, Inc.*,
  765 F.Supp. 1310 (N.D. Ill. 1990) ..................................................................... 7, 9

*Kamakana v. City & County of Honolulu*,
  447 F.3d 1172 (9th Cir. 2006)........................................................................ 3, 11

*MMI, Inc. v. Baja, Inc.*,
  2010 WL 3033761 (D. Ariz. Aug. 3, 2010)..................................................... 10, 11

*Moore v. State Farm Mut. Auto. Ins. Co.*,
  2005 WL 399395 (E.D. La. 2005) ......................................................................... 8

*Pansy v. Borough of Stroudsburg*,
  23 F.3d 772 (3d Cir. 1994).................................................................................... 4

*PepsiCo, Inc. v. Redmond*,
  54 F.3d 1262 (7th Cir. 1995)................................................................................. 7

*Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*,
  307 F.3d 1206 (9th Cir. 2002)............................................................................... 3

*Reilly v. Medianews Group, Inc.*,
  2007 U.S. Dist. LEXIS 8139, 2007 WL 196682 (N.D. Cal. Jan. 24, 2007)........ 5

*Seattle Times Co. v. Rhinehart*,
  467 U.S. 20 (1984)................................................................................................. 2

*Tinn v. EMM Labs, Inc.*,
  556 F.Supp.2d 1191 (D. Or. 2008) .................................................................... 5, 7

*Valley Broadcasting Co. v. U.S. Dist. Court for Dist. of Nevada*,
  798 F.2d 1289 (9th Cir. 1986) ........................................................................... 3, 4

23298068.DOCX          CONSUMERINFO.COM'S RESPONSE TO OSC RE UNSEALING

*Watts v. Metro. Life Ins. Co.*,
    2010 U.S. Dist. LEXIS 107201, No. 09-cv-829 WQH (WVG) (S.D. Cal. Oct. 7, 2010) .................................................................................................. 6

*Watts v. Metro. Life Ins. Co.*,
    No. 09-cv-829 WQH (WVG) (S.D. Cal. Oct. 7, 2010) ................................. 7, 10

**STATUTES**

15 U.S.C. §18(A)(h) ............................................................................................. 6

**OTHER AUTHORITIES**

E.D. Pa. 2003 ........................................................................................................ 7

Fed. R. Civ. P. 26(c)(1)(G) ................................................................................... 7

FRCP 26(c) ....................................................................................................... 2, 3

FTC Introductory Guidelines p. 8, *available at* http://www.ftc.gov/bc/hsr/introguides/guide1.pdf. ............................................ 6

Order to Show Cause Re Unsealing of 149 ......................................................... 1

Restatement (Third) of Unfair Competition § 39 ................................................ 6

Restatement (Third) of Unfair Competition § 39, comment f ............................ 9

KAYE SCHOLER LLP

23298068.DOCX    CONSUMERINFO.COM'S RESPONSE TO OSC RE UNSEALING

## I. Introduction

On December 2, 2010, this Court issued an Order to Show Cause Re Unsealing of 149 docket entries and the attachments thereto. After reviewing these entries and their often voluminous attachments, Plaintiff ConsumerInfo.com, Inc. ("ConsumerInfo") has identified the following categories of information which it believes should remain under seal:

- Proprietary, particularized ConsumerInfo financial information including price paid for credit reports, costs per click, and keyword bid data;
- ConsumerInfo keyword bidding documents containing detailed cost information, price per click data, bid data, bid strategy, click through rates, impressions and other keyword analytical data;
- Proprietary ConsumerInfo business planning, strategy and product development documents, including documents voluntarily provided to the Department of Justice regarding the Mighty Net acquisition;
- Proprietary ConsumerInfo competitive intelligence containing particularized data, including consumer surveys, and market positioning data
- Expert reports making substantial use of the parties' proprietary data;
- Whole deposition transcripts of senior ConsumerInfo executives which were improperly attached in their entirety to Defendants' summary judgment papers;
- Consumer complaints against all parties containing personal consumer data such as address, telephone number, email address and sometimes financial information;
- Non-Public Communications between ConsumerInfo and the Federal Trade Commission;
- ConsumerInfo contracts with non-parties;

- Documents non-parties have produced in this litigation with the understanding of confidentiality;

In several cases, minimal redactions are all that ConsumerInfo recommends to preserve appropriate confidentiality. These cases are indicated in the Pollak Declaration attached hereto. In other cases, however, ConsumerInfo believes entire exhibits must remain under seal to protect the privacy and business interests of ConsumerInfo, Defendants and non-parties. The concurrently filed Pollak Declaration sets forth, by docket number, the specific information ConsumerInfo's seeks to maintain sealed. ConsumerInfo has endeavored to seek protection of only the most sensitive information, and objects to unsealing of only portions of less than one-third of the 149 docket entries identified by the Court.

## II. Argument

### A. The Legal Standard for Sealing Documents.

District Courts have broad discretion to issue protective orders and seal documents. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984) (interpreting Fed R. Civ. P. 26(c) as conferring "broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required").

The general right to inspect and copy public records is not absolute and a Court must weigh the public's common law right of access to judicial records with a party's right to maintain the confidentiality of documents that pertain to its business. *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995) (The "[r]elevant factors" [in weighing the merits of a sealing order] include the "public interest in understanding the judicial process and whether disclosure of the material could result in improper use of the material for scandalous or libelous purposes or infringement upon trade secrets.").

FRCP 26(c) gives district courts "broad latitude to grant protective orders to prevent disclosure of materials for many types of information, including, *but not limited to*, trade secrets or other confidential research, development, or commercial

2

information." *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002) (emphasis in original).

Two standards generally govern motions to seal documents. A "compelling reasons" standard applies to most judicial records including dispositive motions, documents attached to dispositive motions, and non-dispositive motions. *See Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006); *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135-36 (9th Cir. 2003). A second "good cause" standard applies to "private materials unearthed during discovery" because such documents are not part of the judicial record. FRCP 26(c); *Kamakana*, 447 F.3d at 1180. The "good cause" standard is also used for materials attached to non-dispositive motions. *Foltz*, 331 F.3d at 1135. The "good cause" standard asks whether "'good cause' exists to protect th[e] information from being disclosed to the public by balancing the needs for discovery against the need for confidentiality." *Phillips*, 307 F.3d at 1213.

In this case, the bulk of the docket entries identified by the court pertain to the parties' summary judgment filings, and thus the compelling interest standard applies. The other docket entries primarily relate to the filing of non-dispositive motions in limine. Many of the same categories of documents, and sometimes the identical documents themselves are attached as exhibits to both summary judgment and motion in limine pleadings. The Pollak Declaration specifies the legal standard applicable to each docket entry.

**B.   The Public Interest Is Not Furthered By Unsealing Information In The Categories Enumerated Above.**

The public interest in the disclosure of judicial documents is ensuring the "public's understanding of the judicial process and of significant public events." *Valley Broadcasting Co. v. U.S. Dist. Court for Dist. of Nevada*, 798 F.2d 1289, 1294 (9th Cir. 1986). "[C]ourts have recognized that exercise of the right helps the public keep a watchful eye on public institutions and the activities of government."

3

*Id.* at 1293 (citations omitted). Maintaining the confidentiality of documents such as business strategy and financial documents and the personal information of consumers does not significantly undermine the public's ability to understand the judicial process and keep a watchful eye on the judicial branch.

Nor are the documents ConsumerInfo seeks to maintain under seal of the type that warrant a heightened need for disclosure because they are of interest in matters of legitimate public concern, such as those involving the administration of public office or matters affecting public health and safety. *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787-88 (3d Cir. 1994).

C.  **Financial Information: Unsealing of This Highly Proprietary Information Places All Parties At A Competitive Disadvantage.**

Financial data filed under seal in this litigation concern the cost ConsumerInfo pays for credit reports, marketing budgets, media spending, keyword costs-per-click, profits and losses, revenues, projections, and other financial data. Moreover, in connection with its recently approved acquisition of Mighty Net, ConsumerInfo voluntarily provided the Department of Justice with numerous confidential documents, including confidential financial data. Docket No. 553, the Johnston Declaration in Support of Consumerinfo.Com's Opposition to One Technologies' Motion in Limine to Exclude Dr. Cameron's Sur-Reply Expert Report and Testimony Regarding The Mighty Net Acquisition attaches a confidential 'Acquisition Presentation' containing highly sensitive financial information. Docket No. 472, the Freilich Declaration in support of the motion in limine attaches portions of Dr. Cameron's Sur-Reply Report that synthesize specific pieces of financial information contained in the documents provided to the Department of Justice.

The damages and antitrust expert reports make extensive use of both ConsumerInfo and Defendants' financial information both by reporting raw data as well as summarizing and analyzing it. The search marketing expert report by Ben

4

Kirshner also relies on the parties' proprietary keyword financial data at pages 11-13, which ConsumerInfo seeks to have redacted. Many of these reports or excerpts thereof have been attached to numerous declarations filed under seal. All these reports are designated Highly Confidential - Attorney's Eyes Only under the protective order in this case.

In *Reilly v. Medianews Group, Inc.*, 2007 U.S. Dist. LEXIS 8139, 2007 WL 196682, *13-14 (N.D. Cal. Jan. 24, 2007) the court held that that records containing "detailed financial information, including past and present revenues, and projections of future revenues" should remain under seal. Unsealing the "information and projections might allow competitors to anticipate and react to actions taken by defendants in the future" and might "help the bargaining position of companies that negotiate with [the owner of the documents]. *Id.* at *14. Furthermore, the future projection information might expose [the document author] to liability to investors." *Id.*

Likewise, unsealing of the detailed financial records of ConsumerInfo and Defendants at a competitive disadvantage against each other as well as against other competitors in the market. As to ConsumerInfo, competitors would be unfairly apprised of how ConsumerInfo allocates its financial resources, the price ConsumerInfo pays for credit reports, ConsumerInfo keyword bidding strategy, and ConsumerInfo's profit margins. These are important business strategy considerations would severely disadvantage ConsumerInfo if publicly disclosed. *See Tinn v. EMM Labs, Inc.*, 556 F.Supp.2d 1191 (D. Or. 2008) (a manufacturer's variable pricing information should remain confidential because it would cause "significant competitive harm" if disclosed because defendants' customers and competitors would be able to view the discrepancy in prices offered to customers).

For example, if ConsumerInfo's competitors knew the amount that ConsumerInfo bids in advertising auctions for specific keywords, they would be able to adjust their own bids in an effort to "win" certain auctions. Furthermore, by

5

analyzing bidding amounts, competitors would learn which keywords their competitors believe are the most valuable for their business. Lastly, the bids reveal business costs to competitors, disclosure of which would result in ConsumerInfo being put at a competitive disadvantage. *See Watts v. Metro. Life Ins. Co.*, 2010 U.S. Dist. LEXIS 107201, No. 09-cv-829 WQH (WVG) (S.D. Cal. Oct. 7, 2010) (under the "compelling reasons" standard, interrogatory responses that reveal business costs as to moneys paid to a third party vendor could be used by defendant's competitors to its disadvantage and must be filed under seal). Even Google, who administers the keyword auctions, also does not reveal bid amounts. Can I See What My Competitors Are Bidding? - AdWords Help, http://adwords.google.com/support/aw/bin/answer.py?hl=en&answer=12395 (last visited Dec. 6, 2010) ("We don't reveal personal account information or data for any of our users.").

With respect to the financial information ConsumerInfo voluntarily provided to the Department of Justice, such was provided with the expectation of confidentiality under Section 7A(h) of the Hart-Scott-Rodino Act. *See* 15 U.S.C. §18(A)(h); FTC Introductory Guidelines p. 8, *available at* http://www.ftc.gov/bc/hsr/introguides/guide1.pdf. Unsealing of these documents would have a chilling effect on the willingness of companies to provide documents to the Department of Justice, for fear that these will end up in public court records.

**D. Trade Secrets: The Parties' Trade Secrets Should Be Sealed Because Disclosing These Trade Secrets Would Put The Parties at a Competitive Disadvantage.**

A trade secret is "any information that can be used in the operation of a business or other enterprise and that is sufficiently valuable and secret to afford an actual or potential economic advantage over others." *See* Restatement (Third) of Unfair Competition § 39. In order for a trade secret to be sufficiently valuable, its value need only be "more than trivial." *Id.* at comment e. Non-public keyword data,

consumer survey data, competitive intelligence, and expert reports or deposition testimony that report or analyze this information are trade secrets.

A party's interest in keeping its trade secrets confidential is exactly the type of interest that routinely outweighs the public's interest in understanding the judicial process. *See* Fed. R. Civ. P. 26(c)(1)(G); *Watts v. Metro. Life Ins. Co.*, No. 09-cv-829 WQH (WVG) (S.D. Cal. Oct. 7, 2010). The Supreme Court in *Nixon v. Warner Commc'ns, Inc.* acknowledged that Courts routinely seal "business information that might harm a litigant's competitive standing." 435 U.S. 589, 598 (1978).

Courts routinely seal many types of confidential documents in order to protect a party from being put at a competitive disadvantage. For example, *Tinn v. EMM Labs, Inc.* held that a manufacturer's variable pricing information should remain confidential because, if disclosed, defendants' customers and competitors would be able to view the discrepancy in prices offered to customers and thus it would cause "significant competitive harm" to manufacturer. 556 F.Supp.2d 1191, 1195-96 (D. Or. 2008). In *Sprinturf, Inc. v. Southwest Recreational Industries, Inc.*, the court sealed documents because they contained defendant's past and future market share, the size of future markets, the impact of plaintiffs' request for injunctive relief on defendant's customers, and proprietary information regarding the development of defendant's product line. 216 F.R.D. 320, 324 (E.D. Pa. 2003).

### 1. Confidential Business Planning And Strategy Materials

Business plans are often considered trade secrets. *See PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1267-68 (7th Cir. 1995) (PepsiCo's marketing and distribution plan for the upcoming year was a trade secret and that the defendants could not "seriously contest" that classification). Even business plans that contain a large amount of public information may be found to be trade secrets as long as the public information is combined with some proprietary analysis or insight. *See, e.g., ISC Bunker Ramo Corp. v. Altech, Inc.*, 765 F.Supp. 1310, 1322 (N.D. Ill. 1990)

7

("[T]he effort of compiling useful information is, of itself, entitled to protection even if information is otherwise generally known.").

Business plans are routinely sealed. *See, e.g., Moore v. State Farm Mut. Auto. Ins. Co.*, 2005 WL 399395 (E.D. La. 2005) (ruling that a "detailed risk assessment and marketing strategy" for State Farm that was attached to a complaint should remain sealed because it was not public knowledge and was entrusted only to employees of State Farm).

ConsumerInfo's Business Plans and Strategy Materials are valuable, proprietary documents because they discuss ConsumerInfo's plans and strategies for developing and marketing its products. They also contain frank discussions of ConsumerInfo's weaknesses. Some of the more recent documents relate to Experian's acquisition of Mighty Net and contain highly sensitive pricing and organizational information. This information is kept confidential and is not available publicly. ConsumerInfo senior executives including Mike Balducci, David Williams and Michael Dean testified throughout their Highly Confidential, Attorney's Eyes Only designated depositions about ConsumerInfo business plans and strategy, including the launch of FreeCreditScore.com. ConsumerInfo executive Marcy Smith also testified about these, primarily with respect to online advertising, as well as the building of the freecreditreport.com and freecreditscore.com brands. In certain instances, Defendants attached full transcripts of these depositions to their summary judgment pleadings, which should be redacted to exclude this information before unsealing.

Unsealing business plans or business strategy testimony would be highly prejudicial to ConsumerInfo, as it would give competitors tremendous insight into how ConsumerInfo has achieved its success thusfar and how ConsumerInfo plans to proceed in the future.

## 2. Consumer Surveys

The sealed docket entries include three confidential consumer surveys commissioned by ConsumerInfo: Gallup, Simmons and M/A/R/C. In 2005 and 2006, ConsumerInfo hired the Gallup Organization to conduct monthly telephone polling of roughly 1,000 consumers each month. Certain questions were deemed "proprietary," and the results for those questions were not shared outside of ConsumerInfo and Gallup. These questions asked about awareness and familiarity with freecreditreport.com and competitors. In 2008, ConsumerInfo hired Simmons research to conduct at telephone survey of roughly 1,000 Americans. Similar types of questions were asked. Between June 2009 and March 2010, ConsumerInfo used M/A/R/C Research to conduct internet surveys of 1,000 potential credit consumers per month. Multiple competitive intelligence questions were asked including questions about awareness and familiarity of FreeCreditReport.Com and various competitors. ConsumerInfo's branding expert in this litigation, Carol Scott, discusses these surveys in detail throughout her report.

"[T]he effort of compiling useful information is, of itself, entitled to protection even if information is otherwise generally known." *ISC Bunker Ramo Corp. v. Altech, Inc.*, 765 F.Supp. 1310, 1322 (N.D. Ill. 1990); Restatement (Third) of Unfair Competition § 39, comment f. The consumer surveys represent trade secret information compiled by ConsumerInfo at significant cost. They also reflect the methodologies of the survey companies who conducted them. Furthermore, the recent M/A/R/C surveys are an important part of developing and testing ConsumerInfo's plans for new marketing avenues.

ConsumerInfo maintains the confidentiality of its consumer surveys. Unsealing this material would put ConsumerInfo at a competitive disadvantage by allowing its competitors to reap the rewards of ConsumerInfo's costly survey work as well as glean insight into ConsumerInfo's marketing ideas yet to be implemented. *See Watts v. Metro. Life Ins. Co.*, No. 09-cv-829 WQH (WVG) (S.D.

Cal. Oct. 7, 2010) (under the "compelling reasons" standard, guidelines that "could be used by business competitors to circumvent the considerable time and resources necessary to develop such guidelines" must be filed under seal).

### 3. Third Party Agreements

Keeping the terms and conditions of business agreements private is vital to a company's ability to stay competitive. *See id.* (ruling that, under the "compelling reasons" standard, a contract between the defendant and a third party vendor that could be used by defendant's competitors to its disadvantage must be filed under seal because it contains the defendant's costs of doing business which affects its pricing structure); *MMI, Inc. v. Baja, Inc.*, 2010 WL 3033761, *2 (D. Ariz. Aug. 3, 2010) (ruling that royalty rates, and terms and conditions of the defendant's contracts with third parties are business decisions that affect defendant's profitability and should be sealed).

ConsumerInfo respectfully requests that the Court maintain information regarding three agreements under seal. One is an agreement with LeadCamp recently under negotiation. Another is ConsumerInfo's 12/1/06 with its advertising agency, The Martin Agency. The other is an agreement between Yahoo! and ConsumerInfo detailed in ConsumerInfo's Statement of Uncontroverted Material Facts and Conclusions of Law in Support of its Motion for Partial Summary Judgment against One Technologies. Information regarding these agreements should remain under seal because they contain the terms and prices that ConsumerInfo negotiated or attempted to negotiate with those third parties. If ConsumerInfo's potential business partners know the price that ConsumerInfo pays for certain products or services, they will have an unfair advantage in negotiating new agreements with ConsumerInfo. The third parties with whom ConsumerInfo negotiated may experience a similar competitive disadvantage though they have no stake in this litigation.

Furthermore, the public has a diminished need for these documents because they are "only tangentially related[] to the underlying cause of action." *Kamakana v. City and Cty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006); *MMI, Inc. v. Baja, Inc.*, 2010 WL 3033761, *2 (D. Ariz. Aug. 3, 2010) (ruling that a contract attached to a non-dispositive filing remain sealed because it was only "tangentially related" under *Kamakana* to the underlying lawsuit, which was a patent infringement suit, not a contract dispute).

### E. Non-public Documents Relating to the FTC Action Should Remain Under Seal.

ConsumerInfo filed a Motion in Limine to Exclude Evidence or Argument Related to the *FTC v. ConsumerInfo Action*, where ConsumerInfo argued that evidence of the FTC investigation was irrelevant and prejudicial to ConsumerInfo. (Docket Nos. 432 and 495). The Court granted ConsumerInfo's motion. *See* Docket No. 565. The Ramallo Declarations in Support of this and other motions in limine (Docket Nos. 475 at Exhibit H, I, J & 526 at Exhibit 450) attached non public correspondence between the FTC and ConsumerInfo as part of the negotiations leading up to the settlement ConsumerInfo reached with the FTC and a related internal FTC email.

The FTC Complaint and the Stipulated Injunctions in the FTC Action are publicly available documents. Thus, the non-public documents may be kept under seal because public has other avenues to learn of the FTC's concerns with ConsumerInfo without the disclosure of these sensitive documents. Furthermore, as this Court's decision to exclude FTC evidence suggests, the public has a diminished need for these documents because they are "only tangentially related[] to the underlying cause of action." *Kamakana v. City and Cty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006); *MMI, Inc. v. Baja, Inc.*, 2010 WL 3033761, *2 (D. Ariz. Aug. 3, 2010).

### F. Non-Party Confidential Documents Should Remain Under Seal.

ConsumerInfo requests that this court maintain the under seal of documents produced by non-parties GoDaddy and InsightExpress in response to subpoenas served in this litigation. GoDaddy produced receipts for domain names. InsightExpress produced the questionnaire it used to conduct online consumer surveys on behalf of defendants. These non-parties provided their non-public documents with the understanding that the parties would maintain the responsive documents confidential, as some of the information contained therein constitutes trade secrets or is otherwise sensitive. The proprietary interests of third parties is also a further basis for maintaining the under seal status of the Gallup, Simmons and M/A/R/C surveys commissioned by ConsumerInfo, as these reflect the survey building techniques proprietary to the companies that created them.

### III. Conclusion

The small subset of documents or portions thereof ConsumerInfo seeks to maintain under seal are private party business documents important to ConsumerInfo's ability to compete fairly in the market. These documents do not bear on public health nor safety, nor on the public's understanding and vigilance of the judicial processes. The public interest is harmed only mildly, if at all by sealing, whereas ConsumerInfo's business is severely disadvantaged by disclosure of business strategy and financial documents.

//
//
//
//
//
//
//
//

Thus, for the reasons set forth herein, ConsumerInfo respectfully requests that this Court maintain the under seal status of the documents and information detailed in the concurrently-filed Pollak Declaration.

DATED: December 13, 2010

Respectfully submitted,

KAYE SCHOLER LLP

By: /s/
Oscar Ramallo
Attorneys for Plaintiff
CONSUMERINFO.COM, INC.